1  Andrew P. Holland/Bar No. 224737
2  Nathaniel H. Lipanovich/Bar No. 292283
   Cynthia C. Mullen/Bar No. 292256
   Melissa K. Zonne/Bar No. 301581
3  THOITS LAW
   A Professional Corporation
4  400 Main Street, Suite 250
   Los Altos, California 94022
5  Telephone: (650) 327-4200
   Facsimile: (650) 325-5572
6
7  Attorneys for Plaintiff and
   Counter-defendant
   Bella+Canvas, LLC
8
9  CONTE C. CICALA, State Bar No. 173554
   conte.cicala@clydeco.us
10 CLYDE & CO US LLP
   150 California Street, 15th Floor
11 San Francisco, CA 94111
   Telephone: (415) 365-9800
   Facsimile: (415) 365-9801
12
13 Attorneys for Defendant
   Fountain Set Limited
14
15              **UNITED STATES DISTRICT COURT**
16              **CENTRAL DISTRICT OF CALIFORNIA**
17

18 | BELLA+CANVAS, LLC, | Case No. 2:21-cv-00758-ODW-MAA |
19 | Plaintiff, | **JOINT STIPULATION PURSUANT** |
20 | v. | **TO LOCAL RULE 37 REGARDING PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF** |
21 | FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive, | **DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES; EXHIBITS IN SUPPORT THEREOF; AND COUNTER-MOTION TO** |
22 | | |
23 | Defendants. | **COMPEL DEPOSITION OF PLAINTIFF'S WITNESSES** |
24 | | |
25 | FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive | *(Filed concurrently with Notice of Motion and Motion to Compel; and Proposed Order)* |
26 | Counter-claimant, | |
27 | v. | Date: June 28, 2022 |
28 | | Time: 10:00 a.m. Courtroom: 690 |

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

1

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**



1    BELLA+CANVAS, LLC,

2                    Counter-defendant.

Judge: Hon. Maria A. Audero

Discovery Cut-off: September 19, 2022
Pretrial Conf.: December 28, 2022
Trial Date: January 17, 2023

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

2

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO
COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

**TO THE HONORABLE MARIA A. AUDERO**:

Pursuant to Fed. R. Civ. P. 37(a) and Local Rules 37-2, the parties hereby submit the following Joint Stipulation Re: Plaintiff BELLA+CANVAS, LLC ("Plaintiff" or "Bella+Canvas") Motion to Compel the Depositions of Defendant FOUNTAIN SET LIMITED's ("FSL" or "Defendant") Witnesses. This Stipulation is further submitted pursuant to this Court's Civil Minutes issued in response to the Informal Discovery Conference dated March 23, 2022, in which it found that the parties satisfied the pre-trial requirements under Rule 37(a) and L.R. 37-1. (See Exhibit D, [Dkt. 30].)

## I. PLAINTIFF BELLA+CANVAS' INTRODUCTORY STATEMENT

This dispute relates to FSL's gamesmanship and evasive tactics in response to Plaintiff's efforts to take the depositions of FSL's key witnesses. Plaintiff Bella+Canvas seeks to depose FSL's four key witnesses directly involved in the transaction at issue in the litigation and each identified in one or both of the parties' initial disclosures. (See **Exhibit A**, parties' Initial Disclosures.) During the prior Informal Discovery Conference ("IDC") with the Court and in subsequent meet and confers, FSL agreed to produce its witnesses for deposition in the location this Court already approved – in the forum district in Los Angeles, California. (See **Exhibit B**, Declaration of Melissa K. Zonne ("Zonne Decl.") ¶¶ 9-10.) FSL then asked if its witnesses could instead be deposed in the Bay Area, an accommodation to which Bella+Canvas agreed. (*Id.*, ¶ 10.) After weeks of waiting for dates for these witnesses, however, FSL reversed course and now refuses to produce its witnesses anywhere in California unless Bella+Canvas will agree to limit itself to one deposition. (*Id.*, ¶ 11.)

Taking the depositions in California is necessary given that current global circumstances and applicable foreign laws and procedures indefinitely prohibit depositions in the Defendant's principal place of business. Yet FSL continues to play cat-and-mouse, repeatedly leading Bella+Canvas to believe it will produce its witnesses for deposition without a need for Court intervention, and then suddenly changing its position. Indeed,

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

3

1 more than once, FSL has indicated a willingness to travel to California and delayed the scheduling while Bella+Canvas waited for its available dates, only to then rescind the agreement or create new terms. Now, FSL alleges that Bella+Canvas is somehow to blame for these delays. Yet, recent unsuccessful meet-and-confer discussions have made it clear that FSL has simply been taking advantage of Bella+Canvas' good faith efforts to compromise as a means to delay the case, without any intention of proceeding with depositions. Thus, a motion to compel is necessary.

The parties' dispute centers around a large fleece fabric order supplied by FSL to Bella+Canvas that failed to meet the quality specifications agreed to between the parties. Bella+Canvas seeks to depose four individuals who were each key players involved in the transaction at issue and the communications between FSL and Bella+Canvas: Chapman Yuen, Tony Kong, Schuman Jiang and Jennifer Chu. (See **Exhibit C**, Deposition Notices to FSL witnesses.) Chapman Yuen was involved in the creation of the agreement between the parties, including Bella+Canvas' credit application, the terms and conditions for the transaction, key correspondence regarding the quality and testing issues with the fabric, and can also testify to Bella+Canvas' damages. (Exhibit A.) Tony Kong was FSL's key representative in communications with Bella+Canvas once the fabric issues were identified. Schuman Jiang was involved in correspondence directly with Bella+Canvas regarding the critical contract terms and fabric specifications, including the wash/care instructions, as well as facilitating Bella+Canvas' review of the fabric samples. Finally, Jennifer Chu was responsible for the fabric shipments, including the samples and the containers of the final products, and was the main point of contact for Bella+Canvas regarding fulfilling of the purchase orders and shipments.

As set forth herein and in the accompanying declarations and exhibits, Bella+Canvas has made every effort to meet-and-confer and accommodate FSL while simultaneously proceeding with the litigation. At every turn, FSL has frustrated these efforts, and on this issue, has entirely ignored the Court's comments from the Informal

4

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

1  Discovery Conference. It is evident that FSL hopes to use the current pandemic-related

2  restrictions, as well as the geographical distance between the parties, to continue to avoid

3  deposition and delay the adjudication of this case. Incredibly, FSL simultaneously alleges

4  that Bella+Canvas is to blame for the delay. Yet none of its contentions are grounded in

5  truth. First, FSL's accusation that Plaintiff has refused to produce its own witnesses is

6  unfounded. Bella+Canvas continues to offer its witnesses for deposition, even contacting

7  non-employees requested by FSL to obtain their availability and has communicated this to

8  counsel repeatedly. (Exhibit B, Zonne Decl., ¶ 10.) It merely declines to provide FSL

9  with *priority* to depose its witnesses, as it is clear FSL may have no intention to ever

10 appear for depositions and has refused to reciprocate with available dates. Similarly, it is

11 unclear why FSL alleges Plaintiff is to blame for a failure to contact the Competent

12 Authority, given that: (i) travel to Hong Kong remains prohibited, so approval would be

13 fruitless; (ii) for that reason, FSL has indicated since prior to the February 2022 IDC that

14 it is willing to travel to Los Angeles, so Plaintiff had no reason to proceed otherwise; (iii)

15 Plaintiff has always indicated to FSL that the deponent must request permission; and (iv)

16 Plaintiff has still never received notice of FSL's witnesses' citizenship in order to confirm

17 a request is necessary even if travel was allowed. FSL cannot blame Bella+Canvas for the

18 consequences of its own discovery abuses.

19     An order compelling the depositions to the forum district is legally sound,

20 particularly given the circumstances here. To stall the case indefinitely so that someday

21 depositions may potentially take place in Hong Kong would not serve the interests of

22 justice. This Court and FSL have both previously agreed that depositions in California

23 are the best solution to the variety of problems presented here. Plaintiff therefore

24 respectfully requests an order compelling FSL's witnesses to be deposed in the forum

25 district, or, as an accommodation to FSL's witnesses, the Bay Area.

26 **II.    DEFENDANT'S INTRODUCTORY STATEMENT.**

27     This dispute arises solely from Plaintiff's aggressive all or nothing approach and

28

5

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO
COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

1  refusal to compromise in taking the depositions of Defendant's corporate designee and

2  individual non-party employee witnesses during a global pandemic, and from its refusal to

3  produce its own witnesses based on a groundless "priority of discovery" argument.

4      Plaintiff contracted for the manufacture and sale of a bulk purchase of fabric for

5  use in masks from a company headquartered in Hong Kong. Coinciding with a significant

6  softening of that market, Plaintiff contrived a quality dispute and refused to accept and pay

7  for the balance of the shipment. In response to a demand for payment, Plaintiff filed this

8  preemptive lawsuit in the United States. Defendant agreed to waive service of summons,

9  sparing the Plaintiff from proceeding through international convention, and filed a

10  compulsory counterclaim to seek the money due from the balance of fabric that was

11  specially manufactured for the Plaintiff, storage costs, and other damages arising out of

12  Plaintiff's breach. This act of courtesy has been rewarded by a nonstop barrage of

13  discovery abuse, culminating in this motion.

14      When evaluating this motion, it is useful to bear in mind the following two points.

15  First, and as discussed further below, there is a basic presumption in federal procedure

16  that depositions are to be taken at the location of a defendant's principal place of business,

17  in this case Hong Kong. Second, for absolutely no valid reason, the Plaintiff has failed to

18  produce its witnesses for deposition.

19      Given the nature of the dispute, the global COVID-19 pandemic has loomed over

20  this case from the outset. As a result of this worldwide health crisis, borders were closed

21  and travelling for depositions was impossible. Initially the parties were prepared to

22  conduct depositions by video connection. However, during the planning and discussion

23  process, Plaintiff learned around September 2021 that in order to take the deposition of

24  witnesses located in Hong Kong, either virtually or in person, permission must first be

25  obtained from the Hong Kong Competent Authority. (See Exhibit K, Declaration of

26  Glenanne Kennedy ("Kennedy Decl.") ¶ 5.) Defendant's counsel attempted to assist

27  Plaintiff's counsel in determining this process, sought assistance from its Hong Kong

28

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO
COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

1  Office, provided all the information it could obtain, including direct links and contact

2  information for the Competent Authority, and did everything short of filing for permission

3  on Plaintiff's behalf. (See Exhibit K, Kennedy Decl. ¶¶ 5, 7.) But Plaintiff instead made

4  the tactical decision to deliberately choose not to seek permission from the Hong Kong

5  Competent Authority, and instead seeking to compel the corporate designee, and

6  individual non-party employee witnesses to travel across the world to defend a legal action

7  that they had no part in bringing. The hardship that would be involved in such travel for

8  each of these individuals is significant.

9  Because of the unique circumstances surrounding taking depositions during a global

10 health pandemic, Defendant has continually sought ways to compromise with Plaintiff.

11 The most recent offer to compromise was to bring Defendant's corporate designee to

12 Defendant's counsel's office in San Francisco for his deposition. (See Exhibit K, Kennedy

13 Decl. ¶ 21.) The corporate designee, Chapman Yuen, is the central witness in the entire

14 case. He is the only person to have been involved in all communications from start to

15 finish. (See Exhibit L, Declaration of Chapman Yuen ("Yuen Decl.") ¶ 2.) Defendant

16 offered for him to testify both as an individual and as the corporate designee while he was

17 in the United States. This offer was made on the condition that Plaintiff would not seek to

18 compel the additional witnesses to come to California for their depositions and for their

19 depositions to take place virtually once the necessary permissions were obtained. (See

20 Kennedy Decl. ¶ 23.)

21 Yet instead of working with Defendant to find a solution to this unprecedented

22 situation, Plaintiff continued to maintain its aggressive, all or nothing tactics, and refused

23 to engage in any further communications, instead bringing this motion. This has been a

24 consistent tactic from Plaintiff since the beginning, which suggests that this is not about

25 discovery at all, but instead is posturing and using the discovery process to improperly

26 gain the advantage in the litigation.

27 It is clear that there is no perfect solution to the situation at hand. There are strict

28

Case 5:37-cv-00589-ODW-MWW Bocument 34 Filed 08/31/99 Page 4 of 28 Page ID #:10

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO
COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

travel and quarantine requirements for travelling both to and from Hong Kong, resulting in a significant amount of uncertainty surrounding these ever changing requirements. Those traveling from Hong Kong face an additional danger of flights being cancelled and being unable or even prohibited from returning to their country. (See Exhibit S, Business Group Warns Hong Kong Travel Curbs a 'Nightmare'.) That is the stark and harsh reality that will be faced by every single witness forced to travel to the United States upon his or her return to Hong Kong. Added to this is the high cost of international flights and the need to fix dates for the benefit of everyone's calendar, which in turn creates further risk of changing restrictions and new travel advisories. Against this backdrop, Plaintiff's refusal to take depositions in Hong Kong by video feed is not merely an aggressive tactic, but, given its real impact on real human beings, is also outrageous.

The only "slam dunk" question presented in this motion is that the Plaintiff must immediately produce its witnesses, which have been withheld from production based on a groundless claim of "priority." Plaintiff contends that, because it sent an email requesting availability of FSL's witnesses first, this means that it does not have to produce its own witnesses until after FSL witnesses are produced. (See Exhibit K, Kennedy Decl. ¶ 15.) This argument has zero basis in law. While FSL was willing, for a time, to postpone those depositions, it can no longer do so. Thus, FSL counter-moves for an order requiring Plaintiff to produce its witnesses for deposition forthwith.

In addition to every other argument set forth herein, FSL also opposes this motion on simple due process grounds – it violates fundamental fairness and common decency to force individuals to travel internationally against their will and to accept unnecessary risk to their health and that of their families over a simple contract dispute. Less dramatically, but equally significant, the relief sought by plaintiff violates the basic concept of proportionality in discovery that has been specifically enshrined in the Federal Rules of Civil Procedure since 2016.

III. **PLAINTIFF'S ARGUMENT.**

Case 5:37-cv-00128-ODW-KW Document 34 Filed 03/23/23 Page 8 of 276 Page ID #:188

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

A party may depose "any person, including a party, without leave of court." Fed. Rule Civ. Proc. Rule 30(1). When deposing an entity, the person designated "must testify about information known or reasonably available to the organization." Fed. Rule Civ. Proc. Rule 30(b)(6). A party may move for an order compelling discovery where a deponent fails to cooperate in discovery. Fed. Rule Civ. Proc. Rule 37.

In general, the Federal Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *Doe v. Successfulmatch.com,* No. 5:13-CV-03376 LHKHRL, 2014 WL 5775328, at *2 (N.D. Nov. 5, 2014) (citing Fed. Rule Civ. Proc. Rule 1 in an order finding "it will be less costly and disruptive" to compel depositions to California than have them in China where the defendant's representative resides.). Plaintiff has a fundamental right to take the depositions of the four key witnesses it has identified. Accordingly, Plaintiff respectfully requests this Court compel FSL's witnesses' depositions.

## A.     IT IS PROPER TO COMPEL PARTY DEPOSITIONS IN THE FORUM DISTRICT.

This Court – having been briefed on the circumstances at issue in this case at a prior IDC relating to both COVID-19 restrictions and the permissions required from Hong Kong's government – **has already noted that the depositions at issue can and should take place in the forum district in California.** (See **Exhibit D**, [Dkt. 30] IDC Minute Order dated March 23, 2022.) Further, FSL indicated to the Court and to Bella+Canvas's counsel for months prior to this motion that it would cooperate and was willing to have its witnesses deposed in the forum district. FSL has also never disputed the law on this issue, sought a protective order, or provided any of its own authorities to rebut Plaintiff's argument. Nevertheless, Plaintiff reiterates the well-settled law supporting this decision herein.

The Federal Rules of Civil Procedure do not dictate the location of party depositions. In fact, Rule 30 allows the noticing party to "unilaterally" select the location

9

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

as long as proper notice is provided. *Fed. Rule Civ. Proc.* Rule 30(b)(1); *Cadent Ltd. v. 3M Unitek Corp.* (C.D. Cal. 2005) 232 F.R.D. 625, 628. There is no "absolute rule" that parties be deposed at the company's principal place of business. *Doe v. Successfulmatch.com, supra,* 2014 WL 5775328, at *1. Indeed, any apparent presumption is "merely a decision rules that facilitates determination when other relevant factors do not favor one side over the other." *Id.* Once a location is set by the noticing party, the burden is on the party to be deposed to obtain an order of protection "designating a different place." *Cadent* at 628. FSL has not done that here, as it is aware this situation does not merit protection given the Court's previous comments and the applicable case law. Further, only in its most recent email (and not during any meet-and-confer conferences), did FSL raise cost concerns as the reason its witnesses refuse to appear for deposition. (See **Exhibit E**, Email from FSL counsel C. Cicala dated May 10, 2022.) Nevertheless, the question is "not whether there is ***any*** cost to travel to appear for a deposition... but whether the burden of the cost is undue." *Pruco Life Insurance Company v. California Energy Development Inc.* (S.D. Cal. 2021) 2021 WL 5043289, at *3. (Emphasis in original.) Given the relevant factors outlined below, there is no undue burden here.

1. Each of the *Cadent* Factors Weigh in Favor of an Order Compelling FSL's Witnesses to California.

A multi-factor test applies in assessing whether a deposition should be compelled to the forum district. *See Cadent, supra,* 232 F.R.D. at 629. These factors, which weigh in favor of the forum district, include: the location of counsel in the forum district; the number of corporate representatives to be deposed; likelihood of significant discovery disputes arising which would necessitate resolution by the forum court; whether the persons sought to be deposed engage in travel for business purposes; and the equities with regard to the nature of the claim and the parties' relationship. *Id.* Indeed, "corporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum where the action is pending, for the convenience of all

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

parties and in the general interests of judicial economy." *Reno Contracting, Inc. v. Philadelphia Indemnity Insurance Company* (S.D. Cal., Dec. 14, 2017, No. 17-CV-0306-MDD) 2017 WL 6389824, at *1.

Some courts have also added a sixth factor to consider – whether there is a counterclaim – as it is evidence the defendant/cross-claimant has further availed itself to that location. *Pruco Life Insurance Company, supra,* 2021 WL 5043289, at *4. (Compelling a "key witness" to travel for deposition to the forum district where, as one factor considered, he "brought affirmative cross-claims for relief.") *see also Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994) (Finding the District Court did not abuse its discretion in ordering plaintiff's depositions in San Francisco even though it would require travel from Hong Kong, because the party "should...expect to have to appear" where it filed suit.).

Here, nearly every factor under *Cadent* weighs in favor of compelling FSL's witnesses to the forum district:

- Counsel for **both** parties is located in Los Angeles[1];
- FSL has indicated that the topics identified in the 30(b)(6) Deposition Notice would require testimony from only **one** corporate representative (Chapman Yuen) and Bella+Canvas seeks only three additional depositions;
- Given the numerous discovery disputes that have already taken place in this case, while Bella+Canvas hopes to limit further Court intervention, there is a near-certainty that future disputes, including those at deposition, would necessitate resolution by the forum court;
- FSL and its employee witnesses have availed themselves of travel to the forum district by doing business in Los Angeles, California and by filing a crossclaim;

Case 2:24-cv-00128-ODW-AAM   Document 96   Filed 06/13/25   Page 11 of 276   Page ID #:183

---

[1] While both Bella+Canvas and FSL have counsel located in Los Angeles where the case was filed, Bella+Canvas has agreed to take the depositions in the Bay Area, if that is more convenient to the witnesses.

11

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

- As set forth below, Hong Kong's laws and procedures have already and will continue to impede the taking of the depositions indefinitely, as the request process may take several months and up to a year, and current COVID restrictions prohibit travel by non-citizens (including the parties' counsel) into the country

Thus, justice requires an order from the Court compelling FSL's witnesses to be deposed in Los Angeles. Alternatively, as Bella+Canvas has previously offered upon FSL's request, it would stipulate to depositions in Northern California at the Thoits Law offices in Los Altos.

> 2. Both China and Hong Kong's Current Laws and Procedures Impose Insurmountable Obstacles to This Necessary Discovery if Bella+Canvas Were to Attempt to Take the Depositions There.

Courts may also consider additional factors specific to the circumstances, including whether, as is the case here, the foreign nation's procedures for taking a deposition would impede it. *See In re Vitamin Antitrust Litig.*, 2001 WL 35814436, at *4, 11 (D.D.C. 2001), citing *Dean Foods Co. v. Eastman Chem. Co.,* No. C 00–4379 WHO (JL), slip op. at 9 (N.D. Cal. 2001).

As a primary issue, the parties are in agreement that depositions in mainland China are strictly prohibited and could result in criminal penalties and arrest. (See **Exhibit F**, United States Bureau of Consular Affairs, China Judicial Assistance Information webpage.) As a result, it is common for Chinese citizens to travel to other countries, including Hong Kong for depositions.

It has been very difficult for Bella+Canvas to determine what laws and procedures apply in Hong Kong, as it relied on FSL's counsel to report those details for months given that the firm has a Hong Kong office and previously offered to seek and provide guidance on this issue. As set forth below and in the attached declaration of Bella+Canvas' counsel, having ultimately learned little from FSL's counsel (or their Hong Kong

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

colleagues) as to the process, Bella+Canvas investigated all available resources to come to the conclusion that permission from the Hong Kong Competent Authority is required, and such approval could take approximately six to nine months, and up to a year or longer. Unfortunately, there are no guarantees of a timeline for the process.

When depositions were first raised in the Rule 26 conference, FSL's counsel indicated he would explore the deposition process in Hong Kong, given that he has colleagues there. However, FSL's counsel initially inaccurately reported that no authorization from the authorities in Hong Kong would be required. FSL later agreed in February 2022 with Bella+Canvas' findings that approval from the Hong Kong Competent Authority must first be secured *if the witnesses are citizens of mainland China* (i.e., the People's Republic of China). (See **Exhibit G**, Email from FSL counsel G. Kennedy dated February 9, 2022.) Bella+Canvas' further research indicated that the procedure to obtain permission from the Competent Authority could it take up to 6-9 months, if not longer, and there would also be no notice available as to the status.[2] (Exhibit B, Zonne Decl., ¶ 4.)Thus, such request would effectively stay the case indefinitely.

Finally, restrictions related to the COVID-19 pandemic add further difficulties to taking depositions in Hong Kong. Currently, non-Hong Kong residents traveling from outside Greater China are **prohibited** from entering Hong Kong. (See **Exhibit H,** United States Bureau of Consular Affairs, Hong Kong Travel Advisory.)  This has been the case since at least February 2022 when FSL first agreed it was open to traveling to Los Angeles for the depositions.

For citizens returning to Hong Kong, there is a 7-day quarantine requirement upon return, followed by self-monitored quarantine for an additional 7 days.  (See **Exhibit I**, Government of Hong Kong Special Administrative Region, Inbound Travel, "All places outside China".)

---

[2] It is Plaintiff's understanding that permission from the Competent Authority is also necessary for virtual depositions.

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

Case 2:21-cv-09556-GW-AFM Document 34 Filed 06/13/22 Page 14 of 276 Page ID #:486

FSL informed Bella+Canvas of this relaxed restriction (down from 14 days) in April 2022, acknowledging that FSL's witnesses would now be less burdened by travel to the United States, making California-based depositions even more reasonable. (Exhibit B Zonne Decl., ¶ 10.) Indeed, non-U.S. citizens traveling to the United States are only required to be fully vaccinated with the primary series of the COVID vaccine and to show a negative test result prior to the flight. (See **Exhibit J**, CDC, COVID-19 Travel fact sheet.) Given these realities, is indisputable there is a lesser burden for the FSL witnesses to travel to California for deposition.

### 3. No Further Delay to this Litigation Should Be Permitted.

Given the circumstances, Bella+Canvas noticed the depositions in Los Angeles. Since then, FSL has engaged in gamesmanship and delay tactics. (Exhibit B, Zonne Decl., ¶¶ 9-10; Exhibit C.) As set forth in more detail in counsel's declaration, FSL indicated on several occasions that its witnesses were willing to travel to California for depositions, and discussions between counsel had gone so far as to agree upon a **specific two-week period** in June 2022 when both parties' depositions would take place, beginning with FSL's depositions in California. (Exhibit B, Zonne Decl., ¶ 10.)

Despite FSL's repeated assurances that its witnesses were willing and planning to traveling to Los Angeles for June 2022 depositions, FSL has now suddenly informed Bella+Canvas, for the first time, that it will only offer one witness, only in San Francisco at FSL's own offices, and only if Bella+Canvas stipulates it will not compel the depositions of any other witness for FSL. (Exhibit E.) FSL's demand shows no recognition of Judge Audero's comments at the IDC, no understanding of its discovery obligations or Bella+Canvas rights to obtain testimony before trial, and is indicative of its bad faith approach to this dispute for the past six months. Having made every effort to pursue various avenues and offer creative compromises, Bella+Canvas now must involve the Court for an order compelling FSL to appear for depositions.

### IV. DEFENDANT'S RESPONSE.

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

Plaintiff is seeking to compel the depositions of its corporate designee, and individual non-party employee witnesses in California. One of the deponents sought, Schuman Jiang, is no longer an employee of the Defendant and thus cannot be compelled to testify.

Initially, and perhaps most importantly, there is a strong presumption in federal law that depositions shall take place at the corporation's principal place of business, or where the witness works or resides. And only exceptional circumstances will overcome this presumption. Circumstances that are not present here.

Plaintiff asserts that the presumption of holding depositions at the corporation's principal place of business is overcome because it cannot hold depositions in Hong Kong as it must first obtain the permission from the Hong Kong Competent Authority in order to do so, a process that according to Plaintiff can take anywhere from six to nine months. Plaintiff has known of this requirement for over eight months, yet has continuously refused to seek the necessary permissions, even as a fallback plan.

Additionally, because the non-party witnesses are neither officers, directors, nor managing agents of FSL, they cannot be compelled to give testimony pursuant to a notice of deposition. Further, because they are located in a foreign country, Plaintiff must utilize the Hague Convention to secure their attendance at a deposition in the United States. FSL, however, has previously provided that it is willing to produce these non-party witnesses in Hong Kong upon notice and continues to offer this compromise. However, should Plaintiff continue to insist on bringing them to the United States for their deposition, Plaintiff must comply with international convention in order to do so.

Defendant has tried to seek compromises with Plaintiff, the most recent of which was agreeing to have Defendant's corporate designee Chapman Yuen travel to San Francisco on June 28, 2022, the single person who was involved with the entire contract from beginning to end, with the agreement that Plaintiff would not seek to compel the additional three witnesses and instead take their depositions virtually. (See Exhibit K,

15

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

1 Kennedy Decl. ¶ 23.) Plaintiff refused to make such a compromise, however, and instead

2 has maintained its all or nothing approach which has led us here.

3     A.   Depositions Should Presumptively Take Place in the Corporation's Principal

4         Place of Business or Where the Witness Works or Resides

5      It is uncontroverted that the depositions of a defendant corporation and its agents

6 should presumptively take place in the corporation's principal place of business or where

7 the witness works or resides. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.

8 1979); *Shinde v. Nithyananda Found.*, No. EDCV13363JGBSPX, 2015 WL 12778434

9 (C.D. Cal. May 21, 2015). "Because the plaintiff is the one who brings the lawsuit and

10 exercises the first choice of forum, courts have held that plaintiffs normally cannot

11 complain if they are required to take discovery at great distances from the forum." *Shinde,*

12 *supra*, 2015 WL 12778434, at *2 (*citing United States v. $160,066.98 from Bank of*

13 *America*, 202 F.R.D. 624, 627 (S.D. Cal. 2001).)

14      Here, the Plaintiff brought this lawsuit against the Defendant, a corporation located

15 in Hong Kong, with full knowledge that the Defendant and all of the witnesses were

16 located in Hong Kong. Yet now, Plaintiff is seeking to completely circumvent this

17 presumption by trying to force Defendant's witnesses to travel across the world during a

18 worldwide health pandemic by arguing that it is too difficult and dangerous for counsel to

19 travel to Hong Kong because of the restrictions imposed by the pandemic.

20      While there are exceptions to this presumption, courts are clear that these

21 exceptions apply only in the case of "exceptional circumstances." *Shinde*, 2015 WL

22 12778434, at *2. "In determining whether a plaintiff has demonstrated exceptional

23 circumstances, courts look to cost, convenience, and litigation efficiency." *Id.* (*citing Six*

24 *West Retail Acquisition v. Sony Theater Management Corp.*, 203 F.R.D. 98, 107 (S.D.

25 N.Y. 2001). Additionally, the court in *Cadent v. 3M Unitek*, identified several other

26 factors that a court can consider in determining whether the presumption has been

27 rebutted. 232 F.R.D. 625 (C.D. Cal. 2005). These include: (1) location of counsel in the

28

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

Case 5:21-cv-00513-ODW-MAA Document 35 Filed 08/23/21 Page 16 of 810 Page ID #:198

16

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO**
**COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

Case 5:21-cv-00528-EJD-VKD   Document 46-1   Filed 08/25/22   Page 15 of 240   Page ID #:196

1  forum district; (2) number of corporate representatives to be deposed; (3) likelihood of

2  significant discovery disputes arising that would necessitate resolution by forum court; (4)

3  whether persons sought to be deposed often engage in travel for business purposes; and

4  (5) the equities with regard to the nature of the claim and the parties' relationship. *Id*.

5      Here, applying all of these factors and considerations, it is clear that this

6  presumption has not been overcome. Initially, and as noted by the court in *Shinde*, where

7  the Defendant is a foreign corporation, "neither cost nor convenience are factors that

8  constitute an exceptional circumstance in plaintiffs' favor." 2015 WL 12778434, at *2.

9  This is because, unless the depositions are by video, which is an option here that has been

10  offered and continues to be offered, someone will have to bear the cost of travel. Either

11  attorneys will have to travel to Hong Kong, or the Defendants corporate designee (and

12  possibly the additional non-party witnesses), will have to travel to California. Each of

13  these witnesses, however, have stated how such travel would be economically burdensome

14  to them. (See Exhibit L, Yuen Decl. ¶ 4; Exhibit M, Declaration of Tony Kong ("Kong

15  Decl.) ¶ 3; Exhibit N, Declaration of Jennifer Chu ("Chu Decl.") ¶ 4.)

16      Specifically, Hong Kong is still enforcing a zero tolerance approach to COVID-19.

17  As a result, Hong Kong will suspend flights on a specific route for one week should three

18  or more passengers test positive for COVID-19 upon arrival to Hong Kong, or if one

19  passenger tests positive and another fails to comply with Hong Kong testing requirements.

20  (See Exhibit M, Hong Kong to Relax Airline-Specific Flight Suspension Mechanism).

21  Therefore, by example, should any flight from San Francisco to Hong Kong carry three

22  passengers who test positive for COVID-19 upon arrival, or one passenger tests positive

23  and one did not comply with Hong Kong testing requirements, all flights on that route

24  would be banned from entering Hong Kong for seven days. This regulation alone has been

25  reported to have a significant impact on travel both to and from Hong Kong, with

26  significant economic and personal impacts. (See Exhibit S, Business Group Warns Hong

27  Kong Travel Curbs a 'Nightmare'.) It further serves to increase the uncertainty regarding

28

17

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO
COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

1    whether a deposition ordered in California will in fact take place.

2         Should such a suspension take place prior to traveling to San Francisco, it would

3    result in a significant increase in expenses by requiring the traveler to find another route to

4    the deposition location, the cost of purchasing the additional flights, and depending on the

5    availability of flights, it may require a complete rescheduling of the deposition and all

6    related fees. Should the flight suspension take place while the deponent is already in San

7    Francisco, it would require finding new flights from alternate locations into Hong Kong

8    and purchasing those additional tickets, depending on when flights are available it also

9    could result in additional hotel fees in California, re-booking of quarantine hotel rooms,

10   and additional unknown and unanticipated expenses. (See Exhibit L, Yuen Decl. ¶¶ 5-6;

11   Exhibit M, Kong Decl. ¶¶ 4-5; Exhibit N, Chu Decl. ¶¶ 5-6.) It must be noted that this is

12   not a policy that is infrequently implemented, but rather has been described by the

13   European Chamber of Commerce as a "nightmare," with almost daily flight cancellations

14   and a frequent inability for travelers to return to Hong Kong. (See Exhibit S, Business

15   Group Warns Hong Kong Travel Curbs A 'Nightmare'.)

16        Additionally, in order to re-enter Hong Kong after traveling to California, each

17   deponent would be required to quarantine for a minimum of 7 days in a designated

18   quarantine hotel. (See Exhibit K, COVID-19 Information – U.S. Consulate General Hong

19   Kong & Macau.) This quarantine requirement is both costly to the individual and will

20   result in a significant personal and professional hardship. For example, Tony Kong,

21   Chapman Yuen, and Jennifer Chu are all required to be physically present in Defendant's

22   offices as much as possible. Traveling for a week overseas, quarantining for at least a

23   week in a designated quarantine hotel, then self-quarantining at home for another week,

24   results in over three weeks being away from the office. (See Exhibit L, Yuen Decl. ¶ 9;

25   Exhibit M, Kong Decl. ¶ 8; Exhibit N, Chu Decl. ¶ 9.) Such an absence cannot be

26   described as brief or inconsequential. *See Tomingas v. Douglas Aircraft Co.,* 45 F.R.D.

27   94, 97 (S.D.N.Y. 1968) (declining to vacate notice of deposition where "there has been

28

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO
COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

1    no showing that any harm would result to defendant's business by virtue of the deponents'

2    brief absence from their jobs.").

3        While it would undoubtedly also be a burden on counsel to travel to Hong Kong,

4    "the convenience of counsel is less compelling than any hardship to the witnesses." *Six*

5    *West Retail Acquisitio.*, 203 F.R.D. at 108 (internal citation omitted).

6        In regards to litigation efficacy, there is a history of discovery disputes, which is

7    indicative of further disputes arising during the deposition. However, this single element is

8    not sufficient to sway the presumption in Plaintiff's favor.

9        The result is no different using the *Cadent* factors. Specifically, and contrary to

10   Plaintiff's assertions, Defendant's counsel is not located in the forum, but rather is located

11   in San Francisco. Plaintiff seeks to depose a single corporate representative, and three

12   non-party witnesses, none of whom are officers, directors, or managing agents of

13   Defendant, and all of whom are now fearful of traveling here due to the ongoing

14   pandemic. (See Exhibit L, Yuen Decl. ¶ 10.)

15       Notably, many of the restrictions and quarantine requirements that Plaintiff is

16   arguing are too burdensome for Plaintiff to endure in traveling to Hong Kong are the same

17   as those Defendant's witnesses must endure. However, being residents of Hong Kong adds

18   another element of uncertainty and fear on whether they will be allowed to return to their

19   country. For example, recently Hong Kong prohibited flights from nine countries from

20   entering Hong Kong, which included flights from the United States. (See Exhibit P, Flight

21   Ban Rules Streamlined.) In discussing lifting the flight ban, the Hong Kong government

22   noted less than two months ago, "Having considered the latest epidemic situation and the

23   difficulties caused to Hong Kong residents stranded in nine countries for almost three

24   months now, the Government considers it timely and necessary, having considered the

25   situation, to lift the ban in respect of these nine countries." (Exhibit P, Flight Ban Rules

26   Streamlined.) These are not prohibitions that were only imposed during the height of the

27   pandemic, but real and recent prohibitions that left Hong Kong residents stranded in other

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

Case 5:21-cv-00326-EGW-WCW Document W Filed 08/11/55 Page 8 of 328 Page ID #:787

28

19

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

countries for months. As a result, the witnesses here have a real and justified fear that by travelling to the United States for these depositions, they are risking being unable to return home to their country, their families, their jobs, and their lives. (See Exhibit L, Yuen Decl. ¶ 10.) It is imperative that we keep the focus on the fact that we are not discussing a mere inconvenience to people travelling during pre-pandemic times, but are asking these people to risk their health, and their personal and professional wellbeing to travel across the world during a global health pandemic to be deposed, when there are other mechanisms in place that allow them to be deposed virtually. Plaintiff chose to file suit against a foreign corporation, and cannot now (as discussed in greater detail below) deliberately refuse to seek permission to take the depositions where Defendant is located.

B. The Individuals are Not Parties to This Litigation and Thus Cannot Be Compelled to Attend Depositions in California

Additionally, Tony Kong, Jennifer Chu, and Chapman Yuen in his capacity as an individual, are not parties to this litigation and thus cannot be compelled to attend depositions in California.

"Only a party to litigation may be compelled to give testimony pursuant to a notice of deposition; non-party witnesses must be subpoenaed." *Elasticsearch, Inc. v. GmbH*, No. 19-CV-05553-YGR(AGT), 2021 WL 1753796, at *1 (N.D. Cal. May 4, 2021). Pursuant to Federal Rule of Civ. Proc. Rule 30(b)(1), if the party is a corporation, "the notice compels it to produce any 'officer, director or managing agent' named in the deposition notice." *Id*. This rule only means that a witness in that role can be served on notice rather than through "the procedures of the Hague Convention or other applicable treaty" to secure their attendance. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420-YGR (DMR), 2015 WL 5440789, at *5 (N.D. Cal. Sept. 15, 2015). It does not change the presumption that their depositions should proceed at their principal place of business i.e., Hong Kong.

Here, Plaintiff has not shown that any of the individuals is an officer, director or

Case 5:21-cv-00580-BLF Document 86 Filed 08/23/21 Page 20 of 53 Page ID #:783

20

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

Case 5:21-cv-00598-JWH-WNG Document 96 Filed 06/21/22 Page 21 of 52 Page ID #:789

1 managing agent, and as such cannot merely compel them to testify through a notice of

2 deposition. Rather, all three must be subpoenaed, and because they are located in Hong

3 Kong, must comply with the procedures of the Hague Convention in doing so.

4 Nonetheless, FSL is willing to produce each of these individuals in Hong Kong on

5 notice, but is not willing to do so for depositions in the United States. Since B+C has not

6 sought any depositions through the Hague Convention, it has no right to compel any

7 depositions of individuals (save those who it can prove may be served via notice to the

8 corporate employer).

9 Ultimately, FSL is willing to produce these individual witnesses in Hong Kong as

10 soon as the necessary permissions are obtained from the Hong Kong Competent Authority,

11 which is discussed in greater detail below. Defendant is not, however, willing to waive the

12 Plaintiff's requirement to obtain the necessary permissions from the Hague Convention to

13 take their depositions in any location outside of Hong Kong.

C. <u>Plaintiff Has Refused to Seek Permission from the Hong Kong Competent</u>
14
<u>Authority to Take the Depositions in Hong Kong Which Disqualifies Any</u>
15
<u>Argument of Prejudice</u>
16

17 The Plaintiff has been aware since at least September 2021 that permission from the

18 Hong Kong Competent Authority is required prior to conducting depositions in Hong

19 Kong. (See Exhibit K, Kennedy Decl. ¶ 5.) Defendant's counsel consistently attempted to

20 assist Plaintiff's counsel in obtaining the necessary information to request such permission.

21 This included reaching out to their Hong Kong office on multiple occasions, sending links

22 to information sources, and even sending direct contact information to the Competent

23 Authority. (See Exhibit K, Kennedy Decl. ¶¶ 5-7.) But, instead of contacting the

24 Competent Authority and seeking its permission at that time, Plaintiff is now arguing that

25 because the process could take approximately six to nine months, and therefore in all

26 likelihood would have been completed by now over eight months later, the process is too

27 time consuming and burdensome.

28

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

21

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO
COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

1    Instead, Plaintiff now argues that three people should travel across the world from

2  Hong Kong to the United States during a global pandemic to respond to a lawsuit that they

3  did not file. Even further, Plaintiff erroneously asserts that COVID restrictions prohibit

4  travel by non-residents into Hong Kong. This is no longer true. Effective May 1, 2022,

5  non-Hong Kong residents are permitted to enter Hong Kong and are subject to the same

6  quarantine requirements as Hong Kong residents. (See Exhibit M, COVID-9 Information

7  – U.S. Consulate General Hong Kong & Macau.) While there is a travel advisory against

8  traveling to Hong Kong, the advisory specifically provides, "Do not travel to the PRC's

9  Hong Kong Special Administrative Region (SAR)... due to COVID-19-related restrictions,

10  including the risk of parents and children being separated. Reconsider travel to the PRC's

11  Hong Kong SAR due to arbitrary enforcement of local laws. [...] The zero-tolerance

12  approach to COVID-19 by the PRC and Hong Kong governments severely impacts travel

13  and access to public services. ... Travelers who test positive during this quarantine time

14  will be transferred to a government-designated medical or quarantine facility." (See

15  Exhibit H, United States Bureau of Consular Affairs, Hong Kong Travel Advisory.)  The

16  risk of testing positive and being transferred to a government-designated medical or

17  quarantine facility is just as much of a risk to travelers traveling to Hong Kong, as those

18  returning to Hong Kong after having been in the United States. Ultimately, and as

19  discussed above, by asking that these individuals be compelled to travel across the world

20  during a global health pandemic, Plaintiff is asking to put their health, their family's

21  health, and their personal and professional wellbeing at risk due to their complete refusal

22  to seek the necessary permission to take the depositions In Hong Kong, remotely or

23  otherwise.

24    D.    Plaintiff's Position that Defendant's Depositions Must Take Place First Based on

25         When an Email Was Sent is Untenable

26    Adding to the gamesmanship and abuse is the fact that Plaintiff has refused to

27  produce its own witnesses for deposition, alleging "priority" based on the fact that it sent

28

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO
COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

Case 5:21-cv-00128-ODW-AGR Document 33 Filed 03/23/22 Page 33 of 41 Page ID #:748

1 an email requesting available dates before FSL did. (See Exhibit K, Kennedy Decl. ¶ 15.)

2 But, of course, there is no rule of deposition priority in federal court. Thus, the fact that

3 one party has already noticed or indicated an intent to notice a deposition does not prevent

4 another party from noticing another deposition before that one. [FRCP 26(d)(2); *United*

5 *States v. Bartesch* 110 FRD 128, 129 (N.D. IL 1986). While FSL was, for a time, willing

6 to postpone depositions while the parties negotiated a compromise solution, since it is

7 clear no compromise is forthcoming, it must proceed with its depositions. Thus, FSL

8 respectfully requests that the Court order the depositions of Jessica Roberti, Daisy

9 Almalel, Dhinakaram Rajaram, Aaron Jackson, and Marco DeGeorge which were

10 originally noticed for March 7, 8, 9 and 10, 2022. (See Exhibit K, Kennedy Decl. ¶ 14.)

11     E.    <u>Should Plaintiff Fail To Accept the Compromise Solution Offered by FSL, The</u>

12          <u>Court Should Deny Plaintiff's Motion And Require Plaintiff to Proceed With</u>

13          <u>Depositions in Hong Kong</u>

14        Until the hearing on this motion, FSL remains willing to proceed with its

15 compromise proposal to bring Chapman Yuen, as an individual witness and corporate

16 designee, to San Francisco for deposition. If this matter comes to hearing or is decided on

17 the papers, FSL respectfully requests that the Court deny Plaintiff's motion and order that

18 depositions must proceed, if at all, in Hong Kong, and that it is up to Plaintiff to seek

19 appropriate permissions in relation to same. FSL further requests that Plaintiff produce its

20 witnesses forthwith.

21 **V.    PLAINTIFF'S CONCLUSION**

22       Based on the foregoing, Bella + Canvas respectfully requests that the Court issue an

23 order compelling the depositions of Chapman Yuen, Tony Kong, Schuman Jiang and

24 Jennifer Chu in California, in California on the previously agreed-upon dates of in June

25 2022 or dates selected by the Court.

26 **VI.    DEFENDANT'S CONCLUSION.**

27       Based on the foregoing, Fountain Set Limited respectfully requests that the Court

28

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO
COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

1  deny Plaintiff's motion and order that depositions must proceed, if at all, in Hong Kong,

2  and that it is up to Plaintiff to seek appropriate permissions in relation to same. Fountain

3  Set Limited further requests that the Court order Plaintiff to produce its witnesses

4  forthwith.

5  Dated:  May 25, 2022

6                                                                    **THOITS LAW**

7                                    By:         _/s/ Melissa K. Zonne_

8                                              **Andrew P. Holland**
                                              **Nathaniel H. Lipanovich**
9                                             **Cynthia C. Mullen**
                                              **Melissa K. Zonne**
10                                            **Attorneys for Plaintiff and Counter-**
                                              **defendant**
11                                            **Bella+Canvas, LLC**

12

13  Dated:  May 25, 2022                      **CLYDE & CO LLP**

14

15                                    By:  _____

16                                              **Conte C. Cicala**
                                              **Attorneys for Defendant**
17                                            **Fountain Set Limited**

18

19

20

21

22

23

24

25

26

27

28

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO**
**COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

# ATTESTATION OF FILER

Pursuant to Local Rule 5-4.3.4, the undersigned filer hereby attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: May 25, 2022                                    Respectfully Submitted,


                                                       /s/ Melissa K. Zonne
                                      _____

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

**JOINT STIPULATION PURSUANT TO L.R. 37 RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT FOUNTAIN SET LIMITED'S WITNESSES**

# Exhibit A

1   CONTE C. CICALA, State Bar No. 173554
    conte.cicala@clydeco.us
2   CLYDE & CO US LLP
    Four Embarcadero Center, Suite 1350
3   San Francisco, California 94111
    Telephone: (415) 365-9800
4   Facsimile:  (415) 365-9801

5   Attorneys for Defendant
    FOUNTAIN SET LIMITED

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  BELLA + CANVAS, LLC,                  Case No.  2:21-cv-00758-ODW-MAA

12            Plaintiff,                  **INITIAL DISCLOSURES OF
                                          DEFENDANT FOUNTAIN SET
13       v.                               LIMITED**
                                          **[Fed. R. Civ. P. 26(a)(1)]**
14  FOUNTAIN SET LIMITED, a foreign
    business entity; and DOES 1 through
15  20, inclusive,

16            Defendants.

17

18       Defendant FOUNTAIN SET LIMITED ("FSL"), by and through its counsel of

19  record, Clyde & Co US LLP, hereby submits this initial disclosure under Federal Rule

20  of Civil Procedure 26(a)(1).

21       FSL makes this disclosure based on relevant, non-privileged information

22  reasonably available at this time, and is made without waiver of any privileges and/or

23  protections provided by law, including without limitation, the attorney-client

24  privilege and the protections provided by the work-product doctrine.  FSL reserves

25  the right to amend, modify, and/or supplement the information contained here as

26  discovery proceeds, as additional information is learned, as materials are located

27  and/or become available, and/or as the significance of other persons or documents

28  becomes evidence.

6104536                                        Case No. 2:21-cv-00758-ODW-MAA
          INITIAL DISCLOSURES OF DEFENDANT FOUNTAIN SET LIMITED

## I.  WITNESSES – Rule 26(a)(1)(A)(i)

The following individuals are likely to have discoverable information, other than solely for impeachment, that FSL may use to support its defenses and pursue its counterclaim:

**FSL-affiliated witnesses**

1.     Chapman Yuen – B+C's credit application, terms and conditions, correspondence regarding the transaction and quality/testing issues, and calculation of damages;

2.     Tony Kong – Attempts to resolve issues after they were raised by B+C.

**B+C-affiliated witnesses**

3.     Jessica Roberti – Transaction, correspondence; alleged quality issues.

4.     Daisy Almalel – B+C – The sale/purchase transaction, credit application and other documentation of transaction, correspondence regarding purchase, testing of fabric;

5.     Aaron Jackson – Materials Director  – Testing and conformity of goods

6.     Dhinakaram Rajaram – B+C material director in India;

7.     Marco DeGeorge – CEO – Discussions regarding testing and attempts to reach resolution prior to litigation.

**Third Parties**

8.     Unknown persons at SGS involved in determining testing parameters and in conducting testing, and related correspondence.

## II. DOCUMENTS – Rule 26(a)(1)(A)(ii)

All documents produced with or following these disclosures;

All correspondence between FSL and B+C in relation to this transaction;

All internal correspondence at both companies regarding the same;

All correspondence between and among B+C, SGS and/or any third parties in relation to testing of fabric;

Discovery, investigation and analysis are continuing.

All documents produced herewith and/or in response to B+C pending request for production.

FSL reserves the right to redact documents within its possession, custody, or control for attorney-client privilege, work-product protection, and/or trade secret and reserves the right to supplement these initial disclosures as discovery proceeds.

## III. DAMAGES - Rule 26(a)(1)(A)(iii)

The basic claim is for amounts due for fabric which has not been paid in full. The total purchase price for the fabric at issue is as follows:

- CVC BRUSHED LOOP TERRY: 388,969.65 LBs (USD 1,143,570.77)

- CVC JERSEY: 35,904 LBs (USD 92,273.28)

- TRIM: CVC RIB: 16,611.75 LBs (USD 45,017.84)

After subtracting B+C's deposit, the amount that remains outstanding is $646,526.69 together with interest at 5% per annum from August 2020 Storage costs are accruing at RMB54,000 per month (appr. 8,357.71 per month).

FSL incurred additional testing costs of HKD 22,519, and reserves the right to recover additional carrying and incidental costs according to proof. Discovery, investigation and analysis are continuing.

## IV. INSURANCE – Rule 26(a)(1)(A)(iv)

None/not applicable.

Dated:  September 20, 2021                    CLYDE & CO LLP


By: _____
     Conte C. Cicala
     Attorneys for Defendant
     FOUNTAIN SET LIMITED

**PROOF OF SERVICE**
(*Bella+Canvas LLC v. Fountain Set Limited, et al.*,
**USDC, Central District of California Case No. 2:21-cv-00758-ODW-MAA)**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, Suite 1350, San Francisco, CA 94111.

On September 20, 2021, I served true copies of the following document(s) described as **INITIAL DISCLOSURES OF DEFENDANT FOUNTAIN SET LIMITED and DOCUMENTS LABELED "FSL000001 – FSL0000412"** on the interested parties in this action as follows:

| | |
|---|---|
| Andrew P. Holland | Attorneys for Defendant |
| Nathaniel H. Lipanovich | BELLA+CANVAS, LLC |
| Harry J. Moren | Tel:   650.327.4200 |
| Cynthia C. Mullen | Fax:   650.325.5572 |
| THOITS LAW | Email: aholland@thoits.com |
| 400 Main Street, Suite 250 |          nlipanovich@thoits.com |
| Los Altos, CA 94022 |          hmoren@thoits.com |
| |          cmullen@thoits.com |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address sonja.gray@clydeco.us to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 20, 2021, at Sebastopol, California.

Sonja L. Gray

1  Andrew P. Holland/Bar No. 224737
2  Nathaniel H. Lipanovich/Bar No. 292283
   Cynthia C. Mullen/Bar No. 292256
3  THOITS LAW
   A Professional Corporation
   400 Main Street, Suite 250
4  Los Altos, California 94022
   Telephone: (650) 327-4200
5  Facsimile: (650) 325-5572

6  Attorneys for Plaintiff and
   Counter-defendant
7  Bella+Canvas, LLC

8  

9  

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELLA+CANVAS, LLC, | Case No. 2:21-cv-00758-ODW-MAA |
| Plaintiff, | **BELLA+CANVAS, LLC's INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)** |
| v. | |
| FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive, | |
| Defendants. | |
| FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive | |
| Counter-claimant, | |
| v. | |
| BELLA+CANVAS, LLC, | |
| Counter-defendant. | |

Plaintiff Bella+Canvas, LLC ("Plaintiff") submit these initial disclosures in accordance with Fed. R. Civ. P. 26(a)(1) based on the issues raised in the Amended Complaint and Amended Counterclaim and investigation to date. Plaintiff makes these disclosures based on its current knowledge, recognizing that its investigation is continuing and that discovery has recently commenced. No

1

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

1  party has provided discovery responses or produced documents.

2  By making these disclosures, Plaintiff does not represent that it is

3  identifying every document, tangible thing, or witness possibly relevant to the

4  action.  Further, Plaintiff submits these disclosures subject to the understanding

5  that it will not limit discovery in this action or the right to supplement or amend

6  these disclosures in the future.  Finally, Plaintiff does not waive its right to object

7  to the production of any particular document pertaining to the disclosures herein

8  on any basis, including, without limitation, attorney-client privilege, attorney

9  work-product doctrine, any other privilege, relevancy, materiality, undue burden,

10  hearsay or any other relevant objection to its discoverability or use as evidence.

11  **A.  Individuals with Discoverable Information**

12  The below individuals may have discoverable information under Rule

13  26(a)(1)(A)(i) that Plaintiff may use to support its claims or defenses, other than

14  solely for impeachment.  Plaintiff does not represent that it is disclosing herein

15  every witness possessing any such discoverable information:

| | Name | Address/Phone | Subject |
|---|---|---|---|
| 1. | Daisy Almalel | Contact through Plaintiff's counsel | Negotiations/ agreement with Fountain Set; Quality of fabric received; Differences between sample and bulk fabric; Testing performed on fabric and testing results |
| 2. | Jessica Roberti | Contact through Plaintiff's counsel | Negotiations/ agreement with Fountain Set |
| 3. | Ahnajiel Lacson | Contact through Plaintiff's counsel | Quality of fabric received; |

**BELLA+CANVAS, LLC'S INITIAL DISCLOSURES**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

| | | | Differences between sample and bulk fabric; Testing performed on fabric and testing results |
|---|---|---|---|
| 4. | Dhinakaran Rajaram | Contact through Plaintiff's counsel | Fabric construction and quality |
| 5. | Aaron Jackson | Contact through Plaintiff's counsel | Quality of fabric received; Differences between sample and bulk fabric; Testing performed on fabric and testing results |
| 6. | Yahaira Kolbeck | Contact through Plaintiff's counsel | B+C fabric testing requirements |
| 7. | Marco DeGeorge | Contact through Plaintiff's counsel | Differences between sample and bulk fabric; Testing performed on fabric and testing results |
| 8. | SGS Representative/ Prashanthi Alapati/ Carlos Juarez | SGS North America, Inc. Consumer and Retail 291 Fairfield Ave. Fairfield, NJ 07004 (973) 575-5252 | Quality of fabric received; Differences between sample and bulk fabric; Testing performed on fabric and testing results |
| 9. | Vartest Representative/ Joseph Lin/ Stacy Sadowy | Vartest Laboratories Quality Assurance & Compliance Testing Utilizing Textiles & Related Technologies 19 West 36th Street, 10th Floor New York, NY 10018 | Quality of fabric received; Differences between sample and bulk fabric; Testing performed on fabric and testing results |

3

| | | | |
|---|---|---|---|
| | | (212) 947-8391 | |
| 10. | Chapman Yuen | Fountain Set witness | Negotiations/agreement with B+C; Testing performed on fabric and testing results |
| 11. | Schuman J. Jiang | Fountain Set witness | Negotiations/agreement with B+C; Testing performed on fabric and testing results |
| 12. | Jennifer H.C. Chu | Fountain Set witness | Fabric samples |

**B.    Descriptions of Discoverable Documents and Things**

Plaintiff identifies the following categories of documents and tangible things in its possession, custody, or control that it may use to support its claim:

1.    Communications between Fountain Set and B+C setting terms of agreement;

2.    Communications discussing testing results of fabric by B+C, Fountain Set, and third parties;

3.    Documents related to fabric testing, including without limitation test results, invoices, and photographs and/or videos of fabric;

4.    Fabric at issue in this lawsuit; and

5.    Fabric purchase orders and invoices

**C.    Categories of Damages**

Discovery has just begun and no party has produced any document or provided any discovery responses.  Plaintiff thus reserves the right to supplement this disclosure.  At this time, Plaintiff seeks damages including refunds of payments made for the nine shipped loop terry containers ($534,687.37); refunds of 30% deposits paid on the 21 unshipped containers ($634,335.20); SGS and Vartest testing costs; costs associated with storing fabric from the nine shipped

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

4

1  loop terry containers; costs associated with employee manpower dealing with

2  fabric issues; lost profits associated with B+C's inability to make and sell masks

3  from the fabric; and prejudgment interest (at a rate of 10% per annum).

4  **D.  Insurance**

5  Plaintiff has not tendered an insurance claim related to this action and no

6  insurer is currently providing coverage.

7

8  Dated:  September 20, 2021.

9  **THOITS LAW**

10  By:  _____/s/ Cynthia C. Mullen_____

11  **Andrew P. Holland**
**Nathaniel H. Lipanovich**
12  **Cynthia C. Mullen**
**Attorneys for Plaintiff and**
13  **Counter-defendant**
**Bella+Canvas, LLC**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

**BELLA+CANVAS, LLC'S INITIAL DISCLOSURES**

# PROOF OF SERVICE

I, Brett Silveira, hereby declare:

I am over the age of eighteen years and not a party to the foregoing case.  I am employed in the County of Santa Clara, California.  My business address is Thoits Law, 400 Main Street, Suite 250, Los Altos, CA 94022.  On September 20, 2021, I caused to be served the below listed document(s) in the manner indicated:

➢ **BELLA+CANVAS, LLC's INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)**

☐ By transmitting said document(s) via electronic mail from the electronic mail account: bsilveira@thoits.com to each interested party at the electronic mail address(es) shown in the service list.  No message was received that the electronic mail was undeliverable.

☐ By placing said document(s) in a sealed envelope, and causing them to be hand delivered via messenger to the person(s) set forth below at the location indicated.

☒ By placing said document(s) in a sealed envelope, and causing said envelope to be deposited with the United States Mail at San Jose, California, addressed for delivery to the person(s) set forth below.

**Conte C Cicala**
Clyde and Co US LLP
101 Second Street 25th Floor
San Francisco, CA 94111

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed at San Jose, California on the date first herein above written.

**Brett Silveira**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

# Exhibit B

1   Andrew P. Holland/Bar No. 224737
    Nathaniel H. Lipanovich/Bar No. 292283
2   Cynthia C. Mullen/Bar No. 292256
    Melissa K. Zonne/Bar No. 301581
3   THOITS LAW
    A Professional Corporation
4   400 Main Street, Suite 250
    Los Altos, California 94022
5   Telephone: (650) 327-4200
    Facsimile: (650) 325-5572
6
    Attorneys for Plaintiff and
7   Counter-defendant
    Bella+Canvas, LLC
8

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  BELLA+CANVAS, LLC,                    Case No. 2:21-cv-00758-ODW-MAA

13              Plaintiff,                **DECLARATION OF MELISSA K.
                                          ZONNE IN SUPPORT OF
14      v.                                PLAINTIFF'S MOTION TO COMPEL
                                          DEPOSITIONS OF DEFENDANT
15  FOUNTAIN SET LIMITED, a foreign       FOUNTAIN SET LIMITED'S
    business entity; and DOES 1 through 20, WITNESSES**
16  inclusive,

17              Defendants.               Date: June ___, 2022
                                          Time: 10:00 a.m.
18  ─────────────────────────────────     Courtroom: 690
                                          Judge: Hon. Maria A. Audero
19  FOUNTAIN SET LIMITED, a foreign
    business entity; and DOES 1 through 20, Discovery Cut-off: September 19, 2022
20  inclusive                             Pretrial Conf.: December 28, 2022
                                          Trial Date: January 17, 2023
                Counter-claimant,
21
        v.
22
    BELLA+CANVAS, LLC,
23
                Counter-defendant.
24
─────────────────────────────────
25

26

27

28

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

33070.053/1590039v2                    1

**DECLARATION OF MELISSA K. ZONNE**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

**DECLARATION OF MELISSA K. ZONNE**

I, Melissa K. Zonne, declare:

1.      I am over eighteen years of age and am competent to testify about the matters set forth herein.

1.      I am an attorney at Thoits Law, counsel for Plaintiff Bella+Canvas, LLC ("Plaintiff") in this matter. I have personal knowledge of the following facts due to my direct personal involvement in them.

2.      Plaintiff Bella+Canvas seeks to depose FSL's four key witnesses involved in the transaction at issue in this litigation. I have been the primary attorney engaging in meet-and-confer efforts on this issue with counsel for FSL.

3.      The topic of depositions was first raised during the Rule 26 conference in August 2021, where counsel agreed that depositions in mainland China are strictly prohibited, and FSL's counsel, Conte Cicala, offered to investigate the possibility of holding the depositions in Hong Kong, as he has colleagues who practice there.

4.      FSL's counsel was not forthcoming with any information regarding the deposition process in Hong Kong. They did eventually assert they did not believe approval was necessary and simply provided a link to the same government web site Bella+Canvas had already reviewed. A true and correct copy of this email is attached hereto as Exhibit 1. Ultimately, this conclusion proved to be inaccurate as counsel now agrees that permission from the Hong Kong Competent Authority is required. I conducted additional research regarding the process and potential timeline by which permission would be granted by the Competent Authority. I called multiple numbers listed for the Competent Authority's office, but only was able to reach one person, and was told no estimated timeline could be provided. I also spoke to two of my colleagues at Thoits Law who have taken depositions in Hong Kong. They indicated that the parties should plan for the case to be delayed a year if they proceeded with the process, and that in their experience, they did not receive any indication as to the status of the request until approval was granted.

5.      On January 13, 2022, my office reached out to schedule a meet-and-confer

1   conference in order to move forward with depositions of FSL's witnesses. A true and

2   correct copy of this email is attached hereto as Exhibit 2. After follow-up from my office,

3   counsel for the parties had a teleconference on January 21, 2022 where the parties agreed

4   upon an April 2022 time frame for depositions. During that meeting, Mr. Cicala

5   represented he would want to travel to the deposition location to attend in-person to

6   prepare and defend his clients. He has never rescinded this requirement.

7       6.     Though FSL's counsel ultimately agreed with my office's analysis that

8   approval from the Hong Kong Competent Authority must first be secured if the witnesses

9   are citizen of mainland China (People's Republic of China), they have refused, to date, to

10  share the citizenship of the witnesses identified by B+C for deposition, despite numerous

11  requests for this information.

12      7.     On February 14, 2022, I wrote to counsel to inform them Bella+Canvas

13  would be noticing the depositions in Los Angeles and provided the legal support for this

14  decision. I also provided the current status of Hong Kong's COVID restrictions, which

15  continue to strictly prohibit travel from most countries, including the United States. I asked

16  again as to the citizenship of FSL's witnesses, but never received a response. A true and

17  correct copy of this email is attached hereto as Exhibit 3.

18      8.     Bella+Canvas noticed the FSL depositions for March 2022. FSL objected,

19  and I exchanged emails with counsel Glenanne Kennedy on the dispute, but counsel never

20  sought to schedule a meet-and-confer conference with me. Instead, Ms. Kennedy

21  unilaterally requested an IDC, asserting in the request that we had participated in two

22  conferences even though we had not, and never providing me with the request in order to

23  complete Bella+Canvas' portion.

24      9.     On March 23, 2022, the parties participated in an Informal Discovery

25  Conference on the deposition dispute. The parties were not able to come to an agreement.

26  Judge Audero agreed that depositions could proceed in Los Angeles, as it was not

27  reasonable to delay the case indefinitely due to the COVID-19 restrictions and unknown

28  delay associated with permission from the Competent Authority. At the IDC, Ms. Kennedy

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

**DECLARATION OF MELISSA K. ZONNE**

1   indicated that FSL was open to depositions in Los Angeles, but hoped to wait to determine
2   if Hong Kong's 14-day quarantine period for those returning to from the United States
3   might be reduced. In a good faith effort to make progress toward a resolution, I proposed
4   that Bella+Canvas re-notice the depositions in Los Angeles for 30-60 days further out,
5   with Bella+Canvas' own witnesses' depositions scheduled immediately thereafter, thereby
6   providing the "waiting period" Ms. Kennedy requested that might allow for a change in
7   Hong Kong's quarantine policy. Ms. Kennedy indicated her client may be open to this
8   solution, but did not respond to my invitations to further meet-and-confer for nearly one
9   month. A true and correct copy of the correspondence containing my efforts to execute this
10  compromise and FSL's counsel's delay is attached hereto as <u>Exhibit 4</u>.

11      10.     When I finally spoke to Ms. Kennedy on April 22, 2022, she indicated that
12  her clients remained opened to traveling to California, and noted that Hong Kong's
13  quarantine period had indeed been relaxed so that her clients would only have to
14  quarantine for 7 days upon returning from the United States. Ms. Kennedy further
15  indicated that the first two weeks of June 2022 would work for her office and likely, her
16  clients, and she would confirm exact dates with me shortly. Likewise, I agreed to ask my
17  clients for their available dates in the second and third weeks of June 2022 and
18  immediately did so. I have since communicated my client's availability on multiple
19  occasions. Despite this agreement, Ms. Kennedy immediately backtracked in an email in
20  which she said she would ask her clients about those dates, but had not agreed they would
21  travel to Los Angeles. She also asked me if the depositions could proceed in San Francisco
22  rather than Los Angeles and I agreed. Again, despite my repeated follow-up emails, Ms.
23  Kennedy did not respond until May 2nd, indicating that she was unable to provide me dates
24  given "the vagaries of the pandemic" and accusing Bella+Canvas of delay for not
25  requesting permission from the Hong Kong authorities (despite the fact that we had been
26  actively scheduling depositions in California). A true and correct copy of this
27  correspondence is attached hereto as <u>Exhibit 5</u>.

28      11.     In return, I informed Ms. Kennedy that Bella+Canvas had no choice but to

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

**DECLARATION OF MELISSA K. ZONNE**

proceed with a motion to compel. We spoke on May 8, 2022, when Ms. Kennedy informed me that FSL had agreed to send Chapman Yuen to California to be deposed on June 28, 2022. I immediately asked about the other witnesses, and Ms. Kennedy indicated it was too burdensome on them to travel from Hong Kong to California and they would have to be compelled. Yet again, after our phone call, Ms. Kennedy wrote an email inconsistent with our discussion, in which she presented an ultimatum regarding Mr. Yuen's deposition. For the first time, Ms. Kennedy indicated that FSL was only willing to produce Mr. Yuen in California if Bella+Canvas agreed not to compel the depositions of any other FSL witness. Bella+Canvas did not agree to this and instead brings this motion to compel.

12.     True and correct copies of the original Scheduling Order [Dk. 19] and Amended Scheduling Order [Dk. 29] are attached hereto as Exhibits 6 and 7, respectively.

13.     Attached as Exhibit A to the Joint Stipulation is a true and correct copy of the parties' Initial Disclosures.

14.     Attached as Exhibit C to the Joint Stipulation is a true and correct copy of the deposition notices served by Bella+Canvas on FSL.

15.     Attached as Exhibit D to the Joint Stipulation is a true and correct copy of the Civil Minutes from the Informal Discovery Conference [Docket No. 30] that was held by this Court on March 23, 2022.

16.     Attached as Exhibit E to the Joint Stipulation is a true and correct copy of an email from FSL's counsel Cicala Conte to me, and copying others, dated May 10, 2022.

17.     Attached as Exhibit F to the Joint Stipulation is a true and correct copy of the website page address: https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html.

18.     Attached as Exhibit G to the Joint Stipulation is a true and correct copy of an email from FSL's counsel Glenanne Kennedy to my colleague Cynthia Mullen, and copying me and others, dated February 9, 2022.

19.     Attached as Exhibit H to the Joint Stipulation is a true and correct copy of the website page address:

**DECLARATION OF MELISSA K. ZONNE**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

1  https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/hong-kong-

2  travel-advisory.html

3      20.     Attached as Exhibit I to the Joint Stipulation is a true and correct copy of the

4  website page address: https://www.coronavirus.gov.hk/eng/inbound-

5  travel.html#quarantinemeasures2.

6      21.     Attached as Exhibit J to the Joint Stipulation is a true and correct copy of the

7  website page address: https://www.cdc.gov/coronavirus/2019-ncov/travelers/noncitizens-

8  US-air-travel.html.

9

10     I declare under penalty of perjury of the laws of the State of California that the

11  foregoing is true and that this declaration was executed on May 17, 2022 in Los Angeles,

12  California.

13

14

15                                        _____
                                          *Melissa K. Zonne*
                                          Melissa K. Zonne

16

17

18

19

20

21

22

23

24

25

26

27

28

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

**DECLARATION OF MELISSA K. ZONNE**

EXHIBIT 1

**Zonne, Melissa**

| | |
|---|---|
| **From:** | Cicala, Conte <Conte.Cicala@clydeco.us> |
| **Sent:** | Monday, September 13, 2021 1:50 PM |
| **To:** | Mullen, Cynthia |
| **Cc:** | Holland, Andrew P.; Lipanovich, Nathaniel |
| **Subject:** | RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [IWOV-iManage.FID133204] [CC-US2.FID865371] |

Hi Cynthia, with those additional changes it is okay and you may add my signature and file.

It does not look like we need prior approval from Hong Kong authorities to take depositions there so it seems as if the same rules are (still) in place as when I conducted depositions there some years back.  For nonparty witnesses who are not willing to appear there may be some challenges though.  My colleagues did not have any experience with zoom but also like me did not see any specific reason against it.  We'd presumably need to stipulate that the court reporter in the US could administer the oath with the same effect as in person.  Bottom line is that I am cautiously optimistic we can proceed on a "normal" discovery schedule but am glad we are also flagging the issue for the court in case we hit snags.

Embarrassingly my colleagues reminded me of this as well:

Hong Kong judicial Assistance Information (state.gov)

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371



| |
|---|
| Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA |
| **Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us** |

My pronouns are: he / him / his

EXHIBIT 2

**Zonne, Melissa**

| | |
|---|---|
| **From:** | Mullen, Cynthia |
| **Sent:** | Thursday, January 13, 2022 10:18 AM |
| **To:** | Cicala, Conte; Kennedy, Glenanne |
| **Cc:** | Lipanovich, Nathaniel; Zonne, Melissa |
| **Subject:** | Bella+Canvas v. Fountain Set - Depo Meet/Confer |

Conte and Glenanne,

We would like to set up a call to discuss issues related to noticing depositions of Fountain Set and its employees, given some of the procedural issues with conducting depositions in China or Hong Kong that we discussed in our R26 conference.  Are you available for a call early next week?

We would like to discuss procedure as well as availability for:
- Chapman Yuen
- Tony Kong
- Schuman Jiang
- Jennifer Chu
- 30(b)(6) witness

I've also included my colleague, Melissa Zonne, on this email.  She is working on the matter as well, so please include her in any case correspondence.

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com  |  CMullen@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

EXHIBIT 3

## Zonne, Melissa

| | |
|---|---|
| **From:** | Zonne, Melissa |
| **Sent:** | Monday, February 14, 2022 1:52 PM |
| **To:** | 'Kennedy, Glenanne'; Cicala, Conte |
| **Cc:** | Lipanovich, Nathaniel; Mullen, Cynthia |
| **Subject:** | RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372] |

Counsel,

We believe a discovery dispute conference prior to B+C's response deadline to Set Two is premature. Since FSL has propounded new discovery as to the documents at issue, there is no reason to schedule a conference prior to your review of B+C's responses. We are more than willing to make ourselves available and participate in a conference in mid-March if a dispute remains after you have received those responses. As we have discussed previously, B+C's denials of RFAs Nos. 18-20 in Set One are proper. B+C cannot admit to the authenticity of documents with markings that did not originate with B+C or with which B+C is unfamiliar. The documents at issue in RFAs Nos. 18-20 contain highlighting and other markings that change the documents from their original versions, and the documents were also incomplete copies with missing pages. There is no reason to use judicial resources before we determine whether a dispute exists.

As to depositions, we still have not received information from you regarding the citizenship of the deponents. Your failure to respond on this issue is causing further delay in facilitating the depositions. For this reason and others, we now plan to take the depositions in Los Angeles. This is reasonable and legally sound given several factors at issue here, including the likelihood of additional discovery disputes and the location of counsel in or near the forum district.  (*See Cadent v. 3M Unitek*, 232 F.R.D. 625 (C.D. Cal.2005); *Stonebreaker v. Guardian Life Ins. Co.*, 820 F. Supp. 2d 1096, 1098–99 (S.D. Cal. 2011).)  We also believe this solution will address your concerns regarding travel and quarantine issues related to COVID. Though we do not have confirmation from you, we have reason to believe the deponents reside in Hong Kong and are therefore Chinese citizens. (See Chapman Yuen's LinkedIn account:  https://www.linkedin.com/in/chapman-yuen-37b298177/?originalSubdomain=hk.) Currently, until March 4, 2022, non-Hong Kong residents traveling from outside Greater China are suspended from entering Hong Kong: https://hk.usconsulate.gov/u-s-citizen-services/covid-19-information/. We were unable to find any indication as to the future plans, but previously, a 14-day quarantine was implemented and currently applies for most Chinese citizens. Conversely, non-U.S. citizens traveling to the United States are only required to be fully vaccinated with the primary series of the COVID vaccine and to show a negative test result prior to the flight. See current updates here: https://www.cdc.gov/coronavirus/2019-ncov/travelers/noncitizens-US-air-travel.html. Taking the depositions in the forum district will solve the various issues you raise in your email, including eliminating the delays and unknown factors associated with an appeal to the Competent Authority. We are hopeful we can avoid unnecessary amendment to the scheduling order. Please provide dates FSL's witnesses are available to be deposed in LA.

Finally, you are incorrect as to our confidentiality designations. We produced 963 documents as Confidential, and 1,276 as Not Confidential, after conducting a thorough review of the documents. After you have had a chance to review the documents, let us know if you have further inquiries.

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 |  www.thoits.com  |  MZonne@thoits.com

**Confidentiality Notice.**  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Wednesday, February 9, 2022 9:30 AM
**To:** Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Cynthia,

Your change of position regarding a blanket admission of document authenticity is noted.

We need to get the RFA and interrogatory situation resolved ASAP.  We remain of the view that Bella + Canvas must immediately admit to the genuineness of the documents attached to Requests for Admission Nos. 18, 19, and 20, which were served on October 26, 2021, and that its denials were improper and not in compliance with its discovery obligations.  While we will be serving additional RFAs with your client's versions of the same documents as a fallback, given the failure of our meet and confer efforts, we are concerned that you may contrive to deny these additional requests as well. Should we not be able to resolve this dispute, our only solution will be to talk to the Magistrate Judge.  Therefore, in conformance with the court's rules, please provide at least three dates and times when you are available to hold the telephonic conference for discovery disputes.

In regards to the depositions in Hong Kong, it looks like we have both found the same language on the State Department website:

> In Hong Kong, consular officers may take voluntary depositions of U.S. citizen witnesses without prior permission from Hong Kong authorities, provided no compulsion is used. If the services of a U.S. consular officer are required to administer an oath to the witness, interpreter and stenographer, such arrangements must be made in advance with the U.S. Consulate General directly. Consistent with Hong Kong's declarations and reservations regarding the Hague Evidence Convention, consular officers are prohibited from taking voluntary depositions of non-U.S. citizen witnesses. As an alternative, if prior permission is granted by Hong Kong's Competent Authority, voluntary depositions may be conducted by commissioners in Hong Kong regardless of the nationality of the witness, provided no compulsion is used.

https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html

In light thereof, it does look as if prior permission from the Hong Kong Competent Authority is required before any depositions can take place.  If you wish to proceed with depositions in Hong Kong, please proceed to obtain permission and keep us posted on your progress.

Even if depositions can proceed under Hong Kong law, we are concerned that current travel and quarantine restrictions will make scheduling difficult.  As such, assuming (as we do) that you will want to proceed with depositions, we do believe it is necessary to seek an amendment to the scheduling order to address this situation.   Do you have an estimate on how long permission will take to obtain?

Additionally, it appears that your client has chosen to designate every document as "confidential" in both productions. The protective order states: "The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Stipulated Protective Order."   Blanket designations are therefore not proper, and more generally we do not understand what renders the specific documents in question "confidential."   Although our intention is to challenge the designation, we wanted to first give you an opportunity to explain your client's position.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Friday, February 4, 2022 2:40 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Glenanne,

We agree with your summary of our meet/confer call re RFAs and Interrogatories.

Your summary re Genuineness of Documents is accurate as well, but we've considered the idea of a stipulation further— our current position is that a global stipulation regarding document authenticity is premature at this time.  We may be willing to enter into something like this later in the case (e.g., before trial), but not at this time.

Regarding depositions, your summary is correct that we would still like to schedule Fountain Set's depositions in March, since the parties will respond to all outstanding discovery in February.  We have conducted further research regarding the issue of prior approval from Hong Kong or Chinese authorities, and the citizenship of the deponents is material to whether approval is required.

Can you please advise whether the following witnesses are Hong Kong citizens or PRC (Mainland China) citizens:
- Chapman Yuen
- Tony Kong
- Jennifer Chu

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Thursday, February 3, 2022 3:57 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Subject:** Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Cynthia and Melissa,

As discussed, I want to memorialize our meet and confer conversation that took place today to make sure we are all on the same page.

Requests for Admission: In accordance with our meet and confer conference on December 21, 2021, and B+C's position that some of Fountain Set's RFAs were vague and ambiguous, Fountain Set and B+C agreed that Fountain Set would amend those specific RFAs. Fountain Set's amended RFAs were served on January 24, 2022. B+C is taking the position that the amended RFAs are actually 6 new RFAs due to the amount of changes that have been made. B+C will provide its responses to these RFAs within 30 days.

Genuineness of Documents: Consistent with the position taken at the December 21, 2021 meet and confer conference, B+C continues to deny the authenticity of the documents attached the Fountain Set's first set of RFAs based on the existence of highlights and Chinese characters that are not in the original document, and that the documents provided are only a portion of the complete document. B+C does not agree to substitute their version of the documents to Fountain Set's RFAs, and admit to the genuineness of their version. B+C proposes either entering into a global stipulation that all documents produced by either side are authentic, or Fountain Set can draft additional RFAs requesting that B+C admit to the genuineness of B+C's version of the documents.

Interrogatories: Based on B+C's position that the amended RFAs are in fact new RFAs, B+C continues to assert that Fountain Set has exceeded the number of interrogatories permitted. As provided in their responses to the interrogatories, and as discussed during the meet and confer conference on December 21, 2021, B+C asserts that each of Fountain Set's three interrogatories contain 13 separate subparts, and thus each interrogatory should be treated as 13 separate interrogatories, which exceeds the 25 interrogatory limit.

Depositions: Fountain Set requires the responses to their most recent discovery, served on January 24, 2022, before conducting depositions. B+C does not anticipate this being an issue. Additionally, both parties' research demonstrates that permission from Hong Kong's Competent Authority is required before conducting the depositions of Fountain Set's Hong Kong witnesses. B+C will attempt to determine how long such a process may take, and seek an extension from the court should the process prevent depositions from going forward in accordance with the time line provided by the court. B+C requested that we also reach out to Clyde & Co's Hong Kong office to determine whether they have any additional information regarding the process.

Deposition Schedule: The agreed upon timeline for scheduling depositions is still March 2022. B+C requests that the Fountain Set witnesses be deposed prior to the B+C witnesses, as B+C made their request before Fountain Set. B+C is not available to conduct depositions the last week of March.

Requests for Production: B+C anticipates serving an additional production, which is in response to Fountain Set's Request for Production, in the near future and possibly as early as February 4, 2022.

Please let me know if you agree with this summary of our conversation, or if you have any changes. Also, in the event that we cannot resolve some of these discovery issues, please provide your availability for a discovery conference with the magistrate judge.

Thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT 4

**Zonne, Melissa**

| | |
|---|---|
| **From:** | Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us> |
| **Sent:** | Monday, April 18, 2022 12:30 PM |
| **To:** | Zonne, Melissa |
| **Cc:** | Cicala, Conte; Mullen, Cynthia; Lipanovich, Nathaniel |
| **Subject:** | RE: B+C v. Fountain Set - Post-IDC Discussion [CC-US2.121580.10254430.FID865373] |

HI Melissa,

I apologize for the delay in getting back to you. I am available to meet pretty much any day this week, with the exception of Wednesday morning. Let me know when is a good time for you.

Thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



| | |
|---|---|
| 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA | |
| **Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us** | |

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Friday, April 8, 2022 3:50 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Mullen, Cynthia <CMullen@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: B+C v. Fountain Set - Post-IDC Discussion [CC-US2.121580.10254430.FID865373]

Hi Glenanne,
I am checking back in on your availability to discuss moving forward with depositions. I am generally available next week, with any time Wednesday and Thursday afternoon being best.

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

---

**From:** Zonne, Melissa
**Sent:** Wednesday, March 23, 2022 5:30 PM
**To:** 'Kennedy, Glenanne' <Glenanne.Kennedy@clydeco.us>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Mullen, Cynthia <CMullen@thoits.com>; Lipanovich, Nathaniel

<NLipanovich@thoits.com>
**Subject:** RE: B+C v. Fountain Set - Post-IDC Discussion [CC-US2.121580.10254430.FID865373]

Hi Glenanne,
Yes, but I am in trial Tuesday and Wednesday so it would be great if we could talk Friday or Monday if that gives you time to consider our proposal or other potential options. I understand from your comments in the conference that your client is open to depositions in Los Angeles but would like to avoid the COVID restrictions upon returning home if possible. To that end, please let us know if your client will consider the proposal I offered to set the FSL depositions in LA without subpoenas, and schedule B+C's depositions for dates immediately thereafter, in late April or May. That would allow a short and reasonable period of time to see if the current COVID restrictions for returning to Hong Kong change.

Thanks,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

---

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Wednesday, March 23, 2022 11:31 AM
**To:** Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Mullen, Cynthia <CMullen@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** B+C v. Fountain Set - Post-IDC Discussion [CC-US2.121580.10254430.FID865373]

Hi Melissa,

Based on the magistrate's comments during the IDC this morning, and Judge Wright signing our joint stip amending the scheduling order, we are planning on brainstorming some ideas for coming to a compromise over the next few days. Do you want to try to reconvene some time early next week to discuss?

Thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | www.clydeco.us

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by**

**email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT 5

**Zonne, Melissa**

| | |
|---|---|
| **From:** | Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us> |
| **Sent:** | Monday, May 2, 2022 11:12 AM |
| **To:** | Zonne, Melissa |
| **Cc:** | Lipanovich, Nathaniel; Mullen, Cynthia; Cicala, Conte |
| **Subject:** | RE: Bella+Canvas v. Fountain Set |

Hi Melissa,

We appreciate that you want to get certainty on this and we do as well, but as you know the situation remains fluid.  While Hong Kong is not Shanghai, which has been in full lockdown for more than a month, it is part of greater China.  It is not simply a matter of people checking their calendar -- it is a significant issue to plan a trip out of the country in these circumstances.  Even if we do get dates of availability in the US, those dates will of course be subject to the vagaries of the pandemic itself and the Hong Kong (and other) government reactions to it.

Meanwhile it has been more than 3 months since you learned of the need to seek permission from the Hong Kong competent authority and it seems you have opted not to seek permission, on the inexplicable rationale that it might take a long time to get permission.  We continue to object to your decision to refrain from seeking permission.  As you know, we will produce witnesses in Hong Kong if/when you get permission.  If you have not done so, you should immediately seek permission, and meanwhile we will continue to try to arrange dates for depositions in the SF Bay Area in hopes that can happen in June as we have discussed.  In the meantime our client reserves all rights.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Friday, April 29, 2022 1:01 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set

Counsel:
I'm following up again the availability of FSL's witnesses for deposition in the first half of June. Please let me know when I can expect to hear back from you as to specific dates so we can get these on calendar.

Please also let me know the status of the supplemental discovery responses, and your availability for a second meet-and-confer conference on the outstanding issues. I am generally free next week.

Regards,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

---

**From:** Zonne, Melissa
**Sent:** Tuesday, April 26, 2022 12:03 PM
**To:** 'Kennedy, Glenanne' <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set

Hi Glenanne,

I am following up on our call last week and checking in on the available dates for depositions in the time frame we discussed. We plan to get notices out as soon as possible this week. As to location, we are willing to host depositions at our office in the Bay Area if that is more convenient for FSL's witnesses.

Please also let me know when we can expect to hear back regarding the supplemental discovery responses.

Thank you,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

---

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Friday, April 22, 2022 2:53 PM
**To:** Zonne, Melissa <MZonne@thoits.com>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set

Hi Melissa,

A few small corrections to your summary below.

We have not agreed to bring the Hong Kong witnesses to LA for depositions, but noted that the relaxing of the quarantine requirements in Hong Kong has been a positive step in our discussions with the client regarding the

possibility of them coming. In that light, we agreed to discuss with them the dates of the first two weeks in June, and will let you know if that time frame may work for them. Additionally, would you agree that should they agree to come that we can produce them in either San Francisco or Los Angeles, depending on which is more convenient for the witnesses?

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



|  | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA |
|--|--|
|  | **Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us** |

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Friday, April 22, 2022 1:30 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** Bella+Canvas v. Fountain Set

Counsel,
Thank you for speaking with me today. I have summarized our call and agreed-upon next steps below. Let me know if anything differs from your understanding.

1. Given that Hong Kong has relaxed its quarantine requirements for people returning to the country, there is less burden on FSL witnesses in traveling to LA for depositions and they have agreed to do so. Given counsel's schedule, you have agreed to talk to your witnesses about their availability in the first 1-2 weeks of June 2022. I will send deposition notices out early next week.
2. I am going to provide availability for B+C's witnesses for the weeks immediately after FSL's depositions. I informed you that Dhinakaram Rajaram and Aaron Jackson are located in India and New Zealand respectively, and are not B+C employees. I will follow up with you on these witnesses as well.
3. FSL is planning to supplement its written discovery responses as to the mill information and its custom and practice. After our brief meet-and-confer regarding other categories of outstanding discovery, FSL is also going to reevaluate those additional discovery issues raised in my March 11, 2022 letter and either supplement with more information or provide a response as to the reasons it will not do so.

Regards,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# United States District Court
# Central District of California

Bella+Canvas, LLC,

                          Plaintiff(s),

  v.

Fountain Set Limited, et al.,

                          Defendant(s),

Case    CV 21-00758-ODW(MAAx)

**SCHEDULING AND CASE MANAGEMENT ORDER**

**(JURY TRIAL)**

**FOR CASES ASSIGNED TO JUDGE OTIS D. WRIGHT, II**

     This Order is to advise the parties and counsel of the schedule that will govern this case. **THE SCHEDULING CONFERENCE IS VACATED. SEE THE LAST PAGE OF THIS ORDER FOR THE SPECIFIED DATES.** These dates and requirements are firm. The Court is unlikely to grant continuances unless the parties establish good cause through a concrete showing. Failure to complete discovery in a timely manner does not constitute good cause, nor does the fact that a settlement conference is pending. Each side is limited to five motions in limine unless the Court orders otherwise.

/ / /

/ / /

**IT IS HEREBY ORDERED:**

1. To secure the just, speedy, and inexpensive determination of every action, all counsel are ordered to familiarize themselves with and follow the Federal Rules of Civil Procedure and the Local Rules of the Central District of California. This Court follows these rules and they will govern this litigation unless otherwise provided in this Order.

2. Because this Order in some respects modifies or adds to the Local Rules, counsel are advised to read it carefully. Counsel are advised to pay particular attention to the requirements of the Court with respect to the filing of motions for summary judgment and documents to be submitted at the Final Pretrial Conference and Trial.

3. The attorney attending any proceeding before this court must be an attorney who is thoroughly knowledgeable about the case, responsible for the conduct of the litigation, and who has authority to enter into stipulations and to make admissions regarding all matters that the participants reasonably anticipate may be discussed. Lead counsel who will actually try the case must attend the Pretrial Conference. A party who is not represented must attend all proceedings in person.

4. **Courtesy Copies**: One mandatory chambers copy of all filed documents. Chambers copies shall be delivered to and placed in the Judge's courtesy box, located outside of the Clerk's office on the 4th floor. Chambers copies of under seal documents shall be placed together in a manilla envelope labeled "UNDER SEAL".

**Courtesy copies DO NOT need to be blue-backed. All courtesy copies of pretrial documents (e.g. witness lists, exhibit lists, pretrial conference orders, jury instructions, etc.) shall be three-hole punched.**

5. **Discovery Cut-Off**: Percipient and expert discovery shall be completed by the discovery cut-off dates specified on the last page of this Order. **THIS IS NOT THE DATE BY WHICH DISCOVERY REQUESTS MUST BE SERVED; IT IS THE DATE BY WHICH ALL DISCOVERY IS TO BE COMPLETED.**

Any motion challenging the adequacy of responses to discovery must be heard

sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted. In an effort to provide further guidance to the parties, the Court notes the following:

a. **Depositions**: All depositions shall be scheduled to commence sufficiently in advance of the discovery cut-off date to permit their completion and to permit the deposing party enough time to bring any discovery motions concerning the deposition prior to the cut-off date.

b. **Written Discovery**: All interrogatories, requests for production of documents, and requests for admissions shall be served sufficiently in advance of the discovery cut-off date to permit the discovering party enough time to challenge (via motion practice) responses deemed to be deficient.

c. **Discovery Motions**: Whenever possible, the Court expects the parties to resolve discovery issues among themselves in a courteous, reasonable, and professional manner. The Magistrate Judge assigned to this case will rule on discovery motions. (The Magistrate Judge's initials follow the district judge's initials next to the case number on the first page of this Order.) Counsel are directed to contact the Magistrate Judge's courtroom deputy clerk (CRD) to schedule a hearing on any discovery related matters. Counsel should not deliver courtesy copies of these discovery documents to this Court.

d. **Expert Discovery**: If expert witnesses are to be called at trial, the parties shall designate affirmative experts to be called at trial and provide reports required by Federal Rule of Civil Procedure 26(a)(2)(B) not later than eight weeks prior to the expert discovery cut-off date. Rebuttal expert witnesses shall be designated and reports provided as required by Rule 26(a)(2)(B) not later than five weeks prior to the expert discovery cut-off date. Failure to timely comply with deadlines may result in the expert being excluded as a trial witness.

6. **Motions and Motion Cut-Off Date**

a. **General Provisions**: All law and motion matters, except for

motions in limine, must be set for hearing (not filed) by the motion cut-off date specified on the last page of this Order.  This Court hears motions in civil matters on **Mondays at 1:30 p.m.**  The parties must adhere to the requirements of the Local Rules.  *See* Local Rules 7-1 *et seq.*  If any party does not oppose a motion, that party shall submit a written statement that it does not oppose the motion in accordance with Local Rule 7-9.  The parties should note that failure to meet the time limits for filing an opposition set forth in Local Rule 7-9 shall be deemed consent to the granting of the motion.  *See* Local Rule 7-12.

The title page of all motions must state the Pre-Trial Conference date and the Trial date.  Counsel must comply with Local Rule 7-3, which requires counsel to engage in a pre-filing conference "to discuss thoroughly . . . the substance of the contemplated motion and any potential resolution."

Issues left undetermined after the passage of the motion cut-off date should be listed as issues for trial in the Final Pre-Trial Conference Order.  As an exception to the above, motions in limine dealing with evidentiary matters may be heard pursuant to the schedule specified on the last page of this Order.

b. **Meeting and Conferring**: The Parties are required to meet and confer with opposing counsel prior to the filing of a motion or ex parte application under Local Rule 7-3.  The Court notes that is the responsibility of <u>both</u> parties to meet and confer in good faith on any disputed issues.  The Court will impose sanctions, including monetary sanctions and/or the summary denial of a motion, if *either* party fails to meet and confer in good faith or fails to reasonably narrow the issues in dispute.

c. **Ex Parte Applications**: Ex parte practice is discouraged.  *See Mission Power Eng'g v Co. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995).  The Court will require strict adherence to proper ex parte procedures for any ex parte application filed with the Court.  *Id.* at 492; *see also* Judge Wright's Standing Order and Local Rule 7-19.  **Any opposition to an ex parte application must be filed within 24 hours.**  Failure to submit a timely opposition constitutes consent to the granting of the

application.  *See* Local Rule 7-12.  No party may file a reply unless expressly authorized by the Court.  All ex parte applications will be decided on the papers and without a hearing unless the Court orders otherwise.

   d. **Applications and Stipulations to Extend Time**:  Applications to extend the time to file any required document or to continue any hearing, Pre-Trial Conference, or Trial date must set forth the following:

    (i) The existing due date or hearing date, as well as the discovery cut-off date, the Pre-Trial Conference date, and the Trial date;

    (ii) Specific, concrete reasons supporting good cause for granting the extension; and

    (iii) Whether there have been prior requests for extensions, and whether these requests were granted or denied by the Court.

 The parties are cautioned that the Court will not necessarily grant an extension or continuance simply because all parties have stipulated to it.

   e. **Joinder of Parties and Amendment of Pleadings**:  The deadline for joining parties and amending pleadings is set forth on the last page of this Order.  Any motions to join other parties or for leave to amend the pleadings shall be set for hearing on before this date.  If any party moves to amend a pleading after this date, they must address the propriety of amendment under *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992).

 In addition to the requirements of Local Rule 15-1, all motions to amend the pleadings shall: (1) state the effect of the amendment; (2) be serially numbered to differentiate the amendment from previous amendments; and (3) state the page, line number(s), and wording of any proposed change or addition of material.  The parties shall deliver to Chambers a redlined version of the proposed amended pleading indicating all additions and deletions of material.

   f. **Summary Judgment Motions**:  Parties need not wait until the motion cutoff to bring motions for summary judgment or partial summary judgment.

Early completion of non-expert discovery and filing of motions for summary judgment may eliminate or reduce the need for expensive expert depositions that are normally conducted in the last stages of discovery. **However, the Court requires that the party moving for summary judgment will provide no less than thirty-five (35) days' notice for such motions.** Because summary judgment motions are fact-dependent, parties should prepare papers in a fashion that will assist the Court in absorbing the mass of facts (e.g., generous use of tabs, tables of contents, headings, indices, etc.). The parties are to comply precisely with Local Rule 56-1 through 56-4. The Court will also require adherence to the following requirements:

        (i)     <u>Statement of Uncontroverted Facts and Statement of Genuine Issues of Material Fact</u>

The movant's Separate Statement of Uncontroverted Facts is to be prepared in a two column format. The left-hand column should set forth the allegedly undisputed fact. The right-hand column should set forth the evidence that supports the factual statement. The factual statements should be set forth in sequentially numbered paragraphs. Each paragraph should contain a narrowly focused statement of fact. Each numbered paragraph should address a single subject in as concise a manner as possible.

The opposing party's Statement of Genuine Issues of Material Fact must be in two columns and track the movant's Separate Statement exactly as prepared. The document must be in two columns; the left-hand column must restate the allegedly undisputed fact, and the right-hand column must indicate either undisputed or disputed. The opposing party may dispute all or only a portion of the statement, but if disputing only a portion, must clearly indicate what part is being disputed. Where the opposing party is disputing the fact in whole or part, the opposing party must, in the right-hand column, label and restate the moving party's evidence in support of the fact, followed by the opposing party's evidence controverting the fact. Where the opposing party is disputing the fact on the basis of an evidentiary objection, the party must cite the evidence alleged to be objectionable and state the ground of the objection and nothing

more. **No argument should be set forth in this document.**

The opposing party may submit additional material facts that bear on or relate to the issues raised by the movant, which shall follow the format described above for the moving party's Separate Statement. These additional facts shall follow the movant's facts, shall continue in sequentially numbered paragraphs (i.e. if movant's last statement of fact was set forth in paragraph 30, then the first new fact will be set forth in paragraph 31), and shall set forth in the right-hand column the evidence that supports that statement.

The moving party, in its reply, shall respond to the additional facts in the same manner and format that the opposing party is required to adhere to in responding to the Statement of Uncontroverted Facts, as described above.

**The following conduct in connection with a motion for summary judgment shall be grounds for sanctions under Federal Rule of Civil Procedure 11: (1) disputing a material fact without any reasonable basis for doing so; (2) identifying additional facts in opposition to the motion without any reasonable basis for believing that the additional facts will materially affect the outcome of the motion.**

(ii)    Supporting Evidence

No party should submit any evidence other than the specific items of evidence or testimony necessary to support or controvert a proposed statement of undisputed fact. Thus, for example, the entire transcripts of depositions and/or entire sets of interrogatory responses should generally not be submitted in support of or in opposition to a motion for summary judgment.

Evidence submitted in support of or in opposition to a motion for summary judgment should be submitted either by way of stipulation or as exhibits to a declaration sufficient to authenticate the proffered evidence, and should not be attached to the memorandum of points and authorities. The Court will accept counsel's authentication of deposition transcripts, written discovery responses, and the receipt of documents in discovery <u>if the fact that the document was in the opponent's possession is of</u>

independent significance. Documentary evidence as to which there is no stipulation regarding foundation must be accompanied by the testimony, either by declaration or properly authenticated deposition transcript, of a witness who can establish its authenticity.

All evidence in support of or in opposition to a motion for summary judgment, including declarations and exhibits to declarations, shall be separated by a tab divider on the bottom of the page. If evidence in support of or in opposition to a motion for summary judgment exceeds twenty pages, the evidence must be in a separately bound volume and include a Table of Contents. If the supporting evidence exceeds fifty pages, the documents shall be placed in a Slant D-Ring binder with each item of evidence separated by a tab divider on the right side. All documents contained in the binder should be three-hole-punched.

(iii)     Objections to Evidence

If a party disputes a fact based in whole or in part on an evidentiary objection, the ground for the objection, as indicated above, should be stated in the Separate Statement, but not argued in that document. Evidentiary objections should be addressed in a separate memorandum to be filed with the opposition or reply brief of the party. This memorandum should be organized **to track the paragraph numbers of the Separate Statement in sequence**. It should identify the specific item of evidence to which objection is made, the ground for the objection, and a very brief argument with citation to authority as to why the objection is well taken. The following is an example of the format contemplated by the Court:

Separate Statement Paragraph 1: Objection to the supporting deposition transcript of Jane Smith at 60:1-10 on the grounds that the statement constitutes inadmissible hearsay and no exception is applicable. To the extent it is offered to prove her state of mind, it is irrelevant since her state of mind is not in issue. Fed. R. Evid. 801, 802.

**DO NOT SUBMIT BLANKET OR BOILERPLATE OBJECTIONS TO**

THE OPPONENT'S STATEMENTS OF UNDISPUTED FACT. THESE WILL BE DISREGARDED AND OVERRULED.

(iv)  Memorandum of Points and Authorities

The movant's memorandum of points and authorities should be in the usual form required under Local Rule 7 and should contain a narrative statement of facts as to those aspects of the case that are before the Court. All facts should be supported with citations to the paragraph number in the Separate Statement that supports the factual assertion.

Unless the case involves some unusual twist, the motion need only contain a brief statement of the Federal Rule of Civil Procedure 56 standard; the Court is familiar with the Rule and with its interpretation under *Celotex* and its progeny. If at all possible, the argument should be organized to focus on the pertinent elements of the claim(s) for relief or defense(s) in issue, with the purpose of showing the existence or non-existence of a genuine issue of material fact for trial on that element of the claim or defense.

Likewise, the opposition memorandum of points and authorities should be in the usual form required by Local Rule 7. Where the opposition memorandum sets forth facts, the memorandum should cite to paragraphs in the Separate Statement if they are not in dispute, to the evidence that contravenes the fact where the fact is in dispute, or, if the fact is contravened by an additional fact in the Statement of Genuine Issues of Material Fact, the citation should be to such fact by paragraph number.

g.  **Avoid Composite Motions**: Unless clearly justified under the circumstances of the case, "motions to dismiss or in the alternative for summary adjudication" are discouraged. These composite motions tend to blur the distinctions between the two motions.

h.  **Motions in Limine**: Before filing any motion in limine, counsel for the parties shall confer pursuant to Local Rule 7-3 in a good faith effort to eliminate the necessity for hearing the motion in limine or to eliminate as many of the disputes as possible. It shall be the responsibility of counsel for the moving party to arrange for this conference. The motion papers must include a declaration showing a good faith

meet and confer effort.  The conference shall take place **in person** within 10 calendar days of service upon opposing counsel of a letter requesting such a conference, but in no event later than twenty-one days before the Pre-Trial Conference.  The conference may take place by telephone only if both counsel are not located in the same county in the Central District.

If counsel are unable to resolve their differences, they shall prepare a separate, sequentially-numbered Motion in Limine for each issue in dispute which contains a clear caption that identifies the moving party and the nature of the dispute (i.e., "Plaintiff's Motion in Limine #1 to exclude the testimony of Defendant's expert"). **Neither party may file more than five (5) Motions in Limine absent leave of Court upon a showing of good cause, and leave of Court will be granted sparingly.**  Each Motion in Limine shall contain a clear identification of the testimony, exhibits, or other specific matters alleged to be inadmissible and/or prejudicial and a statement of the specific prejudice that will be suffered by the moving party if the motion is not granted. The identification of the matters in dispute shall be followed by the moving party's contentions and memorandum of points and authorities.  The title page of the Motion in Limine must state the Pre-Trial Conference date, hearing date for the motions in limine, and the trial date.

Motions in Limine made for the purpose of precluding the mention or display of inadmissible and/or prejudicial matter in the presence of the jury shall be accompanied by a declaration that includes the following: (1) a clear identification of the specific matter alleged to be inadmissible and/or prejudicial; (2) a representation to the Court that the subject of the motion in limine has been discussed with opposing counsel, and that opposing counsel has either indicated that such matter will be mentioned or displayed in the presence of the jury before it is admitted in evidence or that counsel has refused to stipulate that such matter will not be mentioned or displayed in the presence of the jury unless and until it is admitted in evidence; and (3) a statement of the specific prejudice that will be suffered by the moving party if the motion in limine

is not granted.  A motion to bifurcate trial may be filed as a motion in limine.

All evidence in support of or in opposition to a motion in limine, including declarations and exhibits to declarations, shall be separated by a tab divider on the bottom of the page.   If evidence in support of or in opposition to a motion in limine exceeds twenty pages, the evidence must be in a separately bound volume and include a Table of Contents.   Though strongly discouraged, if by necessity the supporting evidence exceeds fifty pages, the documents shall be placed in a Slant D-Ring binder with each item of evidence separated by a tab divider on the right side.   All documents contained in the binder should be three-hole-punched.

Unless otherwise ordered by the Court, motions in limine will be heard on the date specified on the last page of this Order.  The moving party shall file with the Court and serve its Motion in Limine on the responding party on or before the date for filing of motions in limine indicated in the Schedule of Trial and Pre-trial Dates.   The responding party shall then file with the Court and serve an opposition to the Motion in Limine on the moving party at least seven (7) days prior to the date for the hearing on motions in limine.  **Neither party's submissions with respect to a Motion in Limine shall exceed eight (8) pages.  Unless ordered otherwise, the Court will only consider the moving papers and any opposition thereto; no replies are necessary or invited.**

i.     **Motions for Class Certification**: All motions for class certification must be filed according to Local Rule 23-3.  The Court will rarely grant stipulations or applications to extend that deadline.   Specifically, the failure to complete class discovery before the deadline does not constitute good cause to extend the deadline, unless the parties show specific and concrete reasons why, despite their diligence, the failure to complete discovery was **unavoidable**.  The Court will consider extensions based on the ordering of issues (e.g., if the defendant seeks to file a dispositive motion before class certification) on a case-by-case basis.  Any stipulations or applications for relief must include a specific date by which the plaintiff will move for class certification (the Court will not grant an open-ended extension).

j.     **Oral Argument**:  The Court, in its discretion, may dispense with oral argument on a motion.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  However, the Court also encourages law firms to contribute to the professional development of new attorneys by allowing them to present oral argument to the Court on motions.  To that end, if any party to a motion files a notice with the Court stating that an attorney with **less than four years' experience** will present oral argument, the Court will hold a hearing on that motion.  This notice must be filed no later than **fourteen days** before the hearing.  The Court will take into account the attorney's inexperience when considering their oral arguments.

7.     **Final Pre-Trial Conferences and Local Rule 16 Filings**

Please read this portion carefully, as there are some differences between the Court's requirements and the Local Rules.

a.     **General Provisions**

The Final Pre-Trial Conference ("PTC") will be held on the date specified on the last page of this Order, unless the Court expressly waived the PTC at the Scheduling Conference.  (In the rare cases where the Court waives a PTC, the parties must follow Local Rule 16-10.)  If adjustments in the Court's calendar to accommodate congestion become necessary, the Court may re-schedule the PTC instead of the trial date.  Therefore, the parties should assume that if the PTC goes forward, the trial will go forward without continuance, although some brief period of trailing may prove necessary.

The lead trial attorney on behalf of each party shall attend both the PTC and all meetings of the parties in preparation for the PTC, unless excused for good cause shown in advance of the PTC.

A continuance of the PTC at the parties' request or by stipulation is <u>highly unlikely</u>.  **Specifically, failure to complete discovery is not a ground for continuance.**  In the unlikely event that the Court agrees to continue the PTC, the trial date is likely to be delayed as a result.  If a change to the trial date is necessitated or

likely because of the Court's calendar or otherwise, modifications of that date will be discussed at the PTC.

At the PTC, the parties should be prepared to discuss means of streamlining the trial, including, but not limited to the following: bifurcation; presentation of foundational and non-critical testimony and direct testimony by deposition excerpts; narrative summaries and/or stipulations as to the content of testimony; presentation of testimony on direct examination by affidavit or by declaration subject to cross-examination; and qualification of experts by admitted resumes. The Court will also discuss settlement.

### b. **Courtesy Copies**

As with other documents filed with the Court, the parties must submit courtesy copies of all PTC documents. However, the courtesy copies **must** be delivered to chambers as follows:

(i) **One copy** of all PTC documents (i.e., both plaintiff's documents and defendant's documents) shall be delivered to the Court in **one** 3-ring binder;

(ii) Each document shall be separated by numerical side-tabs, and shall be placed in the following order: (1) Proposed Pretrial Conference Order; (2) Plaintiff's Memorandum and Contentions of Facts and Law; (3) Defendant's Memorandum and Contentions of Facts and Law; (4) Joint Witness List; (5) Joint Exhibit List and Stipulation; (6) Plaintiff's Proposed Verdict Form; (7) Defendant's Proposed Verdict Form; (8) Joint Proposed Jury Instructions; (9) Plaintiff's Disputed Jury Instructions; (10) Defendant's Disputed Jury Instructions; (11) Joint Statement of the Case; (12) Proposed Voir Dire Questions; (13) Joint Report re: Settlement; and (14) Other pretrial documents; and

(iii) The binder shall include a table of contents.

| | |
|---|---|
| 1 | **c. Final Pre-Trial Conference Order ("PTCO")** |
| 2 | The proposed PTCO shall be lodged seven calendar days before the PTC, unless |
| 3 | the Court specifically orders otherwise.  Adherence to this time requirement is necessary |
| 4 | for in-chambers preparation of the matter.   The form of the proposed PTCO shall |
| 5 | comply with Appendix A to the Local Rules and the following: |

(i)  Place in "**ALL CAPS AND BOLD**" the separately numbered headings for each category in the PTCO (e.g., "**1.  THE PARTIES**" or "**7. CLAIMS AND DEFENSES OF THE PARTIES**").

(ii)  Include a table of contents at the beginning.

(iii)  In specifying the surviving pleadings under section 1, state which claims or counter claims have been dismissed or abandoned, e.g., "Plaintiff's second cause of action for breach of fiduciary duty has been dismissed."  Also, in multiple party cases where not all claims or counterclaims will be prosecuted against all remaining parties on the opposing side, please specify to which party each claim or counterclaim is directed.

(iv)  In specifying the parties' claims and defenses under section 7, each party shall closely follow the examples set forth in Appendix A of the Local Rules.

(v)  In drafting the PTCO, **the court expects that the parties will attempt to agree on and set forth as many non-contested facts as possible.**  The court will usually read the uncontested facts to the jury at the start of trial.  A carefully drafted and comprehensively stated stipulation of facts will reduce the length of trial and increase jury understanding of the case. **It is unacceptable for the parties to indicate in the Proposed Pretrial Conference Order that they are not able to stipulate to any facts whatever.**

(vi)  In drafting the factual issues in dispute for the PTCO, the parties

should attempt to state issues in ultimate fact form, not in the form of evidentiary fact issues. The issues of fact should track the elements of a claim or defense on which the jury will be required to make findings.

(vii) Issues of law should state legal issues on which the court will be required to rule during the trial, and should not list ultimate fact issues to be submitted to the trier of fact.

(viii) The Court may submit fact issues to the jury in the form of findings on a special verdict. The issues of fact should track the elements of a claim or defense on which the jury will be required to make findings.

(ix) If expert witnesses are to be called at trial, each party must list and identify its respective expert witnesses, both retained and non-retained. Failure of a party to list and identify an expert witness in the PTCO could result in a court order which precludes the party from calling that expert witness at trial.

(x) The parties shall submit only ONE proposed PTCO. **It is unacceptable to submit multiple or competing proposed PTCOs.** *See* Local Rule 16-7.

d. **Rule 16 Filings; Memoranda; Witness Lists; Exhibit Lists**

Unless otherwise indicated, the parties must comply fully with the requirements of Local Rule 16. See the last page of this Order for applicable dates.

Memoranda and Contentions of Fact and Law

Memoranda of Contentions of Fact and Law shall be filed by the date listed in this Scheduling Order, and shall comply with the requirements set forth in Local Rule 16-4. The parties are strongly encouraged to submit one joint Memorandum where possible.

Joint Witness List

Counsel shall prepare a **joint** list of their witnesses, including a brief summary (two to three paragraphs) of each witness's expected testimony, **what makes the testimony unique** from any other witness testimony, an estimate of the length of time needed for direct examination of each side's own witnesses and an estimate for the cross examination of opposing witnesses, and whether the witness will testify by deposition or in person. The joint witness list shall be filed at the same time counsel lodge the PTCO. If a party intends to offer deposition testimony into evidence at trial, the party shall designate the relevant portions of the deposition testimony to be read at trial and advise opposing counsel of same. Opposing counsel shall then designate any additional portions of such deposition testimony which counsel intends to offer in evidence. All objections to any such testimony shall be made in writing and filed at the same time counsel lodge the PTCO so that the Court may consider whether ruling on the objections will facilitate trial or result in the disposition of evidentiary matters that may assist continuing settlement negotiations.

If expert witnesses are to be called at trial, each party shall list and identify their respective expert witnesses. Failure of a party to list and identify an expert witness may preclude a party from calling that expert witness at trial. If expert witnesses are to be called at trial, the parties shall exchange at the PTC short narrative statements of the qualifications of the expert and the testimony expected to be elicited at trial. Previously prepared and exchanged expert reports shall not substitute for the narrative statements required.

**On the first day of trial, the parties must lodge with the Court three (3) copies of the witness list**, which shall include the names of the witness in the approximate order in which they may be called to testify.

Joint Exhibit List and Exhibit Stipulation

The parties shall prepare a joint Pre-Trial Exhibit Stipulation that shall contain each party's numbered list of all trial exhibits, with objections, if any, to each exhibit including the basis of the objection and the offering party's response. All exhibits to

which there is no objection shall be deemed admitted. The parties shall stipulate to the authenticity of exhibits whenever possible, and the Pre-Trial Exhibit Stipulation shall identify any exhibits for which authenticity has not been stipulated to and the specific reasons for the party's failure to stipulate.

The Stipulation shall be substantially in the following form:

**Pre-Trial Exhibit Stipulation**

**Plaintiff(s)'/Defendant(s)' Exhibits**

**Number     Description     If Objection, State Grounds     Response to Objection**

The Pre-Trial Exhibit Stipulation shall be filed at the same time counsel lodge the proposed PTCO. Failure to comply with this paragraph could be deemed to constitute a waiver of all objections. **Do not submit** blanket or boilerplate objections to the opposing party's exhibits. These will be disregarded and overruled. **NOTE**: Counsel are instructed not to bring excessive exhibits to trial, but only those exhibits that are reasonably expected to actually be used.

All counsel are to meet not later than ten (10) days before trial and to stipulate so far as is possible as to authenticity, foundation, waiver of the best evidence rule, and to those exhibits which may be received into evidence at the start of trial. The exhibits to be so received will be noted on the copies of the exhibit lists.

**In addition, the parties should submit three copies of the final exhibit list to the Court Clerk on the first day of trial.**

Jury Instructions/Special Verdict Forms

The parties shall make every attempt to agree upon the jury instructions before submitting them to the Court. **It is expected that counsel will agree on the substantial majority of jury instructions.** This is in addition to the standard cautionary and introductory instructions regarding duties of the jury, the order of the trial, etc. found in Chapters 1, 2 & 3 of the *9th Circuit Manual of Model Jury Instructions*. The court

requires little or no assistance in the preparation of these instructions. Counsel's attention should be focused on reaching agreement on the instructions covering the substantive legal issues. It is anticipated that working diligently and cooperatively counsel will be able to reach agreement on the vast majority of the substantive instructions. **Judicial involvement will be limited to resolving disputes on only a few instructions on which the parties are unable to agree.**

On the date listed in this Scheduling Order, counsel shall file with the Court a **JOINT** set of jury instructions on which there is agreement. Defendant's counsel has the burden of preparing the joint set of jury instructions. At the same time, each party shall file its proposed jury instructions which are objected to by any other party, accompanied by points and authorities in support of those instructions.

When the parties disagree on an instruction, the party opposing the instruction must attach a short statement (one to two paragraphs) supporting the objection, and the party submitting the instruction must attach a short reply supporting the instruction. Each statement should be on a separate page and should follow directly after the disputed instruction.

The parties ultimately must submit one document, or if the parties disagree over any proposed jury instructions, three documents. The three documents shall consist of: (1) a set of Joint Proposed Jury Instructions; (2) Plaintiff's Disputed Jury Instructions; and (3) Defendant's Disputed Jury Instructions. Any disputed Jury Instructions shall include the reasons supporting and opposing each disputed instruction in the format set forth in the previous paragraph.

**The parties are encouraged to consider whether the Court should give preliminary instructions to the jury on the substantive issues they will be called upon to decide. Should the parties elect to give preliminary instructions, those substantive instructions should be produced to the Court on the first day of trial.**

The Court directs counsel to use the instructions from the *Manual of Model Jury Instructions for the Ninth Circuit* where applicable. Where California law is to be

applied and the above instructions are not applicable, the Court prefers counsel to use the California Jury Instructions in CACI.  If none of these sources is applicable, counsel are directed to use the instructions in Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions*.  Modifications of instructions from the foregoing sources (or any other form instructions) must specifically state the modification made to the original form instruction and the authority supporting the modification.  **The Court will consider special jury instructions not derived from these sources only in exceptional circumstances.**

Each requested instruction shall be in the format specified by Local Rule 51-2 and shall be set forth in full; be on a separate page with the caption "COURT'S INSTRUCTION NUMBER ___"; be numbered; cover only one subject or principle of law; not repeat principles of law contained in any other requested instructions; and cite the authority for a source of the requested instruction.  In addition to the foregoing, each party shall file with the Courtroom Deputy Clerk (CRD) on the first day of trial a "clean set" of the aforesaid requested duplicate jury instructions.  The "clean set" shall not cite the authority for a source of the requested instruction.

An index page shall accompany all jury instructions submitted to the Court.  The index page shall indicate the following:

- the number of the instruction;
- a brief title of the instruction;
- the source of the instruction and any relevant case citation; and
- the page number of the instruction.

***EXAMPLE:***

| NO. | TITLE | SOURCE | PAGE NO. |
|-----|-------|--------|----------|
| 5 | Evidence for Limited Purpose | 9th Cir. 1.5 | 9 |

During the trial and again before argument, the Court will meet with counsel and

settle the instructions.  Strict adherence to time requirements is necessary for the Court to examine the submissions in advance so that there will be no delay in starting the jury trial, or the final instructions to the jury and the closing arguments of counsel.  **Failure of counsel to strictly follow the provisions of this section may subject the non-complying party and/or its attorney to sanctions and SHALL CONSTITUTE A WAIVER OF JURY TRIAL in all civil cases.**

Joint Statement of the Case and Requests for Voir Dire

At the PTC, the parties shall file their proposed voir dire questions and their joint Statement of the Case which the Court will read to all prospective jurors prior to the commencement of voir dire.  The statement should not be longer than two or three paragraphs, and contain no argument nor an excessive amount of information.  The Statement of the Case is merely to advise the prospective jurors of the general nature of the case, i.e. securities law violations, bank robbery, copyright infringement, etc.

The Court conducts voir dire of all prospective jurors.  The parties need not submit requests for standard voir dire questions such as education, current occupations, marital status, prior jury service, etc., but should include only proposed questions specifically tailored to the parties and issues of the case.

Trial Exhibits

Counsel must deliver <u>two</u> sets of exhibits to the Court Clerk (one for witnesses and one for the Judge) on the morning of the first day of trial as follows:

(i)  <u>Judge's Copy</u>: Counsel are to prepare the Judge's copy of the exhibits by placing them in 3-ring binders.  The holes are to be 3/8" in diameter. The notebooks are to be tabbed down the right side with numeric tabs separating each exhibit.

(ii)  <u>Witnesses' Copy</u>: Counsel are to prepare the Witnesses' copy of the exhibits by placing each exhibit in its own separate manilla folder.  Each manilla folder should have a tab on the right side with the exhibit number written on it.  The manilla folders should be put in a

box in numerical order, with the tabs facing upward.  The exhibits used in this folder should be the original exhibits, and should be tagged with Court-approved tags.  Court-approved exhibit tags can be obtained from the window on the 4th Floor of the U.S Courthouse, Los Angeles, CA 90012.

The exhibits are to be numbered sequentially, with Plaintiff's exhibits numbered 1, 2, 3, etc. and Defendant's exhibits numbered 1000, 1001, 1002, etc. Exhibit numbering must further comply with Local Rule 26-3.

Deposition Transcripts

The complete original transcript of any depositions to be used at trial shall be lodged with the Court on the first day of trial.

First Day of Trial

The Court requires that the following be submitted to the Courtroom Deputy Clerk on the first day of trial (which is **in addition to any other documents** referenced above):

(i)     Judge's copy of exhibits (as described above).

(ii)    Witnesses' copy of exhibits (as described above).

(iii)   Any preliminary instructions the parties have agreed may be read to the jury before the presentation of evidence.

(iv)   Three (3) copies of the exhibit list.

(v)    Three (3) copies of the witness list, which shall include the names of the witness in the approximate order in which they may be called to testify.

All counsel are to meet not later than ten (10) days before trial and to stipulate so far as possible as to foundation, waiver of the best evidence rule, and to those exhibits which may be received into evidence at the start of trial.  The exhibits so received will be noted on the copies of the exhibit lists.

**Any items that have not been admitted into evidence and are left in the**

**courtroom overnight <u>without prior approval</u> will be discarded.**

<u>Real-Time Reporting Requirement</u>

Each party must file with the Court, at the same time counsel lodges the PTCO, a document for the Court Reporter that contains proper names, unusual or scientific terms, or any other foreign or uncommon words that are likely to be used by the parties during the PTC and the Trial.

8. **<u>Settlement</u>**

This Court will not conduct settlement conferences in non-jury cases unless counsel for all parties and their respective clients agree either in writing or on the record. In jury cases, the Court will conduct a settlement conference at the parties' joint request if three conditions exist:

(a) The parties are satisfied that the fact issues in the case will be tried by a jury;

(b) All significant pre-trial rulings which the Court must make have been made; and

(c) The parties desire the Court to conduct the conference, understanding that if settlement fails, the Court will preside over trial of the case.

The parties must file a Status Report regarding settlement at the time they lodge the proposed PTCO. This Report shall not disclose the parties' settlement positions, i.e. the terms of any offers or demands. It shall merely describe the efforts made by the parties to resolve the dispute informally, i.e. the occasions and dates when the parties participated in mediation or settlement conferences. The Status Report shall also include the name and phone number of the Settlement Officer who assisted the parties with their settlement conference.

**<u>Caveat</u>: If counsel fail to file the required Pre-Trial documents or fail to appear at the Pre-Trial Conference and such failure is not otherwise satisfactorily explained to the Court: (a) the cause shall stand dismissed for failure to prosecute**

if such failure occurs on the part of the plaintiff; (b) default judgment shall be entered if such failure occurs on the part of the defendant; or (c) the Court may take such action as it deems appropriate.

**IT IS SO ORDERED.**

September 14, 2021

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

U.S. District Judge Otis D. Wright, II
Schedule of Trial and Pretrial Dates

| CASE NO.: | CV | 21-cv-00758 |
|-----------|-----|-------------|

**PARTIES:** Bella+Canvas, LLC
-v-
Fountain Set Limited, et al

**COMPLAINT FILED:** 01/27/21

**Estimated Length of Trial:** 5-7 days

| TRIAL TYPE: | Jury |
|-------------|------|

<u>SETTLEMENT CHOICE:</u>
Magistrate Judge
Court Mediation Panel
**Outside ADR**

| DATE | MATTER |
|------|--------|
| **09/20/22** | Trial at 9:00 a.m. |
| **09/15/22** | <u>Deadline to File:</u><br>Final Trial Exhibit Stipulation |
| **09/12/22** | Hearing on Motions in Limine at 1:30 p.m. |
| **09/07/22** | <u>Deadline to File:</u><br>Oppositions to Motions in Limine |
| **08/29/22** | Final Pretrial Conference at 1:30 p.m.<br><u>Deadline to File:</u><br>Motions in Limine |
| **08/22/22** | <u>Deadline to File:</u><br>Proposed Pretrial Conference Order<br>Memoranda and Contentions of Fact and Law<br>Joint Witness List<br>Joint Exhibit List and Exhibit Stipulation<br>Proposed Verdict Form(s)<br>Proposed Jury Instructions / Disputed Jury Instructions<br>Proposed Voir Dire Questions<br>Joint Statement of the Case<br>Joint Status Report re: Settlement |
| **07/11/22** | Deadline for Hearing Motions* |
| **07/06/22** | Deadline to Conduct Settlement Conference |
| **06/13/22** | Expert Discovery Cutoff |
| **05/23/22** | Percipient/Fact Discovery Cutoff |
| **12/06/21** | Deadline to Hear Motion to Amend Pleadings or Add Parties<br>(must comply with FRCP 15(a)(2)) |

* This does not apply to motions for class certification, which must be filed within 120 days after service of a pleading purporting
to commence a class action (or, if applicable, within 120 days after service of the Notice of Removal), unless otherwise ordered by the Court.

EXHIBIT 7

NOTE: CHANGES MADE BY THE COURT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELLA + CANVAS, LLC,<br><br>             Plaintiff,<br><br>      v.<br><br>FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive,<br><br>             Defendants. | Case No.  2:21-cv-00758-ODW-MAA<br><br>**ORDER GRANTING JOINT STIPULATION TO AMEND SCHEDULING ORDER** |

Having fully considered the matter in connection with the stipulation by the affected parties, Plaintiff Bella + Canvas, LLC and Defendant Fountain Set Limited, by and through their counsel of record,

IT IS ORDERED that the current deadlines in the scheduling order be continued 90 days, which would result in the following amendments to the scheduling order:

| | |
|---|---|
| Percipient/Fact Discovery Cutoff | September 19, 2022 |
| Expert Discovery Cutoff | October 10, 2022 |
| Last Date to Conduct Settlement Conference | October 31, 2022 |
| Last Date to Hear Motions | November 7, 2022 |

| Deadline to File Pretial Documents | December 19, 2022 |
| Deadline to File Motions in Limine | December 27, 2022 |
| **Final Pretrial Conference** | **December 28, 2022 at 2:30 p.m.** |
| Deadline to File Oppositions to **Motions in Limine** | January 3, 2023 |
| **Hearing on Motions in Limine** | **January 9, 2023 at 1:30 p.m.** |
| Deadline to File Final Trial Exhibit Stipulation | January 12, 2022 |
| **Jury Trial** | **January 17, 2023 at 9:00 a.m** |

Because the Court has amended the scheduling order pursuant to the parties' stipulated request, Defendant's March 14, 2022 Motion to Amend the Scheduling Order, (ECF No. 25), is **DENIED** as **MOOT**.

**IT IS SO ORDERED.**

Dated: March 22, 2022

_____
Otis D. Wright II
United States District Court Judge
Central District of California

# Exhibit C

Andrew P. Holland/Bar No. 224737
Nathaniel H. Lipanovich/Bar No. 292283
Cynthia C. Mullen/Bar No. 292256
Melissa K. Zonne/Bar No. 301581
THOITS LAW
A Professional Corporation
400 Main Street, Suite 250
Los Altos, California 94022
Telephone: (650) 327-4200
Facsimile: (650) 325-5572

Attorneys for Plaintiff and
Counter-defendant
Bella+Canvas, LLC

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELLA+CANVAS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:21-cv-00758-ODW-MAA<br><br>**BELLA+CANVAS, LLC's NOTICE OF TAKING DEPOSITION OF DEFENDANT PURSUANT TO FED. R. CIV. P. 30(b)(6) AND REQUEST FOR PRODUCTION OF DOCUMENTS AT DEPOSITION** |
| FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive<br><br>Counter-claimant,<br><br>v.<br><br>BELLA+CANVAS, LLC,<br><br>Counter-defendant. | |

Case 2:21-cv-00758-ODW-MAA   Document 34   Filed 05/21/20   Page 92 of 276   Page ID #:264

1

BELLA+CANVAS, LLC'S NOTICE OF TAKING DEPOSITION OF DEFENDANT
PURSUANT TO FRCP 30(b)(6) AND REQUEST FOR PRODUCTION OF DOCUMENTS

Case 2:21-cv-00825-ODW-PVC   Document 54   Filed 08/01/23   Page 93 of 276   Page ID #:382

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE THAT NOTICE** that, pursuant to Federal Rules of Civil Procedure, Rule 30(b)(6), Plaintiff Bella+Canvas, LLC ("Plaintiff") will take the deposition of Defendant Fountain Set Limited ("Fountain Set") on **March 11, 2022**, at **9:00 a.m.**, or such other date and time as mutually agreed on by the parties, at Veritext, 707 Wilshire Boulevard, Suite 3500, Los Angeles CA 90017.

The deposition shall be taken before a qualified, certified court reporter or other officer authorized to administer oaths. If, for any other reason, the deposition is not completed on the date above or a date agreed to by the parties, the deposition shall continue day to day thereafter at the same time and place excluding Saturdays, Sundays, and holidays until completed. Plaintiff intends to record testimony at the deposition by stenographic means, videotape, and/or through the instant visual display of testimony.

Pursuant to Rule 30(b)(6), Defendant is directed to designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf, concerning the subject matters listed in the topics below. Defendant shall provide Plaintiff's counsel with written notice at least five (5) business days before the date of the deposition of the name(s) and title(s) of the designee(s) who will testify on Defendant's behalf and shall set forth, for each person designated, the matters on which the person will testify. If Defendant designates more than one such person to testify concerning the subject matters listed in the topics below, then the deposition of such additional designees shall proceed consecutively after the conclusion of each deposition unless otherwise agreed.

## DEFINITIONS

A. The terms "YOU," "YOUR," "YOURS" and "DEFENDANT" shall mean and refer to defendant Fountain Set Limited and any other person or entity

2

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

acting on its behalf, or under its direction or control.

B.     The terms "PLAINTIFF" "BELLA+CANVAS" and "B+C" shall mean plaintiff Bella+Canvas, and any other person or entity acting on its behalf, or under its direction or control.

C.     "SAMPLE FABRIC" means the sample loop terry fabric roll submitted by FSL to B+C on or around May 22, 2020 in the shipment marked as Purchase Order 79047173 for quality approval prior to bulk shipments.

D.     "BULK FABRIC" means the fabric sent by FSL to B+C on or around July 6, 2020 in nine lots marked as Purchase Orders: 79046748, 79047100, 79047101, 79047222, 79047228, 79447229, 79047230, 79047231 and 79047232.

E.     "UNSHIPPED FABRIC" means the bulk fabric that B+C instructed FSL to "hold" from shipping, identified as "CVC Brushed Loop Terry" in Paragraph 14 of FSL's Amended Counterclaim, and marked as Purchase Orders: 79047332, 79047238, 79047340, 79047341, 79047233, 79047500, 79047234, 79047235, 79047236, 79047342, 79047421, 79047423, 79047424, 79047425, 79047426, 79047237, 79047333, 79047422, 79047427, 79047428 and 79048700.

F.     The terms "DOCUMENT" and "DOCUMENTS" are meant to include, without limiting their generality, contracts, agreements, correspondence, telegrams, reports, records, schedules, diaries, invoices, purchase orders, charts, notes, estimates, summaries, inventories, minutes of meetings, memoranda, telephone conference or conversation records, computer files, photographs, and any and all other written, printed, recorded, data or typed matters of whatever kind described in Federal Rules of Evidence, Rule 1001 and Fed. R. Civ. P. 34(a).

G.     The term "COMMUNICATIONS" shall mean and refer to any transmission of information orally, by DOCUMENTS, or by any other medium, including but not limited to any of the following: conversations, discussion, interviews, meetings, and conferences, whether in person, by telephone, or by

Case 5:21-cv-00268-VAP-MRW WWW Document 38 Filed 08/04/21 Page 94 of 276 Page ID #:588

3

some other medium, letters, memoranda, telegrams, and telexes, mailgrams, e-mail, and transmission of information by computer or word processing system.

H. "CONCERNING" means relating to, referring to, describing, evidencing, comprising, constituting, supporting or involving.

I. "PERSON(S)" means individuals, firms, partnerships, corporations, proprietorships, associations, government units, and every other type of organization or entity.

J. "LAWSUIT" means the case entitled *Bella + Canvas, LLC v. Fountain Set Limited* filed in the Central District of California with Case No. 2:21-cv-00758-ODW-MAA.

K. The use of the singular form of any word includes the plural and vice-versa.

L. If YOU contend that any of the following topics is objectionable in whole or in part, YOU shall state with particularity each objection, the basis for it and the categories of information to which the objection applies.

M. If YOU find the meaning of any term in these requests unclear, YOU shall assume a reasonable meaning, state what the assumed meaning is, and respond to the topic according to the assumed meaning.

## TOPICS OF EXAMINATION

1. The negotiation and terms of the agreement between YOU and B+C, as alleged in the complaint and counterclaim in this LAWSUIT.

2. YOUR customary fabric sourcing process.

3. YOUR sourcing of materials used for the SAMPLE FABRIC, including the process by which YOU selected the materials, YOUR purchase of the materials, and the price paid for the materials.

4. The origins of the SAMPLE FABRIC, including the origins of the materials that comprise the fabric and the facility that manufactured the fabric.

4

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

5.     The manufacturing process for the SAMPLE FABRIC, including but not limited to knitting, brushing, shearing, cutting and any treatments.

6.     The yarn spinning process utilized for the SAMPLE FABRIC, as applicable.

7.     The yarn properties, including linear density, of yarn used for the SAMPLE FABRIC.

8.     The facts and circumstances CONCERNING any washing of the SAMPLE FABRIC prior to shipment of the fabric to B+C.

9.     YOUR customary fabric testing process.

10.     Fabric industry testing standards and affiliated testing organizations.

11.     YOUR testing CONCERNING the SAMPLE FABRIC.

12.     YOUR customary process in providing sample fabric and obtaining customer approval.

13.     The sample approval process YOU undertook with B+C CONCERNING the transaction at issue in this LAWSUIT.

14.     YOUR customary shipping procedures for fabric orders.

15.     YOUR customary invoicing and payment procedures for fabric orders.

16.     The facts and circumstances CONCERNING shipping of the SAMPLE FABRIC.

17.     YOUR sourcing of materials used for the BULK FABRIC, including the process by which YOU selected the materials, YOUR purchase of the materials, and the price paid for the materials.

18.     The origins of the BULK FABRIC, including the origins of the materials that comprise the fabric and the facility that manufactured the fabric.

19.     The manufacturing process for the BULK FABRIC, including but not limited to knitting, brushing, shearing, cutting and any treatments.

20.     The yarn spinning process utilized for the BULK FABRIC, as

Case 5:24-cv-00565-SB-WAG Document 123 Filed 08/23/24 Page 96 of 276 Page ID #:708

5

**BELLA+CANVAS, LLC'S NOTICE OF TAKING DEPOSITION OF DEFENDANT PURSUANT TO FRCP 30(b)(6) AND REQUEST FOR PRODUCTION OF DOCUMENTS**

applicable.

21.    The yarn properties, including linear density, of yarn used for the BULK FABRIC.

22.    The facts and circumstances CONCERNING any washing of the BULK FABRIC prior to shipment of the fabric to B+C.

23.    YOUR testing CONCERNING the BULK FABRIC shipment.

24.    The facts and circumstances CONCERNING invoicing and payment for the BULK FABRIC order.

25.    The facts and circumstances CONCERNING shipping of the BULK FABRIC.

26.    YOUR sourcing of materials used for the UNSHIPPED FABRIC, including the process by which YOU selected the materials, YOUR purchase of the materials, and the price paid for the materials.

27.    The origins of the UNSHIPPED FABRIC, including the origins of the materials that comprise the fabric and the facility that manufactured the fabric.

28.    The manufacturing process for the UNSHIPPED FABRIC, including but not limited to knitting, brushing, shearing, cutting and any treatments.

29.    The yarn spinning process utilized for the UNSHIPPED FABRIC, as applicable.

30.    The yarn properties, including linear density, of yarn used for the UNSHIPPED FABRIC.

31.    The facts and circumstances CONCERNING any washing of the BULK FABRIC.

32.    YOUR testing CONCERNING the UNSHIPPED FABRIC.

33.    The facts and circumstances CONCERNING invoicing and payment for the UNSHIPPED FABRIC.

34.    YOUR custom and practice CONCERNING selling fabric for masks.

Case 5:21-cv-00528-ODW-AAM   Document 363   Filed 08/23/22   Page 16 of 32   Page ID #:388

6

35. The factual basis of YOUR counterclaim filed in this LAWSUIT.

36. YOUR calculation of any damages and the factual basis for any such damages in connection with YOUR counterclaim in this LAWSUIT.

37. YOUR responses, including the factual basis for each response, to all written discovery in this LAWSUIT.

38. Any COMMUNICATIONS that YOU have had, orally or in writing, with any PERSON CONCERNING the LAWSUIT.

39. Any COMMUNICATIONS that YOU have had, orally or in writing, with any PERSON CONCERNING the SAMPLE FABRIC.

40. Any COMMUNICATIONS that YOU have had, orally or in writing, with any PERSON CONCERNING the BULK FABRIC.

41. Any COMMUNICATIONS that YOU have had, orally or in writing, with any PERSON CONCERNING the UNSHIPPED FABRIC.

42. The factual bases for YOUR affirmative defenses in this LAWSUIT.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All documents that have not already been produced in this litigation that YOU referred to, relied on or reviewed in preparing any witness for this deposition

Dated: February 24, 2022

**THOITS LAW**

By: _____ */s/ Melissa K. Zonne* _____

**Andrew P. Holland**
**Nathaniel H. Lipanovich**
**Cynthia C. Mullen**
**Melissa K. Zonne**
**Attorneys for Plaintiff and**
**Counter-defendant**
**Bella+Canvas, LLC**

Case 5:21-cv-00128-ODW-MAA Document 34 Filed 02/21/22 Page 88 of 276 Page ID #:570

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

---

**BELLA+CANVAS, LLC'S NOTICE OF TAKING DEPOSITION OF DEFENDANT**
**PURSUANT TO FRCP 30(b)(6) AND REQUEST FOR PRODUCTION OF DOCUMENTS**

## PROOF OF SERVICE

I, Monica Lawal, here declare:

I am over the age of eighteen years and not a party to the foregoing case.  I am employed in the County of Santa Clara, California.  My business address is Thoits Law, 400 Main Street, Suite 250, Los Altos, California 94022.  On February 24, 2022 I caused to be served the below listed document(s) in the manner indicated:

**BELLA+CANVAS, LLC's NOTICE OF TAKING DEPOSITION OF DEFENDANT PURSUANT TO FED. R. CIV. P. 30(b)(6) AND REQUEST FOR PRODUCTION OF DOCUMENTS AT DEPOSITION**

☒  By transmitting said document(s) via electronic mail from the electronic mail account: mlawal@thoits.com to each interested party at the electronic mail address(es) shown in the service list.  No message was received that the electronic mail was undeliverable.

Conte C. Cicala
Glenanne Kennedy
Yvonne Catig
Conte.Cicala@clydeco.us
Glenanne.Kennedy@clydeco.us
Yvonne.Catig@clydeco.us
CLYDE & CO US LLP
Four Embarcadero Center,
Suite 1350
San Francisco, CA 94111

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed at Los Angeles, California on the date first herein above written.

_____
Monica Lawal

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

8

**BELLA+CANVAS, LLC'S NOTICE OF TAKING DEPOSITION OF DEFENDANT PURSUANT TO FRCP 30(b)(6) AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Andrew P. Holland/Bar No. 224737
Nathaniel H. Lipanovich/Bar No. 292283
Cynthia C. Mullen/Bar No. 292256
Melissa K. Zonne/Bar No. 301581
THOITS LAW
A Professional Corporation
400 Main Street, Suite 250
Los Altos, California 94022
Telephone: (650) 327-4200
Facsimile: (650) 325-5572

Attorneys for Plaintiff and
Counter-defendant
Bella+Canvas, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELLA+CANVAS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:21-cv-00758-ODW-MAA<br><br>**BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF CHAPMAN YUEN**<br><br>Date: March 16, 2022<br>Time: 9:00 am<br>Place: Veritext<br>707 Wilshire Boulevard,<br>Suite 3500<br>Los Angeles CA 90017 |
| FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive<br><br>Counter-claimant,<br><br>v.<br><br>BELLA+CANVAS, LLC,<br><br>Counter-defendant. | |

BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF CHAPMAN YUEN

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE THAT NOTICE** that, pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff Bella+Canvas, LLC ("Plaintiff") will take the deposition of Chapman Yuen on **March 16, 2022**, at **9:00 a.m.**, or such other date and time as mutually agreed on by the parties, at Veritext, 707 Wilshire Boulevard, Suite 3500, Los Angeles CA 90017.

The deposition shall be taken before a qualified, certified court reporter or other officer authorized to administer oaths.  If, for any other reason, the deposition is not completed on the date above or a date agreed to by the parties, the deposition shall continue day to day thereafter at the same time and place excluding Saturdays, Sundays, and holidays until completed.  Plaintiff intends to record testimony at the deposition by stenographic means, videotape, and/or through the instant visual display of testimony.

Dated:  March 2, 2022

<div align="center">

**THOITS LAW**

By:      _/s/ Melissa K. Zonne_

**Andrew P. Holland**
**Nathaniel H. Lipanovich**
**Cynthia C. Mullen**
**Melissa K. Zonne**
**Attorneys for Plaintiff and**
**Counter-defendant**
**Bella+Canvas, LLC**

</div>

<div align="left">
THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200
</div>

**BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF CHAPMAN YUEN**

# PROOF OF SERVICE

I, Monica Lawal, here declare:

I am over the age of eighteen years and not a party to the foregoing case.  I am employed in the County of Santa Clara, California.  My business address is Thoits Law, 400 Main Street, Suite 250, Los Altos, California 94022.  On March 2, 2022 I caused to be served the below listed document(s) in the manner indicated:

**BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF CHAPMAN YUEN**

☒   By transmitting said document(s) via electronic mail from the electronic mail account: mlawal@thoits.com to each interested party at the electronic mail address(es) shown in the service list.  No message was received that the electronic mail was undeliverable.

Conte C. Cicala
Glenanne Kennedy
Yvonne Catig
Conte.Cicala@clydeco.us
Glenanne.Kennedy@clydeco.us
Yvonne.Catig@clydeco.us
CLYDE & CO US LLP
Four Embarcadero Center,
Suite 1350
San Francisco, CA 94111

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed at Los Angeles, California on the date first herein above written.

Monica Lawal

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

3

Andrew P. Holland/Bar No. 224737
Nathaniel H. Lipanovich/Bar No. 292283
Cynthia C. Mullen/Bar No. 292256
Melissa K. Zonne/Bar No. 301581
**THOITS LAW**
**A Professional Corporation**
**400 Main Street, Suite 250**
**Los Altos, California 94022**
**Telephone: (650) 327-4200**
**Facsimile: (650) 325-5572**

**Attorneys for Plaintiff and**
**Counter-defendant**
**Bella+Canvas, LLC**

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELLA+CANVAS, LLC, | Case No. 2:21-cv-00758-ODW-MAA |
| Plaintiff, | **BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF TONY KONG** |
| v. | |
| FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive, | Date: March 17, 2022 Time: 9:00 am Place: Veritext 707 Wilshire Boulevard, Suite 3500 Los Angeles CA 90017 |
| Defendants. | |
| FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive | |
| Counter-claimant, | |
| v. | |
| BELLA+CANVAS, LLC, | |
| Counter-defendant. | |

1

**BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF TONY KONG**

Case 3:21-cv-00758-ODM-WVG   Document 34   Filed 05/21/22   Page 104 of 276   Page ID #:276

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE THAT NOTICE** that, pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff Bella+Canvas, LLC ("Plaintiff") will take the deposition of Tony Kong on **March 17, 2022**, at **9:00 a.m.**, or such other date and time as mutually agreed on by the parties, at Veritext, 707 Wilshire Boulevard, Suite 3500, Los Angeles CA 90017.

The deposition shall be taken before a qualified, certified court reporter or other officer authorized to administer oaths. If, for any other reason, the deposition is not completed on the date above or a date agreed to by the parties, the deposition shall continue day to day thereafter at the same time and place excluding Saturdays, Sundays, and holidays until completed. Plaintiff intends to record testimony at the deposition by stenographic means, videotape, and/or through the instant visual display of testimony.

Dated: March 2, 2022

**THOITS LAW**

By: _____/s/ Melissa K. Zonne_____

**Andrew P. Holland**
**Nathaniel H. Lipanovich**
**Cynthia C. Mullen**
**Melissa K. Zonne**
**Attorneys for Plaintiff and**
**Counter-defendant**
**Bella+Canvas, LLC**

2

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

# PROOF OF SERVICE

I, Monica Lawal, here declare:

I am over the age of eighteen years and not a party to the foregoing case.  I am employed in the County of Santa Clara, California.  My business address is Thoits Law, 400 Main Street, Suite 250, Los Altos, California 94022.  On March 2, 2022 I caused to be served the below listed document(s) in the manner indicated:

**BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF TONY KONG**

☒   By transmitting said document(s) via electronic mail from the electronic mail account: mlawal@thoits.com to each interested party at the electronic mail address(es) shown in the service list.  No message was received that the electronic mail was undeliverable.

Conte C. Cicala
Glenanne Kennedy
Yvonne Catig
Conte.Cicala@clydeco.us
Glenanne.Kennedy@clydeco.us
Yvonne.Catig@clydeco.us
CLYDE & CO US LLP
Four Embarcadero Center,
Suite 1350
San Francisco, CA 94111

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed at Los Angeles, California on the date first herein above written.

Monica Lawal

Andrew P. Holland/Bar No. 224737
Nathaniel H. Lipanovich/Bar No. 292283
Cynthia C. Mullen/Bar No. 292256
Melissa K. Zonne/Bar No. 301581
THOITS LAW
A Professional Corporation
400 Main Street, Suite 250
Los Altos, California 94022
Telephone: (650) 327-4200
Facsimile: (650) 325-5572

Attorneys for Plaintiff and
Counter-defendant
Bella+Canvas, LLC

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELLA+CANVAS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:21-cv-00758-ODW-MAA<br><br>**BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF JENNIFER CHU**<br><br>Date: March 18, 2022<br>Time: 9:00 am<br>Place: Veritext<br>    707 Wilshire Boulevard,<br>    Suite 3500<br>    Los Angeles CA 90017 |
| FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive<br><br>Counter-claimant,<br><br>v.<br><br>BELLA+CANVAS, LLC,<br><br>Counter-defendant. | |

BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF JENNIFER CHU

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE THAT NOTICE** that, pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff Bella+Canvas, LLC ("Plaintiff") will take the deposition of Jennifer Chu on **March 18, 2022**, at **9:00 a.m.**, or such other date and time as mutually agreed on by the parties, at Veritext, 707 Wilshire Boulevard, Suite 3500, Los Angeles CA 90017.

The deposition shall be taken before a qualified, certified court reporter or other officer authorized to administer oaths. If, for any other reason, the deposition is not completed on the date above or a date agreed to by the parties, the deposition shall continue day to day thereafter at the same time and place excluding Saturdays, Sundays, and holidays until completed. Plaintiff intends to record testimony at the deposition by stenographic means, videotape, and/or through the instant visual display of testimony.

Dated: March 2, 2022

<div align="center">

**THOITS LAW**

By: _____/s/ Melissa K. Zonne_____

**Andrew P. Holland**
**Nathaniel H. Lipanovich**
**Cynthia C. Mullen**
**Melissa K. Zonne**
**Attorneys for Plaintiff and**
**Counter-defendant**
**Bella+Canvas, LLC**

</div>

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF JENNIFER CHU

# PROOF OF SERVICE

I, Monica Lawal, here declare:

I am over the age of eighteen years and not a party to the foregoing case.  I am employed in the County of Santa Clara, California.  My business address is Thoits Law, 400 Main Street, Suite 250, Los Altos, California 94022.  On March 2, 2022 I caused to be served the below listed document(s) in the manner indicated:

**BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF JENNIFER CHU**

☒ By transmitting said document(s) via electronic mail from the electronic mail account: mlawal@thoits.com to each interested party at the electronic mail address(es) shown in the service list.  No message was received that the electronic mail was undeliverable.

Conte C. Cicala
Glenanne Kennedy
Yvonne Catig
Conte.Cicala@clydeco.us
Glenanne.Kennedy@clydeco.us
Yvonne.Catig@clydeco.us
CLYDE & CO US LLP
Four Embarcadero Center,
Suite 1350
San Francisco, CA 94111

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed at Los Angeles, California on the date first herein above written.

Monica Lawal

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

**BELLA+CANVAS, LLC's NOTICE OF DEPOSITION OF JENNIFER CHU**

# Exhibit D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:21-cv-00758-ODW (MAAx)                         Date:  March 23, 2022

Title      Bella+Canvas, LLC v. Fountain Set Limited et al.

Present:   The Honorable MARIA A. AUDERO, United States Magistrate Judge

| James Munoz | CS 03/23/22 |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorney Present for Plaintiff: | Attorney Present for Defendant: |
|---|---|
| Melissa Zonne | Glenanne Kennedy |

**Proceedings:   TELEPHONIC INFORMAL DISCOVERY CONFERENCE (ECF No. 26)**

Case is called.  Counsel make their appearances.

Before the Court is the parties' first informal discovery conference, which the Court names "IDC 1."  Through IDC 1, Defendants seek an order (1) that Defendant witnesses are not required to travel to Los Angeles for depositions; (2) that Plaintiff must obtain permission from the Hong Kong Competent Authority before taking the deposition of the Defendant witnesses in Hong Kong (in person or virtually); (3) scheduling the depositions of the Plaintiff witnesses; and (4) extending the discovery schedule.

As a threshold matter, the request that this Court extend the discovery schedule is moot given that the parties have filed a Joint Stipulation to Amend Scheduling Order on March 21, 2022 (ECF No. 27), and that stipulation currently is pending before the Honorable Otis D. Wright, the District Judge to whom this case is assigned.  In any event, such a request is not properly brought to the Magistrate Judge to which the case is assigned, and instead must be presented, as the parties have done, to the District Judge.  *See* 28 U.S.C. § 636.

The Court confers with the parties regarding the remaining matters.  The parties are unable to resolve the dispute informally.  Nevertheless, the Court encourages the parties to continue their meet-and-confer efforts to resolve or otherwise narrow the dispute.  In addition, the Court **ORDERS** that either party may file a discovery motion regarding the subject matters of IDC 1 at this time, which motion shall comply with the joint stipulation requirement of Central District of California Local Civil Rule ("Local Rule") 37 and be filed in a timely manner consistent with Judge Wright's discovery cut-off date.  For this purpose, the Court **FINDS** that the parties have satisfied their pre-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:21-cv-00758-ODW (MAAx)                           Date:  March 24, 2022

Title       Bella+Canvas, LLC v. Fountain Set Limited et al.


motion meet-and-confer requirements under Federal Rule of Civil Procedure 37(a), Local Rule 37-1, and this Court's informal discovery dispute resolution process.  *See* Fed R. Civ. P. 37(a); C.D. Cal. L.R. 37-1; http://www.cacd.uscourts.gov/honorable-maria-audero.


It is so ordered.

Time in Court:       0:22

# Exhibit E

**Zonne, Melissa**

| | |
|---|---|
| **From:** | Cicala, Conte <Conte.Cicala@clydeco.us> |
| **Sent:** | Tuesday, May 10, 2022 7:57 PM |
| **To:** | Zonne, Melissa; Kennedy, Glenanne |
| **Cc:** | Lipanovich, Nathaniel; Mullen, Cynthia |
| **Subject:** | RE: B+C v. FSL - Meet and Confer Summary [CC-US2.121580.10254430.FID865373] |

Melissa,

For the avoidance of doubt, we do not agree to what you describe in your email.

We have tried to come to some sort of accommodation regarding witnesses located in Hong Kong despite the serious and ongoing challenges arising out of global pandemic conditions.  We have offered to bring our client's 30(b)(6) designee who is also clearly the most knowledgeable person on the matters at suit, to the U.S., even though it will cost a small fortune and require him to quarantine for at least a week on his return to Hong Kong.  This is despite the presumption that his deposition (indeed, all depositions of FSL witnesses) should take place at FSL's principal place of business.  In exchange for this accommodation, we have asked for you to forego your effort to compel travel of any remaining individual witnesses to the United States.  As to those witnesses, we are happy to produce them in Hong Kong via video connection once you have secured the necessary permissions.

You have responded to our efforts at compromise with gamesmanship, a key aspect of which is your client's continuing and inexplicable refusal to seek permission to conduct the depositions in Hong Kong even though your client is the party that wants to take those depositions.  Had you simply sought permission when this whole process began many months ago, you would likely have received it by now, and all of this would be moot.

Even as you continue to press your effort to have things 100% your way, your client has speciously refused to produce witnesses present in the district claiming "priority," something that does not exist in federal court.

We will of course oppose any motion to compel and will bring a counter-motion to compel production of your witnesses at a time convenient to us.

Based on the below, it appears you are not interested in compromising this issue, which is unfortunate.   If you want to reconsider, and agree to proceed consistent with the above, please let us know.

Very truly yours,

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371



My pronouns are: he / him / his

| | |
|---|---|
| 150 California Street | 15th Floor | San Francisco | CA 94111 | USA | |
| **Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us** | |

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Tuesday, May 10, 2022 7:13 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: B+C v. FSL - Meet and Confer Summary

Hi Glenanne,

Thank you for this summary, but the portion regarding depositions is not reflective of our call or agreement. I am surprised at your reference to the apparently contingent nature of your previous agreement to produce Chapman Yuen for deposition (in the Bay Area) as both FSL's corporate designee and as an individual, as it is the first I have heard of this qualification to that agreement. You did not raise this at the IDC or at either of the two meet-and-confer calls regarding depositions in this matter. In fact, during our call yesterday in which you agreed to produce Chapman, I told you B+C would likely move to compel the other depositions given our discussion, and you did not mention anything related to this proposed agreement.

B+C does not agree to waive its right to compel depositions of any of FSL's witnesses. Please let me know if this changes FSL's agreement to produce Chapman on June 28th. If so, we will be forced to include him, as well as all of the history of our efforts to meet-and-confer on this issue and Judge Audero's conclusions at the IDC, in our motion to compel.

As to discovery, your summary as accurate, but for clarity, you agreed to supplement those discovery items that asked about the source/mills used for the fabric, FSL's knowledge of the purpose of the fabric, and FSL's custom and practice. You also specifically agreed to supplement ROG No. 11. You agreed to provide these by the end of this week.

Finally, as you know, B+C requested an IDC today. We noted in our summary that we are awaiting these supplemental responses, and if they are satisfactory, they will not be pursued as part of the IDC.

Thank you,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Monday, May 9, 2022 4:38 PM
**To:** Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** B+C v. FSL - Meet and Confer Summary

Hi Melissa,

This will memorialize the meet and confer call we had today, in which we discussed both the depositions and outstanding discovery.

Deposition: FSL is willing to bring Chapman Yuen, as FSL's corporate designee, to San Francisco for his deposition on June 28, 2022, at the offices of Clyde & Co. B+C did not take a position as to whether it will move to compel the other FSL witnesses to travel to the US, however, for the avoidance of doubt, this offer is obviously subject to B+C's agreement to forego its efforts to compel the other witnesses to travel to the US. This agreement is further subject to travel restrictions between Hong Kong and the United States remaining

substantially the same as they are now.  Please advise ASAP whether your client will agree to this proposal so that we can move ahead with coordinating travel plans accordingly.

Discovery: FSL maintains its objections for the discovery requests containing terms where the parties do not agree on a definition, including, but not limited to, "objectionable pilling," "wash/care instructions," and/or "reasonable wear and cleaning." FSL also maintains its objections for discovery requests containing the terms, "identical fabric" and "equal quality."   FSL will work on amending the other discovery responses.

IDC: B+C believes that a discovery conference is necessary based on FSL's position that it is maintaining its objections for discovery requests containing terms where the parties do not agree on a definition, such as "objectionable pilling."   FSL intends to use its willingness to compromise and provide further responses as an additional basis to oppose B+C efforts.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

# Exhibit F

China Judicial Assistance Information

**China**
People's Republic of China

Hague/Inter-American

**Party to Hague Service Convention?**
Yes

**Party to Inter-American Convention?**
No

**Party to Hague Evidence Convention?**
Yes

**Service of Process by Mail?**
No

**Party to Hague Apostille Convention?**
No

DISCLAIMER

DISCLAIMER: THE INFORMATION IS PROVIDED FOR GENERAL INFORMATION ONLY AND MAY NOT BE TOTALLY ACCURATE IN A SPECIFIC CASE. QUESTIONS INVOLVING INTERPRETATION OF SPECIFIC FOREIGN LAWS SHOULD BE ADDRESSED TO THE APPROPRIATE FOREIGN AUTHORITIES OR FOREIGN COUNSEL.

ALL **+/−**

Embassies and Consulates    ⊕

List of Attorneys    ⊕

Helpful Links    ⊕

## Service of Process                                    ⊕

## Criminal Matters                                      ⊕

## Obtaining Evidence in Civil and Commercial Matters    ⊕

## Taking Voluntary Depositions of Willing Witnesses     ⊖

China does **not** permit attorneys to take depositions in China for use in foreign courts. Under its Declarations and Reservations to the Hague Evidence Convention and subsequent diplomatic communications, China has indicated that taking depositions, whether voluntary or compelled, and obtaining other evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its Central Authority under the Hague Evidence Convention.  Consular depositions would require permission from the Central Authority on a case by case basis and the Department of State will not authorize the involvement of consular personnel in a deposition without that permission. Participation in such activity could result in the arrest, detention or deportation of the American attorneys and other participants.

## Authentication of Documents                           ⊕

Last Updated: May 1, 2019

Case 2:17-cv-00528-ODW-MAA   Document 34   Filed 05/21/20   Page 119 of 276   Page ID
#:961

# Exhibit G

**Zonne, Melissa**

| | |
|---|---|
| **From:** | Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us> |
| **Sent:** | Wednesday, February 9, 2022 9:30 AM |
| **To:** | Mullen, Cynthia |
| **Cc:** | Cicala, Conte; Lipanovich, Nathaniel; Zonne, Melissa |
| **Subject:** | RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372] |

Hi Cynthia,

Your change of position regarding a blanket admission of document authenticity is noted.

We need to get the RFA and interrogatory situation resolved ASAP.  We remain of the view that Bella + Canvas must immediately admit to the genuineness of the documents attached to Requests for Admission Nos. 18, 19, and 20, which were served on October 26, 2021, and that its denials were improper and not in compliance with its discovery obligations.  While we will be serving additional RFAs with your client's versions of the same documents as a fallback, given the failure of our meet and confer efforts, we are concerned that you may contrive to deny these additional requests as well. Should we not be able to resolve this dispute, our only solution will be to talk to the Magistrate Judge.  Therefore, in conformance with the court's rules, please provide at least three dates and times when you are available to hold the telephonic conference for discovery disputes.

In regards to the depositions in Hong Kong, it looks like we have both found the same language on the State Department website:

> In Hong Kong, consular officers may take voluntary depositions of U.S. citizen witnesses without prior permission from Hong Kong authorities, provided no compulsion is used. If the services of a U.S. consular officer are required to administer an oath to the witness, interpreter and stenographer, such arrangements must be made in advance with the U.S. Consulate General directly. Consistent with Hong Kong's declarations and reservations regarding the Hague Evidence Convention, consular officers are prohibited from taking voluntary depositions of non-U.S. citizen witnesses. As an alternative, if prior permission is granted by Hong Kong's Competent Authority, voluntary depositions may be conducted by commissioners in Hong Kong regardless of the nationality of the witness, provided no compulsion is used.

https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html

In light thereof, it does look as if prior permission from the Hong Kong Competent Authority is required before any depositions can take place.  If you wish to proceed with depositions in Hong Kong, please proceed to obtain permission and keep us posted on your progress.

Even if depositions can proceed under Hong Kong law, we are concerned that current travel and quarantine restrictions will make scheduling difficult.  As such, assuming (as we do) that you will want to proceed with depositions, we do believe it is necessary to seek an amendment to the scheduling order to address this situation.   Do you have an estimate on how long permission will take to obtain?

Additionally, it appears that your client has chosen to designate every document as "confidential" in both productions. The protective order states: "The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Stipulated Protective Order."   Blanket designations are therefore not proper, and more generally we do not understand what renders the specific documents in question "confidential."   Although our intention is to challenge the designation, we wanted to first give you an opportunity to explain your client's position.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Friday, February 4, 2022 2:40 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Glenanne,

We agree with your summary of our meet/confer call re RFAs and Interrogatories.

Your summary re Genuineness of Documents is accurate as well, but we've considered the idea of a stipulation further—our current position is that a global stipulation regarding document authenticity is premature at this time.  We may be willing to enter into something like this later in the case (e.g., before trial), but not at this time.

Regarding depositions, your summary is correct that we would still like to schedule Fountain Set's depositions in March, since the parties will respond to all outstanding discovery in February.  We have conducted further research regarding the issue of prior approval from Hong Kong or Chinese authorities, and the citizenship of the deponents is material to whether approval is required.

Can you please advise whether the following witnesses are Hong Kong citizens or PRC (Mainland China) citizens:
-   Chapman Yuen
-   Tony Kong
-   Jennifer Chu

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com  |  CMullen@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Thursday, February 3, 2022 3:57 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Subject:** Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Cynthia and Melissa,

As discussed, I want to memorialize our meet and confer conversation that took place today to make sure we are all on the same page.

Requests for Admission: In accordance with our meet and confer conference on December 21, 2021, and B+C's position that some of Fountain Set's RFAs were vague and ambiguous, Fountain Set and B+C agreed that Fountain Set would amend those specific RFAs. Fountain Set's amended RFAs were served on January 24, 2022. B+C is taking the position that the amended RFAs are actually 6 new RFAs due to the amount of changes that have been made. B+C will provide its responses to these RFAs within 30 days.

Genuineness of Documents: Consistent with the position taken at the December 21, 2021 meet and confer conference, B+C continues to deny the authenticity of the documents attached the Fountain Set's first set of RFAs based on the existence of highlights and Chinese characters that are not in the original document, and that the documents provided are only a portion of the complete document. B+C does not agree to substitute their version of the documents to Fountain Set's RFAs, and admit to the genuineness of their version. B+C proposes either entering into a global stipulation that all documents produced by either side are authentic, or Fountain Set can draft additional RFAs requesting that B+C admit to the genuineness of B+C's version of the documents.

Interrogatories: Based on B+C's position that the amended RFAs are in fact new RFAs, B+C continues to assert that Fountain Set has exceeded the number of interrogatories permitted. As provided in their responses to the interrogatories, and as discussed during the meet and confer conference on December 21, 2021, B+C asserts that each of Fountain Set's three interrogatories contain 13 separate subparts, and thus each interrogatory should be treated as 13 separate interrogatories, which exceeds the 25 interrogatory limit.

Depositions: Fountain Set requires the responses to their most recent discovery, served on January 24, 2022, before conducting depositions. B+C does not anticipate this being an issue. Additionally, both parties' research demonstrates that permission from Hong Kong's Competent Authority is required before conducting the depositions of Fountain Set's Hong Kong witnesses. B+C will attempt to determine how long such a process may take, and seek an extension from the court should the process prevent depositions from going forward in accordance with the time line provided by the court. B+C requested that we also reach out to Clyde & Co's Hong Kong office to determine whether they have any additional information regarding the process.

Deposition Schedule: The agreed upon timeline for scheduling depositions is still March 2022. B+C requests that the Fountain Set witnesses be deposed prior to the B+C witnesses, as B+C made their request before Fountain Set. B+C is not available to conduct depositions the last week of March.

Requests for Production: B+C anticipates serving an additional production, which is in response to Fountain Set's Request for Production, in the near future and possibly as early as February 4, 2022.

Please let me know if you agree with this summary of our conversation, or if you have any changes. Also, in the event that we cannot resolve some of these discovery issues, please provide your availability for a discovery conference with the magistrate judge.

Thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

  355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

# Exhibit H

# Hong Kong Travel Advisory

Travel Advisory          Hong Kong - Level 4: Do
April 25, 2022          Not Travel                    

Reconsider travel to the People's Republic of China
(PRC) due to a**rbitrary enforcement of local laws and
COVID-19-related restrictions.** Do not travel to the
PRC's Hong Kong Special Administrative Region (SAR),
Jilin province, and Shanghai municipality due to
**COVID-19-related restrictions**, **including the risk of
parents and children being separated**. Reconsider
travel to the PRC's Hong Kong SAR due to **arbitrary
enforcement of local laws.**

On April 11, 2022, the Department ordered the
departure of non-emergency U.S. government
employees and all family members from the Consulate
General Shanghai consular district due to a surge in
COVID-19 cases and the impact of restrictions related
to the PRC's response.

Read the Department of State's COVID-19 page before
you plan any international travel.

The Centers for Disease Control and Prevention (CDC)
has determined the PRC has a low level of COVID-19
and a high level of COVID-19 for Hong Kong. Visit the
CDC page for the latest Travel Health Information ⬀
related to your travel.

The zero-tolerance approach to COVID-19 by the PRC
and Hong Kong governments severely impacts travel
and access to public services. All travelers should
prepare to quarantine at a government-designated
location for a minimum of 14 days upon arrival. While
in quarantine, health authorities will test travelers as
often as daily for COVID-19 and will not permit
travelers to leave their rooms. Travelers who test
positive during this quarantine time will be transferred
to a government-designated medical or quarantine
facility. Standards of care, accommodations, testing,
and treatments may differ considerably from standards
in the United States. Even after completing quarantine

in the United States. Even after completing quarantine on-arrival, travelers to the PRC and Hong Kong may face additional quarantines and mandatory testing as well as movement and access restrictions, including access to medical services and public transportation. In some cases, children in Hong Kong and the PRC who test positive have been separated from their parents and kept in isolation until they meet local hospital discharge requirements.

Travelers within the PRC and Hong Kong may be subject to mandatory testing. In areas with confirmed COVID-19 cases, restrictions may include being confined to home or moved to a government-designated quarantine facility or hospital. Visit the [Embassy's COVID-19](#) page for more information on COVID-19 and related restrictions and conditions in the PRC, or the [Consulate General Hong Kong's COVID-19](#) page for information on the COVID-19 situation in Hong Kong as testing and travel requirements frequently change.

**Country Summary:** The PRC government arbitrarily enforces local laws, including carrying out arbitrary and wrongful detentions and using exit bans on U.S. citizens and citizens of other countries without due process of law. The PRC government uses arbitrary detention and exit bans to:

- compel individuals to participate in PRC government investigations,

- pressure family members to return to the PRC from abroad,

- influence PRC authorities to resolve civil disputes in favor of PRC citizens, and

- gain bargaining leverage over foreign governments.

In most cases, U.S. citizens only become aware of an exit ban when they attempt to depart the PRC, and there is no reliable mechanism or legal process to find out how long the ban might continue or to contest it in a court of law.

U.S. citizens traveling or residing in the PRC, including

the Hong Kong SAR, may be detained without access
to U.S. consular services or information about their
alleged crime. U.S. citizens may be subjected to
prolonged interrogations and extended detention
without due process of law.

Foreigners in the PRC, including but not limited to
businesspeople, former foreign government personnel,
and journalists from Western countries have been
arbitrarily interrogated and detained by PRC officials
for alleged violations of PRC national security laws.
The PRC has also threatened, interrogated, detained,
and expelled U.S. citizens living and working in the
PRC.

Security personnel may detain and/or deport U.S.
citizens for sending private electronic messages
critical of the PRC government.

The PRC government does not recognize dual
nationality. U.S.-PRC citizens and U.S. citizens of
Chinese heritage may be subject to additional scrutiny
and harassment, and the PRC government may prevent
the U.S. Embassy from providing consular services.

### XINJIANG UYGHUR AUTONOMOUS REGION and TIBET AUTONOMOUS REGION

Extra security measures, such as security checks and
increased levels of police presence, are common in the
Xinjiang Uyghur and Tibet Autonomous Regions.
Authorities may impose curfews and travel restrictions
on short notice.

### HONG KONG SPECIAL ADMINISTRATIVE REGION

Since the imposition of the National Security Law on
June 30, 2020, the PRC unilaterally and arbitrarily
exercises police and security power in the Hong Kong
SAR. The PRC has demonstrated an intention to use
this authority to target a broad range of activities it
defines as acts of secession, subversion, terrorism,
and collusion with foreign entities. The National
Security Law also covers offenses committed by non-
Hong Kong residents or organizations outside of Hong
Kong, which could subject U.S. citizens who have been
publicly critical of the PRC to a heightened risk of

publicly critical of the PRC to a heightened risk of arrest, detention, expulsion, or prosecution. PRC security forces, including the new Office for Safeguarding National Security, now operate in the Hong Kong SAR and are not subject to oversight by the Hong Kong judiciary.

**Demonstrations**: Participating in demonstrations or any other activities that authorities interpret as constituting an act of secession, subversion, terrorism, or collusion with a foreign country could result in criminal charges. On June 30, 2020, as part of its color-coded system of warning flags, the Hong Kong police unveiled a new purple flag, which warns protesters that shouting slogans or carrying banners with an intent prohibited by the law could now bring criminal charges. U.S. citizens are strongly cautioned to be aware of their surroundings and avoid demonstrations.

**Propaganda**: A PRC propaganda campaign has falsely accused individuals, including U.S. citizens, of fomenting unrest in the Hong Kong SAR. In some cases, the campaign has published their personal information, resulting in threats of violence on social media.

Read the country information page for the PRC and the country information page for the Hong Kong SAR for additional information on travel.

If you decide to travel to the PRC, including the Hong Kong SAR:

- Read the Department of State's COVID-19 page before planning any international travel, read the Embassy COVID-19 page for the PRC and the Consulate General COVID-19 page for the Hong Kong SAR for country-specific COVID-19 information.

- For the Hong Kong SAR, monitor local media, local transportations sites and apps like MTR Mobile⌁ or CitybusNWFB⌁, and the Hong Kong International Airport website⌁ for updates.

- Avoid the areas of the demonstrations.

- Avoid the areas of the demonstrations.

- Exercise caution if you are in the vicinity of large gatherings or protests.

- Avoid taking photographs of protesters or police without permission.

- Be aware of your surroundings.

- Keep a low profile.

- For the Hong Kong SAR, review your Hong Kong flight status with your airline or at the Hong Kong International Airport website.⧉

- Enter the PRC on your U.S. passport with a valid PRC visa and keep it with you.

- If you are arrested or detained, ask police or prison officials to notify the U.S. Embassy or the nearest consulate immediately.

- If you plan to enter North Korea, read the North Korea Travel Advisory. Travelers should note that U.S. passports are not valid for travel to, in, or through North Korea, unless they are specially validated by the Department of State.

- Enroll in the Smart Traveler Enrollment Program (STEP) to receive alerts and make it easier to locate you in an emergency.

- Follow the Department of State on Facebook⧉ and Twitter⧉. Follow the U.S. Embassy on Twitter⧉, WeChat, and Weibo⧉. Follow U.S. Consulate General Hong Kong on Facebook⧉ and Twitter.⧉

- Review the Country Security Report for the PRC and the Hong Kong SAR.

- Prepare a contingency plan for emergency situations. Review the Traveler's Checklist.

*Last Update: Reissued with updates to health information.*

# Exhibit I



The Government of
the Hong Kong Special Administrative Region



同心抗疫 Together, We Fight the Virus!

Latest Epidemic Situation of 5th Wave          Analysis on Death Cases

हिन्दी | नेपाली | اردو | ไทย | Bahasa Indonesia | Tagalog | සිංහල භාෂාව | বাংলা ভাষা | Tiếng Việt

繁  简  Text Size  Search keyword(s) 🔍

# Inbound Travel

## Points to Note for Quarantine for Inbound Travellers



Important Health Advice for Home Confines
**All personal items such as toothbrush and toothpaste, rinsing cup, towels, must be separately placed from those of other family members**



- Points to Note Before Arrival at Hong Kong
- Quarantine Measures for Inbound Travellers
  - Persons who have only stayed in the Mainland, Macao or Taiwan
  - Persons who have stayed in overseas places
- Documentary Requirements for Boarding
  - Negative result proof of a PCR-based nucleic acid test for COVID-19
  - Confirmation of room reservation in a Designated Quarantine Hotel (DQH)
  - Documentary proof for completion of vaccination (if applicable)
- Boarding and Quarantine Arrangements for Accompanied Children
- Arrangements on Testing for Persons Arriving at Hong Kong
- Transit/ Transfer passengers
- FAQs
- More Information

## Points to Note Before Arrival at Hong Kong

- Before departing to Hong Kong, please pay attention to the relevant boarding, quarantine and testing arrangements. For details, refer to the information on this page and this **Concise Guide**.
- All **transit/transfer passengers from overseas places and Taiwan to present negative result proof of nucleic acid test when boarding a flight for Hong Kong**.
- Regarding Designated Quarantine Hotels (DQH), please refer to this **webpage**.
- Health Declaration System
  - All inbound travellers are required to submit health declaration form.
  - Travellers can submit the form online (**https://www.chp.gov.hk/hdf/**).
  - After submitting **the online form**, the system will generate a QR code. Please save the result and show it to the border control point staff upon entering Hong Kong. The QR code is valid for 48 hours for arrival via Hong Kong International Airport (For arrival via land control points, the QR code is valid for 24 hours).
  - Currently, paper health declaration form is not applicable to travellers arriving in Hong Kong via the Hong Kong International Airport, Passenger Clearance Building of Hong Kong-Zhuhai-Macao Bridge Hong Kong Port and Passenger Terminal Building of Shenzhen Bay Control Point. If travellers have problems with the online form (e.g.no applicable mobile device), they may seek assistance from staff of the Department of Health upon arrival in Hong Kong.
- Please **click here** to read the relevant FAQs for more information on the arrangement for declaration of non-local COVID-19 vaccination record.
- Arrivals holding a visa with insufficient validity period will be denied entry.

## Quarantine Measures for Inbound Travellers

In view of the latest development in global and local COVID-19 epidemic situations, the Government has implemented various border control measures for inbound travellers in order to build an anti-epidemic barrier to prevent the importation of cases.

For other most updated information, please also refer to **daily press releases**.

The boarding and quarantine arrangements applicable to a person arriving at Hong Kong depend on:

- If exemption of quarantine arrangements are applicable to the person arriving at Hong Kong, please refer to relevant webpage
  - **Return2hk Scheme**
  - **Come2hk Scheme**
  - **Exemption from Compulsory Quarantine Arrangement for inbound travellers from the Mainland, Macao or Taiwan**
  - **Exemption from Compulsory Quarantine Arrangement for inbound travellers from foreign places**
- What places the person arriving at Hong Kong has stayed in on the day of boarding for/arrival at Hong Kong, or the 14 days before that day
- Whether the person arriving at Hong Kong is fully vaccinated

  *Who are considered fully-vaccinated?*

  - **Fully vaccinated** means the suggested dosage has been administered in accordance with the **"List of COVID-19 Vaccines Recognised for Specified Purposes"** and relevant guidelines of a COVID-19 vaccination course at least 14 days prior to arrival at Hong Kong.
  - **Recovered persons:** For travellers who have recovered from previous COVID-19 infection, they will be required to receive one dose of a COVID-19 vaccine at least 14 days prior to arrival at Hong Kong in order to be considered as **fully vaccinated**.
  - **Persons aged 12 to 17:** those who have received one dose of Comirnaty vaccine at least 14 days ago are deemed to have complied with the requirements of completing the COVID-19 vaccination course under boarding and quarantine requirements.

  *How are 14 days counted?*

  - The 14th day after a person has completed a COVID-19 vaccination course is counted by taking the next day after the person received all of the recommended dose(s) of COVID-19 vaccine as the 1st day.
  - For example, for a person who has not been infected with COVID-19 previously and received the last recommended dose of COVID-19 vaccine on 10 May 2021, the "1st day" would be 11 May and the "14th day" would be 24 May. This person can be considered "**fully vaccinated**" starting on 24 May.

  *Exceptional cases who are allowed to board*

- The following categories of persons who have stayed in any place outside China during the relevant period are exceptionally allowed to board (despite not regarded as **fully vaccinated**) –
  (i) those who are unfit for vaccination due to health reasons with relevant proof issued by a medical practitioner; or

  (ii) those who have received one dose of **recognised COVID-19 vaccine** and hold a **recognised vaccination record** but certified by a medical practitioner that they were unfit to receive the second dose of COVID-19 vaccine because of health reasons after receiving the first dose of vaccine, or

  (iii) children aged 11 or below accompanied for boarding and compulsory quarantine by relevant persons who comply with the boarding requirements.

  *Which vaccines are recognised?*

  - **Click here for the "List of COVID-19 Vaccines Recognised for Specified Purposes"**

  *Additional requirements for persons who have stayed in any place outside China*

- They need to hold a recognised vaccination record. **Click here for the "List of Places of Issuance of Recognised Vaccination Records"** (applicable to travellers who have stayed in any place outside China arriving at Hong Kong)
- Please also refer to **documentary proof for completion of vaccination**

Please refer to this **Concise Guide**.

All inbound travellers must pass temperature checks and perform health declaration upon arrival. Those found with symptoms will be referred to the Department of Health for further handling.

Following the end of compulsory quarantine, some inbound travellers will be required to undergo **self-monitoring** in the subsequent 7 days and compulsory testing(s) in accordance with the relevant regulations, depending on the place(s) they have stayed during the relevant period, as well as whether they are **fully vaccinated**. Please refer to the tables below and the **"Arrangements on Testing for Persons Arriving at Hong Kong" section** for more information.

## Persons who have only stayed in the Mainland, Macao or Taiwan

If only stayed in Mainland China or Macao

| Persons applicable: | Hong Kong residents and non-Hong Kong residents who have only stayed in the Mainland or Macao on the day of boarding for/arrival at Hong Kong or during the 14 days before that day (including those arriving at Hong Kong via land boundary control points or the airport), and who | |
|---|---|---|
| | have **not been** **fully vaccinated** | have been **fully vaccinated** |
| Document requirement: | a. (If i. arriving via airport and ii. having stayed in Mainland (outside Guangdong Province) or Macao on the day of boarding for/arrival at Hong Kong or during the 14 days before that day) Negative result proof of a PCR-based nucleic acid test with specimen collected within the 3 days prior to, or on the day of the scheduled day of arrival at HK @ | a. (If i. arriving via airport and ii. having stayed in Mainland (outside Guangdong Province) or Macao on the day of boarding for/arrival at Hong Kong or during the 14 days before that day) Negative result proof of a PCR-based nucleic acid test with specimen collected within the 3 days prior to, or on the day of the scheduled day of arrival at HK @ <br> b. **Vaccination record** |

| | Hong Kong residents and non-Hong Kong residents who have only stayed in the Mainland or Macao on the day of boarding for/arrival at Hong Kong or during the 14 days before that day (including those arriving at Hong Kong via land boundary control points or the airport), and who | |
|---|---|---|
| Persons applicable: | | |
| | have **not been** **fully vaccinated** | have been **fully vaccinated** |
| Quarantine requirement: | a. Undergo compulsory quarantine for 14 days at designated places (home, hotel# or other accommodation);<br>b. Undergo 2 tests during compulsory quarantine(Days 5 and 12 of arrival at Hong Kong)[3] | a. Undergo compulsory quarantine for 7 days at designated places (home, hotel# or other accommodation);<br>b. Undergo 1 test during compulsory quarantine(Day 5 of arrival at Hong Kong)[3];<br>c. **Self-monitoring** in the subsequent 7 days; and<br>d. Compulsory testing on the 12th day of arrival at HK[3] |

# Designated Quarantine Hotel (DQH) is not applicable for persons who have stayed in Mainland China or Macao only. Please choose other hotels for quarantine.

@The testing institutions for the tests must be:

a. mutually recognised by the governments of Hong Kong and Guangdong / Hong Kong and Macao (medical or testing institutions in the Guangdong Province*; **medical or testing institutions in Macao**; **medical or testing institutions in Hong Kong**); or
b. recognised by the National Health Commission of the People's Republic of China (the list can be accessed via the State Council Portal Mini Program (「國務院客戶端」小程序) on nucleic acid testing organisation enquiry (「核酸檢測機構查詢」) function).
   * i) All medical testing institutions in Guangdong Province that can upload negative RT-PCR nucleic acid test results to "Yuekang code" (粵康碼) system;
   or
   ii) The medical testing institutions in Guangdong Province that are recognised by the National Health Commission and can be accessed on nucleic acid testing organisation enquiry (「核酸檢測機構查詢」) function via State Council Mini Portal (「國務院客戶端」小程序), or that are listed on its official website (**http://bmfw.www.gov.cn/hsjcjgcx/index.html**)

[3]PCR-based nucleic acid testing by professional swab sampling at a **Community Testing Centre (CTC)** or **mobile specimen collection stations** (for free), or at **recognised local medical testing institutions** (self-paid). Persons who are under compulsory quarantine should travel to the tests by point-to-point transport as far as possible. For inbound travellers from the Mainland or Macao who arrived at Hong Kong before April 1, if they have undergone compulsory testing on the fifth and 12th days of arrival at Hong Kong in accordance with the above arrangements, they would be considered to have complied with the compulsory testing requirements.

If stayed at Taiwan

| | Hong Kong residents and non-Hong Kong residents who have stayed in Taiwan on the day of boarding for/arrival in Hong Kong or during the 14 days before that day (excluding those who have stayed in any place outside China) – | |
|---|---|---|
| Persons applicable: | | |
| | have not been **fully vaccinated** | have been **fully vaccinated**[11] |

| Persons applicable: | Hong Kong residents and non-Hong Kong residents who have stayed in Taiwan on the day of boarding for/arrival in Hong Kong or during the 14 days before that day (excluding those who have stayed in any place outside China) – | |
|---|---|---|
| | **have not been <u>fully vaccinated</u>** | **have been <u>fully vaccinated</u>**[(11)] |
| Boarding requirement: | a. **<u>Negative result proof of a PCR-based nucleic acid test for COVID-19</u>** within **48 hours**[(2)] (including documentary proofs that the lab is ISO15189 accredited or Government recognised); and<br>b. **<u>Confirmation of room reservation</u>** in a DQH for not less than 14 nights | a. **<u>Negative result proof of a PCR-based nucleic acid test for COVID-19</u>** within **48 hours**[(2)] (including documentary proofs that the lab is ISO15189 accredited or Government recognised);<br>b. **<u>Confirmation of room reservation</u>** for 7 nights (if opting for early discharge from compulsory quarantine upon fulfilment of relevant conditions) or 14 nights (will not be arranged for early discharge from compulsory quarantine) starting on the day of arrival at Hong Kong in a designated quarantine hotel (DQH); and<br>c. **<u>Vaccination record</u>** |
| Quarantine requirement: | a. Basic requirement is to undergo compulsory quarantine for 14 days in a DQH;<br>b. Undergo daily rapid antigen tests (RATs) during compulsory quarantine and PCR-based nucleic acid tests on the 5th and 12th days; and<br>c. Can leave the DQH upon confirmation of negative results from the PCR-based nucleic acid test conducted on the 12th day and the RAT conducted on the 14th day | a. Basic requirement is to undergo compulsory quarantine for 14 days in a DQH;<br>b. Undergo daily rapid antigen tests (RATs) during compulsory quarantine and PCR-based nucleic acid tests on the 5th and 12th days; and<br><br>If opting for early discharge from compulsory quarantine upon fulfilment of relevant conditions (must hold a 7-night DQH room reservation):<br>c. Can be discharged earlier from quarantine and must leave the DQH if **<u>Fully vaccinated</u>** and/or being **<u>accompanied children aged 11 or below</u>**, and the results of the PCR test conducted on the 5th day and the RATs conducted on the 6th and 7th days are all negative;<br>d. **<u>Self-monitoring</u>** for the subsequent 7 days;<br>e. Undergo compulsory PCR-based nucleic acid testing by professional swab sampling on the 12th day of arrival at Hong Kong in a **<u>Community Testing Centre (CTC)</u>** or **<u>mobile specimen collection stations</u>** (for free), or at **<u>recognised local medical testing institutions</u>** (self-paid)<br><br>If not opting for early discharge from compulsory quarantine (must hold a 14-night DQH room reservation):<br>c. Can leave the DQH upon confirmation of negative results from the PCR-based nucleic acid test conducted on the 12th day and the RAT conducted on the 14th day |

[(2)] The sample for which was taken from the relevant traveller within 48 hours before the scheduled time of departure of the specified aircraft ("specified aircraft" means a civil aviation aircraft that arrives at, or is about to arrive at Hong Kong, i.e. the aircraft which is directly landing Hong Kong)

[(11)] Persons (Hong Kong residents and non-Hong Kong residents) who are **<u>fully-vaccinated</u>** and hold a **<u>vaccination record</u>**, as well as **<u>children aged 11 or below accompanied by them</u>**, can board for Hong Kong.

In addition, persons who have stayed in Taiwan during the relevant period are exceptionally allowed to board (despite not regarded as **fully vaccinated**) if they (i) are unfit for vaccination due to health reasons with relevant proof issued by a medical practitioner; or (ii) have received one dose of recognised COVID-19 vaccine and hold a vaccination record but certified by a medical practitioner that they were unfit to receive the second dose of COVID-19 vaccine because of health reasons after receiving the first dose of vaccine. These two types of persons are subject to compulsory quarantine for 14 days in a DQH, and cannot opt for early discharge from compulsory quarantine upon fulfilment of relevant conditions.

Other Points to Note

- The DH will issue compulsory quarantine orders to relevant inbound persons. The relevant government department will also arrange electronic wristbands for them (except for those undergo compulsory quarantine in Designated Quarantine Hotels). According to quarantine orders, they shall neither leave their place of quarantine nor move around during the entire quarantine period. Leaving the designated place of quarantine will be regarded as a breach of the quarantine order and constitutes a criminal offence. Offenders are subject to a maximum imprisonment for six months and fine of $25,000.
- For details on Return2hk Scheme for Hong Kong residents, please refer to this **webpage**.
- For details on Come2hk Scheme for non-Hong Kong residents, please refer to this **webpage**.
- Inbound travellers who have been to any **at-risk places temporarily inapplicable under the Return2hk / Come2hk Scheme** in the past 14 days do not fulfill the relevant specified conditions under the Return2hk / Come2hk Scheme and will be subject to compulsory quarantine.
- For arrangement on exempted persons under "Compulsory Quarantine of Certain Persons Arriving at Hong Kong Regulation" (Cap. 599C), please refer to this **webpage**.

## Persons who have stayed in overseas places

Flight schedule depends on a variety of factors, including weather, air crew availability, logistics issues, business considerations, etc., please check with the relevant airport authorities and/or airlines for latest information of flight schedule.

| | **All places outside China** |
|---|---|
| Persons applicable: | Hong Kong residents and non-Hong Kong residents who have stayed in any place outside China during the relevant period (the day of boarding for/arrival at Hong Kong or during the 14 days before that day) and who - <br><br> Have been **Fully vaccinated**[10] and hold **recognised vaccination record** |
| Boarding requirement: | a. Present **recognised vaccination record**; <br> b. **Negative result proof of a PCR-based nucleic acid test for COVID-19** within **48 hours**[2] (including documentary proofs that the lab is ISO15189 accredited or Government recognised); and <br> c. **Confirmation of room reservation** for 7 nights (if opting for early discharge from compulsory quarantine upon fulfilment of relevant conditions) or 14 nights (will not be arranged for early discharge from compulsory quarantine) starting on the day of arrival at Hong Kong in a designated quarantine hotel (DQH) |

places outside China

| | |
|---|---|
| Quarantine requirement: | a. Basic requirement is to undergo compulsory quarantine for 14 days in a DQH;<br>b. Undergo daily rapid antigen tests (RATs) during compulsory quarantine and PCR-based nucleic acid tests on the 5th and 12th days; and<br><br>If opting for early discharge from compulsory quarantine upon fulfilment of relevant conditions (must hold a 7-night DQH room reservation):<br>c. Can be discharged earlier from quarantine and must leave the DQH if **Fully vaccinated** and/or being **accompanied children aged 11 or below**, and the results of the PCR test conducted on the 5th day and the RATs conducted on the 6th and 7th days are all negative;<br>d. **Self-monitoring** for the subsequent 7 days;<br>e. Undergo compulsory PCR-based nucleic acid testing by professional swab sampling on the 12th day of arrival at Hong Kong in a **Community Testing Centre (CTC)** or **mobile specimen collection stations** (for free), or at **recognised local medical testing institutions** (self-paid)<br><br>If not opting for early discharge from compulsory quarantine (must hold a 14-night DQH room reservation):<br>c. Can leave the DQH upon confirmation of negative results from the PCR-based nucleic acid test conducted on the 12th day and the RAT conducted on the 14th day |

The days of a person's arrival at Hong Kong is counted with the day of arrival at Hong Kong as the first day. For example, for a person who arrives at Hong Kong on April 1, he or she shall undergo the 12th-day test on April 12.

[2] The sample for which was taken from the relevant traveller within 48 hours before the scheduled time of departure of the specified aircraft ("specified aircraft" means a civil aviation aircraft that arrives at, or is about to arrive at Hong Kong, i.e. the aircraft which is directly landing Hong Kong)

[10] Relevant persons who are **Fully vaccinated** and hold a **recognised vaccination record**, as well as **children aged 11 or below accompanied by them**, can board for Hong Kong.

In addition, persons who have stayed in any place outside China during the relevant period are exceptionally allowed to board (despite not regarded as **fully vaccinated**) if they (i) are unfit for vaccination due to health reasons with relevant proof issued by a medical practitioner; or (ii) have received one dose of recognised COVID-19 vaccine and hold a recognised vaccination record but certified by a medical practitioner that they were unfit to receive the second dose of COVID-19 vaccine because of health reasons after receiving the first dose of vaccine. The relevant medical certificate must indicate the relevant health reasons in English or Chinese. These two types of persons are subject to compulsory quarantine for 14 days in a DQH, and cannot opt for early discharge from compulsory quarantine upon fulfilment of relevant conditions.

Other points to note

- Travellers to Hong Kong should note that even they have conducted a COVID-19 nucleic acid test before returning to Hong Kong, for prudence sake, they will still be mandated to undergo testing for COVID-19 at the DH's Temporary Specimen Collection Centre and wait for their test results at a designated location pursuant to the Prevention and Control of Disease Ordinance (Cap. 599).
- If their test results are negative, they will be allowed to go to the hotel for which they made the reservation to continue the compulsory quarantine until completion.
- If their results are positive, the travellers will be transferred for suitable isolation and treatment. Persons tested positive after arrival and have no obvious symptoms and no need for medical support will be transferred to a community isolation facility hotel and be issued an isolation order. Their isolation and discharge arrangements will be the same as those for local positive cases under isolation, i.e. for those who are fully vaccinated, they can be considered to have completed isolation upon receiving negative results from the RATs conducted on the sixth day and the seventh day after being tested positive. Travellers have to bear their own cost for cancellation of hotel reservation or other relevant charges as a consequence of the positive test result.
- The DH will issue compulsory quarantine orders to these returnees. According to quarantine orders, they shall neither leave their hotel rooms nor move around in the hotel during the entire quarantine period. Leaving designated rooms will be regarded as a breach of the quarantine order and constitutes a criminal offence. Offenders are subject to a maximum imprisonment for six months and fine of $25,000.
- Regarding foreign domestic helpers coming to work in Hong Kong, please refer to this **webpage**.
- For arrangement on exempted persons under "Compulsory Quarantine of Certain Persons Arriving at Hong Kong from Foreign Places Regulation" (Cap. 599E), please refer to this **webpage**.

# Boarding Requirements

**Relevant Mainland (except Guangdong) or Macao travellers arriving at Hong Kong International Airport**

Anyone who boards a flight for Hong Kong from the Mainland(except Guangdong) or Macao must present prior to boarding a flight for Hong Kong a negative result proof of a PCR-based nucleic acid test for COVID-19 the sample for which was taken on the day or within three days prior to the scheduled time of arrival. Persons who fail to present the relevant negative test result will not be allowed to board for Hong Kong.

**Relevant Taiwan or overseas travellers arriving at Hong Kong International Airport**

Anyone who boards a flight for Hong Kong if having stayed in Taiwan or overseas places, has to comply with 3 basic requirements, including:

a. Present prior to boarding (i) a negative result proof of a polymerase chain reaction (PCR)-based nucleic acid test for COVID-19 the sample for which was taken within 48 hours before the scheduled time of departure of the aircraft and (ii) confirmation of room reservation at a designated quarantine hotel for the required compulsory quarantine duration;
b. Subject to "test and hold" arrangement at the airport upon arrival in Hong Kong; and
c. Upon confirmation of negative test result, board the designated transport arranged by the Government to go to a DQH to undergo compulsory quarantine.

**The following persons will not be affected by the above boarding requirements:**

a. A person who is in transit/transfer in Hong Kong, except **all passengers who board a flight from overseas places and Taiwan for transit/transfer at Hong Kong**;
b. A person exempted by the Chief Secretary for Administration from compulsory quarantine under section 4(1) of either the Compulsory Quarantine of Certain Persons Arriving at Hong Kong Regulation (Cap. 599C) or Compulsory Quarantine of Persons Arriving at Hong Kong from Foreign Places Regulation (Cap. 599E); and
c. A person who is a Hong Kong resident, and who has commenced his/her journey in Hong Kong and is deemed as an inadmissible person by the authorities of the place of his/her destination;

If any conditions specified by the Secretary for Food and Health is not met in relation to any relevant traveller on the conveyance, each of the operators of the conveyance commits an offence, and is liable on conviction to the maximum penalty of a fine at level 5 ($50,000) and imprisonment for six months. If an operator fails to comply with a requirement to provide information, or knowingly or recklessly provides any information that is false or misleading in a material particular, he or she is liable on conviction to the maximum penalty of a fine at level 5 ($50,000) and imprisonment for six months.

As for travellers, if a traveller coming to Hong Kong fails to comply with a requirement to provide information, or knowingly or recklessly provides any information that is false or misleading in a material particular, he or she is liable on conviction to the maximum penalty of a fine at level 3 ($10,000) and imprisonment for six months.

The operator of the specified aircraft should submit to the Department of Health (DH) before the specified aircraft arrives at Hong Kong a document in a form specified by the DH confirming that each relevant traveller has, before being checked-in for the flight to Hong Kong on that aircraft, produced for boarding on the aircraft the documentary proof to show that the above conditions are met (**template**). The above-mentioned inbound travellers who fail to produce the relevant specified documents will be refused to board the flight.

The Government requires that all airlines must stringently enforce the boarding requirements for inbound travellers, so as to reduce the risk of importation of cases as far as practicable, and has imposed the flight suspension mechanism against specific non-compliant routes based on the established triggering criteria, the passenger flights of that route from the relevant airline from the same origin place will be prohibited from landing in Hong Kong (**List of flight suspension**).

# Negative result proof of a PCR-based nucleic acid test for COVID-19

**Relevant Mainland (except Guangdong) or Macao travellers arriving at Hong Kong International Airport**

Negative result proof of PCR-based nucleic acid test for COVID-19 should include:

1. the relevant Mainland or Macao traveller underwent a test for the coronavirus disease 2019 (COVID-19) the sample for which was taken from the person on the day of arrival at Hong Kong or within the three days before the scheduled day of arrival at Hong Kong;

2. the test conducted on the sample is a PCR-based nucleic acid test for COVID-19;

3. the result of the test is the relevant Mainland or Macao traveller was tested negative for COVID-19; and

4. the test was conducted by a laboratory / testing institution that is

    a. mutually recognised by the governments of Hong Kong and Guangdong / Hong Kong and Macao (medical or testing institutions in the Guangdong Province*; **medical or testing institutions in Macao**; **medical or testing institutions in Hong Kong**); or

    b. recognised by the National Health Commission of the People's Republic of China (the list can be accessed via the State Council Portal Mini Program (「國務院客戶端」小程序) on nucleic acid testing organisation enquiry (「核酸檢測機構查詢」) function).

    * i) All medical testing institutions in Guangdong Province that can upload negative RT-PCR nucleic acid test results to "Yuekang code" (粤康碼) system;

    or

    ii) The medical testing institutions in Guangdong Province that are recognised by the National Health Commission and can be accessed on nucleic acid testing organisation enquiry (「核酸檢測機構查詢」) function via State Council Mini Portal (「國務院客戶端」小程序), or that are listed on its official website (**http://bmfw.www.gov.cn/hsjcjgcx/index.html**)

**Relevant Taiwan or overseas travellers arriving at Hong Kong International Airport**

Negative result proof of PCR-based nucleic acid test for COVID-19 should include:

    a. A test report in English or Chinese issued by a laboratory or healthcare institution bearing the name of the relevant traveller matching that in his or her valid travel document to show that:

        1. the relevant traveller underwent a nucleic acid test for COVID-19, the sample for which was taken from the relevant traveller within 48 hours before the scheduled time of departure of the specified aircraft ("specified aircraft" means a civil aviation aircraft that arrives at, or is about to arrive at Hong Kong, i.e. the aircraft which is directly landing Hong Kong);

        2. the test conducted on the sample is a polymerase chain reaction-based nucleic acid test for COVID-19; and

        3. the relevant traveller was tested negative for COVID-19; and

    b. If the relevant report is not in English or Chinese or does not contain all of the above information, a written confirmation in English or Chinese issued by the laboratory or healthcare institution bearing the name of the relevant traveller matching that in his or her valid travel document and setting out all of the above information. The said written confirmation should be presented together with the test report; and

    c. Documentary proof in English or Chinese to show that the laboratory or healthcare institution is ISO 15189 accredited or is recognised or approved by the relevant authority of the government of the place in which the laboratory or healthcare institution is located.

Note: The Government specifies that the relevant test must be a polymerase chain reaction (PCR)-based nucleic acid test. Results of tests conducted using other testing platforms (e.g. reverse transcription loop-mediated isothermal amplification, RT-LAMP) cannot be considered to have fulfilled the relevant specified boarding requirement.

## Confirmation of room reservation in a Designated Quarantine Hotel (DQH)

Confirmation of room reservation in a Designated Quarantine Hotel (DQH) should include:

    a. A confirmation in Chinese or English of room reservation in a DQH in Hong Kong for the required compulsory quarantine duration, i.e 7 nights (if eligible and plan on early discharge upon fulfilling the relevant conditions) [13] or 14 nights (will not be arranged for early discharge from compulsory quarantine) [13], starting from the day of scheduled date of arrival in Hong Kong.

    b. A Designated Quarantine Hotel (DQH) refers to Hotels/Guesthouses as published on the Government's thematic webpage on Designated Hotels for Quarantine (**www.designatedhotel.gov.hk**)

Example: if a traveller is subject to 14-day compulsory quarantine, regardless of his/her time of arrival, the relevant hotel reservation is required to cover for 15 Days 14 Nights starting on the scheduled day of arrival. If his/her scheduled date of arrival at Hong Kong is 01 Janurary (Day 1), his/her hotel reservation should start from 01 January until 15 January (i.e. Check-in date on 01 January and check-out date on 15 January).

[13] Inbound travellers who plan on early discharge from compulsory quarantine upon fulfilling the relevant conditions must hold at boarding a confirmation of a seven-night room reservation in a DQH. For inbound travellers who hold a confirmation of a seven-night room reservation in a DQH, the quarantine order issued to them will indicate that upon fulfilling the above criteria for early discharge from compulsory quarantine, they will be considered to have completed their compulsory quarantine, and they must then depart the DQH.

Persons who hold a confirmation of a 14-night room reservation in a DQH will not be arranged for early discharge from compulsory quarantine, and must stay in the DQH room for completing the 14-day compulsory quarantine. They can only leave the DQH upon confirmation of negative results of the PCR-based nucleic acid test conducted on the 12th day and the RAT conducted on the 14th day.

## Documentary proof for completion of vaccination (if applicable)

**Click here for the "List of COVID-19 Vaccines Recognised for Specified Purposes"**

**Recognised vaccination record** (applicable to travellers who have stayed in any place outside China arriving at Hong Kong) should include:

a. A vaccination record issued by Hong Kong, or an authority or recognised institution of a place on the **"List of Places of Issuance of Recognised Vaccination Records"**, bearing the name of the relevant vaccinated traveller matching that in his/her valid travel document to show in Chinese or English that:
   1. the relevant traveller has received dose(s) of COVID-19 vaccine and the date on which the last dose was administered; and
   2. the name of the vaccine administered or the name of the marketing authorisation holder or manufacturer of the vaccine; and
b. A written confirmation in English or Chinese issued by the healthcare institution or a relevant authority of the government of the place where the vaccine was administered, bearing the name of the relevant vaccinated traveller matching that in his/her valid travel document and setting out all of the above information if the vaccination record is not in English or Chinese or does not contain all of the above information. The said written confirmation should be presented together with the vaccination record.

**Vaccination record** (for all other relevant persons arriving at Hong Kong ) should include:

a. A vaccination record in English or Chinese issued by Hong Kong or by relevant authorities or recognised institutions of the places where the vaccines were administered, bearing the name of the relevant vaccinated traveller matching that in his/her valid travel document to show that:
   1. the relevant traveller has received dose(s) of COVID-19 vaccine and the date on which the last dose was administered; and
   2. the name of the vaccine administered or the name of the marketing authorisation holder or manufacturer of the vaccine; and
b. A written confirmation in English or Chinese issued by relevant authorities or recognised institutions of the places where the vaccines were administered, bearing the name of the relevant vaccinated traveller matching that in his/her valid travel document and setting out all of the above information if the vaccination record is not in English or Chinese or does not contain all of the above information. The said written confirmation should be presented together with the vaccination record.

## Boarding and Quarantine Arrangements for Accompanied Children

For persons who have stayed in any place outside China, Hong Kong residents and non-Hong Kong residents who have been **fully vaccinated** and hold a recognised vaccination record may board flights for Hong Kong. For children aged 11 or below who are yet to be vaccinated, they can also board flights for Hong Kong if they are accompanied by relevant persons who fulfilled the boarding requirements. These accompanied children must undergo compulsory quarantine together with the accompanying person(s) in designated quarantine hotels (DQHs), and undergo compulsory testing. The accompanied children also need to present a **negative result proof of a PCR-based nucleic acid test for COVID-19** within **48 hours**[2] (including documentary proofs that the lab is ISO15189 accredited or Government recognised). They have the same quarantine arrangements as the accompanying person(s).

For persons who have stayed in Taiwan, children aged 11 or below who are yet to be vaccinated can board flights for Hong Kong if they are accompanied by Hong Kong residents or non-Hong Kong residents who fulfilled the boarding requirements. These accompanied children must undergo compulsory quarantine together with the accompanying person(s) in designated quarantine hotels (DQHs), and undergo compulsory testing. The accompanied children also need to present a **negative result proof of a PCR-based nucleic acid test for COVID-19** within **48 hours**[2] (including documentary proofs that the lab is ISO15189 accredited or Government recognised). They have the same quarantine arrangements as the accompanying person(s).

## Testing Arrangements for Persons Arriving at Hong Kong

Persons who arrive in Hong Kong have to undergo testing specified in the relevant Quarantine requirement above. Please also refer to the **distribution and collection points on deep throat saliva / stool bottle collection points** as appropriate.

Persons conducted the compulsory testing must keep the SMS notifications containing results of the test and the relevant medical certificate (if applicable) for checking when a prescribed officer requires the persons to provide information about their undergoing the specified test.

**Persons who arrive at Hong Kong and who have only stayed in the Mainland or Macao on the day of arrival at Hong Kong or during the 14 days before that day**

The relevant persons must travel directly to and from their place of quarantine or isolation and the Community Testing Centres / recognised local medical testing institutions. If public transport is to be engaged, only taxis can be used and the person concerned cannot disembark on the way. The person concerned should also make a note of the car plate numbers of the vehicles taken and retain those records for 30 days from the day of transport, or scan the "LeaveHomeSafe" QR code on the taxis using the "LeaveHomeSafe" mobile application on his or her mobile phone.

For persons returning under the Return2hk Scheme, please refer to **this webpage**.

For persons returning under the Come2hk Scheme, please refer to **this webpage**.

**Persons who have stayed in places outside China**

Those arriving Hong Kong via the Hong Kong International Airport will be required to proceed to the Temporary Specimen Collection Centre (TSCC) set up in the restricted area of the Airport for COVID-19 testing immediately upon arrival. They will need to stay at the TSCC to wait for test results. Regarding Quarantine Procedures for entry via Airport, please refer to **this webpage**.

There will be testing for persons subject to quarantine at designated quarantine hotels. According to the epidemic development and needs, the Government will arrange extra virus testing for persons subject to quarantine at hotels. Young children are required to submit stool samples during their quarantine period. (Note: Charged door-to-door specimen collection service is not applicable to persons undergoing compulsory quarantine at the Designated Quarantine Hotel.)

Other points to note

- According to the epidemic development and needs, the Government will arrange other rounds of virus testing for inbound travellers. Please refer to relevant instructions for details.
- Any enquiries on compulsory testing arrangements may be addressed to the hotline at 6275 6901 which operates from 9am to 6pm.
- Pursuant to the Prevention and Control of Disease (Compulsory Testing for Certain Persons) Regulation (Cap. 599J), the Government published in the Gazette a compulsory testing notice, requiring relevant inbound travellers to undergo COVID-19 test(s) on specified day(s) after arrival. Any person who fails to comply with the testing notice commits an offence.
- Besides facing prosecution, persons under compulsory quarantine at home who fail to conduct testing according to compulsory testing requirements may be required to complete the rest of the quarantine period at a designated quarantine centre.

## Transit/ Transfer passengers

| Persons applicable: | **All passengers who board a flight from overseas places and Taiwan for transit/transfer at Hong Kong** |
|---|---|
| Boarding requirement: | a. **Negative result proof of a PCR-based nucleic acid test for COVID-19** within **48 hours**[2] (including documentary proofs that the lab is ISO15189 accredited or Government recognised); |

## FAQs

Please refer to this **webpage**.

## More Information

| ❶ **Health Monitoring Checklist for Arriving Travellers** |
|---|
| **Return2hk** |
| **Come2hk** |
| ❶ **Exemption from Compulsory Quarantine Arrangement for inbound travellers from the Mainland, Macao or Taiwan** |
| ❶ **Exemption from Compulsory Quarantine Arrangement for inbound travellers from foreign places** |

❓ **Testing and self-isolation arrangement for air crew, sea crew and other exempted persons - Frequently Asked Questions**

⚠ **How to Report Breaches of Quarantine Orders**

ℹ **"StayHomeSafe" Mobile App User Guide**

Infection Control Advice for Person under Compulsory Home Quarantine

Note for Compulsory Quarantine

Fact Sheet for Coronavirus Disease 2019

Health Advice on Prevention of Pneumonia and Respiratory Tract Infection

Hand Hygiene

Use Mask Properly

Social Distancing

Keep Clean Be Healthy

Points to Note for Household Members

Wellcation - 21-day Quarantine Wellness Kit / 14-day Quarantine Wellness Kit

 2020 ©  |  Sitemap  |  Important Notices  |  Privacy Policy  |  Contact Us  | Last revision date: 12 May 2022

Case 2:17-cv-00128-WQM-MAA   Document 34   Filed 05/12/22   Page 143 of 276   Page ID
#:315

# Exhibit J

 

# Non-U.S. Citizen, Non-U.S. Immigrants: Travel to and from the United States

Updated May 3, 2022

 As a result of a court order, effective immediately and as of April 18, 2022, CDC's January 29, 2021 Order requiring masks on public transportation conveyances and at transportation hubs is no longer in effect. Therefore, CDC will not enforce the Order. CDC continues to recommend that people wear masks in indoor public transportation settings at this time.

## What You Need to Know

- Make sure you are up to date with your COVID-19 vaccines before you travel internationally.
- You **must** be fully vaccinated with the primary series of an accepted COVID-19 vaccine to travel to the United States by plane if you are a non-U.S. citizen, non-U.S. immigrant (not a U.S. citizen, U.S. national, lawful permanent resident, or traveling to the United States on an immigrant visa). Only limited exceptions apply.
- You are required to show a negative COVID-19 test result or documentation of recovery from COVID-19 before you travel to the United States by air.
- Wearing a mask over your nose and mouth is recommended in indoor areas of public transportation (including airplanes) and indoors in U.S. transportation hubs (including airports).

## U.S. Citizens, U.S. Nationals, Lawful Permanent Residents, and Immigrants

If you are a U.S. citizen, U.S. national, lawful permanent resident, or immigrant, visit U.S. Citizens, U.S. Nationals, Lawful Permanent Residents, and Immigrants: Travel to and from the United States for requirements before arriving in the United States.

 ## Travel Assessment

A tool to help you know the requirements to board a flight to the United States.

Get Started

Make sure you are up to date with your COVID-19 vaccines before you travel internationally. Getting vaccinated is still the best way to protect yourself from severe disease and slow the spread of COVID-19. People who are not up to date with their COVID-19 vaccines should follow additional recommendations and after travel.

If you are a non-U.S. citizen, non-U.S. immigrant and not fully vaccinated, you will not be allowed to board a flight to the United States. Only limited exceptions apply to the requirement to show proof of vaccination. A booster dose is not needed to meet this requirement.

## Are You Fully Vaccinated for Travel to the United States?

You are considered fully vaccinated:

- 2 weeks (14 days) after your dose of an accepted single-dose vaccine
- 2 weeks (14 days) after your second dose of an accepted 2-dose series
- 2 weeks (14 days) after you received the full series of an accepted COVID-19 vaccine (not placebo) in a clinical trial
- 2 weeks (14 days) after you received 2 doses of any "mix-and-match" combination of accepted COVID-19 vaccines administered at least 17 days apart*

If you don't meet these requirements, you are NOT considered fully vaccinated to travel to the United States. A booster dose is not needed to meet this requirement.

A person who has received only one dose of an accepted 2-dose series and has recovered from COVID-19 does not meet this definition, and therefore is NOT considered fully vaccinated for travel to the United States.

*CDC has not recommended the use of mix-and-match COVID-19 vaccine primary series. However, such strategies are increasingly common in many countries outside of the United States. Therefore, for the purpose of interpreting vaccination records for travel to the United States, CDC will accept combinations of accepted COVID-19 vaccines.

# Before You Leave the United States

**Make sure to plan ahead:**

- Check the current COVID-19 situation at your destination.
- Follow all requirements of transportation operators (such as airlines, cruise lines, buses) as well as any requirements at your destination ⧉ , whether traveling by air, land, or sea, including mask wearing, proof of vaccination, testing, or quarantine. Requirements may differ from U.S. requirements. If you do not follow your destination's requirements, you may be denied entry and required to return to the United States.
- If you have a medical condition or are taking medication that weakens your immune system, you might NOT be fully protected even if you are up to date with your COVID-19 vaccines. Talk to your healthcare provider about your risk before travel and consider delaying travel to areas with high COVID-19 levels. Even after vaccination, you may need to continue taking all precautions.

 ## Testing

**RECOMMENDED**

- Consider getting tested for current infection with a viral test as close to the time of departure as possible (no more than 3 days) **before** travel.
  - Find a U.S. COVID-19 testing location near you ⧉ .

**Do NOT travel if...**

- You have COVID-19 symptoms, even if you recovered from COVID-19 within the past 90 days or are up to date with your COVID-19 vaccines.
- You tested positive for COVID-19.
  - Do not travel until a full 10 days after your symptoms started or the date your positive test was taken if you had no symptoms.
- You are waiting for results of a COVID-19 test.
  - If your test comes back positive while you are at your destination, you will need to isolate and postpone your return until it's safe for you to travel. Your travel companions may need to quarantine.
- You had close contact with a person with COVID-19 and **are recommended to** quarantine.
  - Do not travel until a full 5 days after your last close contact with the person with COVID-19. It is best to avoid travel for a full 10 days after your last exposure.

travel for a full 10 days after your last exposure.
- If you must travel during days 6 through 10 after your last exposure:
  - **Get tested** at least 5 days after your last close contact. Make sure your test result is negative and you remain without **symptoms** before traveling. If you don't get tested, avoid travel until a full 10 days after your last close contact with a person with COVID-19.
  - Properly wear a **well-fitting mask** when you are around others for the entire duration of travel during days 6 through 10. If you are unable to wear a mask, you should not travel during days 6 through 10.

**If you had close contact with a person with COVID-19 but are NOT recommended to quarantine...**

- **Get tested** at least 5 days after your last close contact. Make sure your test result is negative and you remain without **symptoms** before traveling.
  - If you had confirmed COVID-19 within the past 90 days, you do NOT need to get tested, but you should still follow all other recommendations (including getting tested if you develop COVID-19 symptoms).
- If you travel during the 10 days after your last exposure, properly wear a **well-fitting mask** when you are around others for the entire duration of travel during the 10 days. If you are unable to wear a mask, you should not travel during the 10 days.

# During Travel



## Protect Yourself and Others

**RECOMMENDED**

- Everyone aged 2 years or older—including passengers and workers— **should properly wear** a well-fitting **mask or respirator** in indoor areas of public transportation (such as airplanes, trains, buses, ferries) and transportation hubs (such as airports, stations, and seaports), especially in locations that are crowded or poorly ventilated such as airport jetways.
- Travelers 2 years of age or older should also wear well-fitting masks in indoor public places if
  - They are in an area where there is a **high level of COVID-19**
  - They or someone they live with has a weakened immune system or is at increased risk for severe disease.
- Some **masks and respirators** offer higher levels of protection than others, and some may be harder to tolerate or wear consistently than others. Wear the most protective mask you can, **that fits well**, and that you will wear consistently while traveling.
- You may choose to properly wear a **well-fitting mask** outdoors in crowded settings and for activities with close contact with others, particularly if you or someone you live with has a weakened immune system or is at increased risk for severe disease.
- **Wash your hands** often with soap and water or use **hand sanitizer** with at least 60% alcohol.
- Follow all recommendations and requirements at your **destination** ⧉ .
- Follow **recommendations for protecting yourself and others**.

# Before You Travel to the United States

## Land Travel

For information about COVID-19 requirements for land travel, visit the U.S. Department of Homeland Security's **Fact Sheet: Guidance for Travelers to Enter the U.S. at Land Ports of Entry and Ferry Terminals.** ⧉



## Proof of Vaccination

**REQUIRED**

**Air Travel:** All non-U.S. citizen, non-U.S. immigrants traveling to the United States by air are required to show proof of being fully vaccinated against COVID-19. Only limited exceptions apply. Learn more about this requirement.



## Testing – ALL Travelers

REQUIRED

Before boarding a flight to the United States, you are required to show a negative COVID-19 test result taken no more than 1 day before travel. There is also an option for people who have documented recovery from COVID-19 in the past 90 days.

Children under 2 years old do not need to test.

Learn more about these requirements.



## Contact Information – ALL Travelers

REQUIRED

All air passengers to the United States will also be required to provide contact information to airlines before boarding flights to the United States. This strengthens a travel process already in place to rapidly identify and contact people in the U.S. who may have been exposed to a communicable disease, such as COVID-19. Access to travelers' contact information will allow U.S. federal, state, and local health departments, and agencies to share appropriate health and public health information necessary to help keep the public safe.



## Documentation

REQUIRED

As a reminder, be sure to have your required documents, such as your passport and any visa or other entry/residency documentation. All Visa Waiver Program travelers must have a valid, approved Electronic System for Travel Authorization (ESTA) for travel to the United States. The United States Government recommends travelers log in and review their ESTA status in advance of travel. Visit https://esta.cbp.dhs.gov ☐ for more information.

# After Arrival in the United States

You might have been exposed to COVID-19 on your travels, whether you traveled by air, land, or sea. You might feel well and not have any symptoms, but you can still be infected and spread the virus to others.



## If you are **not** fully vaccinated and allowed to travel to the United States by air through an exception

You may be **required** to attest to some or all of the following measures, depending on the type of exception. For more information see Requirement for Proof of COVID-19 Vaccination for Air Passengers.

REQUIRED

- Get tested for current infection with a viral test 3-5 days after arrival, unless you have documentation of having recovered from COVID-19 in the past 90 days.
- Stay at home or in your hotel room and self-quarantine for a full 7 days, even if you test negative, unless you have documentation of having recovered from COVID-19 in the past 90 days.
- Isolate if your test result is positive or you develop COVID-19 symptoms.
- If you intend to stay in the United States for 60 days or longer, become fully vaccinated against COVID-19 within 60 days of arriving in the United States or as soon as medically appropriate.



## If you are fully vaccinated but not up to date with your vaccines

RECOMMENDED

- Stay home and self-quarantine for a full **5 days** after travel.
- Follow additional recommendations below for ALL travelers.



## ALL Travelers (Regardless of Vaccination Status)

RECOMMENDED

- Get tested for current infection with a COVID-19 viral test 3-5 days after arrival.
  - Find a U.S. COVID-19 testing location near you ⧉ .
- Self-monitor for COVID-19 symptoms; isolate and get tested if you develop symptoms.
- Follow all state, tribal, local and territorial recommendations or requirements after arrival.

> ### If Your Test Result is Positive or You Develop COVID-19 Symptoms
>
> Isolate yourself to protect others from getting infected. Learn what to do and when it is safe to be around others.



## If You Recovered from COVID-19 Recently

If you recovered from a documented COVID-19 infection **within the past 90 days (regardless of vaccination status),** you do NOT need to get a test 3-5 days after arrival. You also do not need to self-quarantine after arrival. If you develop COVID-19 symptoms after arrival, isolate immediately and get tested. Continue to isolate until you know the results. Wear a well-fitting mask around others.

## More Information

Required Proof of COVID-19 Vaccination

Requirement for Proof of Negative COVID-19 Test or Documentation of Recovery from COVID-19

Frequently Asked Questions about Travel and COVID-19

COVID-19 Travel Recommendations by Destination

Health Information for International Destinations

Domestic Travel During COVID-19

US State Department Travel Site ⧉ : Safety and security information by country, passport, visas, and entry/exit requirements

US Customs and Border Protection ⧉ : Information about what you can and cannot bring back from your trip abroad

US Embassies ⧉ : In-country contacts

Transportation Security Administration (TSA) ⧉ : Information about flying

Last Updated May 3, 2022

EXHIBIT
K

1   CONTE C. CICALA, State Bar No. 173554
    conte.cicala@clydeco.us
2   CLYDE & CO US LLP
    150 California Street, 15th Floor
3   San Francisco, California 94111
    Telephone: (415) 365-9800
4   Facsimile:  (415) 365-9801

5   Attorneys for Defendant
    FOUNTAIN SET LIMITED

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  BELLA + CANVAS, LLC, | Case No.  2:21-cv-00758-ODW-MAA |
| 12          Plaintiff, | DECLARATION OF GLENANNE KENNEDY IN OPPOSITION TO |
| 13          v. | PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF DEFENDANT |
| 14  FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through | FOUNDANT SET LIMITED'S WITNESSES |
| 15  20, inclusive, | |
| 16          Defendants. | |

17

18          **DECLARATION OF GLENANNE KENNEDY**

19   I, Glenanne Kennedy, declare:

20      1.  I am an attorney duly licensed to practice in the state of California. I am

21   employed with the law firm of Clyde & Co US, LLP, counsel of record in the

22   present action for Defendant Fountain Set Limited. I submit this declaration in

23   opposition to Plaintiff's Motion to Compel Depositions of Defendant Fountain Set

24   Limited's Witnesses. This declaration is based on my own person knowledge, and I

25   would testify competently to the matters contained here.

26      2.  Plaintiff seeks to depose Defendant's corporate designee and four non-party

27   defendant employee witnesses, Chapman Yuen, Tony Kong, Schuman Jiang, and

28   Jennifer Chu.

3.  Schuman Jiang is no longer employed by Defendant Fountain Set Limited.

4.  On August 26, 2021, counsel for Plaintiff and Defendant conducted a Rule 26 conference, in which they discussed the depositions of both Plaintiff and Defendant witnesses, and whether permissions were necessary to conduct the depositions of Defendant witnesses in Hong Kong.

5.  During the August 26, 2021 conference, Defendant's counsel offered reach out to Clyde & Co's Hong Kong office to assist Plaintiff's counsel in determining what permissions were required to conduct the depositions of the Hong Kong witnesses, which were reported back to Plaintiff's counsel on September 13, 2021. This communication included a link to the relevant page on the State Department's website, which Plaintiff's counsel read as requiring permission from the Hong Kong Competent authority to conduct depositions of non-US citizens in Hong Kong. A true and corrected copy of this email is attached hereto as Exhibit 1.

6.  The same language from the State Department's website was cited as the basis for requiring permission from the Hong Kong Competent Authority to conduct depositions of the Hong Kong witnesses almost five months later. A true and correct copy of this email is attached hereto as Exhibit 2.

7.  Defendant's counsel went so far as to send information to Plaintiff's counsel on how to contact the Chief Secretary for Administration directly to obtain the necessary information on how to obtain the permission of the Competent Authority. A true and correct copy of this email is attached hereto as Exhibit 3.

8.  On March 1, 2022, Plaintiff's counsel then changed tactics and began asserting, for the first time, that it is the obligation of the Defendant to request permission from the Hong Kong Competent Authority. A true and correct copy of this email is attached hereto as Exhibit 4.

9.  Defendant's counsel immediately indicated their disagreement that it is the Defendant who must obtain permission from the Hong Kong Competent Authority, and instead clearly asserted that Plaintiff, as the noticing party, must obtain the

requisite permission for the depositions it seeks to hold. A true and correct copy of this email is attached hereto as Exhibit 5.

10. On January 13, 2022, Plaintiff's counsel requested a call to discuss noticing depositions of Defendant and its employees. A true and correct copy of this email is attached hereto as Exhibit 6.

11. On March 2, 2022, Plaintiff's counsel served Notices of Depositions for Chapman Yuen, Tony Kong, and Jennifer Chu to take place in Los Angeles on March 16, March 17, and March 18, 2022, respectively.  Exhibit C, Deposition Notices to FSL Witnesses.

12. On March 8, 2022, Defendant served objections to the Notice of Depositions for Chapman Yuen, Tony Kong, and Jennifer Chu. These objections included for all three people, among other things, that the witness has not been subpoenaed and had not agreed to be deposed in the United States or at all. A true and correct copy of objections is attached hereto as Exhibit 7.

13. On January 21, 2022, Defendant's counsel requested availability of Plaintiff and its employees for depositions. A true and correct coy of this email is attached hereto as Exhibit 8.

14. On February 22, 2022, Defendant's counsel served Notices of Depositions for Jessica Roberti, Daisy Almalel, Dhinakaram Rajaram, Aaron Jackson, and Marco DeGeorge to take place in Los Angeles, with the option for them to take place remotely, on March 7, 8, 9 and 10, respectively. A true and correct copy of the Notices of Deposition are attached hereto as Exhibit 9.

15. Plaintiff has consistently taken the position that Defendant and its witnesses must be deposed prior to the depositions of Plaintiff and its witnesses due to Plaintiff having made its request for depositions first. A true and correct copy of this email chain is attached hereto as Exhibit 10.

16. On March 23, 2022, the parties participated in an Informal Discovery Conference on the deposition dispute with Judge Audero, who indicated that it was

not reasonable to delay the case indefinitely, but encouraged the parties to continue their meet and confer efforts to resolve or otherwise narrow the dispute. Exhibit D, Civil Minutes from the Informal Discovery Conference [Docket No. 30], March 23, 2022.

17. At the time of the Informal Discovery Conference, non-Hong Kong residents were prohibited from entering Hong Kong and direct flights from the United States to Hong Kong were banned. Additionally, there was a mandatory 14-day quarantine requirement for Hong Kong residents re-entering Hong Kong.

18. On April 22, 2022, counsel engaged in additional meet and confer efforts regarding the deposition issue. By that time, travel restrictions had relaxed, reducing the mandatory quarantine upon returning to Hong Kong to 7 days. Based thereon, Defendant's counsel agreed to discuss with Defendant the possibility and potential timeline of when the witnesses could come to California for depositions, focusing on the first two weeks of June. At that time, we also requested that the depositions take place at Defendant's counsel's office in San Francisco. A true and correct copy of this email is attached hereto as Exhibit 11.

19. Defendant's counsel never agreed to produce any of the witnesses in California, but rather continued to work with Defendant to determine how, when, and who was able to travel to California in the middle of continuously changing circumstances arising from the pandemic and COVID-19 variants. A true and correct copy of the email is attached hereto as Exhibit 12.

20. Additionally, Plaintiff's counsel never agreed that the depositions could take place in San Francisco. Rather, Plaintiff's counsel indicated that it was only willing to schedule depositions in Los Angeles or at Plaintiff's counsel's office in Los Altos. A true and correct copy of this email is attached hereto as Exhibit 13.

21. On May 9, 2022, counsel met and conferred an additional time regarding the deposition dispute. A follow up email was provided the same day to memorialize the conversation, during which Defendant's counsel provided that Defendant was

willing to bring the corporate designee, Chapman Yuen, to San Francisco for a deposition on June 28, 2022, but that the non-party employee witnesses would not travel to the United States for a deposition. Plaintiff's counsel indicated that it was unsure whether it would seek to compel the depositions of the remaining witnesses. The follow-up email clarified, for the avoidance of doubt, that Defendant's willingness to bring its corporate designee to San Francisco was part of a compromise agreement and subject to Plaintiff's agreement not to seek to compel the additional witnesses to travel to the United States. A true and correct copy of this email is attached hereto as Exhibit 14.

22. In response to Defendant's attempt to find a compromise agreement with Plaintiff, Plaintiff adamantly refused to compromise and indicated that if Defendant did not rescind its compromise offer and agree to produce all of Defendant's witnesses in the United States, it would be forced to file a Motion to Compel the depositions of all of Defendant's witnesses. A true and correct copy of this email is attached hereto as Exhibit 15.

23. Defendant's counsel tried, once again, to seek a compromise agreement with Plaintiff's counsel, focusing on the fact that Defendant was offering to voluntarily bring its most knowledgeable witness across the world during a global pandemic, despite the presumption this his deposition should take place in Hong Kong at Defendant's principal place of business, and in exchange for this accommodation was asking Plaintiff to forego compelling the travel of the remaining Defendant witnesses. Additionally, we offered to produce the remaining witnesses in Hong Kong for a video deposition once the necessary permissions have been secured. A true and correct copy of this email is attached hereto as Exhibit 16.

24. Defendant's counsel did not receive a response to their reiterated request for compromise.

25. Attached as Exhibit O to the Joint Stipulation is a true and correct copy of the website page address: https://hk.usconsulate.gov/u-s-citizen-services/covid-19-information/.

26. Attached as Exhibit P to the Joint Stipulation is a true and correct copy of the website page address: https://www.news.gov.hk/eng/2022/03/20220327/20220327_130106_721.html.

27. Attached as Exhibit Q to the Joint Stipulation is a true and correct copy of the website page address: https://www.thestandard.com.hk/breaking-news/section/4/188549/Hong-Kong-to-relax-airline-specific-flight-suspension-mechanism#:~:text=A%20flight%20suspension%20mechanism%20targeting,of%20several%20Covid%2D19%20cases.

28. Attached as Exhibit R to the Joint Stipulation is a true and correct copy of the website page address: https://www.news.gov.hk/eng/2022/04/20220429/20220429_161004_944.html.

29. Attached as Exhibit S to the Joint Stipulation is a true and correct copy of the website page address: https://www.barrons.com/news/business-group-warns-hong-kong-travel-curbs-a-nightmare-01651741806.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 24, 2022, at San Diego, California.

CLYDE & CO LLP

By: _____
Glenanne Kennedy
Attorneys for Defendant
FOUNTAIN SET LIMITED

EXHIBIT
1

**From:**       Mullen, Cynthia <CMullen@thoits.com>
**Sent:**       Monday, September 13, 2021 3:06 PM
**To:**         Cicala, Conte
**Cc:**         Holland, Andrew P.; Lipanovich, Nathaniel
**Subject:**    RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf.
                [IWOV-iManage.FID133204] [CC-US2.FID865371]

Conte,

Thanks, we'll proceed to file.

I took a look at the link that you sent.  Doesn't it say that prior permission is required to depose **non-US citizens**, as would likely be the case here?

### Taking Voluntary Depositions of Willing Witnesses

In Hong Kong, consular officers may take voluntary depositions of U.S. citizen witnesses without prior permissio authorities, provided no compulsion is used. If the services of a U.S. consular officer are required to administer witness, interpreter and stenographer, such arrangements must be made in advance with the U.S. Consulate Ger Consistent with Hong Kong's declarations and reservations regarding the Hague Evidence Convention, consula prohibited from taking voluntary depositions of non-U.S. citizen witnesses. As an alternative, if prior permission Kong's Competent Authority, voluntary depositions may be conducted by commissioners in Hong Kong regard of the witness, provided no compulsion is used.

Thanks,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice.**  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Cicala, Conte [mailto:Conte.Cicala@clydeco.us]
**Sent:** Monday, September 13, 2021 1:50 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [IWOV-iManage.FID133204] [CC-US2.FID865371]

Hi Cynthia, with those additional changes it is okay and you may add my signature and file.

It does not look like we need prior approval from Hong Kong authorities to take depositions there so it seems as if the same rules are (still) in place as when I conducted depositions there some years back.  For nonparty witnesses who are not willing to appear there may be some challenges though.  My colleagues did not have any experience with zoom but also like me did not see any specific reason against it.  We'd presumably need to stipulate that the court reporter in the US could administer the oath with the same effect as in person.  Bottom line is that I am cautiously optimistic we can proceed on a "normal" discovery schedule but am glad we are also flagging the issue for the court in case we hit snags.

Embarrassingly my colleagues reminded me of this as well:

Hong Kong judicial Assistance Information (state.gov)

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371


My pronouns are: he / him / his

Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Monday, September 13, 2021 12:58 PM
**To:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [IWOV-iManage.FID133204] [CC-US2.FID865371]

Conte,

Yes, that's no problem.  The attached draft accepts your edits then adds a few additional redlines on top.  Let us know if you have any other changes.

Let us know when you hear about ADR this week and we can file that form later.

Also, we agree that we don't need to put specifics in the report at this point, but what have you heard from your colleagues and client about depositions in this case—i.e., whether we can plan to take remote depositions in Hong Kong?

Thanks,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice.**  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

---

**From:** Cicala, Conte [mailto:Conte.Cicala@clydeco.us]
**Sent:** Monday, September 13, 2021 12:18 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>

**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [IWOV-iManage.FID133204] [CC-US2.FID865371]

PS – I moved the trial a week and all related dates so it doesn't start on my birthday.. hope that is ok!

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371

 | Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**
My pronouns are: he / him / his

---

**From:** Cicala, Conte
**Sent:** Monday, September 13, 2021 12:17 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [IWOV-iManage.FID133204] [CC-US2.FID865371]

Cynthia, please see attached.  Please let me know if any further edits are required.  If it is quicker to walk through it real-time let me know – I am around from 130-230 and then from 330 on.   In relation to ADR, I've asked for a week for us to stipulate to a form of ADR because it looks like I do not yet have authority to agree to private mediation.

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371

 | Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**
My pronouns are: he / him / his

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Monday, September 13, 2021 11:06 AM
**To:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [IWOV-iManage.FID133204] [CC-US2.FID865371]

Great, thank you.

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice.**  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Cicala, Conte [mailto:Conte.Cicala@clydeco.us]
**Sent:** Monday, September 13, 2021 11:02 AM
**To:** Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [IWOV-iManage.FID133204][CC-US2.FID865371]

Hi Cynthia, I did get it and hope to have edits to you soon.

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371



Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**

My pronouns are: he / him / his

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Monday, September 13, 2021 10:37 AM
**To:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>; 33070_053 _ BELLA _ CANVAS_ LLC __ Fountain Set Limited Correspondence <{F133204}.iManage@idolcom.thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [IWOV-iManage.FID133204][CC-US2.FID865371]

Conte,

I wanted to confirm that you received this draft report last week and will be able to provide edits and approval today.

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

---

**From:** Mullen, Cynthia
**Sent:** Thursday, September 9, 2021 9:36 PM
**To:** 'Cicala, Conte' <Conte.Cicala@clydeco.us>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>; 33070_053 _ BELLA _ CANVAS_ LLC __ Fountain Set Limited Correspondence <{F133204}.iManage@idolcom.thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [IWOV-iManage.FID133204][CC-US2.FID865371]

Hi Conte,

Have you heard back on the below issues from our R26(f) conference?

We've prepared a draft of the joint report due Monday (attached), but we can adjust it depending on your client's feedback and position.  Please review and let me know if you have changes or additions.  There are also a few "Defendant's Position" sections that need to be filled it.  We can handle filing on Monday.

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | [www.thoits.com](http://www.thoits.com) | [CMullen@thoits.com](mailto:CMullen@thoits.com)

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

---

**From:** Cicala, Conte [[mailto:Conte.Cicala@clydeco.us](mailto:Conte.Cicala@clydeco.us)]
**Sent:** Thursday, August 26, 2021 5:09 PM
**To:** Mullen, Cynthia <[CMullen@thoits.com](mailto:CMullen@thoits.com)>
**Cc:** Holland, Andrew P. <[aholland@thoits.com](mailto:aholland@thoits.com)>; Lipanovich, Nathaniel <[NLipanovich@thoits.com](mailto:NLipanovich@thoits.com)>; 33070_053 _ BELLA _ CANVAS_ LLC __ Fountain Set Limited Correspondence <[{F133204}.iManage@idolcom.thoits.com](mailto:{F133204}.iManage@idolcom.thoits.com)>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [IWOV-iManage.FID133204] [CC-US2.FID865371]

Thanks Cynthia.  I am checking with the client (and one of my colleagues in Hong Kong) on the items you flagged below and will revert.

Conte Cicala
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371



| Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | [www.clydeco.us](http://www.clydeco.us)

My pronouns are: he / him / his

---

**From:** Mullen, Cynthia <[CMullen@thoits.com](mailto:CMullen@thoits.com)>
**Sent:** Thursday, August 26, 2021 4:44 PM
**To:** Cicala, Conte <[Conte.Cicala@clydeco.us](mailto:Conte.Cicala@clydeco.us)>
**Cc:** Holland, Andrew P. <[aholland@thoits.com](mailto:aholland@thoits.com)>; Lipanovich, Nathaniel <[NLipanovich@thoits.com](mailto:NLipanovich@thoits.com)>; 33070_053 _ BELLA _ CANVAS_ LLC __ Fountain Set Limited Correspondence <[{F133204}.iManage@idolcom.thoits.com](mailto:{F133204}.iManage@idolcom.thoits.com)>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [CC-US2.FID865371] [IWOV-iManage.FID133204]

Conte,

I wanted to follow up quickly on a few points that we discussed today:

- ESI – We are amenable to not entering into a formal ESI agreement at the outset and instead agreeing to meet/confer if either party raises issues with documents as produced.

- Protective Order – We would like to stipulate to a protective order because there is certain information in the case (e.g., prices paid for fabric) that the client would not like to be made public. Our assigned magistrate judge has a stipulated protective order on her website that we propose reviewing and revising as necessary.
- ADR – We select private mediation.
- Trial – We would like to hear back from you on the deposition issues before settling on a proposed date here, but fall 2022 may be workable for our client as well.

Thanks,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 |  www.thoits.com  |  CMullen@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

---

**From:** Cicala, Conte [mailto:Conte.Cicala@clydeco.us]
**Sent:** Wednesday, August 25, 2021 1:41 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [CC-US2.FID865371]

Perfect, thank you for your flexibility!

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371



Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Wednesday, August 25, 2021 1:37 PM
**To:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [CC-US2.FID865371]

Hi Conte,

Yes, we can reschedule.  How about tomorrow at 1:00?

Thanks,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 |  www.thoits.com  |  CMullen@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Cicala, Conte [mailto:Conte.Cicala@clydeco.us]
**Sent:** Wednesday, August 25, 2021 1:26 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [CC-US2.FID865371]

Cynthia, I had a deposition run long this morning.  Is it possible to push this to the same time tomorrow or Friday (or really almost any time on Thursday after 9:30 a.m. or Friday after 11 a.m.)?

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371


My pronouns are: he / him / his

Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Friday, August 13, 2021 10:05 AM
**To:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [CC-US2.FID865371]

Let's go with the 25th.  Thanks for the flexibility.

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

---

**From:** Cicala, Conte [mailto:Conte.Cicala@clydeco.us]
**Sent:** Friday, August 13, 2021 10:01 AM
**To:** Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf. [CC-US2.FID865371]

Hi, the 25th or 26th look good (same time).  The 24th may open up also but at present it is not.

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371



Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**

My pronouns are: he / him / his

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Friday, August 13, 2021 8:08 AM
**To:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf.

Hi Conte,

I've had a conflict come up on the 17th.  Are you available later that week or the following week?

Thanks,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice.**  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

---

**From:** Mullen, Cynthia
**Sent:** Monday, August 9, 2021 3:23 PM
**To:** 'Cicala, Conte' <Conte.Cicala@clydeco.us>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf.

Yes, how about the 17th at 2:00?

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice.**  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

---

**From:** Cicala, Conte [mailto:Conte.Cicala@clydeco.us]
**Sent:** Monday, August 9, 2021 2:56 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf.

Hi Cynthia and thanks.  Does Tuesday the 17th look good?  I am pretty open that day except from 12-1.

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371



My pronouns are: he / him / his

Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Friday, August 6, 2021 3:09 PM
**To:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Holland, Andrew P. <aholland@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** Bella + Canvas, LLC v. Fountain Set Limited, C.D. Cal. 21-758 - Rule 26(f) Conf.

Hi Conte,

I am reaching out to schedule a time for our Rule 26(f) conference.  Can you let me know when you're available in the next few weeks?  Have a good weekend.

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT 2

| | |
|---|---|
| **From:** | Kennedy, Glenanne |
| **Sent:** | Wednesday, February 9, 2022 9:30 AM |
| **To:** | Mullen, Cynthia |
| **Cc:** | Cicala, Conte; Lipanovich, Nathaniel; Zonne, Melissa |
| **Subject:** | RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372] |

Hi Cynthia,

Your change of position regarding a blanket admission of document authenticity is noted.

We need to get the RFA and interrogatory situation resolved ASAP.  We remain of the view that Bella + Canvas must immediately admit to the genuineness of the documents attached to Requests for Admission Nos. 18, 19, and 20, which were served on October 26, 2021, and that its denials were improper and not in compliance with its discovery obligations.  While we will be serving additional RFAs with your client's versions of the same documents as a fallback, given the failure of our meet and confer efforts, we are concerned that you may contrive to deny these additional requests as well. Should we not be able to resolve this dispute, our only solution will be to talk to the Magistrate Judge.  Therefore, in conformance with the court's rules, please provide at least three dates and times when you are available to hold the telephonic conference for discovery disputes.

In regards to the depositions in Hong Kong, it looks like we have both found the same language on the State Department website:

> In Hong Kong, consular officers may take voluntary depositions of U.S. citizen witnesses without prior permission from Hong Kong authorities, provided no compulsion is used. If the services of a U.S. consular officer are required to administer an oath to the witness, interpreter and stenographer, such arrangements must be made in advance with the U.S. Consulate General directly. Consistent with Hong Kong's declarations and reservations regarding the Hague Evidence Convention, consular officers are prohibited from taking voluntary depositions of non-U.S. citizen witnesses. As an alternative, if prior permission is granted by Hong Kong's Competent Authority, voluntary depositions may be conducted by commissioners in Hong Kong regardless of the nationality of the witness, provided no compulsion is used.

https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html

In light thereof, it does look as if prior permission from the Hong Kong Competent Authority is required before any depositions can take place.  If you wish to proceed with depositions in Hong Kong, please proceed to obtain permission and keep us posted on your progress.

Even if depositions can proceed under Hong Kong law, we are concerned that current travel and quarantine restrictions will make scheduling difficult.  As such, assuming (as we do) that you will want to proceed with depositions, we do believe it is necessary to seek an amendment to the scheduling order to address this situation.   Do you have an estimate on how long permission will take to obtain?

Additionally, it appears that your client has chosen to designate every document as "confidential" in both productions. The protective order states: "The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Stipulated Protective Order."   Blanket designations are therefore not proper, and more generally we do not understand what renders the specific documents in question "confidential."   Although our intention is to challenge the designation, we wanted to first give you an opportunity to explain your client's position.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Friday, February 4, 2022 2:40 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Glenanne,

We agree with your summary of our meet/confer call re RFAs and Interrogatories.

Your summary re Genuineness of Documents is accurate as well, but we've considered the idea of a stipulation further— our current position is that a global stipulation regarding document authenticity is premature at this time.  We may be willing to enter into something like this later in the case (e.g., before trial), but not at this time.

Regarding depositions, your summary is correct that we would still like to schedule Fountain Set's depositions in March, since the parties will respond to all outstanding discovery in February.  We have conducted further research regarding the issue of prior approval from Hong Kong or Chinese authorities, and the citizenship of the deponents is material to whether approval is required.

Can you please advise whether the following witnesses are Hong Kong citizens or PRC (Mainland China) citizens:
- Chapman Yuen
- Tony Kong
- Jennifer Chu

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com  |  CMullen@thoits.com

**Confidentiality Notice.**  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Thursday, February 3, 2022 3:57 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Subject:** Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Cynthia and Melissa,

As discussed, I want to memorialize our meet and confer conversation that took place today to make sure we are all on the same page.

Requests for Admission: In accordance with our meet and confer conference on December 21, 2021, and B+C's position that some of Fountain Set's RFAs were vague and ambiguous, Fountain Set and B+C agreed that Fountain Set would amend those specific RFAs. Fountain Set's amended RFAs were served on January 24, 2022.  B+C is taking the position that the amended RFAs are actually 6 new RFAs due to the amount of changes that have been made. B+C will provide its responses to these RFAs within 30 days.

Genuineness of Documents: Consistent with the position taken at the December 21, 2021 meet and confer conference, B+C continues to deny the authenticity of the documents attached the Fountain Set's first set of RFAs based on the existence of highlights and Chinese characters that are not in the original document, and that the documents provided are only a portion of the complete document. B+C does not agree to substitute their version of the documents to Fountain Set's RFAs, and admit to the genuineness of their version. B+C proposes either entering into a global stipulation that all documents produced by either side are authentic, or Fountain Set can draft additional RFAs requesting that B+C admit to the genuineness of B+C's version of the documents.

Interrogatories: Based on B+C's position that the amended RFAs are in fact new RFAs, B+C continues to assert that Fountain Set has exceeded the number of interrogatories permitted. As provided in their responses to the interrogatories, and as discussed during the meet and confer conference on December 21, 2021, B+C asserts that each of Fountain Set's three interrogatories contain 13 separate subparts, and thus each interrogatory should be treated as 13 separate interrogatories, which exceeds the 25 interrogatory limit.

Depositions: Fountain Set requires the responses to their most recent discovery, served on January 24, 2022, before conducting depositions. B+C does not anticipate this being an issue. Additionally, both parties' research demonstrates that permission from Hong Kong's Competent Authority is required before conducting the depositions of Fountain Set's Hong Kong witnesses. B+C will attempt to determine how long such a process may take, and seek an extension from the court should the process prevent depositions from going forward in accordance with the time line provided by the court. B+C requested that we also reach out to Clyde & Co's Hong Kong office to determine whether they have any additional information regarding the process.

Deposition Schedule: The agreed upon timeline for scheduling depositions is still March 2022. B+C requests that the Fountain Set witnesses be deposed prior to the B+C witnesses, as B+C made their request before Fountain Set. B+C is not available to conduct depositions the last week of March.

Requests for Production: B+C anticipates serving an additional production, which is in response to Fountain Set's Request for Production, in the near future and possibly as early as February 4, 2022.

Please let me know if you agree with this summary of our conversation, or if you have any changes. Also, in the event that we cannot resolve some of these discovery issues, please provide your availability for a discovery conference with the magistrate judge.

Thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

**EXHIBIT 3**

| | |
|---|---|
| **From:** | Kennedy, Glenanne |
| **Sent:** | Wednesday, March 16, 2022 9:54 AM |
| **To:** | Zonne, Melissa |
| **Cc:** | Cicala, Conte; Mullen, Cynthia; Lipanovich, Nathaniel |
| **Subject:** | RE: Bella + Canvas v. Fountain Set - Summary of March 10, 2022 Conversation [CC-US2.121580.10254430.FID865373] |

Hi Melissa,

We did reach out to Clyde & Co's Hong Kong office, but unfortunately they are not familiar with the process of obtaining permission from the Hong Kong Competent Authority. Their suggestion was to contact the Competent Authority (i.e. the Chief Secretary for Administration) directly.

Here is a link to contact details for that entity.  It looks like a third party website.

https://www.hcch.net/en/states/authorities/details3/?aid=491

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Monday, March 14, 2022 7:44 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Mullen, Cynthia <CMullen@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of March 10, 2022 Conversation [CC-US2.121580.10254430.FID865373]

Hi Glenanne,
I am following up on your progress consulting Clyde & Co's Hong Kong office regarding the Competent Authority process and what we can expect re: timing. Do you have any further information yet? As I mentioned when we spoke last week, this information will be critical to our discussions at the IDC Friday and any proposed new schedule, and we presume your local office will have experience with this issue.

Thanks,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

---

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Thursday, March 10, 2022 3:00 PM
**To:** Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Mullen, Cynthia <CMullen@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of March 10, 2022 Conversation [CC-US2.121580.10254430.FID865373]

Melissa,

Thank you for the clarification. I do recall you saying you would take the proposed 90 days back to your client.

I hope you have a great weekend.

Thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | www.clydeco.us

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Thursday, March 10, 2022 2:55 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Mullen, Cynthia <CMullen@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of March 10, 2022 Conversation [CC-US2.121580.10254430.FID865373]

Thank you Glenanne. I want to clarify that while I acknowledged that a continuance does appear necessary to accommodate the depositions given the time it will take to resolve the dispute, we have not yet agreed to a 90-day extension. As I mentioned, I need to take your proposed timeline to my client. We did agree you will draft a stipulation for our review.

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice**. The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Thursday, March 10, 2022 2:49 PM
**To:** Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Mullen, Cynthia <CMullen@thoits.com>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** Bella + Canvas v. Fountain Set - Summary of March 10, 2022 Conversation [CC-US2.121580.10254430.FID865373]

Hi Melissa,

Thanks for taking the time to speak with me today. As discussed, I want to memorialize our conversation that took place today to make sure we are all on the same page.

Amending the Scheduling Order: Both parties agree that meeting the dates on the current scheduling order is no longer tenable due to matters outside of our control, and based thereon will work to enter a joint stipulation extending the dates by 90 days. FSL will draft for B+C's review, and we hope to have it completed before the informal discovery conference on Friday, March 18, 2022.

Informal Discovery Conference: Both parties noted that the Court had not responded to our March 4, 2022 request to hold the informal discovery conference on March 18, 2022 after 9:30am. We have since spoken with the court clerk, who indicted that she will talk to the judge and then respond to the email.

Leave to Amend: B+C requested that the parties also stipulate to B+C's leave to amend the Complaint to add an additional cause of action. The Joint Stipulation to Amend the Scheduling Order is not dependent on such a stipulation, however B+C indicated they will file a motion with the court in absence of a stipulation.

Hong Kong Competent Authority: B+C has exhausted its resources in trying to determine how long obtaining the permission from the Hong Kong Competent Authority would take, with one source stating it could take as long as 9 months. B+C requests that we reach out to Clyde & Co's Hong Kong office to determine whether they have any additional information regarding the process.

Discovery: B+C confirms that it will provide its responses to FSL's Requests for Admission and Requests for production before the deadline tomorrow, March 11, 2022. Additionally B+C is drafting meet and confer letters based on FSL's most recent responses to B+C's discovery requests.

Please let me know if you agree with this summary of our conversation, or if you have any changes.

Thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT 4

| | |
|---|---|
| **From:** | Zonne, Melissa <MZonne@thoits.com> |
| **Sent:** | Tuesday, March 1, 2022 3:59 PM |
| **To:** | Kennedy, Glenanne |
| **Cc:** | Cicala, Conte; Lipanovich, Nathaniel; Mullen, Cynthia |
| **Subject:** | RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372] |

Counsel,

Unfortunately your response regarding depositions did not address the points raised in my February 14th email, and it is your failure to respond on these issues that is causing delay in scheduling depositions.

While we recognize your opposition to Fountain Set depositions in Los Angeles, your email ignores the fact that it is the only option available for the foreseeable future. Courts have supported depositions in the forum district rather than the principal place of business for far less reason, as set forth in my prior email. As I mentioned, counsel is currently <u>prohibited</u> from entering Hong Kong, while there are no travel restrictions or quarantine requirements as to vaccinated individuals entering the United States.

In any event, to the extent that there is a need to make requests to the Hong Kong authority, it is the obligation of a corporate defendant to designate its own spokesperson under Rule 30(b)(6) and make its witnesses available for deposition.  *Symantec Corp. v. Acronis, Inc.*, No. 11-CV-5310 EMC JSC, 2013 WL 503612, at *1 (N.D. Cal. Feb. 8, 2013).  At a minimum, it is therefore FSL's responsibility to submit a notice to the Competent Authority on behalf of the deponent(s) if it is required.  Given your representations that the witnesses that we seek to depose will also be FSL's corporate designees, it is thus FSL's burden to produce them all as witnesses regardless of whether that is in Los Angeles or Hong Kong.

To that end, please let us know immediately when Tony Kong, Chapman Yueng and Jennifer Chu (and Fountain Set's 30(b)(6) witness(es) if they differ) are available to be deposed in Los Angeles. As we already discussed, we expect to depose Fountain Set's witnesses first, and were awaiting availability as a courtesy prior to sending out notices. If March 11th is unavailable, please let us know the earliest date thereafter so we may stay on schedule. We are now available the last week of March for the dates you previously proposed, as the arbitration our team had scheduled has been continued.  Furthermore, we appreciate your offer to further meet and confer on the B+C deposition dates you noticed and will work with you to provide available dates immediately after the Fountain Set depositions. **Please confirm those depositions are not proceeding as currently scheduled.** Once the deposition dates are settled, if a schedule modification is still necessary, we are open to that discussion.  But having that discussion now, without knowing when depositions will be set, is not productive.

As to the written discovery, I can confirm there are outstanding RFA and RFP responses and we will provide timely responses.

Regards,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or

copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Friday, February 25, 2022 3:40 PM
**To:** Zonne, Melissa <MZonne@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Melissa,

We have received your responses to our Amended Requests for Admission and Amended Interrogatories. We continue to disagree with your position that the Amended RFAs and Amended Interrogatories were in fact additional RFAs and additional Interrogatories, based on our previous discussion and agreement that Defendant would amend the first set of RFAs to clarify the requests being made. We further agreed that we would hold off on any discussions regarding the disagreement over the number of interrogatories being propounded until after we served amended Interrogatories, only to have you then assert that the Amended Interrogatories were in addition to the first set of interrogatories. We continue to await your responses to the additional Requests for the Admission of the Genuineness of Documents.

Additionally, we have received your Deposition Notice for the deposition of Fountain Set, to take place on March 11, 2022 in Los Angeles, California. Unfortunately, March 11, 2022 was not one of the dates previously provided on which we were available for depositions, and we are not available on that date. Further, we do not agree with the deposition taking place in Los Angeles. Depositions of a defendant corporation and its agents should presumptively take place in the corporation's principal place of business or where the witness works or resides.  (*See Salter v. Upjohn Co*., 593 F.2d 649, 651 (5th Cir. 1979); *Shinde v. Nithyananda Found*., 2015 WL 12778434 (C.D. Cal. May 21, 2015).) In this case, Fountain Set's principal place of business is in Hong Kong, and all of the deponents live and work in Hong Kong.  Thus the deposition must take place there.

Further, contrary to your assertions, holding the depositions in Los Angeles will not relieve the issues regarding travel and quarantine due to COVID.  Even if a witness is otherwise available on a given date, whether anyone can travel depends on a wide variety of circumstances and even if all other factors are met, at a minimum, they will then be required to quarantine for 14 days upon returning to Hong Kong from the United States, only increasing the hardships caused to the deponents by requiring them to travel across the world during a pandemic.

Compounding the issue is that, apparently, you have not submitted a request to the Hong Kong Competent Authority to proceed with depositions there. It is unclear why you have delayed doing so. We strongly urge you to do so as soon as possible, as depositions of Fountain Set witnesses in Los Angeles are simply not an option at present, even if Fountain Set were otherwise willing to agree to them.

Please note also that we noticed depositions for B+C witnesses from March 7-10, 2022 as a means to preserve the rights to take such depositions.  Those dates were chosen based on our availability because you did not provide any dates despite our requests.  That said, we are happy to discuss rescheduling them and indeed may need to do so if our issues relating to B+C's written discovery responses are not fully resolved in advance of same.

All of this speaks to the more significant question which is the viability of the existing case management schedule.  We remind you of the following excerpts from the joint rule 26(f) report filed in September 2021:

> Defendant is located in Hong Kong, China, which raises some potential discovery issues relating to depositions, exacerbated if it is determined through discovery that material witnesses are located in mainland China. The parties are meeting and conferring regarding depositions of Defendant and Defendant's witnesses.

> The location of Defendant and Defendant's witnesses in Hong Kong (or mainland China) may present discovery and trial issues, particularly in light of the ongoing COVID-19 pandemic and possible travel and quarantine restrictions. Should the parties encounter difficulties in taking deposition testimony and/or should there be continuing travel challenges as the trial date approached preventing desired witnesses from attending in person, the parties may collectively, or individually, seek a reasonable continuance of the trial date and related deadlines to address such issues.

This was before Omicron and the resulting reinstitution of various public health measures that make depositions in the US impracticable for witnesses from Hong Kong (even if Fountain Set were willing to travel).   The simple reality is that discovery cannot be completed under the existing schedule – in part because you have delayed in seeking permission from the Hong Kong Competent Authority – but more generally because of the global situation which is beyond our control. In our experience, counsel and courts have been working collaboratively to address these circumstances and we remain willing to do so.   We respectfully request that your client step back from its current tactical posture and work with us to come up with a reasonable revised discovery and case schedule, failing which we will have no choice but to seek relief from the Court.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Monday, February 14, 2022 1:52 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Counsel,

We believe a discovery dispute conference prior to B+C's response deadline to Set Two is premature. Since FSL has propounded new discovery as to the documents at issue, there is no reason to schedule a conference prior to your review of B+C's responses. We are more than willing to make ourselves available and participate in a conference in mid-March if a dispute remains after you have received those responses. As we have discussed previously, B+C's denials of RFAs Nos. 18-20 in Set One are proper. B+C cannot admit to the

authenticity of documents with markings that did not originate with B+C or with which B+C is unfamiliar. The documents at issue in RFAs Nos. 18-20 contain highlighting and other markings that change the documents from their original versions, and the documents were also incomplete copies with missing pages. There is no reason to use judicial resources before we determine whether a dispute exists.

As to depositions, we still have not received information from you regarding the citizenship of the deponents. Your failure to respond on this issue is causing further delay in facilitating the depositions. For this reason and others, we now plan to take the depositions in Los Angeles. This is reasonable and legally sound given several factors at issue here, including the likelihood of additional discovery disputes and the location of counsel in or near the forum district. (*See Cadent v. 3M Unitek*, 232 F.R.D. 625 (C.D. Cal.2005); *Stonebreaker v. Guardian Life Ins. Co*., 820 F. Supp. 2d 1096, 1098–99 (S.D. Cal. 2011).)  We also believe this solution will address your concerns regarding travel and quarantine issues related to COVID. Though we do not have confirmation from you, we have reason to believe the deponents reside in Hong Kong and are therefore Chinese citizens. (See Chapman Yuen's LinkedIn account:  https://www.linkedin.com/in/chapman-yuen-37b298177/?originalSubdomain=hk.) Currently, until March 4, 2022, non-Hong Kong residents traveling from outside Greater China are suspended from entering Hong Kong: https://hk.usconsulate.gov/u-s-citizen-services/covid-19-information/. We were unable to find any indication as to the future plans, but previously, a 14-day quarantine was implemented and currently applies for most Chinese citizens. Conversely, non-U.S. citizens traveling to the United States are only required to be fully vaccinated with the primary series of the COVID vaccine and to show a negative test result prior to the flight. See current updates here: https://www.cdc.gov/coronavirus/2019-ncov/travelers/noncitizens-US-air-travel.html. Taking the depositions in the forum district will solve the various issues you raise in your email, including eliminating the delays and unknown factors associated with an appeal to the Competent Authority. We are hopeful we can avoid unnecessary amendment to the scheduling order. Please provide dates FSL's witnesses are available to be deposed in LA.

Finally, you are incorrect as to our confidentiality designations. We produced 963 documents as Confidential, and 1,276 as Not Confidential, after conducting a thorough review of the documents. After you have had a chance to review the documents, let us know if you have further inquiries.

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Wednesday, February 9, 2022 9:30 AM
**To:** Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Cynthia,

Your change of position regarding a blanket admission of document authenticity is noted.

We need to get the RFA and interrogatory situation resolved ASAP.  We remain of the view that Bella + Canvas must immediately admit to the genuineness of the documents attached to Requests for Admission Nos. 18, 19, and 20, which were served on October 26, 2021, and that its denials were improper and not in compliance with its discovery obligations.  While we will be serving additional RFAs with your client's versions of the same documents as a fallback, given the failure of our meet and confer efforts, we are concerned that you may contrive to deny these additional requests as well. Should we not be able to resolve this dispute, our only solution will be to talk to the Magistrate Judge.  Therefore, in conformance with the court's rules, please provide at least three dates and times when you are available to hold the telephonic conference for discovery disputes.

In regards to the depositions in Hong Kong, it looks like we have both found the same language on the State Department website:

> In Hong Kong, consular officers may take voluntary depositions of U.S. citizen witnesses without prior permission from Hong Kong authorities, provided no compulsion is used. If the services of a U.S. consular officer are required to administer an oath to the witness, interpreter and stenographer, such arrangements must be made in advance with the U.S. Consulate General directly. Consistent with Hong Kong's declarations and reservations regarding the Hague Evidence Convention, consular officers are prohibited from taking voluntary depositions of non-U.S. citizen witnesses. As an alternative, if prior permission is granted by Hong Kong's Competent Authority, voluntary depositions may be conducted by commissioners in Hong Kong regardless of the nationality of the witness, provided no compulsion is used.

https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html

In light thereof, it does look as if prior permission from the Hong Kong Competent Authority is required before any depositions can take place.  If you wish to proceed with depositions in Hong Kong, please proceed to obtain permission and keep us posted on your progress.

Even if depositions can proceed under Hong Kong law, we are concerned that current travel and quarantine restrictions will make scheduling difficult.  As such, assuming (as we do) that you will want to proceed with depositions, we do believe it is necessary to seek an amendment to the scheduling order to address this situation.   Do you have an estimate on how long permission will take to obtain?

Additionally, it appears that your client has chosen to designate every document as "confidential" in both productions. The protective order states: "The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Stipulated Protective Order."   Blanket designations are therefore not proper, and more generally we do not understand what renders the specific documents in question "confidential."   Although our intention is to challenge the designation, we wanted to first give you an opportunity to explain your client's position.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Friday, February 4, 2022 2:40 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Glenanne,

We agree with your summary of our meet/confer call re RFAs and Interrogatories.

Your summary re Genuineness of Documents is accurate as well, but we've considered the idea of a stipulation further—our current position is that a global stipulation regarding document authenticity is premature at this time. We may be willing to enter into something like this later in the case (e.g., before trial), but not at this time.

Regarding depositions, your summary is correct that we would still like to schedule Fountain Set's depositions in March, since the parties will respond to all outstanding discovery in February. We have conducted further research regarding the issue of prior approval from Hong Kong or Chinese authorities, and the citizenship of the deponents is material to whether approval is required.

Can you please advise whether the following witnesses are Hong Kong citizens or PRC (Mainland China) citizens:
- Chapman Yuen
- Tony Kong
- Jennifer Chu

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice**. The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

---

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Thursday, February 3, 2022 3:57 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Subject:** Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Cynthia and Melissa,

As discussed, I want to memorialize our meet and confer conversation that took place today to make sure we are all on the same page.

Requests for Admission: In accordance with our meet and confer conference on December 21, 2021, and B+C's position that some of Fountain Set's RFAs were vague and ambiguous, Fountain Set and B+C agreed that Fountain Set would amend those specific RFAs. Fountain Set's amended RFAs were served on January 24, 2022.  B+C is taking the position that the amended RFAs are actually 6 new RFAs due to the amount of changes that have been made. B+C will provide its responses to these RFAs within 30 days.

Genuineness of Documents: Consistent with the position taken at the December 21, 2021 meet and confer conference, B+C continues to deny the authenticity of the documents attached the Fountain Set's first set of RFAs based on the existence of highlights and Chinese characters that are not in the original document, and that the documents provided are only a portion of the complete document. B+C does not agree to substitute their version of the documents to Fountain Set's RFAs, and admit to the genuineness of their version. B+C proposes either entering into a global stipulation that all documents produced by either side are authentic, or Fountain Set can draft additional RFAs requesting that B+C admit to the genuineness of B+C's version of the documents.

Interrogatories: Based on B+C's position that the amended RFAs are in fact new RFAs, B+C continues to assert that Fountain Set has exceeded the number of interrogatories permitted. As provided in their responses to the interrogatories, and as discussed during the meet and confer conference on December 21, 2021, B+C asserts that each of Fountain Set's three interrogatories contain 13 separate subparts, and thus each interrogatory should be treated as 13 separate interrogatories, which exceeds the 25 interrogatory limit.

Depositions: Fountain Set requires the responses to their most recent discovery, served on January 24, 2022, before conducting depositions. B+C does not anticipate this being an issue. Additionally, both parties' research demonstrates that permission from Hong Kong's Competent Authority is required before conducting the depositions of Fountain Set's Hong Kong witnesses. B+C will attempt to determine how long such a process may take, and seek an extension from the court should the process prevent depositions from going forward in accordance with the time line provided by the court. B+C requested that we also reach out to Clyde & Co's Hong Kong office to determine whether they have any additional information regarding the process.

Deposition Schedule: The agreed upon timeline for scheduling depositions is still March 2022. B+C requests that the Fountain Set witnesses be deposed prior to the B+C witnesses, as B+C made their request before Fountain Set. B+C is not available to conduct depositions the last week of March.

Requests for Production: B+C anticipates serving an additional production, which is in response to Fountain Set's Request for Production, in the near future and possibly as early as February 4, 2022.

Please let me know if you agree with this summary of our conversation, or if you have any changes. Also, in the event that we cannot resolve some of these discovery issues, please provide your availability for a discovery conference with the magistrate judge.

Thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

**EXHIBIT 5**

| | |
|---|---|
| **From:** | Kennedy, Glenanne |
| **Sent:** | Tuesday, March 1, 2022 5:11 PM |
| **To:** | Zonne, Melissa |
| **Cc:** | Cicala, Conte; Lipanovich, Nathaniel; Mullen, Cynthia |
| **Subject:** | RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.121580.10254430.FID865372] |

Dear Counsel,

We agree to continue the depositions presently scheduled next week to another date, but reserve the right to re-set them if agreed dates are not reached by early next week. We do not agree to postpone these depositions until after FSL depositions take place.

Further, it has become clear that we have reached an impasse on the following topics:

1) Taking the depositions of FSL witnesses in California given their location in Hong Kong, and in particular given the current restrictions on travel and quarantine requirements for witnesses travelling from Hong Kong;
2) Taking the depositions of FSL witnesses in Hong Kong in the absence of permission from the Hong Kong Competent Authority which B+C, as the noticing party, must obtain;
3) The refusal to schedule the depositions of B+C witnesses until after the depositions of FSL witnesses;
4) The ability to reasonably complete discovery on schedule in light of the current restrictions on travel; and
5) Any remaining discovery issues not cured by B+C's responses due on March 11, 2022.

Please notify us ASAP if your positions on the above topics has changed. Otherwise we will be seeking an Informal Discovery Conference with the Court. We have asked multiple times what dates you are available for such a conference, but have not received a response. As such, will be proposing the following dates to the Court:  March 8, 2022, March 11, 2022 and March 14, 2022.

Regards,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Tuesday, March 1, 2022 3:59 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Counsel,

Unfortunately your response regarding depositions did not address the points raised in my February 14th email, and it is your failure to respond on these issues that is causing delay in scheduling depositions.

While we recognize your opposition to Fountain Set depositions in Los Angeles, your email ignores the fact that it is the only option available for the foreseeable future. Courts have supported depositions in the forum district rather than the principal place of business for far less reason, as set forth in my prior email. As I mentioned, counsel is currently <u>prohibited</u> from entering Hong Kong, while there are no travel restrictions or quarantine requirements as to vaccinated individuals entering the United States.

In any event, to the extent that there is a need to make requests to the Hong Kong authority, it is the obligation of a corporate defendant to designate its own spokesperson under Rule 30(b)(6) and make its witnesses available for deposition. *Symantec Corp. v. Acronis, Inc.*, No. 11-CV-5310 EMC JSC, 2013 WL 503612, at *1 (N.D. Cal. Feb. 8, 2013). At a minimum, it is therefore FSL's responsibility to submit a notice to the Competent Authority on behalf of the deponent(s) if it is required. Given your representations that the witnesses that we seek to depose will also be FSL's corporate designees, it is thus FSL's burden to produce them all as witnesses regardless of whether that is in Los Angeles or Hong Kong.

To that end, please let us know immediately when Tony Kong, Chapman Yueng and Jennifer Chu (and Fountain Set's 30(b)(6) witness(es) if they differ) are available to be deposed in Los Angeles. As we already discussed, we expect to depose Fountain Set's witnesses first, and were awaiting availability as a courtesy prior to sending out notices. If March 11th is unavailable, please let us know the earliest date thereafter so we may stay on schedule. We are now available the last week of March for the dates you previously proposed, as the arbitration our team had scheduled has been continued. Furthermore, we appreciate your offer to further meet and confer on the B+C deposition dates you noticed and will work with you to provide available dates immediately after the Fountain Set depositions. **Please confirm those depositions are not proceeding as currently scheduled.** Once the deposition dates are settled, if a schedule modification is still necessary, we are open to that discussion. But having that discussion now, without knowing when depositions will be set, is not productive.

As to the written discovery, I can confirm there are outstanding RFA and RFP responses and we will provide timely responses.

Regards,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Friday, February 25, 2022 3:40 PM
**To:** Zonne, Melissa <MZonne@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Melissa,

We have received your responses to our Amended Requests for Admission and Amended Interrogatories. We continue to disagree with your position that the Amended RFAs and Amended Interrogatories were in fact additional RFAs and additional Interrogatories, based on our previous discussion and agreement that Defendant would amend the first set of RFAs to clarify the requests being made. We further agreed that we would hold off on any discussions regarding the disagreement over the number of interrogatories being propounded until after we served amended Interrogatories, only to have you then assert that the Amended Interrogatories were in addition to the first set of interrogatories. We continue to await your responses to the additional Requests for the Admission of the Genuineness of Documents.

Additionally, we have received your Deposition Notice for the deposition of Fountain Set, to take place on March 11, 2022 in Los Angeles, California. Unfortunately, March 11, 2022 was not one of the dates previously provided on which we were available for depositions, and we are not available on that date. Further, we do not agree with the deposition taking place in Los Angeles. Depositions of a defendant corporation and its agents should presumptively take place in the corporation's principal place of business or where the witness works or resides.  (*See Salter v. Upjohn Co*., 593 F.2d 649, 651 (5th Cir. 1979); *Shinde v. Nithyananda Found*., 2015 WL 12778434 (C.D. Cal. May 21, 2015).) In this case, Fountain Set's principal place of business is in Hong Kong, and all of the deponents live and work in Hong Kong.  Thus the deposition must take place there.

Further, contrary to your assertions, holding the depositions in Los Angeles will not relieve the issues regarding travel and quarantine due to COVID.  Even if a witness is otherwise available on a given date, whether anyone can travel depends on a wide variety of circumstances and even if all other factors are met, at a minimum, they will then be required to quarantine for 14 days upon returning to Hong Kong from the United States, only increasing the hardships caused to the deponents by requiring them to travel across the world during a pandemic.

Compounding the issue is that, apparently, you have not submitted a request to the Hong Kong Competent Authority to proceed with depositions there. It is unclear why you have delayed doing so. We strongly urge you to do so as soon as possible, as depositions of Fountain Set witnesses in Los Angeles are simply not an option at present, even if Fountain Set were otherwise willing to agree to them.

Please note also that we noticed depositions for B+C witnesses from March 7-10, 2022 as a means to preserve the rights to take such depositions.  Those dates were chosen based on our availability because you did not provide any dates despite our requests.  That said, we are happy to discuss rescheduling them and indeed may need to do so if our issues relating to B+C's written discovery responses are not fully resolved in advance of same.

All of this speaks to the more significant question which is the viability of the existing case management schedule.  We remind you of the following excerpts from the joint rule 26(f) report filed in September 2021:

> Defendant is located in Hong Kong, China, which raises some potential discovery issues relating to depositions, exacerbated if it is determined through discovery that material witnesses are located in mainland China. The parties are meeting and conferring regarding depositions of Defendant and Defendant's witnesses.
>
> The location of Defendant and Defendant's witnesses in Hong Kong (or mainland China) may present discovery and trial issues, particularly in light of the ongoing COVID-19 pandemic and possible travel

and quarantine restrictions. Should the parties encounter difficulties in taking deposition testimony and/or should there be continuing travel challenges as the trial date approached preventing desired witnesses from attending in person, the parties may collectively, or individually, seek a reasonable continuance of the trial date and related deadlines to address such issues.

This was before Omicron and the resulting reinstitution of various public health measures that make depositions in the US impracticable for witnesses from Hong Kong (even if Fountain Set were willing to travel).   The simple reality is that discovery cannot be completed under the existing schedule – in part because you have delayed in seeking permission from the Hong Kong Competent Authority – but more generally because of the global situation which is beyond our control. In our experience, counsel and courts have been working collaboratively to address these circumstances and we remain willing to do so.   We respectfully request that your client step back from its current tactical posture and work with us to come up with a reasonable revised discovery and case schedule, failing which we will have no choice but to seek relief from the Court.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



| 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Monday, February 14, 2022 1:52 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Counsel,

We believe a discovery dispute conference prior to B+C's response deadline to Set Two is premature. Since FSL has propounded new discovery as to the documents at issue, there is no reason to schedule a conference prior to your review of B+C's responses. We are more than willing to make ourselves available and participate in a conference in mid-March if a dispute remains after you have received those responses. As we have discussed previously, B+C's denials of RFAs Nos. 18-20 in Set One are proper. B+C cannot admit to the authenticity of documents with markings that did not originate with B+C or with which B+C is unfamiliar. The documents at issue in RFAs Nos. 18-20 contain highlighting and other markings that change the documents from their original versions, and the documents were also incomplete copies with missing pages. There is no reason to use judicial resources before we determine whether a dispute exists.

As to depositions, we still have not received information from you regarding the citizenship of the deponents. Your failure to respond on this issue is causing further delay in facilitating the depositions. For this reason and others, we now plan to take the depositions in Los Angeles. This is reasonable and legally sound given several factors at issue here, including the likelihood of additional discovery disputes and the location of counsel in or near the forum district.  (*See Cadent v. 3M Unitek*, 232 F.R.D. 625 (C.D. Cal.2005); *Stonebreaker v. Guardian Life Ins. Co*., 820 F. Supp. 2d 1096, 1098–99 (S.D. Cal. 2011).)  We also believe this solution will address your concerns regarding travel and quarantine issues related to COVID. Though we do not have confirmation from you, we have reason to believe the deponents reside in

Hong Kong and are therefore Chinese citizens. (See Chapman Yuen's LinkedIn account:  https://www.linkedin.com/in/chapman-yuen-37b298177/?originalSubdomain=hk.) Currently, until March 4, 2022, non-Hong Kong residents traveling from outside Greater China are suspended from entering Hong Kong: https://hk.usconsulate.gov/u-s-citizen-services/covid-19-information/. We were unable to find any indication as to the future plans, but previously, a 14-day quarantine was implemented and currently applies for most Chinese citizens. Conversely, non-U.S. citizens traveling to the United States are only required to be fully vaccinated with the primary series of the COVID vaccine and to show a negative test result prior to the flight. See current updates here: https://www.cdc.gov/coronavirus/2019-ncov/travelers/noncitizens-US-air-travel.html. Taking the depositions in the forum district will solve the various issues you raise in your email, including eliminating the delays and unknown factors associated with an appeal to the Competent Authority. We are hopeful we can avoid unnecessary amendment to the scheduling order. Please provide dates FSL's witnesses are available to be deposed in LA.

Finally, you are incorrect as to our confidentiality designations. We produced 963 documents as Confidential, and 1,276 as Not Confidential, after conducting a thorough review of the documents. After you have had a chance to review the documents, let us know if you have further inquiries.

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Wednesday, February 9, 2022 9:30 AM
**To:** Mullen, Cynthia <CMullen@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Cynthia,

Your change of position regarding a blanket admission of document authenticity is noted.

We need to get the RFA and interrogatory situation resolved ASAP.  We remain of the view that Bella + Canvas must immediately admit to the genuineness of the documents attached to Requests for Admission Nos. 18, 19, and 20, which were served on October 26, 2021, and that its denials were improper and not in compliance with its discovery obligations.  While we will be serving additional RFAs with your client's versions of the same documents as a fallback, given the failure of our meet and confer efforts, we are concerned that you may contrive to deny these additional requests as well. Should we not be able to resolve this dispute, our only solution will be to talk to the Magistrate Judge.  Therefore, in conformance with the court's rules, please provide at least three dates and times when you are available to hold the telephonic conference for discovery disputes.

In regards to the depositions in Hong Kong, it looks like we have both found the same language on the State Department website:

In Hong Kong, consular officers may take voluntary depositions of U.S. citizen witnesses without prior permission from Hong Kong authorities, provided no compulsion is used. If the services of a U.S. consular officer are required to administer an oath to the witness, interpreter and stenographer, such arrangements must be made in advance with the U.S. Consulate General directly. Consistent with Hong Kong's declarations and reservations regarding the Hague Evidence Convention, consular officers are prohibited from taking voluntary depositions of non-U.S. citizen witnesses. As an alternative, if prior permission is granted by Hong Kong's Competent Authority, voluntary depositions may be conducted by commissioners in Hong Kong regardless of the nationality of the witness, provided no compulsion is used.

https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html

In light thereof, it does look as if prior permission from the Hong Kong Competent Authority is required before any depositions can take place.  If you wish to proceed with depositions in Hong Kong, please proceed to obtain permission and keep us posted on your progress.

Even if depositions can proceed under Hong Kong law, we are concerned that current travel and quarantine restrictions will make scheduling difficult.  As such, assuming (as we do) that you will want to proceed with depositions, we do believe it is necessary to seek an amendment to the scheduling order to address this situation.   Do you have an estimate on how long permission will take to obtain?

Additionally, it appears that your client has chosen to designate every document as "confidential" in both productions. The protective order states: "The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Stipulated Protective Order."   Blanket designations are therefore not proper, and more generally we do not understand what renders the specific documents in question "confidential."   Although our intention is to challenge the designation, we wanted to first give you an opportunity to explain your client's position.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Friday, February 4, 2022 2:40 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>
**Subject:** RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Glenanne,

We agree with your summary of our meet/confer call re RFAs and Interrogatories.

Your summary re Genuineness of Documents is accurate as well, but we've considered the idea of a stipulation further—our current position is that a global stipulation regarding document authenticity is premature at this time.  We may be willing to enter into something like this later in the case (e.g., before trial), but not at this time.

Regarding depositions, your summary is correct that we would still like to schedule Fountain Set's depositions in March, since the parties will respond to all outstanding discovery in February.  We have conducted further research regarding the issue of prior approval from Hong Kong or Chinese authorities, and the citizenship of the deponents is material to whether approval is required.

Can you please advise whether the following witnesses are Hong Kong citizens or PRC (Mainland China) citizens:
- Chapman Yuen
- Tony Kong
- Jennifer Chu


Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com  |  CMullen@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

---

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Thursday, February 3, 2022 3:57 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Subject:** Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Cynthia and Melissa,

As discussed, I want to memorialize our meet and confer conversation that took place today to make sure we are all on the same page.

Requests for Admission: In accordance with our meet and confer conference on December 21, 2021, and B+C's position that some of Fountain Set's RFAs were vague and ambiguous, Fountain Set and B+C agreed that Fountain Set would amend those specific RFAs. Fountain Set's amended RFAs were served on January 24, 2022.  B+C is taking the position that the amended RFAs are actually 6 new RFAs due to the amount of changes that have been made. B+C will provide its responses to these RFAs within 30 days.

Genuineness of Documents: Consistent with the position taken at the December 21, 2021 meet and confer conference, B+C continues to deny the authenticity of the documents attached the Fountain Set's first set of RFAs based on the existence of highlights and Chinese characters that are not in the original document, and that the documents provided are only a portion of the complete document. B+C does not agree to substitute their version of the documents to Fountain Set's RFAs, and admit to the genuineness of their version. B+C

proposes either entering into a global stipulation that all documents produced by either side are authentic, or Fountain Set can draft additional RFAs requesting that B+C admit to the genuineness of B+C's version of the documents.

Interrogatories: Based on B+C's position that the amended RFAs are in fact new RFAs, B+C continues to assert that Fountain Set has exceeded the number of interrogatories permitted. As provided in their responses to the interrogatories, and as discussed during the meet and confer conference on December 21, 2021, B+C asserts that each of Fountain Set's three interrogatories contain 13 separate subparts, and thus each interrogatory should be treated as 13 separate interrogatories, which exceeds the 25 interrogatory limit.

Depositions: Fountain Set requires the responses to their most recent discovery, served on January 24, 2022, before conducting depositions. B+C does not anticipate this being an issue. Additionally, both parties' research demonstrates that permission from Hong Kong's Competent Authority is required before conducting the depositions of Fountain Set's Hong Kong witnesses. B+C will attempt to determine how long such a process may take, and seek an extension from the court should the process prevent depositions from going forward in accordance with the time line provided by the court. B+C requested that we also reach out to Clyde & Co's Hong Kong office to determine whether they have any additional information regarding the process.

Deposition Schedule: The agreed upon timeline for scheduling depositions is still March 2022. B+C requests that the Fountain Set witnesses be deposed prior to the B+C witnesses, as B+C made their request before Fountain Set. B+C is not available to conduct depositions the last week of March.

Requests for Production: B+C anticipates serving an additional production, which is in response to Fountain Set's Request for Production, in the near future and possibly as early as February 4, 2022.

Please let me know if you agree with this summary of our conversation, or if you have any changes. Also, in the event that we cannot resolve some of these discovery issues, please provide your availability for a discovery conference with the magistrate judge.

Thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



| | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA |
| | **Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us** |

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please

immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

**EXHIBIT 6**

| | |
|---|---|
| **From:** | Mullen, Cynthia <CMullen@thoits.com> |
| **Sent:** | Thursday, January 13, 2022 10:18 AM |
| **To:** | Cicala, Conte; Kennedy, Glenanne |
| **Cc:** | Lipanovich, Nathaniel; Zonne, Melissa |
| **Subject:** | Bella+Canvas v. Fountain Set - Depo Meet/Confer |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Conte and Glenanne,

We would like to set up a call to discuss issues related to noticing depositions of Fountain Set and its employees, given some of the procedural issues with conducting depositions in China or Hong Kong that we discussed in our R26 conference.  Are you available for a call early next week?

We would like to discuss procedure as well as availability for:
- Chapman Yuen
- Tony Kong
- Schuman Jiang
- Jennifer Chu
- 30(b)(6) witness

I've also included my colleague, Melissa Zonne, on this email.  She is working on the matter as well, so please include her in any case correspondence.

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

EXHIBIT

7

1  CONTE C. CICALA, State Bar No. 173554
   conte.cicala@clydeco.us
2  CLYDE & CO US LLP
   150 California Street, 15th Floor
3  San Francisco, California 94111
   Telephone: (415) 365-9800
4  Facsimile:  (415) 365-9801

5  Attorneys for Defendant
   FOUNTAIN SET LIMITED

6

7

8                 UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11  BELLA + CANVAS, LLC,              Case No.  2:21-cv-00758-ODW-MAA

12          Plaintiff,                **FOUNTAIN SET LIMITED'S
                                      OBJECTIONS TO PLAINTIFF'S
13       v.                           NOTICE OF DEPOSITION OF
                                      CHAPMAN YUEN**
14  FOUNTAIN SET LIMITED, a foreign
    business entity; and DOES 1 through
15  20, inclusive,

16          Defendants.

17

18       Defendant Fountain Set Limited hereby objects to the Notice of Deposition of

19  Chapman Yuen served by plaintiff Bella + Canvas, LLC on March 2, 2022, on

20  grounds including as follows:

21       1)  The witness has not been subpoenaed and has not agreed to be deposed in

22           the United States or at all.

23       2)  Even if subject to deposition by notice, the witness is located in Hong Kong,

24           SAR, and therefore the location is not appropriate under FRCP Rule 30,

25           which presumes that a defendant corporation and/or individual witnesses

26           affiliated with a defendant shall be deposed at the corporation's principal

27           place of business or where the witness works or resides;

28

3) The noticing party has not sought permission from the Competent Authority to conduct depositions in Hong Kong as required by law;

4) The date is inconvenient to the parties and counsel and is not one of the dates in March provisionally offered for deposition assuming other obstacles to discovery were resolved;

5) The noticing party is in substantial noncompliance with its discovery obligations; by noticing depositions while failing to comply with discovery obligations;

6) The ongoing national and international public health, travel, quarantine and related restrictions render it impracticable for parties to travel and prepare for depositions, particularly important given that the witnesses are located in another country and not familiar with U.S. Court and discovery procedures.

As such the notice is not only defective, but deliberately so and thus calculated to harass, and further violates the rule of proportionality established by Rule 26, Federal Rules of Civil Procedure.

All other objections are reserved.

Dated:  March 8. 2022                    CLYDE & CO LLP


By: _____
     Conte C. Cicala
     Attorneys for Defendant
     FOUNTAIN SET LIMITED

**PROOF OF SERVICE**
(*Bella+Canvas LLC v. Fountain Set Limited, et al.,*
**USDC, Central District of California Case No. 2:21-cv-00758-ODW-MAA)**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, Suite 1350, San Francisco, CA 94111.

On March 8, 2022, I served true copies of the following document(s) described as **FOUNTAIN SET LIMITED'S OBJECTIONS TO PLAINTIFF'S NOTICE OF DEPOSITION OF CHAPMAN YUEN** on the interested parties in this action as follows:

| | |
|---|---|
| Andrew P. Holland | Attorneys for Plaintiff |
| Nathaniel H. Lipanovich | BELLA+CANVAS, LLC |
| Cynthia C. Mullen | Tel:   650.327.4200 |
| Melissa K. Zonne | Fax:   650.325.5572 |
| THOITS LAW | Email:aholland@thoits.com |
| 400 Main Street, Suite 250 | nlipanovich@thoits.com |
| Los Altos, CA 94022 | cmullen@thoits.com |
| | mzonne@thoits.com |
| | |
| | Copy to: msmith@thoits.com |
| | bsilveira@thoits.com |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address yvonne.catig@clydeco.us to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 8, 2022, at South San Francisco, California.

_____
Yvonne Catig

1 | CONTE C. CICALA, State Bar No. 173554
conte.cicala@clydeco.us
2 | CLYDE & CO US LLP
150 California Street, 15th Floor
3 | San Francisco, California 94111
Telephone: (415) 365-9800
4 | Facsimile:  (415) 365-9801

5 | Attorneys for Defendant
FOUNTAIN SET LIMITED

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10

11 | BELLA + CANVAS, LLC,    | Case No.  2:21-cv-00758-ODW-MAA

12 |       Plaintiff,    | **FOUNTAIN SET LIMITED'S OBJECTIONS TO PLAINTIFF'S NOTICE OF DEPOSITION OF TONY KONG**

13 |       v.

14 | FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through
15 | 20, inclusive,

16 |       Defendants.

17

18 |       Defendant Fountain Set Limited hereby objects to the Notice of Deposition of

19 | Tony Kong served by plaintiff Bella + Canvas, LLC on March 2, 2022, on the

20 | following grounds, without limitation:

21 |       1)  The witness has not been subpoenaed and has not agreed to be deposed in

22 |            the United States or at all.

23 |       2)  Even if subject to deposition by notice, the witness is located in Hong Kong,

24 |            SAR, and therefore the location is not appropriate under FRCP Rule 30,

25 |            which presumes that a defendant corporation and/or individual witnesses

26 |            affiliated with a defendant shall be deposed at the corporation's principal

27 |            place of business or where the witness works or resides;

28

3) The noticing party has not sought permission from the Competent Authority to conduct depositions in Hong Kong as required by law;

4) The date is inconvenient to the parties and counsel and is not one of the dates in March provisionally offered for deposition assuming other obstacles to discovery were resolved;

5) The noticing party is in substantial noncompliance with its discovery obligations; by noticing depositions while failing to comply with discovery obligations;

6) The ongoing national and international public health, travel, quarantine and related restrictions render it impracticable for parties to travel and prepare for depositions, particularly important given that the witnesses are located in another country and not familiar with U.S. Court and discovery procedures.

As such the notice is not only defective, but deliberately so and thus calculated to harass, and further violates the rule of proportionality established by Rule 26, Federal Rules of Civil Procedure.

All other objections are reserved.

Dated:  March 8. 2022                    CLYDE & CO LLP


                                        By: _____
                                             Conte C. Cicala
                                             Attorneys for Defendant
                                             FOUNTAIN SET LIMITED

**PROOF OF SERVICE**
(*Bella+Canvas LLC v. Fountain Set Limited, et al.,*
**USDC, Central District of California Case No. 2:21-cv-00758-ODW-MAA)**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, Suite 1350, San Francisco, CA 94111.

On March 8, 2022, I served true copies of the following document(s) described as **FOUNTAIN SET LIMITED'S OBJECTIONS TO PLAINTIFF'S NOTICE OF DEPOSITION OF TONY KONG** on the interested parties in this action as follows:

Andrew P. Holland                    Attorneys for Plaintiff
Nathaniel H. Lipanovich              BELLA+CANVAS, LLC
Cynthia C. Mullen                    Tel:   650.327.4200
Melissa K. Zonne                     Fax:   650.325.5572
THOITS LAW                           Email:aholland@thoits.com
400 Main Street, Suite 250                 nlipanovich@thoits.com
Los Altos, CA 94022                        cmullen@thoits.com
                                           mzonne@thoits.com

                                     Copy to:msmith@thoits.com
                                             bsilveira@thoits.com

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address yvonne.catig@clydeco.us to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 8, 2022, at South San Francisco, California.

_____
Yvonne Catig

1  CONTE C. CICALA, State Bar No. 173554
   conte.cicala@clydeco.us
2  CLYDE & CO US LLP
   150 California Street, 15th Floor
3  San Francisco, California 94111
   Telephone: (415) 365-9800
4  Facsimile: (415) 365-9801

5  Attorneys for Defendant
   FOUNTAIN SET LIMITED

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | BELLA + CANVAS, LLC,            | Case No. 2:21-cv-00758-ODW-MAA

12 |          Plaintiff,              | **FOUNTAIN SET LIMITED'S OBJECTIONS TO PLAINTIFF'S NOTICE OF DEPOSITION OF JENNIFER CHU**

13 |     v.

14 | FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive,

15 |

16 |          Defendants.

17

18        Defendant Fountain Set Limited hereby objects to the Notice of Deposition of

19 Jennifer Chu served by plaintiff Bella + Canvas, LLC on March 2, 2022, on grounds

20 including as follows:

21        1) The witness has not been subpoenaed and has not agreed to be deposed in

22           the United States or at all.

23        2) Even if subject to deposition by notice, the witness is located in Hong Kong,

24           SAR, and therefore the location is not appropriate under FRCP Rule 30,

25           which presumes that a defendant corporation and/or individual witnesses

26           affiliated with a defendant shall be deposed at the corporation's principal

27           place of business or where the witness works or resides;

28

3) The noticing party has not sought permission from the Competent Authority to conduct depositions in Hong Kong as required by law;

4) The date is inconvenient to the parties and counsel and is not one of the dates in March provisionally offered for deposition assuming other obstacles to discovery were resolved;

5) The noticing party is in substantial noncompliance with its discovery obligations; by noticing depositions while failing to comply with discovery obligations;

6) The ongoing national and international public health, travel, quarantine and related restrictions render it impracticable for parties to travel and prepare for depositions, particularly important given that the witnesses are located in another country and not familiar with U.S. Court and discovery procedures.

As such the notice is not only defective, but deliberately so and thus calculated to harass, and further violates the rule of proportionality established by Rule 26, Federal Rules of Civil Procedure.

All other objections are reserved.

Dated: March 8. 2022               CLYDE & CO LLP

                                   By: _____
                                       Conte C. Cicala
                                       Attorneys for Defendant
                                       FOUNTAIN SET LIMITED

**PROOF OF SERVICE**
(*Bella+Canvas LLC v. Fountain Set Limited, et al.*,
**USDC, Central District of California Case No. 2:21-cv-00758-ODW-MAA)**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, Suite 1350, San Francisco, CA 94111.

On March 8, 2022, I served true copies of the following document(s) described as **FOUNTAIN SET LIMITED'S OBJECTIONS TO PLAINTIFF'S NOTICE OF DEPOSITION OF JENNIFER CHU** on the interested parties in this action as follows:

Andrew P. Holland                    Attorneys for Plaintiff
Nathaniel H. Lipanovich              BELLA+CANVAS, LLC
Cynthia C. Mullen                    Tel:   650.327.4200
Melissa K. Zonne                     Fax:   650.325.5572
THOITS LAW                           Email:aholland@thoits.com
400 Main Street, Suite 250                 nlipanovich@thoits.com
Los Altos, CA 94022                        cmullen@thoits.com
                                           mzonne@thoits.com

                                     Copy to:msmith@thoits.com
                                             bsilveira@thoits.com

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address yvonne.catig@clydeco.us to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 8, 2022, at South San Francisco, California.

_____
Yvonne Catig

CLYDE & CO US LLP
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800

EXHIBIT 8

**From:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Sent:** Friday, January 21, 2022 5:18 PM
**To:** Mullen, Cynthia; Kennedy, Glenanne
**Cc:** Lipanovich, Nathaniel; Zonne, Melissa
**Subject:** RE: Bella+Canvas v. Fountain Set - Depo Meet/Confer [CC-US2.121580.10254430.FID865372]

OK, we will check availability in March and revert.  Please do the same for these witnesses:

Jessica Roberti
Daisy Almalel
Aaron Jackson
Dhinakaram Rajaram
Marco DeGeorge
30(b)(6) designee(s) with specific topics to follow but generally regarding transaction details, alleged contract terms, correspondence, testing, alleged breach and damages

Please confirm they can appear by notice and not by subpoena as well.

As for mediation, happy to talk more next week although I'm not sure I can offer much more.  To me the size of the case is such that attorney fees could pretty quickly get in the way of settlement and so it makes sense to see what can be done before the cost of (and possible ill feelings engendered by) depositions.

But I can also see the benefit of depositions before mediation, particularly based on some of what you conveyed about your client's views of the case in our call.

If there's interest in trying to set up a sequence along the lines of mediation -> depositions -> expert disclosures but timing concerns are getting in the way, we could consider asking for modification of the case schedule.  I think our chances of success with the court would go up if we have firm dates/timeframes in mind – the more detail the better (such as firm dates for mediation and depositions).

Otherwise let's see what we can do in the existing time frame.

A few more comments:

First, the RFAs that we are serving are being revised as part of the "meet and confer" effort to address some of your objections to their wording.  They will be served soon, (re)accompanied by the interrogatories seeking explanation, etc., of any responses which are not admissions.

Also we are still waiting on the versions of the documents that your client will admit the authenticity of, in lieu of the ones you had objected to on various grounds (markups, highlighting, Chinese characters, etc.)   Please provide that proposed alternative response ASAP.  There's no reason to hold them back pending a protective order since they are versions of the same documents that FSL already has.  If a protective order is entered, they can be designated thereafter.

We will revert next week on the remaining issues we discussed.

Thanks and have a good weekend.

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371



My pronouns are: he / him / his

Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Friday, January 21, 2022 3:54 PM
**To:** Cicala, Conte <Conte.Cicala@clydeco.us>; Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set - Depo Meet/Confer [CC-US2.121825.10258405/001.FID909476]

Hi Cicala,

We're re-reviewed the scheduling order, and the Court did set deadlines for disclosure of expert reports:

> d.   **Expert Discovery**:  If expert witnesses are to be called at trial, the parties shall designate affirmative experts to be called at trial and provide reports required by Federal Rule of Civil Procedure 26(a)(2)(B) not later than eight weeks prior to the expert discovery cut-off date.  Rebuttal expert witnesses shall be designated and reports provided as required by Rule 26(a)(2)(B) not later than five weeks prior to the expert discovery cut-off date.  Failure to timely comply with deadlines may result in the expert being excluded as a trial witness.

With these deadlines in mind, we will need to take depositions in March rather than April so that witness testimony can inform our expert reports.  When you discuss depositions with your client, please provide dates in this period.

We may still be open to mediating before depositions, but we would want to discuss further by phone next week to ensure that a mediation would be productive at this stage of the case.  Let us know.

Best,
Cynthia


**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Cicala, Conte [mailto:Conte.Cicala@clydeco.us]
**Sent:** Tuesday, January 18, 2022 9:02 AM
**To:** Mullen, Cynthia <CMullen@thoits.com>; Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set - Depo Meet/Confer [CC-US2.121825.10258405/001.FID909476]

Hi Cynthia, sorry I didn't respond to the earlier email.  The new year has been busy and continues to be… That said would 2:30 p.m. Friday work?  Hopefully by then we will also have something back to you on the written discovery issues we have been discussing.

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371



| Four Embarcadero Center | Suite 1350 | San Francisco | CA 94111 | USA
My pronouns are: he / him / his | **Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**

---

**From:** Mullen, Cynthia <CMullen@thoits.com>
**Sent:** Tuesday, January 18, 2022 8:51 AM
**To:** Cicala, Conte <Conte.Cicala@clydeco.us>; Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set - Depo Meet/Confer

Good morning,

We're following up to set a time to connect regarding depositions.  Please let us know when you're available this week.

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

---

**From:** Mullen, Cynthia
**Sent:** Thursday, January 13, 2022 10:18 AM
**To:** 'Cicala, Conte' <Conte.Cicala@clydeco.us>; Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Subject:** Bella+Canvas v. Fountain Set - Depo Meet/Confer

Conte and Glenanne,

We would like to set up a call to discuss issues related to noticing depositions of Fountain Set and its employees, given some of the procedural issues with conducting depositions in China or Hong Kong that we discussed in our R26 conference.  Are you available for a call early next week?

We would like to discuss procedure as well as availability for:
- Chapman Yuen
- Tony Kong
- Schuman Jiang
- Jennifer Chu
- 30(b)(6) witness

I've also included my colleague, Melissa Zonne, on this email.  She is working on the matter as well, so please include her in any case correspondence.

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200  |  www.thoits.com  |  CMullen@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

**EXHIBIT 9**

1  CONTE C. CICALA, State Bar No. 173554
   conte.cicala@clydeco.us
2  CLYDE & CO US LLP
   Four Embarcadero Center, Suite 1350
3  San Francisco, California 94111
   Telephone: (415) 365-9800
4  Facsimile:  (415) 365-9801

5  Attorneys for Defendant
   FOUNTAIN SET LIMITED

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  BELLA + CANVAS, LLC,              Case No.  2:21-cv-00758-ODW-MAA

12          Plaintiff,                **NOTICE OF TAKING ORAL (REMOTE-OPTIONAL) DEPOSITION OF JESSICA ROBERTI**

13       v.

14  FOUNTAIN SET LIMITED, a foreign
    business entity; and DOES 1 through
15  20, inclusive,

16          Defendants.

17

18  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

19          PLEASE TAKE NOTICE that pursuant to Rules 30 and 34 of the Federal

20  Rules of Civil Procedure, Defendant FOUNTAIN SET LIMITED will take the

21  deposition on oral examination of **JESSICA ROBERTI in the Clyde & Co offices**

22  **located at 355 S. Grand Avenue, Suite 1400, Los Angeles, California, on March**

23  **7, 2022 commencing at 9:00 a.m.** and continuing from day to day, excluding

24  weekends and holidays, until completed and concurrently will take place remotely

25  by videoconference software and link.  Attendance in person or via video link will

26  be at the option of the witness and his or her counsel, subject to any federal, state,

27  local or building restrictions on attendance in effect at the time of the deposition.

28

1   Dated:  February 22, 2022          CLYDE & CO LLP

2

3                                      By:  _/s/ *Conte C. Cicala*_

4                                           Conte C. Cicala
                                            Attorneys for Defendant
5                                           FOUNTAIN SET LIMITED

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**
(*Bella+Canvas LLC v. Fountain Set Limited, et al.*,
**USDC, Central District of California Case No. 2:21-cv-00758-ODW-MAA)**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, Suite 1350, San Francisco, CA 94111.

On February 22, 2022, I served true copies of the following document(s) described as **NOTICE OF TAKING ORAL (REMOTE-OPTIONAL) DEPOSITION OF JESSICA ROBERTI** on the interested parties in this action as follows:

| | |
|---|---|
| Andrew P. Holland | Attorneys for Plaintiff |
| Nathaniel H. Lipanovich | BELLA+CANVAS, LLC |
| Cynthia C. Mullen | Tel:   650.327.4200 |
| Melissa K. Zonne | Fax:   650.325.5572 |
| THOITS LAW | Email:aholland@thoits.com |
| 400 Main Street, Suite 250 |          nlipanovich@thoits.com |
| Los Altos, CA 94022 |          cmullen@thoits.com |
| |          mzonne@thoits.com |
| | |
| | Copy to: msmith@thoits.com |
| |          bsilveira@thoits.com |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address yvonne.catig@clydeco.us to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 22, 2022, at South San Francisco, California.

_____
Yvonne Catig

1  CONTE C. CICALA, State Bar No. 173554
   conte.cicala@clydeco.us
2  CLYDE & CO US LLP
   Four Embarcadero Center, Suite 1350
3  San Francisco, California 94111
   Telephone: (415) 365-9800
4  Facsimile:  (415) 365-9801

5  Attorneys for Defendant
   FOUNTAIN SET LIMITED

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  BELLA + CANVAS, LLC,                Case No.  2:21-cv-00758-ODW-MAA

12              Plaintiff,              **NOTICE OF TAKING ORAL
                                        (REMOTE-OPTIONAL)
13        v.                            DEPOSITION OF DAISY
                                        ALMALEL**
14  FOUNTAIN SET LIMITED, a foreign
    business entity; and DOES 1 through
15  20, inclusive,

16              Defendants.

17

18  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

19         PLEASE TAKE NOTICE that pursuant to Rules 30 and 34 of the Federal

20  Rules of Civil Procedure, Defendant FOUNTAIN SET LIMITED will take the

21  deposition on oral examination of **DAISY ALMALEL in the Clyde & Co offices**

22  **located at 355 S. Grand Avenue, Suite 1400, Los Angeles, California, on March**

23  **7, 2022 commencing at 1:00 p.m.** and continuing from day to day, excluding

24  weekends and holidays, until completed and concurrently will take place remotely

25  by videoconference software and link.  Attendance in person or via video link will

26  be at the option of the witness and his or her counsel, subject to any federal, state,

27  local or building restrictions on attendance in effect at the time of the deposition.

28

1  Dated:  February 22, 2022        CLYDE & CO LLP

2

3                              By:  */s/ Conte C. Cicala*

4                                  Conte C. Cicala
Attorneys for Defendant
FOUNTAIN SET LIMITED

**PROOF OF SERVICE**
(*Bella+Canvas LLC v. Fountain Set Limited, et al.,*
**USDC, Central District of California Case No. 2:21-cv-00758-ODW-MAA)**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, Suite 1350, San Francisco, CA 94111.

On February 22, 2022, I served true copies of the following document(s) described as **NOTICE OF TAKING ORAL (REMOTE-OPTIONAL) DEPOSITION OF DAISY ALMALEL** on the interested parties in this action as follows:

| | |
|---|---|
| Andrew P. Holland | Attorneys for Plaintiff |
| Nathaniel H. Lipanovich | BELLA+CANVAS, LLC |
| Cynthia C. Mullen | Tel:   650.327.4200 |
| Melissa K. Zonne | Fax:   650.325.5572 |
| THOITS LAW | Email:aholland@thoits.com |
| 400 Main Street, Suite 250 | nlipanovich@thoits.com |
| Los Altos, CA 94022 | cmullen@thoits.com |
| | mzonne@thoits.com |
| | |
| | Copy to: msmith@thoits.com |
| | bsilveira@thoits.com |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address yvonne.catig@clydeco.us to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 22, 2022, at South San Francisco, California.

_____
Yvonne Catig

1  CONTE C. CICALA, State Bar No. 173554
   conte.cicala@clydeco.us
2  CLYDE & CO US LLP
   Four Embarcadero Center, Suite 1350
3  San Francisco, California 94111
   Telephone: (415) 365-9800
4  Facsimile:  (415) 365-9801

5  Attorneys for Defendant
   FOUNTAIN SET LIMITED
6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  BELLA + CANVAS, LLC,              Case No.  2:21-cv-00758-ODW-MAA

12              Plaintiff,            **NOTICE OF TAKING ORAL
                                      (REMOTE-OPTIONAL)
13        v.                          DEPOSITION OF DHINAKARAM
                                      RAJARAM**
14  FOUNTAIN SET LIMITED, a foreign
    business entity; and DOES 1 through
15  20, inclusive,

16              Defendants.

17

18  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

19        PLEASE TAKE NOTICE that pursuant to Rules 30 and 34 of the Federal

20  Rules of Civil Procedure, Defendant FOUNTAIN SET LIMITED will take the

21  deposition on oral examination of **DHINAKARAM RAJARAM in the Clyde &**

22  **Co offices located at 355 S. Grand Avenue, Suite 1400, Los Angeles, California,**

23  **on March 9, 2022 commencing at 9:00 a.m.** and continuing from day to day,

24  excluding weekends and holidays, until completed and concurrently will take place

25  remotely by videoconference software and link.  Attendance in person or via video

26  link will be at the option of the witness and his or her counsel, subject to any

27  federal, state, local or building restrictions on attendance in effect at the time of the

28  deposition.

Dated:  February 22, 2022          CLYDE & CO LLP


                                   By: /s/ *Conte C. Cicala*
                                       Conte C. Cicala
                                       Attorneys for Defendant
                                       FOUNTAIN SET LIMITED

**PROOF OF SERVICE**
(*Bella+Canvas LLC v. Fountain Set Limited, et al.,*
**USDC, Central District of California Case No. 2:21-cv-00758-ODW-MAA)**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, Suite 1350, San Francisco, CA 94111.

On February 22, 2022, I served true copies of the following document(s) described as **NOTICE OF TAKING ORAL (REMOTE-OPTIONAL) DEPOSITION OF DHINAKARAM RAJARAM** on the interested parties in this action as follows:

| | |
|---|---|
| Andrew P. Holland | Attorneys for Plaintiff |
| Nathaniel H. Lipanovich | BELLA+CANVAS, LLC |
| Cynthia C. Mullen | Tel:   650.327.4200 |
| Melissa K. Zonne | Fax:   650.325.5572 |
| THOITS LAW | Email:aholland@thoits.com |
| 400 Main Street, Suite 250 | nlipanovich@thoits.com |
| Los Altos, CA 94022 | cmullen@thoits.com |
| | mzonne@thoits.com |
| | |
| | Copy to: msmith@thoits.com |
| | bsilveira@thoits.com |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address yvonne.catig@clydeco.us to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 22, 2022, at South San Francisco, California.

_____
Yvonne Catig

1  CONTE C. CICALA, State Bar No. 173554
   conte.cicala@clydeco.us
2  CLYDE & CO US LLP
   Four Embarcadero Center, Suite 1350
3  San Francisco, California 94111
   Telephone: (415) 365-9800
4  Facsimile:  (415) 365-9801

5  Attorneys for Defendant
   FOUNTAIN SET LIMITED

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  BELLA + CANVAS, LLC, | Case No.  2:21-cv-00758-ODW-MAA |
| 12       Plaintiff, | **NOTICE OF TAKING ORAL (REMOTE-OPTIONAL) DEPOSITION OF AARON JACKSON** |
| 13       v. | |
| 14  FOUNTAIN SET LIMITED, a foreign business entity; and DOES 1 through 20, inclusive, | |
| 15 | |
| 16       Defendants. | |

17

18  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

19          PLEASE TAKE NOTICE that pursuant to Rules 30 and 34 of the Federal

20  Rules of Civil Procedure, Defendant FOUNTAIN SET LIMITED will take the

21  deposition on oral examination of **AARON JACKSON in the Clyde & Co offices**

22  **located at 355 S. Grand Avenue, Suite 1400, Los Angeles, California, on March**

23  **9, 2022 commencing at 1:00 p.m.** and continuing from day to day, excluding

24  weekends and holidays, until completed and concurrently will take place remotely

25  by videoconference software and link.  Attendance in person or via video link will

26  be at the option of the witness and his or her counsel, subject to any federal, state,

27  local or building restrictions on attendance in effect at the time of the deposition.

28

1   Dated:  February 22, 2022          CLYDE & CO LLP

2

3                                      By:  /s/ Conte C. Cicala
                                            Conte C. Cicala
4                                           Attorneys for Defendant
                                            FOUNTAIN SET LIMITED
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**
(*Bella+Canvas LLC v. Fountain Set Limited, et al.,*
**USDC, Central District of California Case No. 2:21-cv-00758-ODW-MAA)**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, Suite 1350, San Francisco, CA 94111.

On February 22, 2022, I served true copies of the following document(s) described as **NOTICE OF TAKING ORAL (REMOTE-OPTIONAL) DEPOSITION OF AARON JACKSON** on the interested parties in this action as follows:

| | |
|---|---|
| Andrew P. Holland | Attorneys for Plaintiff |
| Nathaniel H. Lipanovich | BELLA+CANVAS, LLC |
| Cynthia C. Mullen | Tel:   650.327.4200 |
| Melissa K. Zonne | Fax:   650.325.5572 |
| THOITS LAW | Email:aholland@thoits.com |
| 400 Main Street, Suite 250 | nlipanovich@thoits.com |
| Los Altos, CA 94022 | cmullen@thoits.com |
| | mzonne@thoits.com |
| | |
| | Copy to: msmith@thoits.com |
| | bsilveira@thoits.com |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address yvonne.catig@clydeco.us to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 22, 2022, at South San Francisco, California.

_____
Yvonne Catig

1  CONTE C. CICALA, State Bar No. 173554
   conte.cicala@clydeco.us
2  CLYDE & CO US LLP
   Four Embarcadero Center, Suite 1350
3  San Francisco, California 94111
   Telephone: (415) 365-9800
4  Facsimile:  (415) 365-9801

5  Attorneys for Defendant
   FOUNTAIN SET LIMITED

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  BELLA + CANVAS, LLC,            Case No.  2:21-cv-00758-ODW-MAA

12          Plaintiff,              **NOTICE OF TAKING ORAL
                                    (REMOTE-OPTIONAL)
13       v.                         DEPOSITION OF MARCO
                                    DeGEORGE**
14  FOUNTAIN SET LIMITED, a foreign
    business entity; and DOES 1 through
15  20, inclusive,

16          Defendants.

17

18  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

19        PLEASE TAKE NOTICE that pursuant to Rules 30 and 34 of the Federal

20  Rules of Civil Procedure, Defendant FOUNTAIN SET LIMITED will take the

21  deposition on oral examination of **MARCO DeGEORGE in the Clyde & Co**

22  **offices located at 355 S. Grand Avenue, Suite 1400, Los Angeles, California, on**

23  **March 10, 2022 commencing at 9:00 a.m.** and continuing from day to day,

24  excluding weekends and holidays, until completed and concurrently will take place

25  remotely by videoconference software and link.  Attendance in person or via video

26  link will be at the option of the witness and his or her counsel, subject to any

27  federal, state, local or building restrictions on attendance in effect at the time of the

28  deposition.

1   Dated:  February 22, 2022          CLYDE & CO LLP

2

3                                       By: /s/ Conte C. Cicala
                                             Conte C. Cicala
4                                            Attorneys for Defendant
                                             FOUNTAIN SET LIMITED
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**
(*Bella+Canvas LLC v. Fountain Set Limited, et al.,*
**USDC, Central District of California Case No. 2:21-cv-00758-ODW-MAA)**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, Suite 1350, San Francisco, CA 94111.

On February 22, 2022, I served true copies of the following document(s) described as **NOTICE OF TAKING ORAL (REMOTE-OPTIONAL) DEPOSITION OF MARCO DeGEORGE** on the interested parties in this action as follows:

| | |
|---|---|
| Andrew P. Holland | Attorneys for Plaintiff |
| Nathaniel H. Lipanovich | BELLA+CANVAS, LLC |
| Cynthia C. Mullen | Tel:  650.327.4200 |
| Melissa K. Zonne | Fax:  650.325.5572 |
| THOITS LAW | Email:aholland@thoits.com |
| 400 Main Street, Suite 250 | nlipanovich@thoits.com |
| Los Altos, CA 94022 | cmullen@thoits.com |
| | mzonne@thoits.com |
| | |
| | Copy to: msmith@thoits.com |
| | bsilveira@thoits.com |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address yvonne.catig@clydeco.us to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 22, 2022, at South San Francisco, California.

Yvonne Catig

**EXHIBIT 10**

| | |
|---|---|
| **From:** | Mullen, Cynthia <CMullen@thoits.com> |
| **Sent:** | Friday, February 4, 2022 2:40 PM |
| **To:** | Kennedy, Glenanne; Zonne, Melissa |
| **Cc:** | Cicala, Conte; Lipanovich, Nathaniel |
| **Subject:** | RE: Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372] |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Hi Glenanne,

We agree with your summary of our meet/confer call re RFAs and Interrogatories.

Your summary re Genuineness of Documents is accurate as well, but we've considered the idea of a stipulation further—our current position is that a global stipulation regarding document authenticity is premature at this time. We may be willing to enter into something like this later in the case (e.g., before trial), but not at this time.

Regarding depositions, your summary is correct that we would still like to schedule Fountain Set's depositions in March, since the parties will respond to all outstanding discovery in February. We have conducted further research regarding the issue of prior approval from Hong Kong or Chinese authorities, and the citizenship of the deponents is material to whether approval is required.

Can you please advise whether the following witnesses are Hong Kong citizens or PRC (Mainland China) citizens:
- Chapman Yuen
- Tony Kong
- Jennifer Chu

Best,
Cynthia

**Cynthia C. Mullen**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | CMullen@thoits.com

**Confidentiality Notice**. The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Thursday, February 3, 2022 3:57 PM
**To:** Mullen, Cynthia <CMullen@thoits.com>; Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>
**Subject:** Bella + Canvas v. Fountain Set - Summary of February 2, 2022 Meet and Confer [CC-US2.FID865372]

Hi Cynthia and Melissa,

As discussed, I want to memorialize our meet and confer conversation that took place today to make sure we are all on the same page.

Requests for Admission: In accordance with our meet and confer conference on December 21, 2021, and B+C's position that some of Fountain Set's RFAs were vague and ambiguous, Fountain Set and B+C agreed that Fountain Set would amend those specific RFAs. Fountain Set's amended RFAs were served on January 24, 2022.  B+C is taking the position that the amended RFAs are actually 6 new RFAs due to the amount of changes that have been made. B+C will provide its responses to these RFAs within 30 days.

Genuineness of Documents: Consistent with the position taken at the December 21, 2021 meet and confer conference, B+C continues to deny the authenticity of the documents attached the Fountain Set's first set of RFAs based on the existence of highlights and Chinese characters that are not in the original document, and that the documents provided are only a portion of the complete document. B+C does not agree to substitute their version of the documents to Fountain Set's RFAs, and admit to the genuineness of their version. B+C proposes either entering into a global stipulation that all documents produced by either side are authentic, or Fountain Set can draft additional RFAs requesting that B+C admit to the genuineness of B+C's version of the documents.

Interrogatories: Based on B+C's position that the amended RFAs are in fact new RFAs, B+C continues to assert that Fountain Set has exceeded the number of interrogatories permitted. As provided in their responses to the interrogatories, and as discussed during the meet and confer conference on December 21, 2021, B+C asserts that each of Fountain Set's three interrogatories contain 13 separate subparts, and thus each interrogatory should be treated as 13 separate interrogatories, which exceeds the 25 interrogatory limit.

Depositions: Fountain Set requires the responses to their most recent discovery, served on January 24, 2022, before conducting depositions. B+C does not anticipate this being an issue. Additionally, both parties' research demonstrates that permission from Hong Kong's Competent Authority is required before conducting the depositions of Fountain Set's Hong Kong witnesses. B+C will attempt to determine how long such a process may take, and seek an extension from the court should the process prevent depositions from going forward in accordance with the time line provided by the court. B+C requested that we also reach out to Clyde & Co's Hong Kong office to determine whether they have any additional information regarding the process.

Deposition Schedule: The agreed upon timeline for scheduling depositions is still March 2022. B+C requests that the Fountain Set witnesses be deposed prior to the B+C witnesses, as B+C made their request before Fountain Set. B+C is not available to conduct depositions the last week of March.

Requests for Production: B+C anticipates serving an additional production, which is in response to Fountain Set's Request for Production, in the near future and possibly as early as February 4, 2022.

Please let me know if you agree with this summary of our conversation, or if you have any changes. Also, in the event that we cannot resolve some of these discovery issues, please provide your availability for a discovery conference with the magistrate judge.

Thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.



**EXHIBIT 11**

| | |
|---|---|
| **From:** | Kennedy, Glenanne |
| **Sent:** | Friday, April 22, 2022 2:53 PM |
| **To:** | Zonne, Melissa; Cicala, Conte |
| **Cc:** | Lipanovich, Nathaniel; Mullen, Cynthia |
| **Subject:** | RE: Bella+Canvas v. Fountain Set |

Hi Melissa,

A few small corrections to your summary below.

We have not agreed to bring the Hong Kong witnesses to LA for depositions, but noted that the relaxing of the quarantine requirements in Hong Kong has been a positive step in our discussions with the client regarding the possibility of them coming. In that light, we agreed to discuss with them the dates of the first two weeks in June, and will let you know if that time frame may work for them. Additionally, would you agree that should they agree to come that we can produce them in either San Francisco or Los Angeles, depending on which is more convenient for the witnesses?

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Friday, April 22, 2022 1:30 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** Bella+Canvas v. Fountain Set

Counsel,
Thank you for speaking with me today. I have summarized our call and agreed-upon next steps below. Let me know if anything differs from your understanding.

1. Given that Hong Kong has relaxed its quarantine requirements for people returning to the country, there is less burden on FSL witnesses in traveling to LA for depositions and they have agreed to do so. Given counsel's schedule, you have agreed to talk to your witnesses about their availability in the first 1-2 weeks of June 2022. I will send deposition notices out early next week.

2. I am going to provide availability for B+C's witnesses for the weeks immediately after FSL's depositions. I informed you that Dhinakaram Rajaram and Aaron Jackson are located in India and New Zealand respectively, and are not B+C employees. I will follow up with you on these witnesses as well.

3. FSL is planning to supplement its written discovery responses as to the mill information and its custom and practice. After our brief meet-and-confer regarding other categories of outstanding discovery, FSL is also going

1

to reevaluate those additional discovery issues raised in my March 11, 2022 letter and either supplement with more information or provide a response as to the reasons it will not do so.

Regards,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice**. The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**EXHIBIT 12**

| | |
|---|---|
| **From:** | Kennedy, Glenanne |
| **Sent:** | Monday, May 2, 2022 11:12 AM |
| **To:** | Zonne, Melissa |
| **Cc:** | Lipanovich, Nathaniel; Mullen, Cynthia; Cicala, Conte |
| **Subject:** | RE: Bella+Canvas v. Fountain Set |

Hi Melissa,

We appreciate that you want to get certainty on this and we do as well, but as you know the situation remains fluid. While Hong Kong is not Shanghai, which has been in full lockdown for more than a month, it is part of greater China. It is not simply a matter of people checking their calendar -- it is a significant issue to plan a trip out of the country in these circumstances. Even if we do get dates of availability in the US, those dates will of course be subject to the vagaries of the pandemic itself and the Hong Kong (and other) government reactions to it.

Meanwhile it has been more than 3 months since you learned of the need to seek permission from the Hong Kong competent authority and it seems you have opted not to seek permission, on the inexplicable rationale that it might take a long time to get permission. We continue to object to your decision to refrain from seeking permission. As you know, we will produce witnesses in Hong Kong if/when you get permission. If you have not done so, you should immediately seek permission, and meanwhile we will continue to try to arrange dates for depositions in the SF Bay Area in hopes that can happen in June as we have discussed. In the meantime our client reserves all rights.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Friday, April 29, 2022 1:01 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set

Counsel:
I'm following up again the availability of FSL's witnesses for deposition in the first half of June. Please let me know when I can expect to hear back from you as to specific dates so we can get these on calendar.

Please also let me know the status of the supplemental discovery responses, and your availability for a second meet-and-confer conference on the outstanding issues. I am generally free next week.

Regards,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice**. The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

---

**From:** Zonne, Melissa
**Sent:** Tuesday, April 26, 2022 12:03 PM
**To:** 'Kennedy, Glenanne' <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set

Hi Glenanne,

I am following up on our call last week and checking in on the available dates for depositions in the time frame we discussed. We plan to get notices out as soon as possible this week. As to location, we are willing to host depositions at our office in the Bay Area if that is more convenient for FSL's witnesses.

Please also let me know when we can expect to hear back regarding the supplemental discovery responses.

Thank you,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice**. The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

---

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Friday, April 22, 2022 2:53 PM
**To:** Zonne, Melissa <MZonne@thoits.com>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set

Hi Melissa,

A few small corrections to your summary below.

We have not agreed to bring the Hong Kong witnesses to LA for depositions, but noted that the relaxing of the quarantine requirements in Hong Kong has been a positive step in our discussions with the client regarding the

possibility of them coming. In that light, we agreed to discuss with them the dates of the first two weeks in June, and will let you know if that time frame may work for them. Additionally, would you agree that should they agree to come that we can produce them in either San Francisco or Los Angeles, depending on which is more convenient for the witnesses?

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



| 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
| **Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Friday, April 22, 2022 1:30 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** Bella+Canvas v. Fountain Set

Counsel,
Thank you for speaking with me today. I have summarized our call and agreed-upon next steps below. Let me know if anything differs from your understanding.

1. Given that Hong Kong has relaxed its quarantine requirements for people returning to the country, there is less burden on FSL witnesses in traveling to LA for depositions and they have agreed to do so. Given counsel's schedule, you have agreed to talk to your witnesses about their availability in the first 1-2 weeks of June 2022. I will send deposition notices out early next week.

2. I am going to provide availability for B+C's witnesses for the weeks immediately after FSL's depositions. I informed you that Dhinakaram Rajaram and Aaron Jackson are located in India and New Zealand respectively, and are not B+C employees. I will follow up with you on these witnesses as well.

3. FSL is planning to supplement its written discovery responses as to the mill information and its custom and practice. After our brief meet-and-confer regarding other categories of outstanding discovery, FSL is also going to reevaluate those additional discovery issues raised in my March 11, 2022 letter and either supplement with more information or provide a response as to the reasons it will not do so.

Regards,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT
13

| | |
|---|---|
| **From:** | Zonne, Melissa <MZonne@thoits.com> |
| **Sent:** | Monday, May 2, 2022 5:26 PM |
| **To:** | Kennedy, Glenanne |
| **Cc:** | Lipanovich, Nathaniel; Mullen, Cynthia; Cicala, Conte |
| **Subject:** | RE: Bella+Canvas v. Fountain Set |

Hi Glenanne,

While I understand FSL's availability will remain subject to various external factors (as is the case with all depositions), we are entitled to get these depositions on calendar and have made every effort to accommodate counsels' and your clients' schedules. As you know, Judge Audero was explicit in her instruction that we move discovery forward in this case and avoid further delay. She also agreed the depositions should take place in Los Angeles given the delays associated with proceeding in Hong Kong. Thus, there has been no need to request permission for the depositions to proceed in Hong Kong; nevertheless, it has always been our position that if that were necessary, it is FSL's obligation to do so.

When you and I spoke on April 22nd, we discussed a timeline in which you would provide exact dates by early last week. You also indicated you would provide a response regarding the written discovery responses by last week, and you have been silent as to that issue since our call.

To that end, it appears we will need to involve the Court in both of these discovery disputes. First, we plan to proceed with moving to compel the depositions of FSL's witnesses in the first two weeks of June in Los Angeles (or Thoits' office in Los Altos if requested), as discussed. **Please let me know immediately if these motions are unnecessary. Please also provide your availability for a second meet and confer conference in advance of an IDC relating to FSL's discovery responses, as well as dates of availability for the IDC so that I may contact the Court should we not come to an agreement.**

Thank you,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

---

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Monday, May 2, 2022 11:12 AM
**To:** Zonne, Melissa <MZonne@thoits.com>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Subject:** RE: Bella+Canvas v. Fountain Set

Hi Melissa,

We appreciate that you want to get certainty on this and we do as well, but as you know the situation remains fluid.  While Hong Kong is not Shanghai, which has been in full lockdown for more than a month, it is part of greater China.  It is not simply a matter of people checking their calendar -- it is a significant issue to plan a trip out of the country in these circumstances.  Even if we do get dates of availability in the US, those dates will of course be subject to the vagaries of the pandemic itself and the Hong Kong (and other) government reactions to it.

Meanwhile it has been more than 3 months since you learned of the need to seek permission from the Hong Kong competent authority and it seems you have opted not to seek permission, on the inexplicable rationale that it might take a long time to get permission.  We continue to object to your decision to refrain from seeking permission.  As you know, we will produce witnesses in Hong Kong if/when you get permission.  If you have not done so, you should immediately seek permission, and meanwhile we will continue to try to arrange dates for depositions in the SF Bay Area in hopes that can happen in June as we have discussed.  In the meantime our client reserves all rights.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

# CLYDE&CO

| 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Friday, April 29, 2022 1:01 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set

Counsel:
I'm following up again the availability of FSL's witnesses for deposition in the first half of June. Please let me know when I can expect to hear back from you as to specific dates so we can get these on calendar.

Please also let me know the status of the supplemental discovery responses, and your availability for a second meet-and-confer conference on the outstanding issues. I am generally free next week.

Regards,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.**  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Zonne, Melissa
**Sent:** Tuesday, April 26, 2022 12:03 PM
**To:** 'Kennedy, Glenanne' <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set

Hi Glenanne,

I am following up on our call last week and checking in on the available dates for depositions in the time frame we discussed. We plan to get notices out as soon as possible this week. As to location, we are willing to host depositions at our office in the Bay Area if that is more convenient for FSL's witnesses.

Please also let me know when we can expect to hear back regarding the supplemental discovery responses.

Thank you,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200  |  www.thoits.com  |  MZonne@thoits.com

**Confidentiality Notice.**  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Friday, April 22, 2022 2:53 PM
**To:** Zonne, Melissa <MZonne@thoits.com>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: Bella+Canvas v. Fountain Set

Hi Melissa,

A few small corrections to your summary below.

We have not agreed to bring the Hong Kong witnesses to LA for depositions, but noted that the relaxing of the quarantine requirements in Hong Kong has been a positive step in our discussions with the client regarding the possibility of them coming. In that light, we agreed to discuss with them the dates of the first two weeks in June, and will let you know if that time frame may work for them. Additionally, would you agree that should they agree to come that we can produce them in either San Francisco or Los Angeles, depending on which is more convenient for the witnesses?

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Friday, April 22, 2022 1:30 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>; Cicala, Conte <Conte.Cicala@clydeco.us>
**Cc:** Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** Bella+Canvas v. Fountain Set

Counsel,
Thank you for speaking with me today. I have summarized our call and agreed-upon next steps below. Let me know if anything differs from your understanding.

1. Given that Hong Kong has relaxed its quarantine requirements for people returning to the country, there is less burden on FSL witnesses in traveling to LA for depositions and they have agreed to do so. Given counsel's schedule, you have agreed to talk to your witnesses about their availability in the first 1-2 weeks of June 2022. I will send deposition notices out early next week.
2. I am going to provide availability for B+C's witnesses for the weeks immediately after FSL's depositions. I informed you that Dhinakaram Rajaram and Aaron Jackson are located in India and New Zealand respectively, and are not B+C employees. I will follow up with you on these witnesses as well.
3. FSL is planning to supplement its written discovery responses as to the mill information and its custom and practice. After our brief meet-and-confer regarding other categories of outstanding discovery, FSL is also going to reevaluate those additional discovery issues raised in my March 11, 2022 letter and either supplement with more information or provide a response as to the reasons it will not do so.

Regards,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a

multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

**EXHIBIT 14**

| | |
|---|---|
| **From:** | Kennedy, Glenanne |
| **Sent:** | Monday, May 9, 2022 4:38 PM |
| **To:** | Zonne, Melissa |
| **Cc:** | Cicala, Conte; Lipanovich, Nathaniel; Mullen, Cynthia |
| **Subject:** | B+C v. FSL - Meet and Confer Summary |

Hi Melissa,

This will memorialize the meet and confer call we had today, in which we discussed both the depositions and outstanding discovery.

<u>Deposition:</u> FSL is willing to bring Chapman Yuen, as FSL's corporate designee, to San Francisco for his deposition on June 28, 2022, at the offices of Clyde & Co. B+C did not take a position as to whether it will move to compel the other FSL witnesses to travel to the US, however, for the avoidance of doubt, this offer is obviously subject to B+C's agreement to forego its efforts to compel the other witnesses to travel to the US. This agreement is further subject to travel restrictions between Hong Kong and the United States remaining substantially the same as they are now.  Please advise ASAP whether your client will agree to this proposal so that we can move ahead with coordinating travel plans accordingly.

<u>Discovery:</u> FSL maintains its objections for the discovery requests containing terms where the parties do not agree on a definition, including, but not limited to, "objectionable pilling," "wash/care instructions," and/or "reasonable wear and cleaning." FSL also maintains its objections for discovery requests containing the terms, "identical fabric" and "equal quality."   FSL will work on amending the other discovery responses.

<u>IDC:</u> B+C believes that a discovery conference is necessary based on FSL's position that it is maintaining its objections for discovery requests containing terms where the parties do not agree on a definition, such as "objectionable pilling."   FSL intends to use its willingness to compromise and provide further responses as an additional basis to oppose B+C efforts.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



| | |
|---|---|
| | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA |
| | **Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us** |

| From: | Zonne, Melissa <MZonne@thoits.com> |
|---|---|
| Sent: | Tuesday, May 10, 2022 7:13 PM |
| To: | Kennedy, Glenanne |
| Cc: | Cicala, Conte; Lipanovich, Nathaniel; Mullen, Cynthia |
| Subject: | RE: B+C v. FSL - Meet and Confer Summary |

Hi Glenanne,

Thank you for this summary, but the portion regarding depositions is not reflective of our call or agreement. I am surprised at your reference to the apparently contingent nature of your previous agreement to produce Chapman Yuen for deposition (in the Bay Area) as both FSL's corporate designee and as an individual, as it is the first I have heard of this qualification to that agreement. You did not raise this at the IDC or at either of the two meet-and-confer calls regarding depositions in this matter. In fact, during our call yesterday in which you agreed to produce Chapman, I told you B+C would likely move to compel the other depositions given our discussion, and you did not mention anything related to this proposed agreement.

B+C does not agree to waive its right to compel depositions of any of FSL's witnesses. Please let me know if this changes FSL's agreement to produce Chapman on June 28th. If so, we will be forced to include him, as well as all of the history of our efforts to meet-and-confer on this issue and Judge Audero's conclusions at the IDC, in our motion to compel.

As to discovery, your summary as accurate, but for clarity, you agreed to supplement those discovery items that asked about the source/mills used for the fabric, FSL's knowledge of the purpose of the fabric, and FSL's custom and practice. You also specifically agreed to supplement ROG No. 11. You agreed to provide these by the end of this week.

Finally, as you know, B+C requested an IDC today. We noted in our summary that we are awaiting these supplemental responses, and if they are satisfactory, they will not be pursued as part of the IDC.

Thank you,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice.** The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed. If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful. If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system. Thank you.

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Monday, May 9, 2022 4:38 PM
**To:** Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** B+C v. FSL - Meet and Confer Summary

Hi Melissa,

This will memorialize the meet and confer call we had today, in which we discussed both the depositions and outstanding discovery.

<u>Deposition:</u> FSL is willing to bring Chapman Yuen, as FSL's corporate designee, to San Francisco for his deposition on June 28, 2022, at the offices of Clyde & Co. B+C did not take a position as to whether it will move to compel the other FSL witnesses to travel to the US, however, for the avoidance of doubt, this offer is obviously subject to B+C's agreement to forego its efforts to compel the other witnesses to travel to the US. This agreement is further subject to travel restrictions between Hong Kong and the United States remaining substantially the same as they are now.  Please advise ASAP whether your client will agree to this proposal so that we can move ahead with coordinating travel plans accordingly.

<u>Discovery:</u> FSL maintains its objections for the discovery requests containing terms where the parties do not agree on a definition, including, but not limited to, "objectionable pilling," "wash/care instructions," and/or "reasonable wear and cleaning." FSL also maintains its objections for discovery requests containing the terms, "identical fabric" and "equal quality."   FSL will work on amending the other discovery responses.

<u>IDC:</u> B+C believes that a discovery conference is necessary based on FSL's position that it is maintaining its objections for discovery requests containing terms where the parties do not agree on a definition, such as "objectionable pilling."   FSL intends to use its willingness to compromise and provide further responses as an additional basis to oppose B+C efforts.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010



355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

**EXHIBIT 16**

| | |
|---|---|
| **From:** | Cicala, Conte |
| **Sent:** | Tuesday, May 10, 2022 7:57 PM |
| **To:** | Zonne, Melissa; Kennedy, Glenanne |
| **Cc:** | Lipanovich, Nathaniel; Mullen, Cynthia |
| **Subject:** | RE: B+C v. FSL - Meet and Confer Summary [CC-US2.121580.10254430.FID865373] |

Melissa,

For the avoidance of doubt, we do not agree to what you describe in your email.

We have tried to come to some sort of accommodation regarding witnesses located in Hong Kong despite the serious and ongoing challenges arising out of global pandemic conditions.  We have offered to bring our client's 30(b)(6) designee who is also clearly the most knowledgeable person on the matters at suit, to the U.S., even though it will cost a small fortune and require him to quarantine for at least a week on his return to Hong Kong.  This is despite the presumption that his deposition (indeed, all depositions of FSL witnesses) should take place at FSL's principal place of business.  In exchange for this accommodation, we have asked for you to forego your effort to compel travel of any remaining individual witnesses to the United States.  As to those witnesses, we are happy to produce them in Hong Kong via video connection once you have secured the necessary permissions.

You have responded to our efforts at compromise with gamesmanship, a key aspect of which is your client's continuing and inexplicable refusal to seek permission to conduct the depositions in Hong Kong even though your client is the party that wants to take those depositions.  Had you simply sought permission when this whole process began many months ago, you would likely have received it by now, and all of this would be moot.

Even as you continue to press your effort to have things 100% your way, your client has speciously refused to produce witnesses present in the district claiming "priority," something that does not exist in federal court.

We will of course oppose any motion to compel and will bring a counter-motion to compel production of your witnesses at a time convenient to us.

Based on the below, it appears you are not interested in compromising this issue, which is unfortunate.   If you want to reconsider, and agree to proceed consistent with the above, please let us know.

Very truly yours,

**Conte Cicala**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9830 | **Mobile:** +1 415 606 1371



| 150 California Street | 15th Floor | San Francisco | CA 94111 | USA |
| **Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us** |

My pronouns are: he / him / his

---

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Tuesday, May 10, 2022 7:13 PM
**To:** Kennedy, Glenanne <Glenanne.Kennedy@clydeco.us>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** RE: B+C v. FSL - Meet and Confer Summary

Hi Glenanne,

Thank you for this summary, but the portion regarding depositions is not reflective of our call or agreement. I am surprised at your reference to the apparently contingent nature of your previous agreement to produce Chapman Yuen for deposition (in the Bay Area) as both FSL's corporate designee and as an individual, as it is the first I have heard of this qualification to that agreement. You did not raise this at the IDC or at either of the two meet-and-confer calls regarding depositions in this matter. In fact, during our call yesterday in which you agreed to produce Chapman, I told you B+C would likely move to compel the other depositions given our discussion, and you did not mention anything related to this proposed agreement.

B+C does not agree to waive its right to compel depositions of any of FSL's witnesses. Please let me know if this changes FSL's agreement to produce Chapman on June 28th. If so, we will be forced to include him, as well as all of the history of our efforts to meet-and-confer on this issue and Judge Audero's conclusions at the IDC, in our motion to compel.

As to discovery, your summary as accurate, but for clarity, you agreed to supplement those discovery items that asked about the source/mills used for the fabric, FSL's knowledge of the purpose of the fabric, and FSL's custom and practice. You also specifically agreed to supplement ROG No. 11. You agreed to provide these by the end of this week.

Finally, as you know, B+C requested an IDC today. We noted in our summary that we are awaiting these supplemental responses, and if they are satisfactory, they will not be pursued as part of the IDC.

Thank you,
Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com | MZonne@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

---

**From:** Kennedy, Glenanne [mailto:Glenanne.Kennedy@clydeco.us]
**Sent:** Monday, May 9, 2022 4:38 PM
**To:** Zonne, Melissa <MZonne@thoits.com>
**Cc:** Cicala, Conte <Conte.Cicala@clydeco.us>; Lipanovich, Nathaniel <NLipanovich@thoits.com>; Mullen, Cynthia <CMullen@thoits.com>
**Subject:** B+C v. FSL - Meet and Confer Summary

Hi Melissa,

This will memorialize the meet and confer call we had today, in which we discussed both the depositions and outstanding discovery.

Deposition: FSL is willing to bring Chapman Yuen, as FSL's corporate designee, to San Francisco for his deposition on June 28, 2022, at the offices of Clyde & Co. B+C did not take a position as to whether it will move to compel the other FSL witnesses to travel to the US, however, for the avoidance of doubt, this offer is obviously subject to B+C's agreement to forego its efforts to compel the other witnesses to travel to the US. This agreement is further subject to travel restrictions between Hong Kong and the United States remaining

substantially the same as they are now.  Please advise ASAP whether your client will agree to this proposal so that we can move ahead with coordinating travel plans accordingly.

Discovery: FSL maintains its objections for the discovery requests containing terms where the parties do not agree on a definition, including, but not limited to, "objectionable pilling," "wash/care instructions," and/or "reasonable wear and cleaning." FSL also maintains its objections for discovery requests containing the terms, "identical fabric" and "equal quality."   FSL will work on amending the other discovery responses.

IDC: B+C believes that a discovery conference is necessary based on FSL's position that it is maintaining its objections for discovery requests containing terms where the parties do not agree on a definition, such as "objectionable pilling."   FSL intends to use its willingness to compromise and provide further responses as an additional basis to oppose B+C efforts.

Many thanks,

Glenanne

**Glenanne Kennedy**
Senior Associate | Clyde & Co US LLP
**Direct Dial:** +1 213 358 7633 | **Mobile:** +1 619 846 2010

 | 355 S. Grand Avenue | Suite 1400 | Los Angeles | CA 90071 | USA
**Main** +1 213 358 7600 | **Fax** +1 213 358 7650 | **www.clydeco.us**

**If our account details change, we will notify these to you by letter, telephone or face-to-face and never by email.**

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.

EXHIBIT
L

1  CONTE C. CICALA, State Bar No. 173554
   conte.cicala@clydeco.us
2  CLYDE & CO US LLP
   150 California Street, 15th Floor
3  San Francisco, California 94111
   Telephone: (415) 365-9800
4  Facsimile:  (415) 365-9801

5  Attorneys for Defendant
   FOUNTAIN SET LIMITED

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11 | BELLA + CANVAS, LLC,              | Case No.  2:21-cv-00758-ODW-MAA
12 |              Plaintiff,            | DECLARATION OF CHAPMAN
   |                                    | YUEN IN OPPOSITION TO
13 |       v.                          | PLAINTIFF'S MOTION TO COMPEL
   |                                    | DEPOSITIONS OF DEFENDANT
14 | FOUNTAIN SET LIMITED, a foreign   | FOUNDANT SET LIMITED'S
   | business entity; and DOES 1 through| WITNESSES
15 | 20, inclusive,                    |
16 |              Defendants.          |

17

18            __DECLARATION OF CHAPMAN YUEN__

19 I, Chapman Yuen, declare:

20     1.  I am currently employed as Senior Manager and Section Head of the Sales

21 Department at Fountain Set Limited in Hong Kong and live in Hong Kong. I submit

22 this declaration in opposition to Plaintiff's Motion to Compel Depositions of

23 Defendant Fountain Set Limited's Witnesses. This declaration is based on my own

24 person knowledge, and I would testify competently to the matters contained here.

25     2.  I was the main point of contact in all communications with Bella + Canvas

26 that are at issue in this litigation, including negotiating the contract terms, arranging

27 the manufacturing of both the sample and bulk fabrics, and when Bella + Canvas

28 alleged that the bulk fabric shipment did not conform with the contract terms.

3.  While I involved other members of my team and senior leadership during specific phases throughout the contract with Bella + Fabric, I remained centrally involved and the primary point of contact.

4.  I understand that Bella + Canvas is trying to compel that my deposition take place in California, which would result in significant hardship to me.

5.  Hong Kong's zero tolerance COVID-19 policy significantly impacts travel both to and from Hong Kong as flights are frequently cancelled and flight paths prohibited, resulting in both uncertainty surrounding travel schedules and substantial increases in costs and expenses.

6.  Should a flight path become cancelled, I would have to find and purchase additional tickets on an alternate flight path to the same destination, which are often not available on the same day, necessitating additional hotel expenses, changing the quarantine hotel reservations which are currently very limited, and incur additional unknown and unplanned for expenses. All of these expenses result in a significant financial hardship.

7.  Should I contract COVID-19 prior to flying to the United States, I would no longer be able to fly for an unknown amount of time, delaying the deposition indefinitely.

8.  Should I contract COVID-19 while in the United States, I would be unable to return to Hong Kong for an undetermined amount of time, which would result in both significant financial expenses to pay to stay in the United States, and significant personal and professional hardship by being away from my family and from my place of business.

9.  As the Senior Head & Division Manager for the sales department, I am expected to be in the Fountain Set Limited offices during normal business hours as often as possible. Not being able to be in the Fountain Set Offices for a minimum of three weeks will impact my ability to perform by job functions and cause significant professional hardships.

1    10. I am very concerned with the risks associated with travel to the United States

2  for myself and my work colleagues and, by extension, our families who would be

3  exposed through us.  I have reviewed the news and am informed and believe the US

4  is reporting 130,000 new cases daily, with California an area of concentration.

5

6    I certify under penalty of perjury under the laws of the United States that the

7  foregoing is true and correct. Executed on May __25__, 2022, at Hong Kong S.A.R.

8

9

10    By: _____

11    Chapman Yuen

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CHAPMAN YUEN

**EXHIBIT M**

1  CONTE C. CICALA, State Bar No. 173554
   conte.cicala@clydeco.us
2  CLYDE & CO US LLP
   150 California Street, 15th Floor
3  San Francisco, California 94111
   Telephone: (415) 365-9800
4  Facsimile:  (415) 365-9801

5  Attorneys for Defendant
   FOUNTAIN SET LIMITED

6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11 | BELLA + CANVAS, LLC,              | Case No.  2:21-cv-00758-ODW-MAA

12 |            Plaintiff,             | DECLARATION OF TONY KONG IN
                                         OPPOSITION TO PLAINTIFF'S
13 |       v.                         | MOTION TO COMPEL
                                         DEPOSITIONS OF DEFENDANT
14 | FOUNTAIN SET LIMITED, a foreign  | FOUNDANT SET LIMITED'S
   business entity; and DOES 1 through  WITNESSES
15 20, inclusive,

16            Defendants.

17

18            __**DECLARATION OF TONY KONG**__

19 I, Tony Kong, declare:

20    1.  I am currently employed as the Assistant President and Sales Director at

21 Fountain Set Limited in Hong Kong and live in Hong Kong. I submit this

22 declaration in opposition to Plaintiff's Motion to Compel Depositions of Defendant

23 Fountain Set Limited's Witnesses. This declaration is based on my own person

24 knowledge, and I would testify competently to the matters contained here.

25    2.  I was brought into communications with Bella + Canvas when Bella + Canvas

26 alleged that the bulk fabric shipment did not conform with the contract terms,

27 throughout which time Chapman Yuen remained the primary point of contact.

28

3.  I understand that Bella + Canvas is trying to compel that my deposition take place in California, which would result in significant hardship to me.

4.  Hong Kong's zero tolerance COVID-19 policy significantly impacts travel both to and from Hong Kong as flights are frequently cancelled and flight paths prohibited, resulting in both uncertainty surrounding travel schedules and substantial increases in costs and expenses.

5.  Should a flight path become cancelled, I would have to find and purchase additional tickets on an alternate flight path to the same destination, which are often not available on the same day, necessitating additional hotel expenses, changing the quarantine hotel reservations which are currently very limited, and incur additional unknown and unplanned for expenses. All of these expenses result in a significant financial hardship.

6.  Should I contract COVID-19 prior to flying to the United States, I would no longer be able to fly for an unknown amount of time, delaying the deposition indefinitely.

7.  Should I contract COVID-19 while in the United States, I would be unable to return to Hong Kong for an undetermined amount of time, which would result in both significant financial expenses to pay to stay in the United States until I receive a negative COVID test, and significant personal and professional hardship by being away from my family and from my place of business.

8.  As the Assistant President and Sales Director of Fountain Set Limited, I am expected to be in the Fountain Set Limited offices in person. Not being able to be in the Fountain Set Offices for a minimum of three weeks will impact my ability to perform by job functions and cause significant professional hardships.

1     I certify under penalty of perjury under the laws of the United States that

2 the foregoing is true and correct. Executed on May   25  , 2022, at Hong Kong

3 S.A.R.

By: _____
       Tony Kong

**EXHIBIT N**

1  CONTE C. CICALA, State Bar No. 173554
   conte.cicala@clydeco.us
2  CLYDE & CO US LLP
   150 California Street, 15th Floor
3  San Francisco, California 94111
   Telephone: (415) 365-9800
4  Facsimile: (415) 365-9801

5  Attorneys for Defendant
   FOUNTAIN SET LIMITED

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  BELLA + CANVAS, LLC,                 Case No. 2:21-cv-00758-ODW-MAA

12           Plaintiff,                  DECLARATION OF JENNIFER CHU
                                         IN OPPOSITION TO PLAINTIFF'S
13        v.                             MOTION TO COMPEL
                                         DEPOSITIONS OF DEFENDANT
14  FOUNTAIN SET LIMITED, a foreign      FOUNDANT SET LIMITED'S
    business entity; and DOES 1 through  WITNESSES
15  20, inclusive,

16           Defendants.

17

18              **DECLARATION OF JENNIFER CHU**

19  I, Jennifer Chu, declare:

20       1.  I am currently employed as a Section Head in the Sales Department at

21  Fountain Set Limited in Hong Kong and live in Hong Kong. I submit this

22  declaration in opposition to Plaintiff's Motion to Compel Depositions of Defendant

23  Fountain Set Limited's Witnesses. This declaration is based on my own person

24  knowledge, and I would testify competently to the matters contained here.

25       2.  I was responsible for communicating with Bella + Canvas regarding the

26  shipments of both the sample and bulk fabric, when it was being shipped, and

27  tracking the shipments. Chapman Yuen was also involved in all of these

28  communications.

3.  I have not been invested with general powers allowing me to exercise judgment and discretion in corporate matters at Fountain Set Limited.

4.  I understand that Bella + Canvas is trying to compel that my deposition take place in California, which would result in significant hardship to me.

5.  Hong Kong's zero tolerance COVID-19 policy significantly impacts travel both to and from Hong Kong as flights are frequently cancelled and flight paths prohibited, resulting in both uncertainty surrounding travel schedules and substantial increases in costs and expenses.

6.  Should a flight path become cancelled, I would have to find and purchase additional tickets on an alternate flight path to the same destination, which are often not available on the same day, necessitating additional hotel expenses, changing the quarantine hotel reservations which are currently very limited, and incur additional unknown and unplanned for expenses. All of these expenses result in a significant financial hardship.

7.  Should I contract COVID-19 prior to flying to the United States, I would no longer be able to fly for an unknown amount of time, delaying the deposition indefinitely.

8.  Should I contract COVID-19 while in the United States, I would be unable to return to Hong Kong for an undetermined amount of time, which would result in both significant financial expenses to pay to stay in the United States, and significant personal and professional hardship by being away from my family and from my place of business.

9.  As a Section Head within the Sales Department, I am expected to be in the Fountain Set Limited offices in person. Not being able to be in the Fountain Set Offices for a minimum of three weeks will impact my ability to perform by job functions and cause significant professional hardships.

1    I certify under penalty of perjury under the laws of the United States that

2    the foregoing is true and correct. Executed on May ___25___, 2022, at Hong Kong

3    S.A.R.

4

5

6    By: _____

7    Jennifer Chu

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JENNIFER CHU

 **U.S. Consulate General Hong Kong & Macau**

EXHIBIT
O

# COVID-19 Information

Last updated: *[5/23/2022]*

> *** *Effective December 6, 2021, all airline passengers to the United States ages two years and older, regardless of vaccination status or citizenship, must provide a negative COVID-19 viral test taken within one calendar day of travel.  Alternatively, travelers to the United States may provide documentation from a licensed health care provider of having recovered from COVID-19 in the 90 days preceding travel.  Check the CDC website for additional information and* Frequently Asked Questions.
>
> *** *Effective November 8, 2021, all non-immigrant, non-U.S. citizen air travelers to the United States will be required to be fully vaccinated and to provide proof of vaccination status prior to boarding an airplane to the United States.  Exemptions will be considered on an extremely limited basis.  Please contact your nearest embassy or consulate to apply for an exemption.  Please visit the CDC webpages for more information about* exemptions.
>
> *For more information about traveling to the U.S., such as quarantine or social distancing requirements, please consult the airport and government websites of the locale you will be visiting.  COVID-19 regulations vary by state and even city.  If you have any questions, please direct them to the authorities of that locality for the most reliable information.*

## HONG KONG

**Country-Specific Information:**

- *Hong Kong: The Hong Kong government has confirmed cases of COVID-19 within its borders.  Safety and security information is provided in our* Travel Advisory for Hong Kong, *currently at Level 4.  For more information on conditions in Hong Kong, please see the Hong Kong government's* website.

### COVID-19 Testing

- Are PCR and/or antigen tests available for U.S. citizens in the Hong Kong Special Administration Region?  *Yes*

- If so, are test results reliably available within 1 day?  *Usually, yes.  In the early spring of 2022, Hong Kong's COVID testing infrastructure was overwhelmed, resulting in long waits for COVID test results.  The situation has now largely returned to normal, and it is no longer so difficult to obtain a COVID test with a rapid turnaround.*

- *Hong Kong's Community Testing Centers are operated by contractors who are approved by the HKSAR government and are able to take combined nasal and throat swabs and provide results for a COVID-19 nucleic acid test within 24 hours via email, SMS, and physical copy.  The HKSAR government has capped the cost for this service at 240 HKD.  If an individual has symptoms, they should not visit the Community Testing Center.  Individuals with symptoms should seek medical advice and testing through their medical provider, a private medical institution, or one of Hong Kong's public hospitals or general outpatient clinics.  Some private hospitals and testing facilities in Hong Kong are able to deliver COVID test results in only a few hours.  You can find a list of private testing facilities recognized by the Hong Kong government here.  COVID testing with same-day results is also available in the Hong Kong International Airport.  Please contact your preferred testing facility directly for information about testing options, pricing, and scheduling.*

- *On February 25, 2022, the Hong Kong government announced that a positive result from a self-administered rapid antigen tests (RAT) purchased from a pharmacy should be considered official.  Those who test positive from a RAT but who are asymptomatic should stay at home and obey home quarantine protocols.  HOWEVER, a negative result from a RAT is NOT considered definitive and must be substantiated by a second RAT or an official test administered by the Hong Kong health authorities.  Use of a RAT does NOT fulfill a compulsory testing order.  Please see the Hong Kong government press release.*

- *Hong Kong health authorities request that those who test positive for COVID at home using a RAT make an official declaration of their positive status at www.chp.gov.hk/ratp.  Starting March 8, 2022, these persons will be contacted "on a random basis" to conduct a follow-up COVID test through a contractor, who will deliver a nasal swab self-sampling kit to them at home, collect the samples, and then provide a result via SMS.  For further information, see the press release.*

- *RATs can fulfill the CDC requirement for a COVID test within one calendar day of departure to the United States; however, the RAT must be administered in the presence (in person or by videocall) of a medical practitioner who can write an official letter certifying the negative test result.*


COVID-19 Vaccine Information:

- Has the government of the Hong Kong Special Administrative Region approved a COVID-19 vaccine for use?

- ○ *Yes, the government of Hong Kong began vaccinations in late February 2021.*
- Are vaccines available in Hong Kong for U.S. citizens to receive?
  - ○ *Through the Hong Kong Government's Vaccination Program, any Hong Kong resident aged 12 or above is eligible to receive free vaccination with the Fosun Pharma-BioNTech/Comirnaty or Sinovac Biotech/CoronaVac vaccine at a Community Vaccination Center.  Those aged 12-17 are required to bring along a consent form signed by their parents to receive their vaccination.  For more information about local availability of COVID-19 vaccines, please consult the Hong Kong Government's Vaccination Program site.*
  - ○ *Non-residents with UNHCR refugee status and non-residents holding valid travel documents who can complete a full course of vaccination within their stay limit are eligible to receive vaccination in Hong Kong.  For more information on vaccinations for non-Hong Kong residents, please see the Hong Kong Government's press release.*
  - ○ *Beginning December 6, 2021, certain private healthcare institutions will be offering vaccination appointments with the BioNTech vaccine.  For more information on vaccinations by private hospitals, please see the Hong Kong government's press release.*
  - ○ *As of January 24, 2022, the restriction on visitors that they had received at least one of their previous doses of COVID vaccine in Hong Kong in order to receive a booster shot has been removed.  Visitors who have had both their doses outside Hong Kong cannot use the online appointment system but may appear without an appointment at a vaccination center to request a booster.  They should be sure to bring with them full documentation of both previous doses of the vaccine.  Full information is available on the Hong Kong COVID vaccination website under Third Dose COVID-19 vaccination arrangement → "Arrangements of third dose vaccination for non-Hong Kong residents" and "Local residents who received the first and/or second dose vaccine outside Hong Kong."*
  - ○ *Starting May 21, 2022, persons aged 18-59 who consider themselves to be at high-risk for COVID may choose to have a fourth dose six months after administration of their third dose.  The online appointment system will be available for fourth dose appointments starting May 26, 2022.*
- Which vaccines are available in Hong Kong?
  - ○ *As of January 25, 2021 and February 18, 2021 respectively, the Hong Kong government has approved the Fosun Pharma-BioNTech/Comirnaty and the Sinovac Biotech/CoronaVac vaccines for emergency use.  For more information, please consult the Hong Kong Government's Vaccination Program site.*
- Does the United States Government recommend that their citizens take Chinese-produced vaccines?
  - ○ *The United States has expressed concerns that Russia and the People's Republic of China are sharing or marketing vaccines to the international community without providing transparent, peer-reviewed scientific evidence of their safety and efficacy.  U.S. citizens*

*abroad should consult with medical providers they trust and review information published by relevant public health authorities as they consider their options for accessing a COVID-19 vaccine.  U.S. citizens traveling or resident abroad are subject to local laws and to the authority of local health officials.*

- *Visit the FDA's website to learn more about FDA-approved vaccines in the United States.*

- *The United States Government does not plan to provide COVID-19 vaccinations to private U.S. citizens overseas.  Please follow host country developments and guidelines for COVID-19 vaccination.*

- Does Hong Kong recognize non-local COVID-19 vaccines and vaccination records?

  - *The Government of Hong Kong has published a list of the COVID-19 vaccines and the vaccination records they recognize for travel into Hong Kong.  Please see the Hong Kong government website's Vaccination proof section for this information.  Travelers with foreign vaccination records arriving at Hong Kong's land boundary control points and to Hong Kong International Airport will be issued a vaccination record QR code for local use.  Please see the Hong Kong government's press release for more information.*

  - *Starting February 24, 2022, all persons will be required to have uploaded their COVID-19 vaccination records to the LeaveHomeSafe app in order to enter a wide range of locations. (Please see under Movement Restrictions below.) This requires your vaccination record to have a QR code readable by the LeaveHomeSafe app.  If your vaccination and/or booster shot was administered outside Hong Kong, please follow the instructions in this document (PDF 191 KB) in order to obtain the necessary Hong Kong QR code at a post office.  Starting May 20, 2022, you may also declare non-local vaccination records at the following website: COVID-19 Vaccination Information Declaration Form*

  - *Starting May 5, 2022, now that non-Hong Kong residents are being permitted to enter the territory, and since full COVID vaccination is required for all arriving persons, travelers with non-local vaccination records will automatically be issued a QR code at the port of entry for use with the LeaveHomeSafe app so that they can comply with the requirements of the Vaccine Pass program (see Movement Restrictions).  Those who have received only two doses of the COVID vaccine will be granted provisional full vaccination status (i.e. three doses) for 180 days and must arrange to obtain a booster shot locally if they will stay in Hong Kong longer.  Those who enter Hong Kong using the CometoHK or ReturntoHK schemes, however, will not be issued QR codes at the port of entry and must proceed to one of the 18 designated post offices to obtain one.  These same provisions apply to those entering with non-local proof of COVID recovery.  For further information, please see the Hong Kong government press release.*

## Entry and Exit Requirements:

**Movement Restrictions**

- Is a curfew in place? No.
- Are there restrictions on intercity or interstate travel? No.
- Social distancing requirements?
  - Starting May 5, 2022, the following social distancing restrictions are in effect: in-person dining at restaurants is suspended starting at 10pm each day; bars, pubs, bathhouses, party rooms, nightclubs, karaoke lounges, mahjongg parlors, and cruise ships must remain closed; sports premises, fitness centers, beauty parlors, places of public entertainment, cinemas, game centers, and amusement parks have re-opened at 50% of their usual capacity; swimming pools and beaches have re-opened on the proviso that swimmers wear masks when they are not in the water.
  - Please note that non-Hong Kong residents may participate in the Come2hk Scheme. Those who are not using these schemes for entry face a seven day quarantine. Starting from February 3, 2022, all travelers arriving from the Mainland and Macau undergo COVID testing on days three, five and twelve after their arrival, regardless whether they are in quarantine or not. For further information, see the Hong Kong government press release.
  - Starting from April 1, 2022, travelers from Taiwan are treated the same as those coming from any other overseas location. In other words, they must be fully vaccinated against COVID and hold a recognized vaccination record. In addition, to board their flights, they must show a booking at a designated quarantine hotel for 7 days, and they must present proof of a negative COVID PCR-based nucleic acid test taken within 48 hours of the departure of their flight into Hong Kong.
  - Since April 21, 2022, group gatherings in public places have been limited to four persons. Also since April 21, 2022, the ban on multi-household gatherings in private residences has been lifted. Starting May 5, 2021, restaurant tables are capped at eight persons.
  - For an overview of the current social distancing requirements in effect in Hong Kong, please see the Hong Kong government release.
  - Penalties for violating social distancing restrictions include fines of up to $25,000 HKD and imprisonment. Legal authorities permit the government to impose strict lockdown and testing requirements if any building, estate, or neighborhood where a COVID-19 cluster arises. For more information about social distancing regulations, please see the Hong Kong government's most recent press release.
  - The Hong Kong government launched the digital contact tracing app "LeaveHomeSafe" in November 2020. The app is required for entrance into all government buildings including libraries, wet markets, and hospitals. Starting December 9, 2021, all regulated premises were required to use the app, including restaurants and hotels. Use of the LeaveHomeSafe app was later required at religious establishments. Most recently, it has now been required at places of entertainment, fitness and sports centers, beauty parlors, and barber shops. For assistance with the

- **Are citizens permitted to enter? Yes.**
  - Starting from May 1, 2022, travelers do NOT need to be Hong Kong residents to enter Hong Kong. Travelers entering Hong Kong from any overseas location outside Greater China must be fully vaccinated against COVID and hold a recognized vaccination record. In addition, to board their flights, they must show a booking at a designated quarantine hotel for 7 days, and they must present proof of a negative COVID PCR-based nucleic acid test taken within 48 hours of the departure of their flight into Hong Kong. (For entry requirements for travelers from the Mainland, Macau or Taiwan, please see the next two bullet points below.)
  - Travelers from the Mainland and Macau fall into three groups. Those who either arrive on the Return2HK or the Come2HK schemes may enter quarantine-free. (See the Hong Kong Government websites for further information: Come2hk Scheme and Return2hk Scheme.)
  - As long as COVID case numbers in Hong Kong continue to drop, starting May 19, 2022, the following social distancing measures will be relaxed: bathhouses, party rooms, nightclubs, karaoke lounges, mahjong parlors and cruise ships will re-open; in-person dining at restaurants will be extended until midnight; bars and pubs will re-open from 5pm till 2am the following day, with no live music or dancing; a cap of four persons per table and a limit of 75% of capacity at places previously limited to 50% of their capacity (like sports centers and places of entertainment) will be permitted; 85% of their capacity; mask-wearing will be exempted for indoor exercise, such as yoga; eating will be permitted at cinemas.
  - Unvaccinated children under 12 will be allowed to enter Hong Kong accompanying adults that are eligible to enter because of vaccination or residency status. For more details, please see the Hong Kong government's press release.
  - Certain transportation links at border checkpoints between Hong Kong and mainland China remain closed. Ferry service between Hong Kong and Macau remains suspended. For information on Hong Kong's immigration checkpoints, please see the Hong Kong Immigration Department website.
  - Hong Kong residents are encouraged to register a trip outside of Hong Kong with the Hong Kong government so that they can be notified of any changes in entry or quarantine policy that occur while they are traveling. The program is called the Registration of Outbound Travel Information Service, and the website is www.gov.hk/en/residents/immigration/outsidehk/roti.htm. For further information, please see the Hong Kong government release.

- What COVID-related documents are required for entry?

Case 2:21-cv-00758-ODW-MAA Document 34 Filed 05/27/22 Page 252 of 276 Page ID

- [illegible] LeaveHomeSafe app, or travelers call the hotline [illegible] stations [illegible] 9am to 6pm daily in 25 MTR stations. [illegible] full breakdown of entry requirements, please consult the Hong Kong Government's website.
- On April 29, 2021, Hong Kong launched a "vaccine pass" scheme. [illegible] individuals who have been vaccinated [illegible] establishments covered by the scheme may mandate that their employees get vaccinated. Please see the bullet [illegible]
- Beginning December 24, 2021, [illegible] LeaveHomeSafe app [illegible] Starting February 24, 2022, all [illegible] 48 [illegible] departure. [illegible] the "vaccine pass" scheme [illegible] COVID-19 vaccine [illegible] website. [illegible] uploaded their vaccination information to their LeaveHomeSafe app. By April 30, they must have received two doses, and by May 31, they must have received three doses [illegible]

- Are U.S. citizens permitted to transit through Hong Kong?
  - Travelers are allowed to transit through Hong Kong. Hong Kong's quarantine requirement does not apply to transit passengers who do not pass through immigration control. Starting December 8, 2021, the Hong Kong Government will require all passengers who board a flight from overseas places and Taiwan for transit through Hong Kong to present a negative COVID-19 PCR test for COVID-19 conducted within 72 hours of the aircraft's departure. Please check with your airline and the Hong Kong government's site for more information about transiting in Hong Kong.
  - [illegible] (Please see FAQ [illegible] COVID-19 Vaccination Record (PDF 191 KB)) [illegible] children under age 12 [illegible] medical [illegible] Exemptions can be uploaded to the LeaveHomeSafe app. For more information, please see the Hong Kong Government's press releases (February 23 and March 20 and April 14).
- Testing Positive on Arrival
  - Beginning May 1, 2022, all arriving passengers at the airport will be subject to both a PCR COVID test, whose results will come within a few hours, and a COVID rapid antigen test, whose results will be available immediately. Travelers who test negative on the RAT will be allowed to proceed directly to their pre-booked quarantine hotel. If the RAT or the PCR test results are positive, and travelers are not demonstrating physical symptoms of COVID, they will be transferred instead to a designated COVID-positive quarantine hotel. If they are exhibiting COVID symptoms, they will be transferred to a hospital for quarantine and treatment (see the next bullet point). For further information, please see the Hong Kong government press release.
  - There have been cases of vaccinated travelers, and travelers who previously recovered from COVID-19, testing positive upon arrival in Hong Kong. If travelers test positive for COVID-19 upon entering Hong Kong (or have a re-positive test result in cases of individuals who have recovered from a previous infection), the preliminary positive test result will cause local health officials to initiate public health protocols to send the COVID-positive individuals to a designated quarantine hotel (if asymptomatic) or to a hospital (if symptomatic). If members of a traveling party have different COVID test results, they will be separated and sent to the locations appropriate to their status. Those sent to hospital for a mandatory in-patient stay will receive all necessary treatment at their own expense. Patients should expect to remain in the hospital indefinitely – for as long medical staff feel that they pose a risk of COVID-19
- Mask Wearing Requirement:
  - The Hong Kong government requires the wearing of masks in all indoor and outdoor public places, including public transportation. For more information, please see the Hong Kong government's press release. On May 5, 2022, the Hong Kong government [illegible] exemption for [illegible] country parks [illegible] physical activity in public outdoor spaces.

Quarantine Information:

- Are U.S. citizens required to quarantine? Yes, U.S. citizens are required to quarantine upon entry and if they are deemed a contact of an imported or local COVID-19 case.
- Quarantine upon entry:
  - On January 27, 2022, the Hong Kong authorities announced that, since the Omicron variant of COVID is now endemic throughout the world, their previous division of countries into groups A, B and C has been scrapped, and the differences in quarantine arrangements for these three groups have been eliminated. Henceforth, all overseas places are designated group A. Starting April 1, 2022, arriving passengers who have been in a group A/overseas location during the past 14 days must undergo a seven-day hotel quarantine, with COVID

symptoms will result in transfer to a Community Isolation Centre.  See below for discharge criteria from these places.  For further information, see the Hong Kong Government press release.

- Under the Return2hk scheme, some Hong Kong residents traveling from low-risk locations in mainland China or Macau are exempt from quarantine.  For more information about this travel scheme for Hong Kong residents, please consult this page of the Hong Kong government's website.  As of September 15, 2021, non-Hong Kong residents in Guangdong province and Macau are eligible for quarantine-free entry to Hong Kong under the Come2hk Scheme.  Up to 2,000 non-Hong Kong residents per day can enter through land boundary control points with proper registration and COVID tests.  Please see the Hong Kong government's press release for more details.

- Quarantine documents:
  - Proof of a negative result on a COVID-19 test and proof of vaccination against COVID are required for entry into Hong Kong and subsequent mandatory quarantine.  Before traveling, please make sure the names on all COVID-19 documents are **identical** to the names used on travel documents.  U.S. Center for Disease Control (CDC) vaccination cards will not be accepted unless they include the bearer's full middle name as listed on their travel document; CDC vaccination cards that only contain the bearer's middle initial will not be accepted as proof of valid vaccination.  For more details about these required documents, please see the Hong Kong government's website.

- Quarantine for crew members:
  - Starting May 1, 2022, air cargo crewmembers who are not locally based will be permitted a short layover in Hong Kong in a closed-loop arrangement and will not be permitted to enter the local community.  They are required to show a negative pre-departure COVID RAT result, use only a dedicated channel at the airport, take designated transport directly to an airport hotel, isolate in their rooms until departure, then use the designated transport back to the airport and the designated channel to depart.  For further information, and for details on arrangements for locally-based flight crew, please see the Hong Kong government press release.

- Quarantine for close contacts:
  - As of February 25, 2022, people identified as close contacts of someone who tests positive for COVID-19 will need to undergo a compulsory home quarantine under the new StayHomeSafe scheme, the length to be determined by their vaccination status (please see Discharge Criteria below).  Household members of those deemed close contacts must

*undergo a compulsory home quarantine of 4 days. Those in home quarantine must remain inside their homes at all times and must wear electronic wristbands, take their temperatures twice a day and conduct Rapid Antigen Tests on the dates specified. Close contacts must also appear at a Community Testing Centre on day 12. For further information, please see the government's StayHomeSafe website and the government press release.*

- Compulsory Hospitalization for Positive Cases:
  - *Someone who tests positive for COVID-19 and who is exhibiting strong symptoms of the disease will be transferred immediately to a Hong Kong Government-managed hospital for a mandatory in-patient stay, during which those who are symptomatic will receive all necessary treatment. Patients should expect to remain in the hospital indefinitely—for as long medical staff feel that they pose a risk of COVID-19 transmission to the community. Please note that the Hong Kong Health Department has stricter COVID-19 discharge criteria than the United States or other countries. After discharge from the hospital, patients will then need to perform 7 or 14 days of self-monitoring (depending on their vaccination status— see Discharge Criteria below), to include checking their temperatures twice a day. **Those who test positive for COVID and are exhibiting mild or no symptoms should immediately go into home quarantine (see the next bullet point for further information).** For a discussion of possible parent-child separation, please see the separate bullet point below. For additional information, please visit the Hong Kong government's website.*

- *On February 25, 2022, the Hong Kong government released new criteria for discharge from home quarantine, community isolation facilities (CIFs) and the hospital. Overall, in recognition of the large and growing number of positive COVID cases in the community and the burden currently placed on CIFs and hospitals, the goal is to hospitalize fewer cases and to release people earlier from CIFs and hospitals. A summary of the current discharge policy is in the chart below:*

|  | <u>**2 Vaccine Doses**</u> | <u>**0 or 1 Vaccine Doses**</u> |
|---|---|---|
| **Household members of close contacts** | 4-day home quarantine | 4-day home quarantine |
| **Close contacts** | 7-day home quarantine, if negative rapid tests on Days 6 and 7. | 14-day home quarantine, if negative rapid test on Day 14. |

|  | **2 Vaccine Doses** | **0 or 1 Vaccine Doses** |
|---|---|---|
| **Asymptomatic/Mild Cases** | At home or CIF (definitely at a CIF if the home does not qualify): 7-day quarantine, if negative rapid tests on Days 6 and 7. | If at home: 14-day quarantine, if negative rapid test on Day 14.<br><br>If at CIF: 14-day quarantine, if negative rapid test on Day 14. Can quarantine at home for Days 8-14, if negative rapid test on Day 7. |
| **Symptomatic Cases (Requiring Medical Attention)** | Admitted to hospital; HA will exercise professional judgment on specific discharge criteria.<br><br>– If discharge before Day 7, then asymptomatic/mild rules apply. | Admitted to hospital; HA will exercise professional judgment on specific discharge criteria.<br><br>– If discharge before Day 7, then asymptomatic/mild rules apply. |

*Please see the Hong Kong government press release.*

- *If an American citizen faces immediate separation from their child by the Hong Kong Government authorities, please contact the consulate immediately. There is no right of non-separation, but we will do everything within our power to ensure that American families are kept together. In cases where both parents and children are COVID-positive, the issue should not arise, and the families should be hospitalized or placed in isolation together. On February 25, 2022, the Hong Kong authorities announced that asymptomatic COVID positive children would not be separated from their parents but could isolate and recuperate with their families at home. The danger of parent-child separation arises in cases where the child is COVID-positive and symptomatic and in need of medical care, but the parents are negative, or where the parents are positive but the child is negative. In these cases, the Hospital Authority's policy is to not permit contact between those who are positive and negative to avoid transmission. Special arrangements can be made in exceptional cases, like breast-feeding mothers, and video calls between parents and children can be arranged. See the press release.*

| *COVID STATUS* | **Positive Child** | **Negative Child** |
|---|---|---|
| **Positive parent** | HA will try to keep parent and child together. | HA will separate parent and child until discharge. |

| COVID STATUS | Positive Child | Negative Child |
|---|---|---|
| **Negative parent** | If child is in stable condition, parent and child can stay at home together.<br><br>If child is hospitalized, HA will separate parent and child until discharge — except in special circumstances such as breastfeeding. | N/A |

## Transportation Options:

- Are commercial flights operating?  *Yes*
  - *Several direct and indirect flights are operating from Hong Kong International Airport to the United States each week.*
- Is public transportation operating?  *Yes*

## Fines for Non-Compliance:

- *Any person in violation of his/her quarantine requirement may be committing a criminal offense. The penalty upon conviction is imprisonment and a fine.*
- *Any person in violation of the mask requirement may face a fine of up to $10,000 HKD.*
- *Any person who does not comply with a mandatory testing notice may face a fine of up to $10,000 HKD.*
- *Any person in violation of social distancing restrictions may face a fine of up to $25,000 HKD.*

## Consular Operations:

- *The U.S. Consulate General Hong Kong and Macau is providing routine passport and citizenship services at this time, but the number of appointment slots has been reduced.  Appointments will be made available in the online system on a week-by-week basis.*
- *We are also providing routine notarial service, but again the number of appointment slots has been reduced.*
- *Renunciation services, recently restored, will continue for as long as staffing permits.  For assistance, please contact us at renunciationhk@state.gov.*

- *The U.S. Consulate General Hong Kong and Macau is currently offering IR1, IR2, CR1, CR2, K and EB5 immigrant visa appointments and all classes of nonimmigrant visa services.  While we aim to process cases as soon as practicable, there is likely to be increased wait times for completing such services due to substantial backlogs.*

Local Resources:

- Hong Kong Center for Health Protection COVID-19 Website
- Macau Government Special Website Against Epidemics
- Other Links:
    - COVID-19 crisis page on travel.state.gov
    - CDC page on COVID-19
    - Travel.State.Gov – Hong Kong Travel Advisory
    - Travel.State.Gov – Macau Travel Advisory

# MACAU

**Country-Specific Information:**

- *Macau: The Macau government has confirmed cases of COVID-19 within its borders.  Safety and security information is provided in our Travel Advisory for Macau, currently at Level 3.  For more information on conditions in Macau, please see the Macau government's website.*

COVID-19 Testing:

- Are PCR and/or antigen tests available for U.S. citizens in the Macau Special Administration Region?  *Yes*
- If so, are test results reliably available within 1 day?  *Yes, but only if the traveler pays to have the test conducted by a third-party entity.  If the traveler is a Macau resident who opts for a free government test, the result will be available within 72 hours.*
    - *Individuals may book an appointment at one of Macau's approved COVID-19 testing locations.  Some testing locations allow Macau residents a free first test, while others charge 100 MOP.  Test results are provided via email and SMS.  For more information on COVID-19 testing, please see the Macau government's website.  Testing locations can be*

found under "Nucleic Acid Test of COVID-19" tab of the Macau government's COVID site homepage.

- In cases of "immediate pandemic prevention status", to secure public order, safety, and health the Macau government may mandate that 100% of the population undergo COVID-19 testing.  As a response to positive COVID cases, the Macau government has launched mass testing on three different occasions : August 4 to August 10, 2021, September 25 to September 28, 2021, and October 4 to October 7, 2021.

## COVID-19 Vaccinations:

- Has the government of the Macau Special Administrative Region approved a COVID-19 vaccine for use?
  - *Yes.  On January 25, 2021, the Macau government announced that local residents, non-resident workers and non-resident students will get their COVID-19 vaccine free of charge with the goal of rapidly achieving herd immunity.*
- Are vaccines available in Macau for U.S. citizens to receive?
  - *U.S. citizens who are Macao residents, hold non-resident worker's identity card, or are studying or incarcerated in Macau can receive the vaccination free of charge.  Other U.S. citizen non-residents with authorization to stay in Macao can also get vaccinated at a cost of MOP250 per dose.  Macau currently does not recommend vaccination for children under 12. Individuals may receive a third dose of a COVID-19 vaccine if they meet the eligibility criteria. For more information, please consult the Macau COVID-19 Vaccine page.*
- Which vaccines are available in Macau?
  - *Two types of vaccine are available in Macau: the inactivated vaccine from Sinopharm CNBG Beijing and the mRNA vaccine from BioNTech.  For more information, please consult the Macau COVID-19 Vaccine page.*
- Does the United States Government recommend that their citizens take Chinese-produced vaccines?
  - *The United States has expressed concerns that Russia and the People's Republic of China are sharing or marketing vaccines to the international community without providing transparent, peer-reviewed scientific evidence of their safety and efficacy.  U.S. citizens abroad should consult with medical providers they trust and review information published by relevant public health authorities as they consider their options for accessing a COVID-19 vaccine.  U.S. citizens traveling or resident abroad are subject to local laws and to the authority of local health officials.*
  - *Visit the FDA's website to learn more about FDA-approved vaccines in the United States.*

○ *The United States Government does not plan to provide COVID-19 vaccinations to private U.S. citizens overseas. Please follow host country developments and guidelines for COVID-19 vaccination.*

## Entry and Exit Requirements:

- Are U.S. citizens permitted to enter? *Yes, if they fall into one of the categories below.*
  ○ *Residents of mainland China, or residents of Macau, who have been exclusively in low-risk areas of mainland China for the past 21 days, need only a negative COVID test taken within 7 days if arriving by air. As of March 18, 2022, those entering through the Zhuhai checkpoint must have a negative test result taken within 24 hours. Those coming from high-risk areas may have different entry requirements and may be subject to quarantine. Please review the Macau government infographics for further information.*
  ○ *Residents of Taiwan or Hong Kong, or residents of Macau who have been exclusively in Taiwan or Hong Kong within the past 21 days, must present a negative COVID test taken within 24 hours and quarantine for 14 days, followed by 7 days of self-monitoring. Residents of Taiwan and Hong Kong over 12 must also show proof of COVID vaccination or evidence of unsuitability for vaccination.*
  ○ *Residents of Macau who have been in any other countries in the past 21 days must provide proof of COVID vaccination or proof of unsuitability for vaccination (if over age 12), and they must quarantine for 14 days, followed by 7 days of self-monitoring. If their trip originated in one of 22 high-risk countries (including the United States), they must show three consecutive negative COVID tests taken within the preceding 7 days. If their trip originated anywhere else outside Greater China, they must present a negative COVID test taken within 48 hours. Please review the Macau government infographics for a full list of the 22 high-risk countries.*
  ○ *Residents of mainland China, Taiwan or Hong Kong who have been in any other countries in the past 21 days will be denied entry.*
  ○ *Non-resident American citizens who have spent the preceding 21 days in mainland China or Macau and possess the appropriate visa can enter according to their visas' validity period. For those who have spent the preceding 21 days in mainland China or Macau but do not have a valid visa, they must be in a group that warrants an exemption to apply for entry. Non-resident Americans who have been outside mainland China or Macau in the past 21 days must prove their entrance into Macau would be in Macau's public interest. If you believe you have a strong enough case to warrant an exemption to enter Macau, please contact the appropriate Macau authorities. For the most updated regulations on Macau entry and quarantine, please see the full series of infographics and visit the Macau government's website.*

- *Starting from May 8, 2022, a series of COVID tests will be required for all persons who have entered Macau. Visitors from Taiwan, Hong Kong, or any country outside China will be required to take 8 COVID tests at a cost of 2000 Macau dollars. Visitors coming from the Mainland will have to pay 1250 Macau dollars for 5 tests.*
- *As of May 8, 2020, limited Hong Kong-Zhuhai-Macau bridge shuttle bus service is available. As of February 3, 2022, all passengers traveling from Hong Kong to Macao through Hong Kong-Zhuhai-Macao Bridge shuttle buses (golden buses) are required to present a certificate of negative result for COVID-19 nucleic acid test issued within the past 24 hours. As of February 21, 2022, also required is proof of vaccination against COVID-19 completed at least 14 days before, with the first dose administered no more than seven months before.*
- *As of July 14, 2020, all ferry and air passengers departing from Macau are required to present a certificate of a negative result for COVID-19 nucleic acid test issued within the past 7 days. On February 4, 2020, ferry services between Hong Kong and Macau were suspended.*

- Is a negative COVID-19 test (PCR and/or serology) required for entry? *Yes*
  - *All travelers must present proof of a negative nucleic acid COVID-19 test for entry into Macau. When that test must have been taken depends on the individual's travel history in the 21 days before entry. For more information, please see the Macau government's <u>series of infographics</u>.*
  - *As of October 25, 2021, anyone previously infected with COVID-19 who intends to fly into Macao must have a certificate of recovery proving at least two months have passed since onset of the disease, or since they first tested 'positive' for the virus. For more information, please see the <u>Macau government's announcement</u>.*
- Are health screening procedures in place at airports and other ports of entry? *Yes*
- Is a negative COVID-19 test (PCR and/or serology) required for exit? *Yes*
  - *As of November 21, 2021 all outbound travelers <u>must test negative for COVID-19 within 7 days</u> of their departure from Macau.*
- *If you wish to extend your stay in Macau, please contact the Macau Immigration Department before your visa or limit of stay will expire. For more information, please see the Macau Immigration Department <u>website</u>.*

## Travel From Macau to Hong Kong:

- Can U.S. citizens travel from Macau to Hong Kong?
  - *As of November 2, 2021, Macau and other non-Hong Kong residents are eligible to travel to Hong Kong without quarantine under the Come2hk scheme. Advance registration is required, and travelers need a negative COVID-19 test taken 3 days prior to their arrival to*

*Hong Kong.  For more information on the Come2hk scheme, please see the Hong Kong government's site.*

## Movement Restrictions:

- Is a curfew in place?  *No*
- Are there restrictions on intercity or interstate travel?  *No*
- Social distancing requirements:
  - *The Macau government requires the use of the Macau Health Code for entrance to certain locations like immigration buildings, medical institutions, casinos, hotels, and guesthouses. Similarly, temperature checks are mandatory in many settings.  For more details, please see the Macau government's COVID-19 website.*
  - *As part of the Government of Macau's declarations of a state of immediate pandemic prevention in September and October 2021, many regular services in Macau were suspended.  As of late October 2021, recreational facilities have reopened.  Ferry service between Macau and mainland China has resumed.  Education institutions resumed in-person classes on October 25, 2021.*
- Mask wearing requirements:
  - *Macau requires the wearing of a face mask in many public settings including, banks, casinos, and on public transportation.  For more details, please see the Macau government's COVID-19 website.*

## Quarantine Information:

- Are U.S. citizens required to quarantine?  *Yes*
  - *Residents of mainland China, or residents of Macau, who have been exclusively in low-risk areas of mainland China for the past 21 days may enter Macau quarantine-free.  Those coming from China should check the Macau government COVID page to find out what areas are high-risk, and if they are coming from those areas what quarantines might apply (see the fourth bullet point below).*
  - *Residents of Taiwan or Hong Kong, or residents of Macau who have been exclusively in Taiwan or Hong Kong within the past 21 days, must quarantine for 14 days, followed by 7 days of self-monitoring.*
  - *Residents of Macau who have been in any other country outside Greater China (including the United States) must quarantine for 14 days, followed by 7 days of self-monitoring.*

- *Please note:  Persons undergoing the 7 days of self-monitoring mentioned above are no longer in quarantine, but they do NOT have unrestricted movement.  They spend these 7 days in a specific hotel, and they are banned from entry to public buildings, most businesses and restaurants offering dine-in service.  They may go to any outdoor location or private residence, and they may procure food at wet markets, supermarkets, convenience stores and takeout establishments.  For further information, see the Macau government infographics here: 'Green' health code and 'Yellow' & 'Red' health code.*
- *For more information on Macau quarantine protocols, you can consult this infographic from the Macau government.  The list of high risk areas in mainland China can be found in these infographics.*
- *Non-resident American citizens that have been granted entry exemptions will still be obliged to observe quarantine and health monitoring requirements as applicable.  If you fall into this category, please contact the appropriate Macau authorities for more information.*
- *For the most updated regulations on Macau entry and quarantine, please see the full series of infographics and visit the Macau government's website.*

## Transportation Options:

- Are commercial flights operating?  *Yes*
  - *Limited indirect flights operate from Macau to the United States, but flights may be cancelled at the last minute.*
- Is public transportation operating?  *Yes*

## Fines for Non-Compliance:

- *Any person in violation of his/her quarantine requirement may be subject to mandatory isolation and may be committing a criminal offense.*
- *Those found in breach of social distancing and face mask regulations may be subject to heavy fines.*

## Consular Operations:

- *With the Government of Macau's current COVID-related entry restrictions the U.S. Consulate General Hong Kong and Macau has had to suspend regular visits to Macau.  Residents of Macau needing passport and citizenship services may travel to Hong Kong to receive necessary services in line with Macau and Hong Kong's current entry, exit, and quarantine requirements.  They may*

also travel for service to the U.S. Consulate General in Guangzhou, subject to Macau and China's current entry, exit and quarantine requirements. The Department of State does not authorize video teleconferencing services for passport and citizenship adjudication. For U.S. citizens unable to travel and in immediate need of services, please contact us at acshk@state.gov.

- *For those willing to travel to Hong Kong, the U.S. Consulate General Hong Kong and Macau is providing routine passport and citizenship services at this time, but the number of appointment slots has been reduced. Appointments will be made available in the online system on a week-by-week basis.*

- *We are also providing routine notarial service, but again the number of appointment slots has been reduced.*

- *Renunciation services, recently restored, will continue for as long as staffing permits. For assistance, please contact us at renunciationhk@state.gov.*

- *The U.S. Consulate General Hong Kong and Macau is currently offering IR1, IR2, CR1, CR2, K and EB5 immigrant visa appointments and all classes of nonimmigrant visa services. While we aim to process cases as soon as practicable, there is likely to be increased wait times for completing such services due to substantial backlogs.*

## Local Resources:

- Hong Kong Center for Health Protection COVID-19 Website
- Macau Government Special Website Against Epidemics
- Other Links:
  - COVID-19 crisis page on travel.state.gov
  - CDC page on COVID-19
  - Travel.State.Gov – Hong Kong Travel Advisory
  - Travel.State.Gov – Macau Travel Advisory

This is the official website of the U.S. Consulate General Hong Kong & Macau. External links to other Internet sites should not be construed as an endorsement of the views or privacy policies contained therein.



news.gov.hk
政府新聞網

EXHIBIT P

# Flight ban rules streamlined

*March 27, 2022*

Download Video| Transcript

Chief Executive Carrie
Lam:

(To watch the full press conference with sign language interpretation, click here.)

Chief Executive Carrie Lam today reiterated that there is no room for a major relaxation of the route-specific flight suspension mechanism but the Government has streamlined the existing measure.

The Government announced that the mechanism will continue to be applicable to specific non-compliant routes and that the flight ban period will be shortened from 14 to seven days.

Responding to questions at a press conference this morning, Mrs Lam said the mechanism remains a fundamental pillar to Hong Kong's anti-epidemic policy in guarding against the importation of COVID-19 cases even though the place-specific flight suspension on nine countries will be lifted next month.

"Having considered the latest epidemic situation and the difficulties caused to Hong Kong residents stranded in nine countries for almost three months now, the Government considers it timely and necessary, having considered the situation, to lift the ban in respect of these nine countries.

"But it does not mean that we will loosen all the necessary anti-epidemic controls as far as importation of cases is concerned. That is why this route-specific flight suspension policy or measure has to continue.

"At the same time, if you look at the press release issued by the Food & Health Bureau last night, we are also imposing a lot of requirements for pre-boarding. In other words, those Hong Kong residents who wish to come back still have to fulfil all those requirements before they could board the plane to come back.

"Similarly, the airlines, as the operators of those inbound flights, also have to comply with the various requirements. For example, checking the PCR (polymerase chain reaction) negative test results of the passengers and making sure that they have a booking of at least seven nights in a designated quarantine hotel before they allow these passengers to board the plane to come to Hong Kong.

"Since we have this expectation and requirement of the airlines, we need to put in some penalty. If they fail to fulfil these requirements and bring a certain number of infected passengers into Hong Kong, then we have to take some punitive action so that they will do better."

The Chief Executive also pointed out that the rate of inbound travellers who tested positive for COVID-19 upon arrival was 0.76% in February, while the figure was slightly higher at 1.1% up to March 23.

Moreover, most of these infected travellers were asymptomatic or had very mild symptoms and were sent to community isolation facilities instead of public hospitals, which did not overburden the hospitals' capacity.

Mrs Lam believes the risk of virus transmission should be manageable despite the anticipated large number of Hong Kong residents returning from overseas.

5/23/22, 01:17        24°C        95%



Login    Order Form

The Student
The StandardJobs

Top News    Editorial    Local    Finance    China    World    Sports    Central Station    Columns

EXHIBIT

Q

# Hong Kong to relax airline-specific flight suspension mechanism

Local | 27 Mar 2022 12:57 pm



A flight suspension mechanism targeting airlines will be relaxed at the same time as Hong Kong lifts a flight ban against nine countries, the government announced on Sunday.

Under the current rule, an airline has to suspend flights of a specific route for two weeks after detection of several Covid-19 cases. Starting April 1, the suspension period will be halved to seven days, it was announced past Sunday midnight.

The suspension is triggered when on the same flight there are three or more passengers who tested positive for the coro                                            ted positive and another failed to comply with health                                          evention and Control of

Disease (Regulation of Cross-boundary Conveyances and Travellers) Regulation.

The announcement came after concerns voiced by the business sector, which says flight suspensions has affected competitiveness of Hong Kong as an international financial center. Foreign companies are considering to move away from the SAR due to its Covid policies, they said.



Cathay Pacific had said it will only arrange one flight per route every two weeks after the government lifts the flight ban against Australia, Canada, France, India, Nepal, Pakistan, the Philippines, the United Kingdom and USA, due to worries over the flight suspension mechanism targeting airlines.

The airline welcomes the latest change, a spokeswoman said on Sunday: "We are actively working on resuming more flights for our customers from 1 April to cater to the anticipated demand. More details will be shared on www.cathaypacific.com as soon as possible."

Chief Executive Carrie Lam Cheng Yuet-ngor said the government lifted the flight ban due to latest developments in the pandemic and considering difficulties of Hongkongers stranded overseas. But it is still nece　　　　　　　　　　　　　pension mechanism.

Among those who arrived in Hong Kong in February, 0.76 percent tested positive for the coronavirus. More arrivals will test positive with the lifting of the flight ban, but the city will be able to cope with it, she said.

The government cannot listen to every demand made by airlines, she said, adding different companies have to play their parts during an outbreak.

With the flight ban lifted, fully vaccinated Hongkongers will be able to return to Hong Kong from the nine countries. If they test negative during their stay in designated quarantine hotels, then they will be allowed to leave after a week – shortened from the previous requirement of 14 days.



Still, non-Hong Kong residents will still be banned from boarding flights to Hong Kong from any overseas places.

The executive director of the Hong Kong Tourism Association, Timothy Chui Ting-pong, expected airlines to increase the frequency of flights after the change. They will provide at least one flight per route every week, he said.

For hot destinations such as London and Sydney, there will be more than one airline providing flights. Even if an airline is asked to suspend flights, other airlines will continue to serve the same route, Chui said.

Some overseas airlines are considering to resume direct flights to Hong Kong. The relaxation will also help boost Hong Kong's cargo transport, he added.

## Other Local breaking news

**More Local news >>**

Woman crossing ten-lane dies after hit by taxi (05-23 21:44)

Project manager sue ex-employer after being fired for Covid infection (05-23 20:40)

Free use of leisure facilities on 25th anniversary of the handover (05-23 19:34)

Sham Shui Po clinic suspected of selling Covid jab exemption certificate at HK8,000 (05-23 18:49)

HK daily cases drop below 200; authorities probe possible new variant cluster (05-23 18:17)

(Central Station) HK Tourism Board rolls out new 20,000-quota Staycation Delights program (05-23 17:35)

Ex-CHP consultant admits misconduct and fraud totaling $4.2mn from overseas organizations (05-23 17:09)

Police force hit by $6.9mn negligence lawsuit over unfair treatment of ex-cop (05-23 16:37)

Protection granted by fourth Covid shot extremely limited: govt vaccine advisor (05-23 16:34)

Third runway eyes on opening this year (05-23 16:01)



## Flipping Version    Archive Standard 📅

### Today's Standard



©2022 The Standard, The Standard Newspapers Publishing Ltd.

Contact Us | About Us | Newsfeeds | Subscriptions | Print Advertising | Online Advertising | Street Points

Home | Top News | Local | Finance | China | CityTalk | Sports | People | Central Station | Spree | Features

# The Standard

Trademark and Copyright Notice: Copyright 2022, The Standard Newspaper Publishing Ltd., and its related entities. All rights reserved.

Use in whole or part of this site's content is prohibited. Use of this Web site assumes acceptance of the Terms of Use, Privacy Policy Statement

and Copyright Policy. Please also read our Ethics Statement.

      

news.gov.hk
政府新聞網

EXHIBIT
R

# Outbound travel alert to be lifted

*April 29, 2022*

The Government today announced that from May 1, it will lift the Outbound Travel Alert issued for COVID-19 on all overseas countries/territories, which has been in effect since March 17, 2020.

It said the decision was made due to the relatively lower risk of travelling overseas.

The epidemic situation in overseas countries/territories with frequent traffic with Hong Kong has generally been on a downward trend, while citizens returning to Hong Kong must be fully vaccinated, the Government explained.

Meanwhile, to continue to control the overall volume of inbound traffic and reduce the importation risk, the Government will implement stringent measures to guard against the importation of cases and limit the number of designated quarantine hotels. Relevant boarding, quarantine and testing requirements are still in force.

Additionally, as the pandemic situation remains, the Department of Health advises citizens to avoid non-essential travel outside Hong Kong. If travel is unavoidable, they should pay close attention to the latest COVID-19 situation at the destination as well as the department's travel health advice to protect their own health.

EXHIBIT S

# BARRON'S

**FROM AFP NEWS**

## Business Group Warns Hong Kong Travel Curbs A 'Nightmare'

By AFP - Agence France Presse    May 5, 2022



Hong Kong remains isolated as it hews to a lighter version of China's zero-Covid strategy
Peter PARKS

*ADDS Lee comments*

Hong Kong's stringent pandemic travel restrictions, including frequent flight bans, are a "nightmare" for businesses despite a recent easing of the rules, the European Chamber of Commerce has said.

The business group published a letter to the city's leader on Wednesday urging her to drop the "circuit breaker" mechanism for flights, which temporarily suspends a route when an aircraft brings in too many infected passengers.

"Almost daily, our members and other residents have been reporting that they are unable to find their way back to Hong Kong or see their business travel being cancelled," Eurocham said in the letter to Carrie Lam.

"Many of us are giving up," the business chamber said, adding that the policy was a "nightmare" for travellers.

Daily coronavirus infections in Hong Kong have fallen back to triple digits as the city moves past an Omicron-fuelled wave that has killed more than 9,000 people since January.

But the city remains internationally isolated as it hews to a lighter version of China's zero-Covid strategy.

Hong Kong's government recently eased some measures, reducing mandatory hotel quarantine for all arrivals to seven days, down from 14.

It has also allowed non-residents to fly into Hong Kong for the first time in two years.

However, any airline that brings in five or more positive cases is banned from flying that route for five days.

Eurocham said the flight suspension mechanism has caused "constant cancellations", with some European airlines halting flights to Hong Kong entirely due to the policy.

The Asian finance hub has issued more than 80 temporary bans on flight routes this year.

Eurocham also called on the government to lift on-arrival quarantine, noting that locals who test positive are allowed to self-isolate at home but those arriving from overseas cannot.

Hong Kong's next leader John Lee on Thursday said the government must balance virus controls with the need for economic development, adding that the city's competitiveness hinges on access to both China and the world.

Speaking after a meeting with foreign business leaders, Lee acknowledged that the travel curbs are "causing some inconvenience" and that he would aim to provide clarity and certainty.

"It is a balancing act... The aim is to make (Hong Kong) accessible so that economic activities can take place as much as it can," Lee told AFP.

Last week, the Australian Chamber of Commerce recommended that Hong Kong follow the lead of Singapore or Japan by lowering quarantine requirements for business travellers.

The group also said the circuit breaker mechanism "unfairly punishes" passengers, businesses and airlines.

"The critical ongoing impact of the circuit breaker mechanism is to cause significant uncertainty for potential travellers, businesses and airlines, for no apparent public health benefit," Austcham wrote in a letter to Lam.

Restrictions need to be eased urgently for Hong Kong to "remain relevant to international business and retain talent needed to support its position as an international financial centre", the group added.

Lam said last week that the city had no plans to further relax border controls as they were needed to reduce imported infections.

Despite reopening its borders to non-residents starting May 1, Hong Kong has recorded only a trickle of international visitors.

hol/jta/ssy

The Barron's news department was not involved in the creation of the content above. This story was produced by AFP. For more information go to **AFP.com**.

© Agence France-Presse