1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11    BELLA+CANVAS, LLC,

12                          Plaintiff,

13          v.

14

15    FOUNTAIN SET LIMITED, a
      foreign business entity; and DOES 1
16    through 20, inclusive,

17
                            Defendants.
18

19    ─────────────────────────────

20    AND RELATED
      COUNTERCLAIM.
21

Case No. 2:21-cv-00758-ODW-MAA

**ORDER DENYING PLAINTIFF'S
MOTION TO COMPEL
DEPOSITIONS OF DEFENDANT
FOUNTAIN SET LIMITED'S
WITNESSES (ECF NO. 33)**

22

23    ## I.     INTRODUCTION

24          Before the Court is Plaintiff's Motion to Compel Depositions of Defendant

25    Fountain Set Limited's Witnesses, in the form of a Joint Stipulation as required by

26    Central District of California Local Civil Rule ("Local Rule") 37-2 ("Motion").

27    (ECF No. 34.)  The Motion was filed jointly by Plaintiff/Counter-Defendant

28    ///

Bella+Canvas ("Plaintiff") and Defendant/Counter-Claimant Fountain Set Limited ("Defendant").

Through the Motion, Plaintiff seeks an order compelling the depositions of Defendant's four key witnesses, who reside in Hong Kong, to take place in California. (Mot. 3–5.[1]) In support of its position, Plaintiff filed Plaintiff's Exhibits A through J (Pl.'s Exs., *id.* at 26–148), of which Plaintiff's Exhibit B is the Declaration of Melissa K. Zonne (Zonne Decl., *id.* at 39–43).[2]

_____

[1] Pinpoint citations of page numbers in the Order refer to the page numbers appearing in the ECF-generated headers of cited documents.

[2] In addition, on June 20, 2022, Plaintiff filed Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion to Compel Depositions of Defendant Fountain Set Limited's Witnesses ("Plaintiff's Supplemental Memorandum"). (Pl.'s Suppl. Mem., ECF No. 35.) On June 21, 2022, Defendant filed an Objection to Plaintiff's Supplemental Memorandum, noting it should not be considered because it is untimely and exceeds the permissible limit of five pages. (*See generally* ECF No. 37.) The Court **SUSTAINS** Defendant's untimeliness objection. Pursuant to Local Rule 37-2.3, "[a]fter the Joint Stipulation is filed, each party may file a supplemental memorandum of law not later than fourteen days before the hearing date." C.D. Cal. L.R. 37-2.3. Plaintiff set the hearing on the Motion for June 28, 2022. (Mot. 1.) Fourteen days before the hearing date would have been June 14, 2022. Although Plaintiff's Supplemental Memorandum is dated June 14, 2022 (*see* Pl.'s Suppl. Mem. 6), it was filed six days thereafter—late—on June 20, 2022. The Court **OVERRULES** Defendant's page-limit objection in that the substance of Plaintiff's argument does not exceed five pages. While the document has a caption page and a signature page, together taking the page count to seven, this is a technicality that the Court, upon its exercise of discretion, elects to overlook given that no argument is contained on either of such pages. However, in addition to its untimeliness, the Court finds that Plaintiff's Supplemental Memorandum is improper in that it is not limited to a memorandum of law, as required, but instead injects new legal theories and facts not previously included in the Motion. (*See* Pl.'s Suppl. Mem. 4 (adding new facts regarding whether certain deponents qualify as Defendant's "managing agents"); *id.* at 5–6 (adding new facts regarding the employment status of two of Plaintiff's witnesses ); *id.* at 6 (adding new facts and legal argument regarding the applicability of the "apex doctrine" to bar the deposition of Plaintiff's Co-Chief Executive Officer). On these bases, the Court declines to consider Plaintiff's Supplemental Memorandum. The Court notes

Defendant opposes the Motion and instead seeks an order that Plaintiff produce its witnesses for deposition forthwith.  (*See generally* Mot.)  In support of its position, Defendant filed the Declaration of Glenanne Kennedy (Kennedy Decl., ECF No. 34, at 149–237); the Declaration of Chapman Yuen (Yuen Decl., *id.* at 238–40); the Declaration of Tony Kong (Kong Decl., *id.* at 241–43); the Declaration of Jennifer Chu (Chu Decl., *id.* at 244–46), and Defendants' Exhibits O through S (Def.'s Exs., *id.* at 247–76).  Upon the Court's request (ECF No. 36), Defendant replaced its unreadable Exhibits O and Q with readable versions ("Defendant's Amended Exhibits").  (Def.'s Am. Exs. O & Q, ECF Nos. 38-1, 38-2.)  In addition, upon an opportunity offered by the Court to augment the record with judicially noticeable material (ECF No. 36), Defendant filed Defendant's Supplemental Exhibit T.  (Def.'s Suppl. Ex. T, ECF No. 38-3.)

Having read and considered the papers presented by the parties, the Court finds the Motion suitable for disposition without a hearing.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the reasons stated below, the Court **DENIES** Plaintiff's Motion.

///

---

that, even if considered, Plaintiff's new facts and theories would not have changed the outcome of this Order for two reasons.  *First*, Plaintiff's new facts are not supported by competent evidence.  Courts do not consider arguments based on factual assertions that are unsupported by evidence.  *See, e.g., Daniel F. v. Blue Shield of Cal*., 305 F.R.D. 115, 122–23 (N.D. Cal. 2014).  *Second*, Plaintiff's new "apex doctrine" argument is not fully developed in that, other than stating the contours of the doctrine, Plaintiff makes no argument in support of this construct, including whether it objected in the first instance to the notice of deposition on this basis.  *See generally Khademi v. S. Orange Cnty. Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002) (citing *Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001) ("A judge is the impartial umpire of legal battles, not a [party's] attorney. [She] is [not] required to . . . address perfunctory and undeveloped arguments . . . .")).

## II. JUDICIAL NOTICE

In support of the positions asserted in the Motion, each party has submitted as evidence a number of exhibits that appear to have been taken from government websites—Plaintiff's Exhibits F, H, I, and J, Defendant's Amended Exhibit O, and Defendant's Supplemental Exhibit T (collectively, "Government Documents")—and publicly available websites—Defendant's Exhibits P, R, and S, and Defendant's Amended Exhibit Q (collectively, "Public Documents")—(collectively, "Documents"). Although both parties cite the Documents for the matters asserted therein, neither party has requested that the Court judicially notice them. Notably, neither party has objected to the other party's documents. (*See generally* Mot.)

Under Federal Rule of Evidence 201, the court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," such as websites run by governmental agencies. *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG (POR), 2009 U.S. Dist. LEXIS 127605, at *7 (S.D. Cal. Dec. 23, 2009) (citation omitted); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because they were government entities); *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670 SBA, 2008 U.S. Dist. LEXIS 69542, at *17 (N.D. Cal. Sept. 8, 2008) ("[I]nformation on government agency websites [has] often been treated as proper subjects for judicial notice."). All of the Government Documents are taken from websites of governmental agencies. Plaintiff's Exhibits F and H are web pages taken from the website of the United States Department of State–Bureau of Consular Affairs. (Pl.'s Ex. F; *see* Judicial Assistance Country Information: China, U.S. State Dep't, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html (last visited June 28, 2022); Pl.'s Ex. H; *see* Hong Kong Travel Advisory, U.S. State Dep't,

https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/hong-kong-travel-advisory.html (last visited June 28, 2022).)  Plaintiff's Exhibit I and Defendant's Supplemental Exhibit T are web pages taken from the website of the Government of Hong Kong Special Administrative Region.  (Pl.'s Ex. I; *see* Inbound Travel, Gov't of Hong Kong Special Admin. Region, https://www.coronavirus.gov.hk/eng/inbound-travel.html (last visited June 28, 2022); Def.'s Suppl. Ex. T; *see* Press Release, Gov't of Hong Kong Special Admin. Region, Government Suitably Adjusts Inbound Control Measures on Risk-Based Principle (Apr. 22, 2022), https://www.info.gov.hk/gia/general/202204/22/P2022042200621.htm.)  Plaintiff's Exhibit J is a web page taken from the website of the United States Center for Disease Control and Prevention.  (Pl.'s Ex. J; *see* Non-U.S. Citizen, Non-U.S. Immigrants: Travel to and from the United States, Ctr. For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/travelers/noncitizens-US-air-travel.html (last visited June 29, 2022).)  And Defendant's Amended Exhibit O is a page taken from the website of the United States Consulate General Hong Kong & Macau.  (Def.'s Am. Ex. O; *see* COVID-19 Information, U.S. Consulate Gen. Hong Kong & Macau, https://hk.usconsulate.gov/u-s-citizen-services/covid-19-information/ (last visited June 28, 2022).)  Accordingly, the Court *sua sponte* takes judicial notice of the matters contained in the Government Documents, as the information is helpful and necessary to resolution of the Motion.

However, the Court cannot take judicial notice of the Public Documents. Generally, courts may take judicial notice of news articles, but only for the fact that they were in the public realm, not for the truth of their contents, as the latter constitutes improper hearsay.  *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1029 (2015) ("Finally, and most fundamentally, to the extent the court *can* take judicial notice of press releases and news articles, it can do so only to 'indicate what was in the public realm at the time, not whether the contents of those articles

were in fact true.'" (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009) (taking judicial notice of news articles and press releases, but "not of the truth of the matters asserted therein").  Here, Defendant's Exhibits P, R, and S, and Amended Exhibit Q are news articles:  Exhibits P and R are news articles from "news.gov.hk" (*see* Def.'s Exs. P, R); Amended Exhibit Q is a news article from "The Standard" (*see* Def.'s Am. Ex. Q); and Exhibit S is a news article from Barron's, AFP News (*see* Def.'s Ex. S).  Accordingly, the Court does not take judicial notice of the Public Documents and declines to consider them for purposes of this Motion.

### III.   BACKGROUND

#### A.   The Parties' Allegations[3]

This matter is proceeding on the basis of Plaintiff's First Amended Complaint ("FAC") (ECF No. 8) and Defendant's Amended Counterclaim ("Counterclaim") (ECF No. 14).

Plaintiff is a Los Angeles-based apparel company that manufactures, among other things, face masks.  (FAC ¶¶ 4, 10.)  Defendant is a Hong Kong-based entity in the business of supplying fabric used to make apparel products, including face masks.  (*Id.* ¶ 11.)  Plaintiff alleges that the parties entered into an agreement through which Defendant would manufacture and sell certain fabric to Plaintiff that Plaintiff would, in turn, use to make face masks and other apparel, and that Defendant breached the agreement by failing to deliver fabric that met the specifications of the agreement and was of the same quality as the representative

---

[3] The Court summarizes the parties' allegations.  In so doing, the Court neither opines on the veracity or merit of the allegations and claims, nor makes any findings of fact.

samples it earlier had provided to Plaintiff.  (*See generally* FAC.)  Defendant responds that Plaintiff's complaints about the quality of the fabric are unfounded and nothing more than a pretext intended to avoid Plaintiff's obligations under the contract.  (*See generally* Counterclaim.)  Each party sues the other for breach of contract and declaratory relief.  (*See generally* FAC; Counterclaim.)

**B.    The Discovery Dispute.**

1.    Defendants' Deponents

On February 24, 2022, Plaintiff noticed Defendant's deposition pursuant to Federal Rule of Civil Procedure ("Rule") 30(b)(6) regarding forty-two topics.  (Pl.'s Ex. C.)  Defendant has designated Chapman Yuen as its corporate witness for the Rule 30(b)(6) deposition.  (Mot. 7.)  On March 2, 2022, Plaintiff noticed the depositions of four individuals involved in the transaction:  Yuen, who was involved in the creation of the agreement between the parties, and was identified as a Defendant-affiliated witness in Defendant's disclosures pursuant to Rule 26; Tony Kong, who was Defendant's key representative in communications with Plaintiff once the fabric issues were identified, and also was identified as a Defendant-affiliated witness in Defendant's Rule 26 disclosures; Schuman Jiang, who currently is not employed by Defendant but, during the relevant time, was involved in correspondence with Plaintiff regarding the contract terms and specifications; and Jennifer Chu, who was responsible for shipments of the samples and fabric and was the main point of contact with Plaintiff regarding the order and shipments (collectively, Yuen (in both his individual capacity as well as his capacity as Defendant's Rule 30(b)(6) designee), Kong, Jiang, and Chu are referred to as "Defendant's Deponents").  (Mot. 4; Pl.'s Exs. A, C; Kennedy Decl. ¶¶ 2, 3.)  Although Plaintiff contends that Defendant's Deponents "reside in Hong Kong and are therefore Chinese citizens," Defendant confirms only that they "live and work in Hong Kong."  (Mot. 173, 175.)

2.     Procedural Restrictions on the Depositions of Defendant's
       Deponents Imposed by China and Hong Kong

The parties agree that mainland China does not permit the taking of depositions for use in foreign courts.  (Mot. 12.)  According to the United States Bureau of Consumer Affairs webpage regarding China:

> China does not permit attorneys to take depositions in China for use in foreign courts.  Under its Declarations and Reservations to the Hague Evidence Convention and subsequent diplomatic communications, China has indicated that taking depositions, whether voluntary or compelled, and obtaining other evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its Central Authority under the Hague Evidence Convention. . . . Participation in such activity could result in the arrest, detention  or deportation of the American attorneys and other participants.

(Pl.'s Ex. F.)  As a result, Chinese citizens commonly travel to other locations, such as Hong Kong, for depositions.  (*See* Mot. 12.)

In order to take the deposition of an individual who resides in Hong Kong–whether in person or virtually—the noticing party first must obtain permission from the Hong Kong Competent Authority, as follows:

> Consistent with Hong Kong's declarations and reservations regarding the Hague Evidence Convention, consular officers [who are permitted to take voluntary depositions of U.S. citizens] are prohibited from taking voluntary depositions of non-U.S. citizen witnesses.  As an alternative, if prior permission is granted by Hong Kong's Competent Authority, voluntary depositions may be conducted by commissioners in Hong Kong regardless of the nationality of the witness, provided no compulsion is used.

(Mot. 13; Kennedy Decl., Ex. 1 (quoting Judicial Assistance Country Information: Hong Kong, U.S. State Dep't,

https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html (last visited June 28, 2022) (bracketed clarification added).)  Plaintiff's research with the Hong Kong Competent Authority's office regarding the process and timeline through which this permission is obtained reveals that the process "could [] take up to [six to nine] months, if not longer, and there would also be no notice available as to the status."  (Mot. 13; Zonne Decl. ¶ 4.)  Further, Plaintiff believes, based on the experience of its counsel's colleagues in Hong Kong, that "the parties should plan for the case to be delayed a year if they proceeded with the process" and that they would not "receive any indication as to the status of the request until approval [is] granted."  (Zonne Decl. ¶ 4.)

### 3.   COVID-19-Related Restrictions on the U.S.-Inbound Travel of Defendant's Deponents Imposed by the United States

The United States imposes the following restrictions upon all non-U.S. citizens, non-U.S. immigrants traveling into the United States[4]:

- Travelers must show proof of full vaccination;
- Travelers are recommended to undergo viral testing for COVID-19 "as close to the time of departure as possible (no more than 3 days) before travel";[5]

---

[4] Because the parties have provided no information regarding Yuen's citizenship or U.S. immigration status (*see generally* Mot.), the Court assumes, for purposes of this analysis only, the most restrictive scenario—that Yuen is subject to rules applicable to non-U.S. citizens and non-U.S. immigrants.

[5] At the time the parties filed the Motion, non-U.S. citizens and non-U.S. immigrants flying to the United States were required either (1) to show a negative COVID-19 test result taken no more than one day before travel, or (2) to provide documentation of recovery from COVID-19.  (Pl.'s Ex. J at 144.)  However, the United States rescinded this requirement on June 12, 2022.  *See* Non-U.S. Citizen, Non-U.S. Immigrants: Travel to and from the United States, Ctr. For Disease

9

- All travelers must provide contact information for purposes of contact testing, if necessary;
- Upon arrival to the United States, it is recommended that all travelers, regardless of vaccine status, test for current infection with a COVID-19 viral test three to five days after arrival, self-monitor for COVID-19 symptoms, and test upon the development of symptoms;
- Travelers who test positive or develop COVID-19 symptoms should self-isolate.

(Pl.'s Ex. J; *see also* Non-U.S. Citizen, Non-U.S. Immigrants: Travel to and from the United States, Ctr. For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/travelers/noncitizens-US-air-travel.html (last visited June 29, 2022).)

> 4.     COVID-19-Related Restrictions on Hong Kong-Inbound Travel Imposed by Hong Kong

In addition to its procedural limitations on depositions, the Hong Kong government currently enforces a zero-tolerance approach to the COVID-19 pandemic, which imposes the following travel and mobilization restrictions on all travelers entering Hong Kong:

- Hong Kong has implemented a "Flight Suspension Mechanism" in order to "guard[] against the importation of [COVID-19] cases." Pursuant to the Flight Suspension Mechanism,

> if on the same flight there are (i) five or more passengers, or five per cent or more of the total number of passengers on board the same flight (whichever is higher) tested positive for COVID-19 by arrival test, or (ii) three or more passengers are tested positive for COVID-19 by

Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/travelers/noncitizens-US-air-travel.html (last visited June 29, 2022).

arrival test and one or more non-compliant case(s) was/were allowed to board for Hong Kong without complying with . . . the requirement(s) specified under the Prevention and Control of Disease (Regulation of Cross-boundary Conveyances and Travelers) Regulation (Cap. 599H), the passenger flights of that route from the relevant airline from the same origin place will be prohibited from landing in Hong Kong for five days.

(Def.'s Suppl. Ex. T.)  From April 1 to 20, 2022, the Flight Suspension Mechanism was triggered twenty-five times involving nine overseas places, suspending relevant routes for seven days, and "affecting thousands of [Hong Kong residents] in preparation for returning" with "various problems as they [were] unable to return to Hong Kong as planned . . . ." (*Id.*)

- All travelers, whether Hong Kong residents or not, are allowed to board a flight into Hong Kong provided they:
  - o are fully vaccinated against COVID-19;
  - o show a negative PCR test result for COVID-19 within forty-eight hours of the departure of their flight into Hong Kong; and
  - o show a seven-day booking at a designated quarantine hotel.

(Pl.'s Ex. I; Def.'s Am. Ex. O.);

- A traveler who has recovered from previous COVID-19 infection must have been vaccinated with one dose of a COVID-19 vaccine at least fourteen days prior to arrival at Hong Kong in order to be considered "fully vaccinated." (Pl.'s Ex. I.);

- Travelers arriving in Hong Kong are required to undergo COVID-19 testing immediately upon arrival at Hong Kong, which testing will be conducted at the Hong Kong airport's Temporary Specimen Collection Centre ("TSCC"), and must remain at the TSCC while awaiting test results. (*Id.*);

- Travelers who, upon arrival in Hong Kong, test negative for COVID-19, are required to quarantine at their pre-booked quarantine hotel for seven days, with a rapid antigen COVID-19 test ("RAT") each day of quarantine and a polymerase chain reaction COVID-19 test ("PCR") on each of the sixth and seventh days:
  - o If both PCR tests are negative, they must self-isolate in their homes for another week of self-monitoring and visit to a Community Testing Centre on the twelfth day;
  - o A positive result on either PCR test not accompanied by symptoms will result in a transfer to a Community Isolation Centre;
  - o A positive result on either PCR test accompanied by symptoms will result in immediate hospitalization.

  (Pl.'s Ex. I; Def.'s Am. Ex. O);

- Travelers who, upon arrival in Hong Kong, test positive for COVID-19 but are asymptomatic, are transferred to a designated COVID-positive quarantine hotel.  (Def.'s Am. Ex. O);

- Travelers who, upon arrival in Hong Kong, test positive for COVID-19 and are symptomatic, are transferred to a Hong Kong Government-managed hospital for quarantine and treatment and are required to stay "indefinitely—for as long medical staff feel that they pose a risk of COVID-19 transmission to the community" according to discharge criteria that is "stricter than that of the United States or other countries"— and, upon discharge, must perform seven- to fourteen-days of self-monitoring.  (*Id.*);

- If members of a travel party test differently for COVID-19, the party will be separated and each member will be sent to a location appropriate to his or her status.  (*Id.*);

///

- People identified as close contacts with someone who tests positive for COVID-19 must undergo a compulsory home quarantine, the length of which is determined by vaccination status, and must wear electronic wristbands, take their temperature twice daily, and take COVID-19 tests on specified dates.  (*Id.*);

- The government may impose "strict lockdowns" on any housing estate or neighborhood where a COVID-19 cluster arises.  (*Id.*);

- Violations of the above requirements could have the following consequences:

  o Quarantine requirements:  criminal offense subject to imprisonment and a fine;

  o Testing requirements:  fine up to $10,000 HKD.

(Pl.'s Ex. I; Def.'s Am. Ex. O.)

5.   <u>Defendant's Deponents' Hesitancy to Travel to the United States for Deposition</u>

In light of the restrictions imposed by Hong Kong—both procedural as well as with respect to travel and mobilization—Plaintiff noticed the depositions of Defendant's Deponents in California.  (Zonne Decl. ¶7; Mot. 12.)  However, Yuen, Kong, and Chu express the following concerns about forced travel to the United States for deposition:

- <u>Unpredictability of ability to fly to the United States</u>:  should they contract COVID-19 before flying to the United States, they would not be able to fly to the United States for an unknown period of time, delaying the deposition indefinitely;

- <u>Unpredictability of ability to return to Hong Kong</u>:  should they contract COVID-19 while in the United States, they would not be able to return to Hong Kong for an undetermined period of time, resulting in significant

13

financial expenses to stay in the United States and significant personal and professional hardship by being away from family and work;

- Unpredictability of return flights to Hong Kong:  should a flight path become cancelled pursuant to Hong Kong's Flight Suspension Mechanism, they would have to purchase additional tickets on alternate flights which, because these often are not available on the same day, would necessitate "additional hotel expenses, changing the quarantine hotel reservations which are currently very limited," and the incurrence of "additional unknown and unplanned for expanses," resulting in a financial hardship.

(Yuen Decl. ¶¶ 5–10; Kong Decl. ¶¶ 4–8; Chu Decl. ¶¶ 5–9.)

### 6.    The Discovery Impasse

Given the hesitancy of Yuen, Kong, and Chu to travel to the United States for deposition, Defendant has declined to produce these witnesses here.  Still, in an effort to resolve the dispute, Defendant has offered to bring Yuen—the most knowledge of the three as to the matters at suit—to the United States for deposition on June 28, 2022 if Plaintiff would agree to forego its efforts to compel travel to the United States of any of the remaining witnesses and that their depositions go forward virtually from Hong Kong once the necessary permissions are obtained. (Mot. 7, 15–16; Zonne Decl. ¶ 11; Kennedy Decl., Ex. 16 at 234–36.)  Plaintiff has declined that offer.  (Zonne Decl. ¶ 11; Kennedy Decl., Ex. 15 at 233.) Accordingly, as of the filing of the Motion, no agreement is in place regarding the depositions of Defendant's Deponents.

In the meantime, on February 22, 2022, Defendant noticed the depositions of Plaintiff's corporate designee and five persons Plaintiff identified as witnesses in Plaintiff's Rule 26 disclosures (collectively, "Plaintiff's Deponents").  (Pl.'s Ex. A at 32–34; Kennedy Decl., Ex. 8 at 199; *id.* Ex. 9 at 203–17.)  Plaintiff notes that,

because it sent an email to Defendant on January 13, 2022 inquiring about the availability of Defendant's Deponents for deposition—a date before Defendant noticed the depositions of Plaintiff's Deponents—the deposition of Defendant's Deponents must go forward first.  (Mot. 5; Zonne Decl., Ex. 2 at 47.)  On this basis, Plaintiff has not, to date, produced Plaintiff's Deponents for deposition.  (Mot. 8.)

Despite a discovery cut-off date of September 19, 2022, no depositions have gone forward to date.  In that the parties have reached an impasse with regard to this dispute, this Motion followed.  Through the Motion, Plaintiff seeks an order compelling Defendant's Deponents to be deposed in California and that the depositions of Defendant's Deponents proceed before the depositions of Plaintiff's Deponents.  (Mot. 5.)

## IV. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure ("Rule") 30 governs depositions by oral examination.  *See* Fed. R. Civ. P. 30.  Rule 30(a)(1) provides that, subject to certain limitations, "[a] party may, by oral questions, depose any person, including a party, without leave of court . . . ."  Fed. R. Civ. P. 30(a)(1).  Rule 30 provides two methods by which a corporate party to a proceeding may be deposed:  (1)  Rule 30(b)(1) provides for the deposition by notice of a corporation through a particular officer, director or managing agent of the corporation; and (2) Rule 30(b)(6) provides for the deposition of the corporation by notice providing the matters on which the examination of the corporation will take place.  Fed. Rs. Civ. P. 30(b)(1), 30(b)(6).  Under Rule 30(b)(6), the corporation must designate one or more persons to testify on behalf of the corporation.  Fed. R. Civ. P. 30(b)(6).  Under both rules, a party may request the deposition of the corporate party by serving notice upon that party.  Fed. Rs. Civ. P. 30(b)(1), 30(b)(6).  Regardless of which method is used, "the testimony of the deponent will be binding on the party."  *Reno Contracting,*

*Inc. v. Phila. Indem. Ins. Co.*, No. 17-cv-0306-MDD, 2017 U.S. Dist. LEXIS 206025, at *2 (S.D. Cal. Dec. 14, 2017) (citing Fed. R. Civ. P. 32(a)(3)).

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *see also La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) ("[T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence."). "[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (citing *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996)).

A requesting party that is dissatisfied with discovery responses made under the federal rules may move to compel further responses pursuant to Rule 37(a). Fed. R. Civ. P. 37(a). "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance." *Nguyen v. Lotus by Johnny Dung Inc.*, 8:17-cv-01317-JVS-JDE, 2019 U.S. Dist. LEXIS 122787, at *5 (C.D. Cal. June 5, 2019). "The party who resists discovery has the burden to show discovery should not be allowed," as well as "the burden of clarifying, explaining, and supporting its objections." *Comcast*, 2003 U.S. Dist. LEXIS 18640, at *6 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

## B.     Depositions of Non-Parties Kong, Chu, Yuen in His Individual Capacity, and Jiang.

Plaintiff seeks an order compelling the depositions of non-parties Kong, Chu, Yuen in his individual capacity, and Jiang to go forward based upon their respective

Rule 30(b)(1)[6] notices, served on March 2, 2022.  (Mot. 9–14; Pl.'s Ex. C 100–08.)
Defendant objects to these depositions on the ground, among others, that these
persons are not officers, directors, or managing agents of Defendants and thus are
not subject to deposition unless they are subpoenaed or agree to be deposed.  (Mot.
15; Kennedy Decl., Ex. 7 at 190–98.)  As to Jiang, Defendant also objects on the
ground that he no longer is employed by Defendant and thus cannot be compelled
to testify.  (Mot. 15.)

"[A] corporate employee or agent who does not qualify as an officer,
director, or managing agent is not subject to deposition by notice."  *In re PFA Ins.
Mktg. Litig.*, No. 4:18-cv-03771-YGR, 2021 U.S. Dist. LEXIS 213839, at *4–5
(N.D. Cal. Nov. 4, 2021) (quoting *United States v. Afram Lines (USA), Ltd.*, 159
F.R.D. 408, 413 (S.D.N.Y. 1994)).  Such employees must be subpoenaed pursuant
to Rule 45 or, "if the witness is overseas, the procedures of the Hague [Evidence]
Convention or other applicable treaty must be utilized."  *Afram Lines*, 159 F.R.D. at
413.  "The term 'managing agent' should not be given too literal an interpretation
but rather should depend largely on whether the interests of the individual involved
are identified with those of his principal and on the nature of his functions,
responsibilities and authority . . . *respecting the subject matter of the litigation*."
*Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 96–97 (S.D.N.Y. 1968) (internal
quotation omitted) (emphasis in original) (finding "although [witnesses] may not be
'managing agents' in the course of their everyday duties for the defendant
corporation, they are 'managing agents' for the purpose of giving testimony
regarding the accident investigation, a most relevant aspect of this litigation").  In
determining whether a corporate employee will be determined to be a "managing
agent," courts consider the following factors:  "(1) whether the individual is

---

[6] Plaintiff's deposition notices state only that the deposition will proceed under rule
"Rule 30."  However, it is clear that Plaintiff intends to proceed with the deposition
of these individuals under Rule 30(b)(1).

invested with general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; (4) the general responsibilities of the individual respecting the matters involved in the litigation." *Nutrition Distrib., LLC v. Enhanced Athlete, Inc.*, No. 2:17-CV-01491-TLN (KJN), 2018 U.S. Dist. LEXIS 24515, at *6–7 (E.D. Cal. Feb. 14, 2018) (quoting *Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 632 (D. Idaho 2012), *aff'd* 290 F.R.D. 508 (D. Idaho 2013)).  Other factors include "whether the employee can be depended upon to carry out the employer's directions, and . . . whether the individual can be expected to identify him or herself with the interests of the corporation as opposed to the interests of the opposing party." *Id*.  The burden to establish that the potential witness is a managing agent rests with the party seeking the discovery. *Id*. (quoting *Calderon*, 287 F.R.D. at 632–33).

Here, Defendant contends that Jiang is not a corporate employee at this time (Mot. 15), and Plaintiff offers no evidence to the contrary (*see generally* Mot.).  In addition, Plaintiff offers no evidence that any of Kong, Chu, or Yuen is a managing agent of Defendant who could be compelled to provide testimony under a Rule 30 deposition notice.  (*See generally* Mot.)  Nor does Plaintiff offer evidence that it has subpoenaed the testimony of these witness under Rule 45 or any other appropriate international mechanism.  To the contrary, Plaintiff's exhibits confirm that Plaintiff sought to obtain the testimony of these witnesses through a notice of deposition under Rule 30.  (Mot. 20–21; Pl.'s Ex. C at 100–08; Kennedy Decl. ¶ 11.)[7]

---

[7] Neither party provides the notice of deposition for Jiang.  Still, it appears from the context of the Motion that this deposition was set through a Rule 30 notice, and Plaintiff does not contend otherwise.  (*See generally* Mot.)

The Court understands that Plaintiff may have proceeded in this manner based upon discussions of the parties through which it appeared that, at least once upon a time, Defendant was willing to produce these persons for deposition under the served Rule 30(b)(1) notices.  Indeed, at least as of February 3, 2022, the parties were working to set these depositions in March 2022.  (Zonne Decl., Ex. 3 at 52.) Moreover, Defendant confirms that it remains willing to produce these witnesses for deposition under the pending notice—improper as it may be—subject to other legal requirements applicable in Hong Kong (discussed below).  (Mot. 20–21.) Nevertheless, Defendant makes clear that, given the impasse of the parties, any concessions previously offered by Defendant no longer are available.  (*Id.* at 15 (noting that if Plaintiff insists on bringing these witnesses to the United States for deposition, it "must comply with international convention in order to do so.").)

On this basis, the Court **SUSTAINS** Defendant's objection to the depositions of non-parties Kong, Chu, Yuen in his individual capacity, and Jiang, and, based thereon, **DENIES** Plaintiff's request to compel these depositions as noticed under Rule 30(b)(1).  The Court's **DENIAL** is **without prejudice** to Plaintiff seeking to take these depositions upon a mechanism approved by relevant international conventions or agreement of the parties, both subject, of course, to any objections that Defendant or the deponents may interpose thereto.

### C.    Deposition of Defendant

Plaintiff also seeks an order compelling the deposition of Defendant, through its corporate designee, in California,[8] based upon a Rule 30(b)(6) deposition notice

---

[8] Although Defendant's deposition originally was noticed for a location in Los Angeles, Plaintiff has offered, in the spirit of compromise, to take the deposition in San Francisco, where Defendant's counsel has its offices.  (Mot. 5.)  The distinction between Los Angeles and San Francisco is of no consequence to the resolution of the Motion.  Thus, for ease of reference in this Order, the Court uses "California" as the location of Defendant's deposition.

served on February 24, 2022.  (Mot. 9–14; Pl.'s Ex. C at 92–99.)  Defendant has designated Yuen as its corporate witness[9] but objects to the deposition because the deposition of a corporate defendant presumptively should take place in the corporation's principal place of business or where the witness works or resides— here, in both cases, Hong Kong.  (Mot. 16.)

Plaintiff asserts four arguments in support of its request that Defendant be deposed in California:  (1) that this Court already has determined that California is the proper location for Defendant's deposition (Mot. 3, 5, 9); (2) that any presumption that a corporate Defendant must be deposed at its principal place of business—here, Hong Kong—is overcome by the facts attendant here (*id.* at 9–12); (3) that a requirement that Defendant's deposition go forward in Hong Kong will indefinitely stall the case while Plaintiff obtains permission to take the deposition from the Hong Kong Competent Authority and, ultimately, there is no guarantee that such permission will be granted (*id.* at 5, 12–13); and (4) that the restrictions imposed upon Yuen in entering the United States to be deposed are less burdensome than the restrictions imposed upon the parties' counsel in entering Hong Kong to take the deposition (*id.* at 13–14).  The Court reviews each argument in turn and concludes, for the reasons stated below, that Plaintiff's arguments are insufficient to compel Defendant's deposition in California.

1.    This Court's Earlier Statements

Plaintiff argues that this Court already decided at the March 23, 2022 informal discovery conference ("March IDC") that the depositions should go forward in California (Mot. 3 (noting that this Court "already approved" "the forum

_____

[9] The Court's analysis regarding Defendant's deposition focuses on Yuen as the corporate designee because he has been identified as such.  However, the Court's ruling here applies equally to any other Hong Kong resident Defendant may designate as its Rule 30(b)(6) witness.

district in Los Angeles, California" as the location for the depositions); *id.* at 5 (noting that this Court has "previously agreed that depositions in California are the best solution to the variety of problems presented here"); *id.* at 9 (noting that this Court "**has already noted that the depositions at issue can and should take place in the forum district in California**") (emphasis in original) (citing Pl.'s Ex. D)). However, this not only misstates the Court's Order, but improperly applies the Court's recommendation to a new, and different, set of facts. As a threshold matter, this Court did not issue an order compelling the depositions of Defendant's Deponents in California. (*See* Pl.'s Ex. D.) In fact, the Court issued no order at all regarding the location of the depositions. (*See id.*) The Court merely stated that, based on the information then presented, it could not find substantial justification for not bringing Defendant's Deponents to California. (March IDC Transcript 14:14–18.) However, the Court's recommendation—that the depositions of Defendant's Deponents go forward in California to avoid further delay in discovery—was premised upon a different set of facts.

*First*, in March 2022, travel by non-Hong Kong residents into Hong Kong was prohibited and thus counsel would not be able to travel there even if the Hong Kong Competent Authority granted permission for the depositions to go forward. Specifically, the colloquy between the Court and the parties was as follows:

> **THE COURT**: . . . And then, Ms. Zonne [Plaintiff's counsel], . . . you raise the issue that . . . non-Chinese persons traveling from outside of Hong Kong are prohibited from entering Hong Kong because of COVID. ¶ And whereas they – the Chinese persons could come and be deposed here . . . and there are no restrictions for them to come here because all they have to do is take a COVID test. . . .

> **MS. ZONNE**: Exactly, your Honor. . . . The only thing I'd add is there's no restrictions and no delay, at least in terms of taking the depositions; because currently, even if

> we were allowed to travel to Hong Kong with COVID
> restriction[s], the permission of the [C]ompetent
> [A]uthority we understand . . . it can take up to actually a
> year to receive notice back.

(*Id.* at 4:1–19.)  Since then—effective May 1, 2022—non-Hong Kong residents are permitted to travel into Hong Kong (Def.'s Suppl. Ex. T), and, as such, counsel could, as of the date of the Motion and this Order, travel to take the depositions there.

   *Second*, the Flight Suspension Mechanism was imposed on March 25, 2022, two days after the March IDC, and thus it and its implications—including, significantly, that a deponent could be precluded from returning to Hong Kong indefinitely for reasons completely unrelated to the deponent or the deponent's COVID-19 health metric—are new to the analysis.  (Def.'s Suppl. Ex. T.)  And, while the thresholds that trigger the Flight Suspension Mechanism recently were eased, they nevertheless remain in place, resulting in the possible five-day prohibitions of unspecified flights.  (*Id.*)

   *Third*, the nature and extent of the Hong Kong in-bound travel and quarantine restrictions were not presented *in toto* to the Court; the parties noted only the quarantine and self-isolation requirements.  (*See generally* March IDC Transcript.)

   *Fourth*, Defendant noted a willingness to consider bringing Defendant's Deponents to California if the Hong Kong COVID-19 restrictions for in-bound travelers were lifted or relaxed such that the hardship on these deponents was relieved.  (*Id.* at 8:7–10; 15:20–22.)  Since then, while the quarantine restriction was reduced from fourteen to seven days, the new imposition of the Flight Suspension Mechanism in effect increases the in-bound travel restrictions significantly.  (*See* Def.'s Suppl. Ex. T.)

   *Fifth*, the discovery cut-off date at the time of the March IDC was May 23, 2022, and thus time was of the essence.  Since then, the discovery cut-off date has

1   been extended to September 19, 2022 (*see* ECF No. 29), allowing for the possibility

2   of obtaining, or at least starting the process to obtain, permission from the Hong

3   Kong Competent Authority to conduct these depositions, while at the same time

4   allowing Plaintiff an opportunity to obtain the information sought from Defendant

5   through different discovery methods.

6        In sum, whatever the circumstances and travel restrictions were at the March

7   IDC, they since have changed and, in this Court's opinion, become more

8   burdensome.  Thus, the balance of interests in March 2022 is of limited relevance

9   today.  Accordingly, this Motion must be decided based upon the facts attendant

10  today rather than any recommendation this Court might have made three months

11  ago.

12

13              2.    Presumption

14        Defendant argues that Defendant presumptively should be deposed in Hong

15  Kong, the location of its principal place of business.  (Mot. 16–17.)  Plaintiff

16  responds that there is no absolute rule that corporate parties be deposed at their

17  principal place of business and that, in any event, any such presumption is

18  overcome by the circumstances attendant here.  (*Id.* at 9–12.)

19        Rule 30 is silent regarding the place of depositions, allowing the noticing

20  party to select the specific location unilaterally.  *See generally* Fed. R. Civ. P. 30;

21  *see also Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628 (C.D. Cal. 2005).

22  However, there exists a presumption that, subject to modification when justice

23  requires, the location of a corporate party's deposition is at its principal place of

24  business.  *Id.* (citing Wright, Miller & Marcus, Federal Practice and Procedure:

25  Civil 2d § 2112 at 84–85 (1994 rev.) (footnotes omitted)).  Nevertheless, the

26  presumption may be dissipated by a number of factors, the existence of which allow

27  a court to require that the corporate party's deposition be conducted "in the forum

28  district or some other place."  *Id.* at 628–29 (citing *Turner v. Prudential Ins. Co. of*

23

*Am.*, 119 F.R.D. 381, 383 (M.D.N.C. 1988)).  These factors include (1) "location of counsel for the parties in the forum district"; (2) "the number of corporate representatives a party is seeking to depose"; (3) "the likelihood of significant discovery disputes arising which would necessitate resolution by the forum court"; (4) "whether the persons sought to be deposed often engage in travel for business purposes"; (5) "the equities with regard to the nature of the claim and the parties' relationship"; (6) "the convenience of all parties"; (7) "the general interests of judicial economy"; and (8) "the financial position of the deponent and that of the corporate party for which he works."  *Id.* at 629 (citations omitted).[10]

Here, a balance of the *Cadent* factors does not compel a finding that the presumption is overcome.  The first *Cadent* factor—location of counsel for the parties in the forum district—weighs in favor of a deposition in California as both counsel are located in California and, to the extent it becomes an issue, Plaintiff's counsel has offered to have the deposition taken in San Francisco, where Defendant's counsel is located.  The second *Cadent* factor—the number of corporate representatives to be deposed—weighs in favor of a deposition in California because Defendant has designated only one deponent as its corporate representative–Yuen, who resides in Hong Kong—and it is less expensive to fly him to, and house him in, California than to fly and house at least two lawyers in Hong Kong.  The third *Cadent* factor—the likelihood of significant discovery

---

[10] Relying on *Pruco Life Ins. Co. v. Cal. Energy Dev. Inc.*, No. 3:18-cv-02280-DMS-AHG, 2021 U.S. Dist. LEXIS 209840, at *12 (S.D. Cal. Oct. 29, 2021), Plaintiff urges the Court to, in addition, consider the fact that Defendant has availed itself of the forum district by filing a counterclaim.  (Mot. 11.)  Relying on *Shinde v. Nithyananda Found.*, No. ED CV 13-363-JGB (SPx), 2015 U.S. Dist. LEXIS 189257 (C.D. Cal. May 21, 2015), Defendant urges the Court to, in addition, consider the "cost, convenience, and litigation efficiency" involved.  (Mot. 16.) The Court declines to follow the cases relied upon by the parties as the factors for which they are cited are applicable to the question of appropriate forum for an individual deponent, not a corporate defendant.

24

1   disputes—weighs in favor of a deposition in Hong Kong given that, to date, this is

2   the only discovery dispute that has required a discovery motion.  Indeed, although

3   both parties agree that there has been a history of discovery disputes, and Plaintiff

4   predicts "a near-certainty" of additional discovery disputes (Mot. 11, 19), only one

5   dispute (other than the present) has been brought to the Court's attention, and the

6   parties were able to resolve some of that dispute during the informal discovery

7   conference and no motion followed regarding the remainder of the dispute.  (*See*

8   ECF No. 32.)  Moreover, even if a dispute were to arise while the parties are in

9   Hong Kong, arrangements could be made to have the Court address the dispute by

10  telephone (as it has done in the past) while the deponent, the parties, and counsel

11  remain in Hong Kong.  The fourth, fifth, and eighth *Cadent* factors—whether Yuen

12  engages in business travel, the equities of the claim and the parties' relationship,

13  and the financial positions of the deponent and Defendant—cannot be assessed on

14  this record as the parties have offered no information in this regard.  (*See generally*

15  Mot.)  Accordingly, given the presumption, these factors favor a deposition in

16  Hong Kong.  The sixth *Cadent* factor—convenience of the parties—is neutral given

17  that one party is found in California and the other in Hong Kong.  The seventh

18  *Cadent* factor—judicial economy—is neutral as the Court is unaware of any greater

19  risk to judicial economy as between the two venues.  To the extent judicial

20  economy could be impacted by the need to extend the discovery cut-off date

21  indefinitely to allow for Plaintiff to obtain the necessary deposition approvals from

22  the Hong Kong Competent Authority, the same could be said for the need to extend

23  the discovery cut-off date indefinitely to account for the Hong Kong travel and

24  mobilization restrictions.

25          Plaintiff's reliance on *Hyde & Drath v. Baker*, 24 F.3d 1162 (9th Cir. 1994),

26  for a contrary result is misplaced.  In *Hyde*, the Ninth Circuit found no abuse of

27  discretion in the Special Master's order compelling the deposition of the plaintiff's

28  representatives, who lived in Hong Kong, to take place in San Francisco.  *Hyde*, 24

F.3d at 1166.  However, the bases for that decision were two facts not present here: (1) the plaintiff had disregarded the previous deposition order; and (2) having filed the lawsuit in San Francisco, the plaintiff should have expected to appear there.  *Id.* Here, there is no history of Defendant disobeying a previous deposition order.  (*See generally* Mot.)  Nor did Defendant file this lawsuit.  Plaintiff contends that "[Defendant] and its employee witnesses have availed themselves of travel to the forum district by doing business in Los Angeles . . . and filing a crossclaim."  (Mot. 11.)  However, Defendant explains that its counterclaim was compulsory (Mot. 6)—which Plaintiff does not dispute (*see generally* Mot.)—and argues that, having chosen this forum in which to file a lawsuit against a foreign corporation, Plaintiff "cannot now . . . deliberately refuse to seek permission to take the depositions where Defendant is located."  (Mot. 20).  Without deciding whether the counterclaim was compulsory or permissive, the Court is persuaded by Defendant's argument.

Finally, Plaintiff's argument that Defendant failed to seek a protective order (Mot. 9) is without merit.  Indeed, Rule 37(d) provides that a failure to appear at deposition "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."  Fed. R. Civ. P. 37(d)(2); *see also Koninklijke Phillips Elecs. N.V. v. KXD Tech., Inc.*, No. 2:05-cv-01532-RLH-GWF, 2007 U.S. Dist. LEXIS 100969, at *49 (D. Nev. Oct. 2, 2007).  However, Defendant did start the process to obtain a protective order prohibiting these depositions.  In fact, Defendant requested an informal discovery conference on March 3, 2022, the day after Plaintiff served the deposition notices for Defendant's Deponents, setting Yeun's deposition for March 16, 2022; Kong's deposition for March 17, 2022, and Chu's deposition for March 18, 2022.  (Pl.'s Ex. C at 100–08.)  Defendant's request was submitted unilaterally and was supported by a declaration that Plaintiff's counsel had not cooperated in preparing the request.  (ECF No. 26.)  Plaintiff did

1    not submit its portion of the request within twenty-four hours after receipt of

2    Defendant's unilateral request, as required by this Court's informal discovery

3    conference process.  (*See* http://www.cacd.uscourts.gov/honorable-maria-audero.)

4    Instead, disputing the basis for Defendant's unilateral request, Plaintiff submitted

5    its portion of the request on March 18, 2022, in response to this Court's March 17,

6    2022 order that it do so.  (ECF No. 26.)  Having delayed its participation in the

7    informal discovery conference process until the last day of the noticed depositions,

8    Plaintiff cannot now be heard to complain that Defendant failed to obtain a

9    protective order.

10          On this record, the Court cannot conclude that the presumption requiring that

11   Defendant's deposition be taken in Hong Kong has been overcome.

12

13                3.      Hong Kong Procedural Requirements for Depositions

14          Plaintiff contends that Yuen's deposition should go forward in California

15   because the laws and procedures of Hong Kong "have already and will continue to

16   impede the taking of the depositions indefinitely" given that the process for

17   obtaining permission to take depositions is unpredictable and could take in excess

18   of six to nine months, if not more than one year, "effectively staying the case

19   indefinitely."  (*Id.* at 12–13.)  Acknowledging these difficulties, Defendant notes

20   that Plaintiff has known of the need to obtain this permission since September

21   2021[11] but nevertheless "made the tactical decision to deliberately choose not to

22

23   _____

24   [11] It is unclear when Plaintiff learned of the need to obtain permission from the
     Hong Kong Competent Authority to take these depositions.  Plaintiff contends it
25   was not until approximately February 2022.  (Mot. 13.)  However, this is
     inconsistent with its own January 13, 2022 email to Defendant's counsel noting that
26   they discussed "some of the procedural issues with conducting depositions in China
     or Hong Kong" during the parties' Rule 26 conference, which presumably occurred
27   sometime before Plaintiff filed its Rule 26 Report on September 20, 2021.  (Zonne
     Decl., Ex. 2, at 47; *see* Pl.'s Ex. A at 31–35.)
28

seek permission"—"even as a fallback plan"—and to, instead, seek to compel the deposition in California.  (Mot. 7, 15, 21.)  Thus, Defendant argues that, given Plaintiff's own inactivity, it cannot now claim prejudice.  (*Id.* 21.)  Defendant further notes that, in any event, this problem could have been resolved by now had Plaintiff commenced the process of obtaining permission in September 2021 (nine months ago).  (*Id.*)

Plaintiff explains that it did not attempt to obtain the required permission for four reasons:  (1) given that inbound travel to Hong Kong remains prohibited at this time, such permission would be fruitless; (2) Plaintiff had no reason to attempt to obtain such permission because Defendant has offered since February 2022 to produce its witnesses in California; (3) Plaintiff has always indicated to Defendant that it is the deponent who must seek permission; and (4) even if travel were allowed, Plaintiff does not have the witnesses' citizenship information in order to confirm whether the permission actually is necessary.  (Mot. 5.)   Taking each in turn, the Court concludes that Plaintiff's justifications are without merit.

Plaintiff's first justification—that inbound travel to Hong Kong remains prohibited and therefore obtaining the required permission is futile—is simply incorrect.  As demonstrated by Plaintiff's Exhibit H, while the U.S. Department of State *cautions against* travel into Hong Kong, it does not *prohibit* such travel. (Pl.'s Ex. H.)  Nor is such travel *prohibited* by the Hong Kong government.  As Defendant aptly notes, subject to the Flight Suspension Mechanism and the quarantine, self-isolation, and testing requirements, all travelers are permitted to enter Hong Kong as of May 1, 2022.  (Mot. 22; Def.'s Am. Ex. O.)

Plaintiff's second justification—that it had no reason to seek the required permission because Defendant has offered, since before February 2022, to bring its witnesses to California—is unpersuasive.  *First*, it appears from the parties' documents that their first discussion about taking these depositions in Los Angeles rather than Hong Kong first occurred on February 14, 2022—five months after

Plaintiff was aware of the need to obtain permission to take the depositions in Hong Kong.  (Zonne Decl., Ex. 3 at 49 (showing that Plaintiff unilaterally decided the depositions would go forward in Los Angeles because Defendant had not provided information regarding the citizenship of the deponents).)  Thus, it remains unexplained why Plaintiff made no efforts to obtain permission from the Hong Kong Competent Authority before February 2022.  *Second*, while Plaintiff may have proceeded as though there was an agreement that Defendant would bring its witnesses to California (Mot. 4), no such agreement was ever reached.  Indeed, although there were discussions to this effect, on April 22, 2022 Defendant noted that it "ha[d] not agreed to bring the Hong Kong witnesses to [Los Angeles] for depositions," and characterized the relaxation of the quarantine requirements as nothing more than "a positive step . . . in the possibility of them coming." (*Id.*, Ex. 5 at 60–61.)  Moreover, even as late as May 2, 2022, while the parties were discussing possible dates for depositions in Los Angeles, Defendant made clear that "the situation remain[ed] fluid." (*Id.* at 59.)  Finally, if it was not clear to Plaintiff that the parties did not have an agreement to depose Defendant's witnesses in Los Angeles, any doubt was dispelled by Defendant's May 9 and 10, 2022 email exchange with Plaintiff wherein Defendant noted it would agree to bring Yuen to California but that, "for the avoidance of doubt, this offer is obviously subject to [Plaintiff's] agreement to forego its efforts to compel the other witnesses to travel to the U.S." (*See generally* Pl.'s Ex. E.)  *Third*, Plaintiff indicated at the March IDC that additional efforts could be made to obtain more information from the Hong Kong Competent Authority about the length of the permission process:  "The only thing I can think of is that I can try emailing the email that's contacted.  I tried calling and nobody answers.  It just goes to a voicemail where you can't even leave a message." (March IDC Transcript 16:16–19.)  But there is no indication that Plaintiff even attempted this email contact.  (*See generally* Mot.; Zonne Decl.)

///

Plaintiff's third justification—that Plaintiff always has indicated that it is Defendant, not Plaintiff, that must obtain the required permission because Defendant is obligated to produce a witness for its Rule 30(b)(6) deposition—is without factual or legal support.  As a threshold matter, there is no evidence to support the contention that this always has been Plaintiff's position.  (*See generally* Mot.; Zonne Decl., Pl.'s Exs. A, C–J.)  To the contrary, Plaintiff's documents suggest that the parties always contemplated that the burden was on Plaintiff to obtain the required permission.  For example, on February 4, 2022, Plaintiff requested that Defendant provide the citizenship information of Defendant's Deponents because, according to its research, "the citizenship of the deponent is material to whether approval is required." (*See* Zonne Decl., Ex. 3 at 51.)  On February 14, 2022, Plaintiff noted that Defendant's failure to provide the citizenship information was "causing further delay in facilitating the depositions." (*Id.* at 49.)  If the burden of obtaining permission from the Hong Kong Competent Authority fell upon Defendant—as Plaintiff now contends—there was no need for Plaintiff to ask for the deponent's citizenship information.  In addition, there is no evidence that Plaintiff ever disputed Defendant's assertions that it is Plaintiff's obligation to seek the required permission:

> . . . it seems you have opted not to seek permission . . . We continue to object to your decision to refrain from seeking permission.  As you know, we will produce witnesses in Hong Kong if/when you get permission.  If you have not done so, you should immediately seek permission.

(Zonne Decl., Ex. 5 at 59.)  Moreover, Plaintiff offers no legal authority for its assertion that obtaining the required permission is Defendant's burden.[12]  (*See* Mot.

---

[12] Even the authority offered by Plaintiff in its untimely Supplemental Memorandum is inapposite.  (Pl.'s Suppl. Mem. 5 (citing *Symantec Corp. v. Acronis, Inc.*, No. 11-cv-5310 EMC (JSC), 2013 U.S. Dist. LEXIS 17505 (N.D.

5.)  In any event, Defendant has not declined to produce a Rule 30(b)(6) witness; rather, it has offered to produce Yuen as its designee.  (Mot. 7.)

Plaintiff's fourth justification—that it did not seek the required permission because it might not be necessary—is a tactical miscalculation.  Plaintiff notes that permission from the Hong Kong Competent Authority is required only for a deposition of a Chinese citizen and, thus, it would be premature to request such permission before knowing the citizenship of the deponents, information Defendant has refused to provide.  (Mot. 5.)  It is notable—and disappointing—that Defendant has not answered Plaintiff's pointed—albeit informal—inquiry in this regard.  (*See* Zonne Decl., Ex. 3 at 49.)  Nevertheless, Plaintiff cannot wash its hands of this regrettable circumstance, especially in light of a looming discovery cut-off date and in light of having been aware of this issue since September 2021.  To the extent Plaintiff believed this information was necessary for the progress of its discovery, it was incumbent upon Plaintiff to obtain it through formal discovery channels if unavailable informally.

Plaintiff's reliance on *In re Vitamin Antitrust Litig.*, No. 99-197 (TFH), MDL No. 1285, 2001 U.S. Dist. LEXIS 25070 (D.D.C. Sept. 10, 2001), for the proposition that the depositions should proceed in California because Hong Kong procedures are an impediment to Hong Kong depositions, is misplaced.  (*See* Mot.

---

Cal. Feb. 8, 2013).)  In *Symantec*, the plaintiff sought to compel the Rule 30(b)(1) depositions of certain of Defendant's employees located in Russia.  *Symantec*, U.S. Dist. LEXIS 17505, at *3–4.  The issue before the court was whether these deponents were "managing agents" of the defendant such that it would be required to produce them for the noticed depositions.  Despite finding that each of the witnesses could be considered such an agent, the court nevertheless concluded that their depositions imposed a substantial burden because they could not be deposed under Russian law.  *Id.* at *12.  On this basis, the court declined to compel their depositions at least until the completion of the defendant-identified technical witnesses.  *Id.* at *13.  Nowhere in this decision did the court touch upon—let alone decide—the question of whose obligation it is to obtain deposition permission from a foreign government.  *See generally id.*

12.)  As a threshold matter, the parties in *In re Vitamin Antitrust Litigation* provided the Special Master with significant evidence, much beyond the declarations of its counsel (which the Special Master disregarded for the most part), regarding the procedural impediments to the depositions in the various countries at issue.  The record was not only robust, but it was buttressed by declarations of local counsel and court reporters evidencing first-hand knowledge of the impediments, including the cumbersome location and  lack of availability of space for depositions in Japan, the requirement that depositions be administered by the U.S. Embassy or Consulate in Germany, and the law criminalizing the taking of depositions not channeled through the Hague Evidence Convention in France.  *In re Vitamin Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25070, at *41–59.  Here, Plaintiff offers no similar evidence, and in fact, identifies no procedural impediments other than the *anticipated* difficulty in obtaining permission from the Hong Kong Competent Authority.  (*See* Mot. 12–13.)  Moreover, unlike the fulsome factual record in *In re Vitamin Antitrust Litigation*, Plaintiff's contention that the permission process could take six months to possibly more than one year is based upon impermissible hearsay statements of unidentified lawyers in Hong Kong.  (Mot. 13 (referring to information obtained from two colleagues in Plaintiff's counsel's  law firm who have taken depositions in Hong Kong; Zonne Decl. ¶ 4.)  Finally, Plaintiff offers no evidence that it has even started the process of requesting the required permission. (*See generally* Mot.)

On this record, the Court is unable to conclude that the Hong Kong procedural requirements actually impose an impediment on the taking of Defendant's deposition in Hong Kong.  While ultimately this may prove true, the evidence provided by Plaintiff does not support that conclusion at this time.

///

///

///

32

4.     Pandemic-Related Travel and Mobilization Restrictions

Plaintiff argues that, even if permission could be obtained from the Hong Kong Competent Authority to take Yuen's deposition in Hong Kong, the burden on counsel to take the deposition in Hong Kong would be greater than the burden on Yuen to have his deposition taken in California.  (Mot. 14.)  Plaintiff explains that the only burden Yuen would face in entering the United States for his deposition is "to be fully vaccinated with the primary series of the COVID vaccine and to show a negative test result prior to the flight."  (*Id.*)  Plaintiff goes on to explain that, upon return to Hong Kong, the only burden Yuen would face is a seven-day quarantine requirement followed by self-monitored quarantine for an additional seven days. (*Id.* at 13.)

Plaintiff is correct that the burden on Yuen, a non-U.S. citizen or non-U.S. immigrant, to enter the United States is minimal—full vaccination and a recommended COVID-19 test.[13]  (Pl.'s Ex. J at 144–145; Non-U.S. Citizen, Non-U.S. Immigrants: Travel to and from the United States, Ctr. For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/travelers/noncitizens-US-air-travel.html (last visited June 29, 2022).)  Indeed, Defendant's compromise offer to bring Yuen to the United States for deposition (*see* Mot. 21), suggests that Yuen is willing to assume this burden.  Still, he nevertheless would be subject to travel requirements that would not be imposed upon him at all but for a requirement that he travel to California for his deposition.

More importantly, however, Plaintiff's view of the burdens on Yuen upon his return to Hong Kong is overly simplistic and gravely understated.  Even in the best of circumstances—Yuen tests negative for COVID-19 as he enters the United States, he does not contract COVID-19 while here, and he does not come into

---

[13] As noted above, Yuen no longer would be required to show a negative test result prior to the flight; rather, the current U.S. restrictions are that a COVID-19 test is recommended.

33

contact with anyone who has COVID-19—there still is no guarantee that he will be able to return to Hong Kong given that the Hong Kong government could, for reasons unrelated to Yuen or his deposition travel, indefinitely suspend flights entering Hong Kong from Los Angeles or San Francisco pursuant to the Flight Suspension Mechanism.  In a less favorable circumstance—Yuen is able to return to Hong Kong, tests negative upon arrival and stays negative during quarantine— Yuen still must quarantine in a hotel away from his family, home, and work for seven days and then self-isolate for another seven days at home.  In the next less favorable circumstance—Yuen is able to return to Hong Kong, tests negative upon arrival, tests positive during quarantine, but is asymptomatic—Yuen will be transferred to a Community Isolation Centre for an unspecified period of time until he tests negative.  In the next less favorable circumstance—Yuen is able to return to Hong Kong, tests negative upon arrival, tests positive while under quarantine, and is symptomatic—Yuen will be transferred to a hospital for an indefinite period of time until he is recovered.  In the next less favorable circumstance—Yuen is able to return to Hong Kong, tests positive upon arrival, but is asymptomatic—Yuen will be sent to a COVID-positive quarantine hotel for an unspecified period of time.  In the next less favorable circumstance—Yuen is able to return to Hong Kong, tests positive upon arrival, and is symptomatic—Yuen will be sent to a hospital for an indefinite period of time until he recovers and will have to self-monitor for a period of seven to fourteen days upon discharge.  And all along this spectrum, should Yuen merely come into close contact with a person who tests positive for COVID-19—a possibility under all scenarios except the first—Yuen will be under mandatory home quarantine, where he will be required to wear an electronic wristband, take his temperature twice daily, and take COVID tests as directed.   In the worst case—Yuen contracts COVID-19 while in the United States—he will not be able to board a return flight to Hong Kong until he is recovered and tests negative forty-eight hours before his flight.  All of this at great financial cost to

Yuen, and severe health, emotional, and professional risks for Yuen, his family, and his co-workers.  There simply is no scenario under which Yuen, and others connected to him, will not be severely impacted, or under which his life, and that of those connected to him, will not be turned upside down for at least two weeks if not substantially longer.

Plaintiff's argument that California depositions are more reasonable now that the quarantine period has been reduced from fourteen to seven days (Mot. 13–14) is unconvincing.  While there is no doubt that a seven-day quarantine period is less burdensome than a fourteen-day quarantine period, there also is no doubt that both are burdensome in the absolute.  And although Plaintiff is correct that the burden analysis looks not to the imposition of "any" burden, but rather to the imposition of an "undue" burden (*id.* at 10), the Court is not persuaded that even the shorter seven-day quarantine period, which nevertheless carries with it all the other accoutrements imposed by the Hong Kong government, is anything less than an undue burden.

Plaintiff contends that the burden of traveling to and entering Hong Kong is greater on counsel than on Yuen.  (Mot. 14.)  The Court disagrees.  If counsel tests positive for COVID-19 before the flight or if counsel's flight is cancelled through the Flight Suspension Mechanism, counsel need only leave the airport and head for home.  In sharp contrast, if Yuen is unable to return to Hong Kong for the same reasons, he has no home to which he may head from the airport, and instead he would have to expend significant sums to remain in the United States until he is able to return to Hong Kong, whenever that may be.  Further, the only difference between the quarantine requirements for counsel and Yuen upon entering Hong Kong is that Yuen could conduct the week of self-isolation at his own home while counsel would have to remain in a hotel because they have no home in Hong Kong. On balance, the Court concludes that the burden, or risk of burden, in traveling for the deposition is greater on Yuen than on counsel.  In any event, "the convenience

of counsel is less compelling than any hardship to the witnesses." *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 108 (S.D.N.Y. 2001) (citation omitted).

On this record, the Court cannot conclude that the balance of burdens weighs in favor of taking Defendant's deposition in California.

### 5.   Rule 26(b) Proportionality

Defendant contends that asking Yuen "to travel internationally against [his] will and to accept unnecessary risk to [his] health and that of [his] family over a simple contract dispute" violates the concept of proportionality in discovery, as set forth in Rule 26(b).  (Mot. 8.)  The Court agrees.

Rule 26(b)(1) governs the scope of discovery in federal cases and provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).  Proportionality is determined by a consideration of the following factors:  "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.* Further, the court "must limit the frequency or extent of discovery" pursuant to Rule 26(b)(2)(C) if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

36

1  Here, there is no question that the information to be obtained from Yuen's

2  deposition is important and necessary to the resolution of the case.  Indeed, he is

3  Defendant's Rule 30(b)(6) corporate designee and will respond to Plaintiff's

4  questions regarding all matters concerning the transaction at issue.  However, as

5  discussed above, the burden of such discovery, at least at this point in time,

6  outweighs its likely benefit, especially where the discovery "can be obtained from

7  some other source that is more convenient, less burdensome, or less expensive."

8  Fed. R. Civ. P. 26(b)(2)(c)(i).  Once permission is granted, Yuen's testimony can be

9  obtained by taking his deposition in Hong Kong with far less burden to Yuen.  To

10 the extent Plaintiff is concerned about its own burden, or the burden of its counsel,

11 in traveling to Hong Kong, it could take the deposition via videoconference[14] or

12 attempt to obtain the information it needs from Yuen through a deposition by

13 written questions under Rule 31.  Fed. R. Civ. P. 31.  Indeed, under Rule 31(a)(4), a

14 private corporation, such as Defendant, "may be deposed by written questions in

15 accordance with Rule 30(b)(6)."  Fed. R. Civ. P. 31(a)(4).  Should a Rule 31

16 deposition also require permission from the Hong Kong Competent Authority—

17 leaving Plaintiff in no better position—Plaintiff could instead try to obtain the

18 information it needs through written discovery, including interrogatories upon

19 seeking leave of the Court for an increase in the interrogatory count beyond the

20 twenty-five permitted by Rule 33(a).  Fed. R. Civ. P. 33(a).  Certainly, efforts to

21 ///

22

23  _____

24 [14] Plaintiff notes that it has not considered the option of a videoconference
   deposition because Defendant's counsel indicated that he intended "to travel to the
25 deposition location to attend in-person [sic] to prepare and defend his clients" and
   that he "has never rescinded this requirement."  (Zonne Decl. ¶ 5.)  However,
26 Defendant contends that a videoconference deposition "is an option here that has
   been offered and continues to be offered."  (Mot. 17.)  Thus, it appears that
27 Defendant's counsel's original intentions no longer are a requirement for the
   depositions of Defendant's Deponents.
28

obtain the information Plaintiff seeks through other means must precede a finding by this Court that the burden of the discovery does not outweigh its likely benefit.

### 6.   Conclusion

The Court recognizes that no alternative is perfect and that the best of all solutions would flow from living in the best of all worlds, free of COVID-19.  But that is not the reality we face at this moment.  To ignore the dangers inflicted by COVID-19 on all citizens of the world, and to disregard the personal concerns expressed by those who would be subjected to heightened COVID-19 exposure if forced to travel, would be irresponsible.  Plaintiff's concerns about continued delays in the litigation of the case, though undoubtedly genuine, cannot be the basis to jeopardize the health and well-being of any deponent in this case, especially where the federal rules provide alternative methods to obtain the information Plaintiff seeks.

Moreover, it does not escape the Court that this is, at least in part, a problem of Plaintiff's own making.  While the outcome of efforts to obtain deposition permission from the Hong Kong Competent Authority appears nothing short of unpredictable and protracted, Plaintiff's nine-month paralysis is not justified. Indeed, had Plaintiff commenced the process to obtain the required permission in September 2021—or even a few months ago—it at least might have developed a factual record to support the request it makes today.  Without such a record, the Court must **DENY** Plaintiff's request that Defendant's deposition go forward in California.

### D.   **Depositions of Plaintiff's Deponents**

It is unclear if Plaintiff affirmatively seeks an order that the depositions of Plaintiffs's Deponents only go forward after the depositions of Defendant's Deponents, or if it simply opposes Defendant's affirmative request that the Court

order Plaintiff to produce its witnesses forthwith.  (Mot. 23).[15]  Either way, the Court declines to issue an order that the depositions of Defendant's Deponents must go forward before that of Plaintiff's Deponents.

As a starting point, neither the Rules nor the Local Rules countenance the construct of deposition priority, as Plaintiff seems to assert as the basis for declining to produce its deponents first.  (*See* Mot. 5 (noting that Plaintiff "declines to provide [Defendant] with *priority* to depose [Plaintiff's] witnesses . . . .") (emphasis in original).)  And Plaintiff does not provide legal authority to support this request.  (*See generally* Mot.)  To the contrary, Rule 26(d)(3) provides that, absent agreement of the parties or order of the Court, "methods of discovery may be used in any sequence" and "discovery by one party does not require any other party to delay its discovery."  Fed. R. Civ. P. 23(d)(3).  Indeed, to the extent there ever existed "deposition priority," there is no question that Rule 26(d)(3) has abolished it.  *Brady v. Grendene USA, Inc.*, No. 12cv604-GPC(KSC), 2014 U.S. Dist. LEXIS

---

[15] The Court agrees with Plaintiff that Defendant's request for affirmative relief is improper.  Courts in this and other districts have concluded that a request for affirmative relief is not proper when raised for the first time in an opposition.  *See, e.g.*, *Interworks Unlimited, Inc. v. Digit. Gadgets, LLC*, No. CV 17-04983 TJX (KSx), 2019 U.S. Dist. LEXIS 167149, at *3–4 (C.D. Cal. June 11, 2019) (party responding to a motion "cannot seek affirmative relief by way of an opposition brief"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 U.S. Dist. LEXIS 74566, at *13 n.8 (N.D. Cal. June 2, 2015) (asking to strike infringement theories is not "a request for [] relief properly presented in an opposition brief"); *Pac. Coast Steel v. Stoddard*, No. 11cv2073 H(RBB), 2013 U.S. Dist. LEXIS 199213, at *41 (S.D. Cal. Feb. 15, 2013) (declining to grant affirmative relief, "precluding an expert witness from testifying at trial, based on a request included in an opposition to a motion"); *Thomasson v. GC Servs. L.P.*, No. 05cv0940-LAB (CAB), 2007 U.S. Dist. LEXIS 54693, at *21 (S.D. Cal. July 16, 2007) ("[T]he court rejects any discovery-related or other requests for affirmative relief Plaintiffs attempt to piggy-back on their Opposition as inappropriate, untimely, and obfuscating.").

136558, at *10–11 (S.D. Cal. Sept. 26, 2014) (citing *United States v. Bartesch*, 110 F.R.D. 128, 129 (N.D. Ill. 1986)).

Moreover, even if deposition priority were to exist now, there is no evidence that Plaintiff has earned that place.  Plaintiff noticed Defendant's deposition on February 24, 2022, and the deposition of the individual deponents on March 2, 2022.  (Pl.'s Ex. C.)  Defendant, on the other hand, noticed the depositions of Plaintiff's Deponents on February 22, 2022.[16]  (Kennedy Decl., Ex. 9.)  Thus, even Plaintiff's earliest notice trails two days behind Defendant's notices.    It appears, however, that Plaintiff claims priority based on a January 13, 2022 email inquiring about the availability of Defendant's Deponents. (Mot. 22–23; Zonne Decl. ¶ 5, Ex. 2.)  But Plaintiff provides no authority for the proposition that deposition priority could be established, if at all, based upon an inquiry of availability (*see generally* Mot.), and the Court is aware of none.  Moreover, the Court made clear at the March IDC that regardless of how or when the depositions of Defendant's Deponents went forward, discovery—including the depositions of Plaintiff's Deponents—could not stand still.  (March IDC Transcript 12:17–13:1 (noting that this Court "can't imagine that Judge Wright is going grant an extension of the discovery cut-off for [ninety] days so that you folks can do nothing while you wait for these [Hong Kong] witnesses," which the Court noted should be interpreted to mean "that the other [depositions] have to go forward.  You can't sit . . . without doing anything in discovery, especially if you are . . . requesting an extension.  You have to show diligence."); *id.* at 13:5–7 (noting that, "at the end of the day, if the deposition can't go forward, it can't hold up all the discovery.  It just can't."); *id.* at 19:5–8 (instructing the parties that, since no one has an idea of how long the

---

[16] The Court addresses only the concept of priority; it offers no opinion and makes no ruling regarding the appropriateness of the method by which Defendant seeks to compel the attendance of Plaintiff's Deponents at deposition.

permission process could take, they should "move discovery forward and do what you can do in discovery," which includes "the depositions of the other side.")

On this basis, regardless of how Plaintiff's position is framed, the Court **DENIES** any request (or assertion) that the depositions of Plaintiff's Deponents may proceed only after the deposition of Defendant's Deponents.

## V.   CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

1.   Plaintiff's request that the depositions of Kong, Chu, and Yuen in his individual capacity go forward on the basis of the pending Rule 30 notice is **DENIED** without prejudice to Plaintiff seeking further relief after developing sufficient evidence to support a finding of "managing agent" status of these deponents, or agreement of the parties.

2.   Plaintiff's request that the depositions of Kong, Chu, and Yuen, whether as managing agents of Defendant or otherwise, go forward in California is **DENIED** without prejudice to a change in COVID-19-related or other circumstances, or agreement of the parties.

3.   Plaintiff's request that the deposition of Jiang go forward on the basis of the pending Rule 30 notice and in California is **DENIED**, without prejudice to an agreement of the parties.

4.   Plaintiff's request that Defendant's Rule 30(b)(6) deposition, through its designee Yuen and/or whoever else Defendant may designate as its witness, go forward in California is **DENIED** without prejudice to a change in COVID-19-related or other circumstances, or agreement of the parties.

5.   In an effort to move discovery forward without unnecessary delay, *see* Fed. R. Civ. P. 1, and pursuant to its authority to manage discovery, *see, e.g.*, *Douglas v. County of Riverside*, No. CV 14-02027 MMM,

41

2015 U.S. Dist. LEXIS 200597, at *15 (C.D. Cal. Oct. 7, 2015) (noting the Supreme Court's reference to the trial court's "usual authority to manage discovery") (citation and quotation marks omitted)), the Court hereby, *sua sponte*, **GRANTS LEAVE** to Plaintiff to either, at its choice:

    a.    request and take a Rule 31 deposition of Defendant, if such is permissible under Hong Kong law;

          - or -

    b.    propound to Defendant one hundred (100) interrogatories (including sub-parts), beyond the twenty-five interrogatory limit of Rule 33(a), which additional interrogatories need not be propounded all at the same time.

Because these two options are stop-gap measures intended to move discovery along, neither the initial taking of a Rule 31 deposition nor the alternative initial  propounding of an additional one hundred interrogatories will be grounds for Defendant later to oppose a live or virtual deposition of Defendant should permission to conduct it thereafter become feasible under applicable Hong Kong laws and regulations.

    6.    To the extent either party seeks an order that the depositions of Plaintiff's Deponents proceed only after the deposition of Defendant's Deponents, that request is **DENIED**.  Rather, the parties are **ORDERED** to proceed with discovery in an expeditious and diligent manner, consistent with Rule 1, which requires that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  To be clear, the depositions of Plaintiff's Deponents, to the extent

42

properly sought (on which the Court does not opine at this time) and absent a subsequent order to the contrary, must go forward regardless of the timing and location of Defendant's deposition.

7. **Plaintiff is hereby cautioned that failure to comply with this Order, including compliance on a timely basis, may result in the imposition of sanctions pursuant to Rule 37(b)(2)(A), which includes (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.  Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).  Plaintiff also is cautioned that instead of or in addition to the above sanctions, the Court could order it, its attorney, or both, to pay the reasonable expenses, including attorneys' fees, caused by its failure to comply with this Order.**

DATED:  June 29, 2022

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

43